1
MICHAEL RUBIN (SBN 80618)
BARBARA J. CHISHOLM (SBN 224656)
2
P. CASEY PITTS (SB 262463)
MATTHEW J. MURRAY (SBN 271461)
3
Altshuler Berzon LLP
177 Post Street, Suite 300
4
San Francisco, California 94108
Telephone: (415) 421-7151
5
Facsimile: (415) 362-8064
E-mail:  mrubin@altber.com
6
          bchisholm@altber.com
          cpitts@altber.com
7
          mmurray@altber.com

8
JOSEPH M. SELLERS (*pro hac vice*)
ABIGAIL E. SHAFROTH (*pro hac vice*)
9
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
10
Washington, DC 20005
Telephone: (202) 408-4600
11
Facsimile: (202) 408-4699
E-mail:  jsellers@cohenmilstein.com
12
          ashafroth@cohenmilstein.com

13
Attorneys for Plaintiffs

14
IN THE UNITED STATED DISTRICT COURT

15
FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

17
STEPHANIE OCHOA, ERNESTINA
SANDOVAL, YADIRA RODRIGUEZ, and
18
JASMINE HEDGEPETH, on behalf of
themselves and all others similarly situated,
19

20
          Plaintiffs,

21
vs.

22
MCDONALD'S CORP., a corporation,
MCDONALD'S U.S.A., LLC, a limited
23
liability company, MCDONALD'S
RESTAURANTS OF CALIFORNIA, INC., a
24
corporation, THE EDWARD J. SMITH AND
VALERIE S. SMITH FAMILY LIMITED
25
PARTNERSHIP d/b/a MCDONALD'S, a
limited partnership, and DOES 1 through 100,
26
inclusive,

27
          Defendants.

28

CASE NO. 3:14-cv-02098-JD

**CLASS ACTION**
**FIRST AMENDED COMPLAINT**

1.  Failure to Pay All Wages When Due
2.  Failure to Pay Overtime Wages
3.  Failure to Pay Minimum Wages
4.  Failure to Provide Required Meal Periods
    or Pay Missed Meal Period Wages
5.  Failure to Provide Required Rest Breaks or
    Pay Missed Rest Break Wages
6.  Failure to Pay All Wages Due to
    Discharged and Quitting Employees
7.  Failure to Maintain Required Records
8.  Failure to Furnish Accurate Itemized Wage
    Statements
9.  Failure to Indemnify Employees for
    Necessary Expenditures
10. Negligence
11. California Labor Code Private Attorneys
    General Act
12. Unfair and Unlawful Business Practices
13. Declaratory Judgment
**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.     This is a class action brought under California law by four individuals who are or were employed as crew members in McDonald's fast-food restaurants in Northern California operated by Defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership, d/b/a McDonald's (along with Doe defendants 51 through 100, hereinafter "Smith Partnership") as franchisee of Defendants McDonald's Restaurants of California, Inc., McDonald's U.S.A., LLC, and McDonald's Corporation (along with Doe defendants 1 through 50, collectively hereinafter "McDonald's").  Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth bring this action on behalf of themselves and others similarly situated to recover the wages that Defendants unlawfully stole – and are continuing to steal – from them in violation of California law.

2.     Plaintiffs Ochoa, Sandoval, Rodriguez and Hedgepeth have worked for minimum wage at Defendants' restaurants in Oakland and Richmond, California.  While working for minimum wage, Plaintiffs have been forced to endure stressful, dangerous, and illegal workplace conditions created by Defendants' efforts to maximize profits and tightly control labor costs.

3.     McDonald's is a multi-billion dollar business.  On information and belief, it operates more than 35,000 restaurants globally, including approximately 1,300 restaurants in California. This action involves wage theft and other violations of crew members' legal rights at the McDonald's-franchised restaurants operated by Smith Partnership in California.

4.     Plaintiffs, like their crew member co-workers whom Defendants also employed during the applicable limitations period, spend or spent their workdays at McDonald's restaurants filling orders, preparing and cooking food, cleaning the restaurant, and serving customers under strictly regimented and pressured circumstances.  That pressure results in significant part from McDonald's insistence that its franchisees like Defendant Smith Partnership must strictly monitor and curtail labor costs, which Defendants accomplish by not paying for all hours worked, not paying overtime premiums for all overtime hours, not paying the required extra hour for missed meal periods and rest breaks, and by using other unlawful stratagems to comply with McDonald's requirement that labor costs at its franchised restaurants may not exceed a designated, and

1  artificially low, percentage of the restaurant's gross sales.  Compounding this pressure is

2  McDonald's insistence that its franchised restaurants must also meet McDonald's strict

3  labor-intensive expectations for operational procedure and speed of service.

4       5.     Although McDonald's has entered into a Franchise Agreement with Smith

5  Partnership that, on information and belief, purports to delegate responsibility for restaurant

6  operations and for control over employees to Smith Partnership, Smith Partnership operates its

7  franchised restaurants as an agent of McDonald's.  At all relevant times McDonald's has directed

8  and controlled the restaurant operations, including by controlling the material terms and conditions

9  of employment of Plaintiffs and all other similarly situated crew members.

10      6.     Despite McDonald's vast revenues and multi-billion dollar annual profits,

11  Defendants pay or paid Plaintiffs and other crew members only the minimum wage or slightly more

12  than minimum wage.  Indeed, according to published reports, due to the low wages McDonald's

13  pays employees, the government is required to spend approximately $1.2 billion annually on

14  McDonald's employees in anti-poverty program aid, including Supplemental Nutrition Assistance

15  Program ("food stamps") and Temporary Assistance for Needy Families.  Defendants then reduce

16  Plaintiffs' and crew members' ability to earn even the bare minimum reflected in their low wage

17  rates by engaging in a variety of forms of unlawful wage theft, including but not limited to: altering

18  or condoning the alteration of time records to avoid paying Plaintiffs and other crew members for

19  time they work and for overtime premiums they earn; requiring, suffering, or permitting Plaintiffs

20  and other crew members to work off the clock without compensation; failing to pay legally required

21  additional wages when Defendants fail to provide Plaintiffs and crew members with full and timely

22  meal periods and rest breaks as required by California law; and requiring Plaintiffs and other crew

23  members to incur necessary expenses, including the expense of cleaning required uniforms, without

24  reimbursement.

25      7.     Plaintiffs seek compensatory, statutory, declaratory, and injunctive relief for

26  themselves and the class of all current and former crew member employees of McDonald's

27  restaurants operated by Smith Partnership in California during the applicable limitations period

28  ("Class Members"), to compensate these workers for the unpaid and underpaid wages that

1  Defendants Smith Partnership and McDonald's have stolen from them and to protect current and

2  future McDonald's workers from being subjected to similar wage theft and otherwise unlawful

3  working conditions by this multi-billion dollar business.

4  **PARTIES**

5  8.      Plaintiff STEPHANIE OCHOA is a former fast-food restaurant worker who was

6  employed by Defendants as a crew member at the McDonald's restaurant located at 6623 San Pablo

7  Avenue in Oakland, California, from approximately July 2013 through February 2014.  Ms.

8  Sandoval is a resident of San Pablo, California.   When she was employed by Defendants, her wage

9  rate was the California minimum wage, $8.00 per hour.

10  9.      Plaintiff ERNESTINA SANDOVAL is a fast-food restaurant worker who has been

11  employed by Defendants as a crew member at the McDonald's restaurant located at 2301

12  MacDonald Avenue in Richmond, California, from approximately May 2013 through the present.

13  Ms. Sandoval is a resident of Richmond, California.  Her wage rate began at the California

14  minimum wage of $8.00 per hour and is currently the California minimum wage of $9.00 per hour.

15  10.      Plaintiff YADIRA RODRIGUEZ is a former fast-food restaurant worker who was

16  employed by Defendants as a crew member at the McDonald's restaurant located at 2301

17  MacDonald Avenue in Richmond, California, from approximately June 2013 through approximately

18  August 2014.  Ms. Rodriguez is a resident of San Pablo, California.  When she was employed by

19  Defendants, her wage rate was the California minimum wage, which for most of the time she was

20  employed by Defendants was $8.00 per hour.

21  11.      Plaintiff JASMINE HEDGEPETH is a former fast-food restaurant worker who was

22  employed by Defendants as a crew member at the McDonald's restaurant located at 2301

23  MacDonald Avenue in Richmond, California, from approximately April 2012 through October

24  2013, and at the McDonald's restaurant located at 4514 Telegraph Avenue in Oakland, California,

25  from approximately October 2013 through December 2013.  Ms. Hedgepeth is a resident of Pinole,

26  California.  When she was employed by Defendants, her wage rate was the California minimum

27  wage, $8.00 per hour.

28

1    12.    Each of the Plaintiffs identified immediately above brings this lawsuit on her own

2    behalf, on behalf of all similarly situated current and former McDonald's crew members employed

3    by Defendants at Smith Partnership-operated restaurants in the State of California, and on behalf of

4    all aggrieved employees and the general public pursuant to California Labor Code §2698 et seq.

5    California Business & Professions Code §17200 et seq.  Plaintiffs bring this class action for

6    injunctive relief and to recover, among other things, wages and penalties from unpaid wages earned

7    and due, including but not limited to unpaid wages for time worked off the clock, unpaid minimum

8    wages, unpaid and illegally calculated overtime compensation, late and missed meal period and rest

9    break wages, wages due to discharged or quitting employees, penalties for failure to maintain

10   required records and to provide accurate itemized wage statements, unreimbursed business

11   expenses, and interest, attorneys' fees, costs, and expenses.

12    13.    The proposed class these Plaintiffs seek to represent includes the following similarly

13   situated individuals ("Class Members"):  All individuals currently or formerly employed by

14   Defendants as crew members at one or more of Defendant Smith Partnership's franchised

15   McDonald's restaurants in California ("the Restaurants"), at any time within the period beginning

16   four (4) years prior to the filing of this action and ending at the time this action proceeds to final

17   judgment or settles (the "Class Period").  Plaintiffs reserve the right to name additional class

18   representatives and to identify sub-classes and sub-class representatives as may be necessary and

19   appropriate.

20    14.    Plaintiffs are informed and believe, and thereon allege, that Defendant

21   MCDONALD'S CORPORATION is a multinational, multi-billion dollar Delaware corporation,

22   with its principal place of business in Illinois.  On information and belief, McDonald's Corporation

23   operates more than 35,000 restaurants globally in all 50 states, including California.  At all relevant

24   times, on information and belief, Defendant McDonald's Corporation has done business in

25   California and committed the unlawful acts alleged in this Complaint.

26    15.    Plaintiffs are informed and believe, and thereon allege, that Defendant

27   MCDONALD'S U.S.A., LLC is a multinational, multi-billion dollar Delaware limited liability

28   company with its principal place of business in Illinois, which operates restaurants in all 50 states,

1 including California.  On information and belief, Defendant McDonald's U.S.A., LLC is a wholly-

2 owned subsidiary of Defendant McDonald's Corporation.  At all relevant times, on information and

3 belief, Defendant McDonald's U.S.A., LLC has done business in California and committed the

4 unlawful acts alleged in this Complaint.

5       16.    Plaintiffs are informed and believe, and thereon allege, that Defendant

6 MCDONALD'S RESTAURANTS OF CALIFORNIA, INC. is a California corporation and a

7 wholly-owned subsidiary of McDonald's U.S.A., LLC and/or of McDonald's Corporation, and

8 operates more than 1,300 restaurants in California.  At all relevant times, on information and belief,

9 Defendant McDonald's Restaurants of California, Inc. has done business in California and

10 committed the unlawful acts alleged in this Complaint.

11       17.    Plaintiffs are informed and believe, and thereon allege, that Defendant THE

12 EDWARD J. SMITH AND VALERIE S. SMITH FAMILY LIMITED PARTNERSHIP, d/b/a

13 McDonald's, also known as EJ Smith and VS Smith FLP, or VES McDonald's, is a California

14 limited partnership that conducts business in California, principally operating fast-food restaurants

15 and providing restaurant and related services.  The Edward J. Smith and Valerie S. Smith Family

16 Limited Partnership operates at least five fast-food McDonald's restaurants in California pursuant to

17 franchise agreements with McDonald's, including restaurants located at 2301 MacDonald Avenue,

18 Richmond, CA 94804, 4514 Telegraph Avenue, Oakland, CA 94607, 6623 San Pablo Avenue,

19 Oakland, CA 94608, 800 Market Street, Oakland, CA 94607 and 1330 Jackson Street, Oakland, CA

20 94612.

21       18.    On information and belief, Defendant The Edward J. Smith and Valerie S. Smith

22 Family Limited Partnership is owned and operated by Edward J. Smith and/or Valerie S. Smith.

23       19.    The true names and capacities of DOES 1 through 100, inclusive, are unknown to

24 Plaintiffs at this time, and Plaintiffs therefore sue such DOE Defendants under fictitious names.

25 Plaintiffs are informed and believe, and thereon allege, that each Defendant designated as a DOE is

26 in some manner responsible for the occurrences alleged herein, and that Plaintiffs' and Class

27 Members' injuries and damages, as alleged herein, were proximately caused by the conduct of such

28

1  DOE Defendants.  Plaintiffs will seek leave of the court to amend this Complaint to allege the true
2  names and capacities of such DOE Defendants when ascertained.

3        20.    Defendants MCDONALD'S CORPORATION, MCDONALD'S U.S.A., LLC,
4  MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., and DOES 1 through 50, inclusive,
5  are collectively referred to herein as "McDonald's."

6        21.    Defendants THE EDWARD J. SMITH AND VALERIE S. SMITH FAMILY
7  LIMITED PARTNERSHIP and DOES 51 through 100, inclusive, are collectively referred to herein
8  as "Smith Partnership."

9        22.    Defendants Smith Partnership and McDonald's at all relevant times have been
10  employers covered by the California Labor Code and California Industrial Welfare Commission
11  ("IWC") Wage Order 5-2001.

12                           **JURISDICTION AND VENUE**

13        23.    Plaintiffs originally filed this matter on March 12, 2014 in the Superior Court of the
14  State of California in the County of Alameda.  That court had jurisdiction because Defendants
15  McDonald's and Smith Partnership regularly conduct business in California.  Venue in that court
16  was proper because Plaintiffs Ochoa and Hedgepeth and other persons similarly situated performed
17  and/or continue to perform work for Defendants in the County of Alameda, Defendants maintain
18  offices and facilities and transact business in the County of Alameda, and Defendants' illegal wage
19  theft policies and practices that are the subject of this action were applied, and continue to be
20  applied, at least in part, to Plaintiffs and other persons similarly situated in the County of Alameda.

21        24.    On May 7, 2014, Defendant Smith Partnership removed this matter to federal court
22  pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).  The parties have agreed in
23  a Joint Case Management Statement filed August 13, 2014 that venue is proper in the United States
24  District Court for the Northern District of California, and that this Court has personal jurisdiction
25  over all known parties.

26                       **GENERAL FACTUAL ALLEGATIONS**

27        25.    McDonald's contracts with, on information and belief, approximately 300
28  franchisees that operate McDonald's restaurants in California.

26.     Defendant Smith Partnership, d/b/a McDonald's, is a McDonald's franchisee that operates at least four McDonald's restaurants in Alameda County and one McDonald's restaurant in Contra Costa County, California (hereinafter "Restaurants").

27.     Plaintiff Sandoval is a current McDonald's crew member who performs work, and Plaintiffs Ochoa, Rodriguez, and Hedgepeth are former McDonald's crew members who performed work, in the Restaurants owned and operated by Defendants Smith Partnership and McDonald's. Plaintiffs seek relief from Defendants' policies and practices of denying Plaintiffs and Class Members wages and compensation owed under California law.

28.     Smith Partnership and McDonald's jointly operate the Restaurants and tightly control and monitor the working conditions of Plaintiffs and Class Members, including but not limited to controlling and monitoring the job duties performed by crew members, the hours worked by crew members, and the rate of service provided by crew members in the Restaurants.

29.     Defendants have a policy and practice of engaging in comprehensive classwide measures to curtail labor costs and to limit labor costs to a defined percentage of sales revenues, even when complying with McDonald's requirement of maintaining such a low ratio labor costs to total sales results in violations of Plaintiffs' and Class Members' workplace rights under California law.

30.     Defendants reduce the labor costs in the Restaurants not only by paying low wages to Plaintiffs and Class Members, but also by maintaining, encouraging, and approving policies and practices that have the purpose and effect of depriving Plaintiffs and Class Members of their full and timely wages when due.

31.     As a result of the policies and practices described below, work time that Plaintiffs and Class Members perform is routinely not recorded by Defendants on Plaintiffs' and Class Members' pay stubs, and Defendants have failed and continue to fail to compensate Plaintiffs and Class Members for all wages due to them and for missed, late, and shortened rest breaks and meal periods, as required by California law.

**A.      Plaintiffs' Work as McDonald's Crew Members**

32.      In each of the Restaurants, low-wage crew members including Plaintiffs perform and have performed a variety of duties, including but not limited to working as cashiers, taking food orders from customers at the counter and at the drive-through, serving food to customers, stocking supplies, preparing and cooking food, and cleaning the restaurant.

33.      Plaintiffs and Class Members applied to work and were hired to perform work in the Restaurants by making applications through McDonald's on-line application form, "Hiring to Win," and by submitting applications to managers in the Restaurants.  For example, Plaintiffs Sandoval and Hedgepeth applied using McDonald's on-line application form, while Plaintiff Ochoa applied in person at one of the Restaurants.

34.      Plaintiffs and Class Members work and have worked a variety of scheduled shifts in the Restaurants, including but not limited to shifts as short as three hours and as long as 10 hours.

35.      Plaintiffs and Class Members are directly supervised in the Restaurants by managers, including a store manager and shift managers.  These managers inform crew members of their work assignments and work schedules, and instruct crew members as to when they may take breaks.  No Plaintiff or crew member is permitted to take any meal period or rest break unless and until a manager expressly instructs the worker to take that specific break.  These managers, at the direction of others at both Smith Partnership and McDonald's, closely monitor and take steps to control labor costs in the Restaurants throughout the workday.

**B.      Defendants' Wage Theft**

<u>Alteration of Time Records</u>

36.      Defendant Smith Partnership is required by McDonald's to use and does in fact use a computer system including a point-of-sale ("POS") system (referred to collectively hereinafter as "computer system") in the Restaurants that is designed and maintained by McDonald's to enable Smith Partnership and McDonald's to closely monitor data about labor and sales in the Restaurants. Among other things, the compute system collects real-time information regarding each employee's hours, including punch-in and punch-out times, and pay rates.

37.     Plaintiffs and Class Members are required to punch in at the beginning of their shift and to punch out at the end of their shift.  They are also required to punch out at the beginning of each meal period and rest break and to punch back in at the end of each meal period and rest break.

38.     McDonald's computer system tracks Plaintiffs' and Class Members' punch-in and punch-out times.

39.     Plaintiffs are informed and believe, and thereon allege, that:

a.     McDonald's computer system indicates to restaurant managers when a crew member's punch-in and punch-out times entitle that crew member to premium pay for overtime hours worked, and when a crew member has not received a full or timely rest break or meal period.

b.     Restaurant managers are able to, and routinely do, alter the punch-in and punch-out times of crew members in McDonald's computer system.  For example, Plaintiffs Rodriguez and Hedgepeth are aware that managers alter the punch-in and punch-out times of crew members in McDonald's computer system, and have received paychecks reflecting less time than she was punched in and performing work. Plaintiffs Ochoa and Sandoval have also received paychecks that, on information and belief, reflect less time than they worked after the time records were manipulated by managers.

c.     Restaurant managers engage in a policy and practice of altering the punch-in and punch-out times of crew members in order to change time entries that demonstrate when those crew members did not receive a legally required meal period or rest break and in order to eliminate time that crew members worked past the end of their scheduled shifts and/or time that would be subject to overtime pay requirements.

d.     Defendants engage in a practice of managerial alteration of time records as a means of reducing their crew members' hours as reflected in McDonald's computer system.

e.     McDonald's computer system records and retains records of all alterations to crew members' punch-in and punch-out times.

f.      Defendants are aware of, condone, ratify, and intentionally accept the benefits of their practice and policy of altering Plaintiffs' and Class Members' time records in a manner designed to under-report and under-pay the time actually worked by Plaintiffs and Class Members.

Overnight Clock Problems

40.     Defendants' Restaurants reset their computer systems during the overnight shifts. While the computer system is off-line, which can last from 20 minutes to an hour, the punch-in and punch-out system is also off-line.

41.     Plaintiffs are informed and believe, and thereon allege, that Defendants follow a policy or practice of failing to accurately input into their computer system Plaintiffs' and other crew members' time worked and breaks taken while the computer system is off-line, such that the time records understate the hours actually worked by crew members.  For example, Plaintiff Sandoval has received punch receipts that inaccurately reflect her work time and breaks during overnight shifts and is informed and believes, and thereon alleges, that hours she worked on overnight shifts were not accurately recorded and compensated as a result of the overnight computer system reset. On information and belief, as result of this policy and practice, Defendants fail to pay Plaintiffs and Class Members for all hours they work.

Off-the-Clock Work

42.     Defendants have required Plaintiffs and Class Members to perform unpaid off-the-clock work in violation of California law.

43.     Defendants' managers require, suffer, or permit Plaintiffs and Class Members to perform work at times those workers are not punched into McDonald's computer system.  For example, managers have required, suffered, or permitted Plaintiffs Ochoa, Hedgepeth and Sandoval to clean or perform other job duties off-the-clock.  Such time worked is not recorded in McDonald's computer system and is not compensated.

44.     Plaintiffs are informed and believe, and thereon allege, that Defendants have a policy and practice of requiring crew members to engage in off-the-clock work in order to maintain low "labor" cost numbers in the McDonald's computer system and to avoid recording overtime hours.

45.     All of the unpaid work that Defendants required, suffered, or permitted Plaintiffs and Class Members to perform has benefitted Defendants, enabling them to increase profits at the workers' expense and to keep labor costs lower, both in absolute terms and as a percentage of sales.

<u>Missed, Late and Shortened Meal Periods and Rest Breaks</u>

46.     Defendants engage in a policy and practice of providing rest breaks and meal periods to Plaintiffs and Class Members in such a manner that Plaintiffs and crew members have not and do not receive timely and full rest breaks and meal periods.  Defendants fail to pay required additional wages when Plaintiffs and Class Members are not provided timely and full rest breaks and meal periods.

47.     Restaurant managers determine when Plaintiffs and Class Members may take rest breaks and meal periods.  Plaintiffs and Class Members are not permitted to take a rest break or meal period without first being specifically instructed by a manager that they must go on break.

48.     Defendants have a policy and practice of not permitting Plaintiffs and Class Members to take rest breaks and meal periods when the Restaurants are busy.

49.     Plaintiffs are informed and believe, and thereon allege, that Defendants have a policy and practice of not permitting Plaintiffs and Class Members to take rest breaks and meal periods when a store inspection from a Mystery Shopper is expected.  As described in paragraph 90 below, a Mystery Shopper is an agent of McDonald's who routinely visits McDonald's restaurants to evaluate the service he or she receives.  Plaintiffs are informed and believe, and thereon allege, that the Restaurants' managers are aware of the time period during which such Mystery Shopper visits will occur.  Defendants have a policy and practice of not permitting Plaintiffs and Class Members to take rest breaks and meal periods during that period, which may be a two- or three-hour time period. For example, managers have told Plaintiffs not to take a rest break or meal period during Mystery Shopper visits.

50.     Because of the policies and practices described above, Defendants regularly fail to provide Plaintiffs and other crew members with a 30-minute meal period within the first five hours of work.  For example, Plaintiffs have worked five or more hours before receiving a duty-free 30-minute meal period, either because they received no meal period of a late meal period, or

because they were required, suffered, or permitted to work during their meal period.  For example, managers required, suffered, or permitted Plaintiff Ochoa to run food orders while she was punched out for a meal period.

51.     Defendants also have a policy and practice of failing to provide Plaintiffs and other crew members with a second 30-minute meal period and a third ten-minute rest break when they work 10 or more hours.  For example, Plaintiff Rodriguez has worked ten or more hours without receiving a second duty-free 30-minute meal period or a third ten-minute rest break.

52.     On information and belief, Defendants have a policy and practice of requiring Plaintiffs and other crew members, when they take a rest break or meal period during certain shifts, including overnight shifts, to remain on the restaurant premises throughout the break.  For example, managers have told Plaintiff Sandoval that she may not leave the restaurant property during rest breaks or meal periods on her overnight shifts and chastised her for getting water at the store next door during such a break.

53.     Defendants have a policy and practice of providing Plaintiffs and Class Members with rest breaks that are provided earlier or later than legally required, including by not providing Plaintiffs and Class Members with their first ten-minute rest break until more than 3-1/2 hours of work, and by requiring Plaintiffs and Class Members to take their break near or at the beginning of their shift, even when it is reasonably practicable to provide the required break near or at the middle of the work period.  For example, Plaintiff Sandoval has been told to take her break at or near the beginning of her shift and Plaintiffs Ochoa, Rodriguez, and Hedgepeth regularly have not been permitted to take a rest break until after more than four hours.

54.     Defendants have a policy and practice of requiring Plaintiffs and Class Members, when they work shifts that entitle them to a second ten-minute rest break, to take their second ten-minute rest break toward the end or at the very end of their shift, even when it is reasonably practical to provide the required break near or at the middle of the work period.  For example, Plaintiffs have repeatedly not been permitted to take a second ten-minute rest break until at or near the end of an eight-hour shift.

55.      Defendants have a policy and practice of requiring Plaintiffs and Class Members, when they work shifts that entitle them to a second ten-minute rest break, to combine their two ten-minute rest breaks, or to combine their second ten-minute rest break with their thirty-minute meal period, even when it is reasonably practicable to provide the required rest break near or at the middle of each work period.  For example, Plaintiffs Ochoa and Rodriguez have been required to combine their two ten-minute rest breaks, and Plaintiff Hedgepeth has been required to combine her rest break and meal period, when it was reasonably practicable to take the rest breaks separately in the middle of each work period.

56.      Plaintiffs are informed and believe, and thereon allege, that Defendants require Plaintiffs and Class Members to take late rest breaks and meal periods and to combine rest breaks and meal periods in order to minimize the need to schedule coverage for crew members who are on breaks and to keep labor costs artificially and unlawfully low.

57.      Defendants have a policy and practice of providing Plaintiffs and Class Members with rest breaks that are less than ten minutes in length.

58.      Plaintiffs are informed and believe, and thereon allege, that Restaurant managers have a practice of adjusting the punch records of Plaintiffs and Class Members to show that they received full and timely ten-minute rest breaks and full and timely thirty-minute meal periods when they did not.

59.      Even though Defendants' time records generally record the exact times of crew member breaks (subject to the problems discussed in paragraphs 36-41), thus providing Defendants with full knowledge of when Plaintiffs and Class Members are not receiving meal periods and rest breaks in compliance with California law, Defendants have a policy and practice of failing to pay Plaintiffs and Class Members one hour of additional pay at their regular rate for each day in which they are not provided a rest break or meal period for the reasons discussed in paragraphs 46-58 or for any other reason.

<u>Failure to Pay Overtime Rates</u>

60.      Plaintiffs and Class Members regularly have not received premium pay for the time they work in excess of eight hours per day and 40 hours per week.  For example, Plaintiffs Ochoa,

1    Sandoval, and Hedgepeth have worked more than eight hours in a day and not been paid overtime.

2    Plaintiff Rodriguez was only paid overtime after working more than eight hours in a day after she

3    complained that the overtime did not appear on her paycheck.

4         61.     Plaintiffs are informed and believe, and thereon allege, that Restaurant managers

5    have a policy and practice of altering crew members' recorded hours in the McDonald's computer

6    system to eliminate overtime hours from the time records and/or to move to a different date or

7    otherwise alter overtime hours so that the hours are treated as not subject to overtime premium pay.

8         62.     Plaintiffs are informed and believe, and thereon allege, that the McDonald's

9    computer system alerts Restaurant managers when a crew member's recorded punch-in and punch-

10   out times entitle the crew member to overtime and notifies the managers that this is an "overtime

11   violation."

12           Failure to Keep Accurate Records and Provide Accurate Itemized Wage Statements

13        63.     As a result of the policies and practices described above, Defendants do not keep

14   accurate records of, or provide Plaintiffs and Class Members accurate itemized wage statements

15   reflecting, all time that Plaintiffs and Class Members work or the proper wage rates, including but

16   not limited to overtime rates, applicable to all hours that Plaintiffs and Class Members work.

17        64.     The pay stubs and itemized wage statements provided to Plaintiffs and Class

18   Members are not accurate because they fail to identify McDonald's as a joint employer of Plaintiffs

19   and Class Members.

20           Failure to Pay All Wages When Due for Discharged and Quitting Employees

21        65.     Plaintiff Ochoa left employment with Defendants in or around February 2014.  She

22   provided her store manager at least two weeks notice of her intention to quit but was not provided

23   her final paycheck on her final day of work.  Instead, she was required to return to the store many

24   days later to pick up her final paycheck.

25        66.     Plaintiff Rodriguez left employment with Defendants in or around August 2014,

26   many months after this action was filed.  She was provided a personal check as her final paycheck.

27   She requested but was not provided a wage statement or paystub with her final paycheck.

28        67.     Plaintiff Hedgepeth left employment with Defendants in or around December 2013.

68.     For the reasons described above, Plaintiff Ochoa's, Plaintiff Rodriguez's, and Plaintiff Hedgepeth's final paychecks, on information and belief, did not include all the unpaid wages that were due to them, including for example unpaid wages for time working off the clock, unpaid overtime, and unpaid missed meal period and rest break wages.

<u>Failure to Indemnify Employees for Necessary Expenses</u>

69.     Defendants have required or require that Plaintiffs and Class Members wear McDonald's uniforms as a condition of employment.  Defendants provided or provide a limited number of uniforms to Plaintiffs and Class Members, yet have implemented no policy or practice that provides for the maintenance of these uniforms.  Consequently, Plaintiffs and Class Members have been required to incur expenses and/or to spend unpaid time to maintain their uniforms themselves.  Because Defendants run a food service business, the uniforms of Plaintiffs and Class Members regularly become greasy or dirty and necessitate special and/or frequent cleaning.  Defendants have a policy and practice of failing to reimburse Plaintiffs and Class Members for the reasonable expenses they have incurred in maintaining their uniforms, and of failing to pay them for the time they must spend maintaining their uniforms.

**C.     McDonald's System and the McDonald's Franchise**

70.     McDonald's operates, franchises, and services a system of restaurants that prepare, assemble, package, and sell a limited menu of value-priced foods under the McDonald's System.  The McDonald's System is a concept of restaurant operations that includes, among other things, certain rights in trademarks, real estate, marketing, and operational information designed to promote uniformity of operations.

71.     The key to McDonald's success, according to its own internal and publicly filed documents, is "branding" – developing and maintaining customer trust in the McDonald's brand, so whether that customer is in a restaurant owned and operated by McDonald's directly or owned and operated by a franchisee, and whether the customer is in a restaurant in his or her hometown, a neighboring state, or a foreign country far away, the customer will know what to expect from the McDonald's experience, including what to expect from McDonald's crew member interactions.

72.     Plaintiffs are informed and believe, and thereon allege, that globally, approximately 7,000 McDonald's restaurants are owned and operated directly by McDonald's, and approximately 28,000 are owned and operated by McDonald's franchisees, companies like Defendant Smith Partnership.

73.     Plaintiffs are informed and believe, and thereon allege, that McDonald's has a franchise agreement with Smith Partnership that requires Smith Partnership to strictly adhere to the McDonald's System, including, *inter alia*, by complying with all standards, business policies, practices and procedures prescribed by McDonald's; using formulas, methods and policies relating to operations, inventory, accounting, management, and advertising that are set forth in detailed manuals developed and provided by McDonald's; using corporate-supplied or -approved equipment and food products; submitting to regular comprehensive site inspections and computer monitoring; and sharing a percentage of gross sales revenues with McDonald's.

74.     As detailed in paragraphs 82 through 145 below, McDonald's franchise agreements, including on information and belief, the franchise agreement McDonald's maintains with Smith Partnership, vest in McDonald's significant control over restaurant operations, working conditions, personnel training, and the finances of franchisees' restaurants, and give McDonald's unlimited and unrestricted authority to inspect restaurants to monitor workplace conditions, including labor conditions, and to ensure compliance with the standards and policies of McDonald's.

75.     McDonald's maintains national franchise standards to which all of its franchisees are expected and required to adhere, and that affect almost every aspect of the restaurants' functioning, including practices and policies affecting crew members' labor conditions.  Plaintiffs are informed and believe, and on this basis allege, that Defendant Smith Partnership is subject to these national franchise standards.

76.     McDonald's requires all of its franchisees to use only those goods, services, supplies, fixtures, equipment, inventory, and computer hardware that meet the specifications, requirements, and standards that McDonald's has formulated for use in the McDonald's System.

77.     Pursuant to the standard McDonald's franchise agreement, a franchisee may not assign its contractual commitment to another party.

78.     McDonald's evaluates and grades all franchisees on whether they have satisfied its franchise standards, including standards governing the recruitment, development, training and retention of qualified personnel.

79.     McDonald's franchise agreements are for fixed term periods, usually 20 years, and do not grant franchisees an automatic renewal option.  If a franchise agreement is not renewed, all ownership rights in the franchised restaurant or restaurants covered by that agreement revert in full to McDonald's.

80.     Plaintiffs are informed and believe, and on this basis allege, that McDonald's exercises significant control over the finances of franchisees, including the finances of Defendant Smith Partnership, including in the following ways:

a.      McDonald's franchise agreements entitle McDonald's to receive a percentage of all franchisees' gross sales revenue;

b.      McDonald's expects all franchisees to earn a specified profit on a monthly basis;

c.      McDonald's requires all franchisees to purchase food from McDonald's-approved vendors;

d.      McDonald's requires all franchisees to pay a service fee based on a percentage of each restaurant's sales;

e.      McDonald's requires all franchisees to pay rent for use of the restaurant property or premises on which the franchisee-operated restaurants are located;

f.      McDonald's mandates promotional pricing of products sold in all franchisee-operated restaurants, which may sometimes require selling already low-margin products at a loss;

g.      McDonald's encourages all franchisees to renovate restaurants and may condition renewal of a franchise agreement on the franchisee's commitment to renovate;

h.      McDonald's requires all franchisees to use computer software that tracks financial information of the franchisees' restaurants, including sales, inventory and labor costs;

i.      McDonald's requires all franchisees to submit financial data to McDonald's, while maintaining its own independent access to the franchise's financial data; and

1      j.     McDonald's establishes rules for the maintenance of all franchisees' accounting

2      books and records.

3      81.     McDonald's significantly restricts the business autonomy of its franchisees and their

4 ability to make independent decisions based upon their own assessment of what is best for their

5 particular business, by instead requiring compliance with the myriad standards it imposes on all its

6 franchisee-owned restaurants as well as upon its own corporate-owned restaurants.

7 **D.    McDonald's Exercises Control Over Smith Partnership' Operations, Policies, Procedures and Personnel**

8

9 <u>McDonald's Oversees, Evaluates and Controls the Restaurants' Operations Through the Use of Business Consultants and Other Agents</u>

10      82.     After three consecutive years of declining stock price and slumping consumer

11 satisfaction, McDonald's instituted a "Plan to Win" program in the early 2000's, which was a

12 worldwide program designed to update, improve, and reinforce the company's brand.  One of the

13 elements of this program was "People."  McDonald's "People" program focused on the supervision

14 and training of McDonald's employees in all restaurants, whether corporate- or franchisee-owned,

15 and was designed to overcome concerns that negative customer experiences with service received at

16 McDonald's restaurants – regardless of ownership – were having a negative impact on the corporate

17 brand.

18      83.     Plaintiffs are informed and believe, and thereon allege, that Defendant McDonald's

19 "Plan to Win" continues to provide the common operational framework for all McDonald's

20 restaurants, including the Restaurants operated by Defendant Smith Partnership.

21      84.     Plaintiffs are informed and believe, and thereon allege, that in implementing the

22 "Plan to Win," McDonald's has paired each franchisee, including Defendant Smith Partnership,

23 with a particular business consultant or consultants employed by McDonald's.  The principal

24 responsibility of the McDonald's consultant in this paired relationship is to ensure that the

25 franchisee fully complies with all elements of the corporate strategy for improving restaurant

26 operations, including McDonald's objectives with respect to "People."

27      85.     McDonald's exercises substantial control over franchisees' operations, policies,

28 procedures and personnel through its business consultants and other agents, who conduct regular

1    inspections and evaluations of the franchisee restaurants.

2        86.    Plaintiffs are informed and believe, and thereon allege, that a McDonald's business

3    consultant is assigned to Smith Partnership and conducts regular inspections and evaluations of the

4    Restaurants.

5        87.    McDonald's evaluates the operations of all of its franchisees in the categories of

6    quality, service, cleanliness, and people.  As part of this evaluation, McDonald's business

7    consultants conduct a detailed top-to-bottom assessment of all aspects of franchisees' store

8    operations designed to ensure compliance with McDonald's corporate standards, processes,

9    practices and documentation, assigning a score for each aspect of the review.

10       88.    Plaintiffs are informed and believe, and thereon allege, that McDonald's business

11   consultants, including the business consultant assigned to Smith Partnership, evaluate and provide

12   feedback to franchisees on numerous separate restaurant "systems" that McDonald's imposes on its

13   corporate-owned and franchisee-owned restaurants alike.  As part of this process, on information

14   and belief, McDonald's consultants review the franchisee on numerous topics, including:

15       a.    Recruitment and training of crew members and managers, including the amount of

16             McDonald's-conducted training employees have received;

17       b.    Shift management and crew scheduling;

18       c.    Compliance with McDonald's operational guidelines and standards on subjects such

19             as food assembly and quality, cleanliness, human resources practices, and crew

20             members' customer interaction;

21       d.    Placement and use of promotional materials; and

22       e.    Areas for improved compliance with McDonald's corporate standards and

23             development of action plans to ensure compliance with those standards.

24       89.    Plaintiffs are informed and believe, and thereon allege, that McDonald's also

25   subjects each franchisee, including Defendant Smith Partnership, to a regular series of inspections,

26   announced and unannounced, designed to ensure compliance with all corporate directives, policies,

27   and procedures.  Any franchisee that fails to receive a satisfactory score on a consultant's review or

28   assessment is subject to mandatory follow-up inspections by McDonald's to ensure that restaurant

operations and compliance are significantly improved in accordance with McDonald's mandatory requirements.

90.     McDonald's sends agents to the Restaurants as part of its "Mystery Shopper" program, to inspect the facilities, evaluate the speed, efficiency, and quality of the work performed by crew members, and to criticize and require improvement in each instance in which the Mystery Shopper identifies a circumstance in which one or more crew members failed to comply fully with the requirements imposed by McDonald's.

91.     McDonald's relies on the inspections, evaluations and reviews conducted by its business consultants and other agents to control franchisees, including Smith Partnership.  Plaintiffs are informed and believe, and thereon, allege that McDonald's relies on these inspections, evaluations, and reviews in deciding whether the franchisee is eligible to renew or "rewrite" its franchisee agreement; whether the franchisee may add new restaurants to its franchise or, alternatively, should lose restaurants; and whether the franchisee is eligible for McDonald's remodel programs.

<u>McDonald's Exercises Control Over Smith Partnership' Hiring, Wages,<br>Discipline and Training of Restaurant Personnel</u>

92.     McDonald's exercises control over all franchisees, including Smith Partnership, by requiring them to operate in compliance with the same uniform policies and procedures that McDonald's imposes on all of its franchisees, including its policies and procedures governing hiring and training employees, conducting wage surveys, and disciplining crew members.

93.     Plaintiffs are informed and believe, and thereon allege, that McDonald's exercises control over franchisees' personnel practices, including in the following ways:

a.      McDonald's sets franchise policies on diversity, discrimination and harassment, including mandated employee reporting mechanisms, management-employee communication, solicitation and distribution of literature, leaves of absence, and student workers;

b.      McDonald's evaluates franchisees on their use of an "effective hiring process," including how job applicants are solicited;

1      c.     McDonald's lists franchise job openings on its own website and encourages

2               applicants to apply using a standardized McDonalds on-line application;

3      d.     McDonald's provides and requires franchisees to use an on-line assessment tool for

4               applicant screening, criteria for assessing the screening, and other criteria and

5               instructions for interviewing applicants;

6      e.     McDonald's requires franchise owners to attend and satisfactorily complete an

7               extensive and detailed training program at Hamburger University on how to operate,

8               staff, and manage McDonald's restaurants, and to enroll their managers in similar

9               McDonald's required training at Hamburger University or other designated training

10              centers;

11     f.     McDonald's evaluates franchisees on whether franchisees have had their employees

12              participate in McDonald's-led trainings, including, for example, by requiring all new

13              hires to view the corporate training video that Plaintiffs Ochoa and Hedgepeth were

14              required to watch before beginning work;

15     g.     McDonald's requires franchisees to conduct an employee satisfaction survey;

16     h.     McDonald's evaluates franchisees on whether they have conducted wage reviews

17              and provides a form to use for such wage reviews;

18     i.     McDonald's sets franchise disciplinary policy and provides forms used to document

19              workplace conduct;

20     j.     McDonald's encourages franchisee employees to report instances of wage theft to

21              McDonald's, in addition to franchisee management;

22     k.     McDonald's grades franchisees on employees' interactions with customers,

23              including their tone of voice, eye contact, facial expressions, words used, and

24              assembly of food items; and

25     l.     McDonald's affects the range of possible franchisee wage rates by controlling

26              restaurants' staffing levels, controlling certain product pricing, requiring use of

27              specific supplies and suppliers, and charging marketing, service, and other franchise

28              fees that significantly impact franchisees' profit margins and budget lines.

94.     Plaintiffs are informed and believe, and thereon allege, that McDonald's trains franchisees' managers on personnel practices, including on state law requirements for employee breaks and overtime, the number of employees that should be working each shift, the number of employees that should be working at each station such as the grill, fryer, drink machine, registers and drive-through window, how to balance fixed and non-fixed labor costs, how to calculate and monitor a restaurant's labor percentage, and how to reduce labor costs through such practices as not permitting overtime work.

95.     Plaintiffs are informed and believe, and thereon allege, that McDonald's periodic evaluations of its franchisees, including Defendant Smith Partnership, are graded in part on whether the franchise is using all of the documentation and record-keeping practices that McDonald's requires.

96.     Plaintiffs are informed and believe, and thereon allege, that McDonald's exercises extensive control over the personnel matters of all franchisees, including Smith Partnership, because franchisees' labor costs are directly tied to McDonald's profits.  In its February 2014 Form 10-K filed with the United States Securities and Exchange Commission, McDonald's Corporation acknowledged as much, stating that "key features" that can affect its "operations, plans and results" include "[t]he impact on [its] margins of labor costs that [it] cannot offset through price increases, and the long-term trend toward higher wages and social expenses in both mature and developing markets, which may intensify with increasing public focus on matters of income inequality."

<u>McDonald's Exercises Control Over Staffing and Scheduling</u>
<u>of Crew Members at the Restaurants</u>

97.     Plaintiffs are informed and believe, and thereon allege, that McDonald's requires all franchisees, including Smith Partnership, to use McDonald's computer software that establishes prescribed staffing levels, weekly employee schedules, and positions of crew members within a restaurant, and that McDonald's evaluates franchisees on whether they are using this software properly.

98.     Plaintiffs are informed and believe, and thereon allege, that McDonald's instructs all franchisees, including Smith Partnership, to use a positioning tool included in McDonald's

1  computer software to ensure that the number of people working each shift and the number of people

2  positioned at each station within the restaurant are consistent with, and not greater than, the

3  numbers that McDonald's has determined are no more than the maximum number needed to fulfill

4  its operational and financial priorities, and in particular its priorities of providing a certain level and

5  speed of service while keeping labor costs below a specified percentage of gross sales.

6      99.    Plaintiffs are informed and believe, and thereon allege, that McDonald's provides

7  manuals, training and reference books, forms, and other instructions and guidelines to all

8  franchisees, including Smith Partnership, that set forth corporate standards and requirements,

9  including but not limited to checklists to be used to check on store conditions, including supplies,

10  level of staffing and cleanliness; and instructions for calculating the number of employees that

11  should be staffed at varying intervals.

12      100.    Plaintiffs are informed and believe, and thereon allege, that McDonald's business

13  consultants review corporate-generated staffing sheets and position sheets with all franchisees.

14      101.    Plaintiffs are informed and believe, and thereon allege, that McDonald's business

15  consultants work with franchisees to control the amount of crew members' hours in restaurants in

16  relation to the amount of the restaurants' sales.

17      102.    McDonald's requires franchisee restaurants to remain open seven days per week

18  from at least 7:00 a.m. to 11:00 p.m., and McDonald's unilaterally determines whether its

19  franchises, including Smith Partnership, will be open or closed on major holidays.

20      McDonald's Exercises Control Over Crew Members' Job Duties and Performance

21      103.    Plaintiffs are informed and believe, and thereon allege, that McDonald's requires its

22  franchisees, including Smith Partnership, to meet rigid timing requirements for every component of

23  restaurant transactions, that McDonald's tracks the timing of all crew members' execution of these

24  tasks using McDonald's software, and that McDonald's requires details of all crew members'

25  performance to be forwarded to McDonald's on a regular basis.  For example, McDonald's

26  guidelines provide that a transaction at the drive through should take three or three and a half

27  minutes, and whether that time is met is tracked in part by when crew members enter certain

28  information on their cash registers.

104.     McDonald's provides franchisees a positioning guide that tells restaurant managers where crew members should be positioned within the store and corporate operating procedures for each station such as the grill, the drive-through and the front registers.

105.     Plaintiffs are informed and believe, and thereon allege, that McDonald's, through its business consultant, indirectly counsels individual crew members at the Restaurants on their job duties.  On information and belief, McDonald's business consultants review crew member performance and provide instructions on how crew members should improve their execution of job duties to franchise managers, who then relay those instructions to the crew members.

106.     Plaintiffs are informed and believe, and thereon allege, that McDonald's, through its business consultant, has taken action to correct crew members' performance of job duties by reporting issues to Restaurant managers, who then relay these corrections to crew members.

107.     Plaintiffs are informed and believe, and thereon allege, that McDonald's business consultants and other McDonald's agents review and monitor each franchisee, including Defendant Smith Partnership, to determine if crew members meet the various timing requirements for each transaction in the restaurant, and will instruct franchisees to improve crew member performance if the requirements are not being met.

<u>McDonald's Exercises Control Over Smith Partnership by Requiring the Franchisee to Use a McDonald's Computer System and Monitoring Labor and Sales Data Collected By That System</u>

108.     Plaintiffs are informed and believe, and thereon allege, that McDonald's requires all franchisees, including Defendant Smith Partnership, to use McDonald's proprietary computer hardware and software to track practically all transactions in the franchisee restaurants, including sales, product mix, cash control, labor costs, and crew members' hours and schedules

109.     Plaintiffs are informed and believe, and thereon allege, that McDonald's has access to each of its franchisees' sales and other restaurant-level information, which is stored on the McDonald's servers.

110.     Plaintiffs are informed and believe, and thereon allege, that data from the franchisees' computers is transferred to McDonald's on a daily basis and this data is reviewed regularly by McDonald's to assess franchisee performance.

111.     Plaintiffs are informed and believe, and thereon allege, that McDonald's computer software permits all franchisees, including Defendant Smith Partnership, to track whether labor is "high" at a given time in the Restaurants, meaning whether labor costs represent a large percentage of sales revenue.

112.     Plaintiffs are informed and believe, and thereon allege, that McDonald's computer software, which all franchisees are required to use, identifies when crew members have worked hours that qualify for overtime pay and further that the data collected by the software system are and may be used to produce a report showing crew members' hours worked without providing legally required meal periods and rest breaks.

113.     Plaintiffs are informed and believe, and thereon allege, that data captured by McDonald's computer software is used by McDonald's and Smith Partnership to produce Daily Activity Reports ("DARs") that reflect the punch-in and punch-out times of all employees in franchisee restaurants on a given day.

114.     Plaintiffs are informed and believe, and thereon allege, that McDonald's business consultants, when conducting inspections of franchisees, can and do request to review DARs and, according to McDonald's operating procedures, DARs are supposed to kept in the restaurants for several months.

115.     All McDonald's franchisee crew members are required to punch in at the beginning of their shift, to punch out at the beginning of rest breaks and meal periods, to punch back in at the end of rest breaks and meal periods, and to punch out at the end of their shift.  These times are captured by McDonald's computer software.  At the end of each crew member's shift, a paper receipt is printed on which the crew member's punch-in and punch-out times are recorded.

116.     Restaurant managers have authority to edit records of punch-in and punch-out entries made by crew members.  Plaintiffs are informed and believe, and thereon alleged, that McDonald's software system tracks and records edits made to crew members' punch-in and punch-out times, and that McDonald's can determine and is aware when crew members' time has been adjusted or edited.

**JOINT LIABILITY ALLEGATIONS**

**A.      Defendants Have Jointly Employed Plaintiffs and All Class Members**

117.    Plaintiffs and Class Members have been jointly employed by Defendants Smith Partnership and McDonald's to work in the Restaurants.  Much of these employees' work has been and is performed at the direction of Smith Partnership' supervisors based on specific guidelines, procedures, and protocols mandated by Defendant McDonald's and overseen and enforced by Defendant McDonald's.  Smith Partnership applies and enforces McDonald's guidelines, requirements, and training with respect to Plaintiffs and Class Members, including but not limited to requirements regarding how crew members perform their job duties, how crew members are evaluated, and how crew members are scheduled and positioned for work within each of the Restaurants.

118.    Defendant McDonald's has, along with Defendant Smith Partnership, jointly controlled and dictated all material terms and conditions of the employment of Plaintiffs and Class Members, including but not limited to by:

a.      Dictating the specific tasks to be undertaken by Plaintiffs and Class Members and the manner and order in which these tasks are to be completed, and enforcing detailed standard operating procedures governing the work Plaintiffs and Class Members have been required to perform, including off-the-clock work and other time worked that McDonald's knew or should have known was not being compensated and overtime hours worked that McDonald's knew or should have known was not being properly compensated;

b.      Devising and requiring standardized training that must be completed by Plaintiffs and Class Members;

c.      Overseeing directly and indirectly through on-site supervision and computer monitoring the day-to-day performance of Plaintiffs and Class Members;

d.      Conducting comprehensive evaluations and reviews on a regular basis that assessed the performance of Plaintiffs and Class Members, including by measuring their

efficiency and productivity and the Restaurants' labor costs, including wages paid to Plaintiffs and Class Members;

e.      Developing plans to correct any deficiencies identified by McDonald's in the evaluations and reviews of the Restaurants; and

f.      Regularly assessing the productivity of all workers employed at the Restaurants, including Plaintiffs and Class Members, and including a review of staffing levels and labor costs.

119.    McDonald's and Smith Partnership jointly oversee and supervise the work of Plaintiffs and Class Members through several means, including by McDonald's dictating the required number of supervisory staff who oversee Plaintiffs' and Class Members' work performance and productivity, and by McDonald's itself maintaining supervisory staff on the premises at regular intervals.

120.    McDonald's has set the standards for training, work performance, conduct, and disciplinary infractions and procedures  for all Plaintiffs and Class Members and thus exercises shared responsibility for discipline and discharge decisions involving Class Members who violate McDonald's' training, work performance, and/or conduct standards.  Further, McDonald's has authority and has jointly exercised the authority, along with Smith Partnership, to discharge, discipline, and/or correct the work of such employees for perceived infractions of either Smith Partnership' or McDonald's rules, policies, or procedures.

121.    McDonald's requires Smith Partnership to provide high quality, trained staff to conduct its restaurant operations, including by imposing detailed standards for pre-employment screening, orientation, and training that must be completed before Plaintiffs and Class Members begin working at the Restaurants.

122.    Plaintiffs are informed and believe, and thereon allege, that McDonald's has jointly exercised control with Smith Partnership over the number of hours, productivity standards, schedules, and the speed and amount of work performed by Plaintiffs and Class Members by, among other things:

a.   Establishing standard operating metrics for the Restaurants that impose requirements for accuracy, timely processing, and productivity;

b.   Creating projections and formulae that establish, *inter alia*, the number of hours to be expended in the Restaurants, the ratio of managers to crew members in the Restaurants, the job duties and positions to be filled by managers and crew members in the Restaurants, and the associated labor costs;

c.   Requiring Smith Partnership to collect detailed statistics on the number of hours worked by Plaintiffs and each member of the Class on a daily basis and to report these numbers to McDonald's in other regular reports and assessments of the Restaurants' performance and finances;

d.   Determining, through its budgeting and staffing projection practices, the specific amount of budgeted hours that the Restaurants devote to servicing customers during a particular workweek while also controlling the volume of food products that must be sold at the Restaurants during any week and the required rates at which those products must be sold; and

e.   Other related means.

123.   McDonald's has, along with Smith Partnership, jointly exercised control over the pay that Plaintiffs and Class Members receive through various means, including but not limited to, by:

a.   Dictating the pace at which crew members' work must be performed;

b.   Exercising strict controls over what Smith Partnership can pay crew members through McDonald's budgeting and staffing projection procedures;

c.   Exercising strict controls over the number and cost of overtime hours worked in the McDonald's restaurants;

d.   Closely monitoring the number of hours worked by crew members and income earned through sales of food and other goods to customers; and

e.   Other means designed to suppress and/or lower the wages paid to Plaintiffs and Class Members.

1    124.  McDonald's has, along with Smith Partnership, jointly exercised control over the

2  working conditions under which Plaintiffs and Class Members perform their jobs by, among other

3  things:

4    a.    Supervising, monitoring, and checking their work, as alleged in more detail above;

5    b.    Determining the protocol and procedure for performing all job functions at the

6          McDonald's restaurants that must be followed as the minimum level of acceptable

7          performance in those restaurants;

8    c.    Setting the daily pace of work, including by imposing onerous and unrealistic

9          productivity standards;

10   d.    Setting work rules; and

11   e.    Other related means.

12   125.  Defendants Smith Partnership and McDonald's were the joint employers of Plaintiffs

13 Ochoa, Rodriguez, and Hedgepeth, and have been and continue to be joint employers of Plaintiff

14 Sandoval and other Class Members for the reasons above, and the following reasons, among others:

15   a.    Defendants have jointly controlled and dictated all material terms and conditions of

16         the employment of Plaintiffs and Class Members;

17   b.    Plaintiffs and Class Members have jointly applied for employment through both

18         Smith Partnership and McDonald's, including by submitting applications to Smith

19         Partnership supervisors who are required to use and have in fact used orientation

20         and/or training materials from McDonald's;

21   c.    Defendants Smith Partnership and McDonald's jointly implement the new-hire

22         orientation that Plaintiffs and Class Members must undertake after hiring, which has

23         taken place at the Restaurants with McDonald's training materials;

24   d.    Defendants Smith Partnership and McDonald's have had authority and have jointly

25         exercised the authority to discipline and/or correct the work of Plaintiffs and Class

26         Members for perceived infractions of either McDonald's or Smith Partnership' rules

27         or policies;

28   e.    Defendants Smith Partnership and McDonald's have jointly exercised control over

29

1    the number of hours and types of work performed by Plaintiffs and Class Members

2    by, among other things, deciding whether and when to require crew members to

3    perform work and deciding on the amount and pace of work the crew members must

4    perform;

5    f.    Defendants Smith Partnership and McDonald's have jointly exercised control over

6    the working conditions under which Plaintiffs and Class Members perform their jobs

7    by supervising, monitoring, and checking their work, including through inspections

8    and Mystery Shoppers that rate crew members' job performance; by determining the

9    protocol and procedure for assigning crew members to work stations, evaluating and

10    disciplining crew members, and creating crew members' schedules; and by setting

11    the daily pace of work;

12    g.    Defendants Smith Partnership and McDonald's have jointly exercised control over

13    the compensation paid to Plaintiffs and Class Members, including but not limited to

14    by training Smith Partnership owners and managers on how to control labor costs

15    through wage rates, scheduling, and compensation practices, and by requiring Smith

16    Partnership Restaurants to maintain labor costs below a certain percentage of gross

17    sales; and

18    h.    Plaintiffs and Class Members physically worked and reported to work on premises

19    that, on information and belief, are owned by McDonald's.

20    126.    The restaurant job duties performed by Plaintiffs and Class Members constitute an

21 integral, core function of the restaurant business of Defendants Smith Partnership and McDonald's.

22    127.    McDonald's has suffered or permitted Plaintiffs and other Class Members to work in

23 the Restaurants by acquiescing in and not hindering their working, including by not remedying but

24 instead accepting and profiting from the unlawful conditions under which they work.

25    128.    Plaintiffs and Class Members have performed work that consists primarily of labor

26 that does not require specialized training, education, or the exercise of judgment or discretion to

27 perform.

28    129.    For the reasons set forth above, among others, Defendants Smith Partnership and

1    McDonald's, directly or indirectly, or through an agent or any other person, have employed or

2    exercised control over the wages, hours, or working conditions of Plaintiffs and Class Members.

3         130.    For the reasons set forth above, among others, Defendant McDonald's, together with

4    Defendant Smith Partnership, directly or indirectly, or through an agent or any other person,

5    employs or exercises control over the wages, hours, or working conditions of all Plaintiffs and Class

6    Members.

7    **B.    Defendants Have Committed the Violations Alleged Herein as Co-Conspirators**

8         131.    Plaintiffs are informed and believe, and thereon allege, that at all material times,

9    each Defendant acted and is continuing to act as a co-conspirator of each other defendant and of

10   certain unnamed and as-yet unknown co-conspirators.

11        132.    Plaintiffs are informed and believe, and thereon allege, that prior to the start of the

12   applicable limitations periods, each defendant entered into a conspiracy and agreement with the

13   other defendants and with unnamed and unknown co-conspirators and/or subsequently joined said

14   conspiracy and ratified the prior acts and conduct of the other defendants and/or co-conspirators

15   who had previously entered into said conspiracy.  The purpose of said ongoing conspiracy includes

16   unlawfully evading compliance with state labor laws in an effort to artificially reduce Defendants'

17   labor costs and unlawfully maximize Defendants' profits by failing to pay Plaintiffs and Class

18   Members the wages and benefits required by law, failing to provide meal periods, rest breaks, and

19   other labor rights mandated by law, failing to provide workers with information required by law,

20   failing to reimburse Plaintiffs and Class Members for necessary expenses, and by other means.

21   Plaintiffs are currently unaware of when each defendant or other co-conspirator joined said

22   conspiracy but, on information and belief, allege that Defendants and their co-conspirators all

23   knowingly, maliciously and wilfully entered into said conspiracy which continues to this day.  By

24   engaging in the conduct and omissions alleged in this Complaint, each defendant was acting within

25   the course and scope of its agency, with the authorization of the other defendants, and in furtherance

26   of the ongoing conspiracy.

27

28

**C.      Defendants Have Aided and Abetted Each Other in the Commission of the Violations Alleged Herein**

133.      Defendants Smith Partnership and McDonald's aided and abetted each other in the commission of the violations against Plaintiffs and Class Members as alleged herein.

134.      Smith Partnership and McDonald's knew that their conduct as alleged herein was in breach of their duties to Plaintiffs and Class Members, yet gave substantial assistance or encouragement to each other to so act.  In addition, the conduct of Smith Partnership and McDonald's breached those defendants' duties to Plaintiffs and Class Members.

135.      Smith Partnership and McDonald's have given substantial assistance or encouragement to each other by, for example, requiring Plaintiffs and Class Members to meet high productivity standards under severe time constraints, while also taking steps to keep labor costs low, and by charging and agreeing to pay high franchise fees, and together caused violations of Plaintiffs' and Class Members' rights under California law, as set forth herein.

**D.      Smith Partnership Acted as McDonald's Agent**

136.      Plaintiffs are informed and believe, and thereon allege, that at all material times, Smith Partnership acted as an agent of McDonald's; Smith Partnership employed Plaintiffs and Class Members on behalf of McDonald's for those defendants' mutual benefit; and Defendants jointly had the authority to control and exercised control over the wages, hours, and working conditions of Plaintiffs and Class Members.

137.       The control McDonald's has asserted and continues to assert over Defendant Smith Partnership exceeds any control necessary to protect McDonald's trademark or good will.

138.      By engaging in the violations alleged herein, Smith Partnership was acting within the course and scope of its agency, with the authorization of McDonald's.

**E.      McDonald's Was Negligent in Its Retention, Supervision, and/or Control of Smith Partnership**

139.      On information and belief, McDonald's has been the owner and/or lessee of the Restaurants where Plaintiffs and Class Members worked, and the only franchisor of the Restaurants during the applicable Class Period.

140.   At all relevant times, McDonald's has closely monitored, supervised, and controlled the operations of the Restaurants, and has known or should have known of the violations of the state labor and employment law rights of Plaintiffs and Class Members that have been occurring at the Restaurants since the start of the limitations period, including violations committed by Smith Partnership, as alleged herein.  These violations include but are not limited to requiring Plaintiffs and Class Members to work without proper compensation for all hours worked, failing to compensate Plaintiffs and Class Members at legally required wage rates, failing to compensate Plaintiffs and Class Members when not provided legally required meal periods and rest breaks, and failing to disclose critical wage and hour information to Plaintiffs and Class Members.

141.   At all relevant times, McDonald's has also negligently retained, supervised, and/or controlled Smith Partnership as the franchisee of its restaurants.  Although McDonald's knew or should have known of the violations alleged herein, McDonald's failed to take any reasonable steps to stop those violations from continuing or increasing in scope or frequency, and instead created conditions that inevitably increased the likelihood that these violations would continue to occur and worsen, including by maintaining contractual arrangements with Smith Partnership that contain powerful economic incentives for both McDonald's and Smith Partnership to require increased productivity from Plaintiffs and Class Members while lowering the costs of their labor, including by reducing the amount of reported hours and overtime hours worked.

142.   McDonald's knew or should have known that retaining Smith Partnership to operate the Restaurants on McDonald's behalf would create an undue risk that the state labor and employment law rights of Plaintiffs and Class Members would be violated as alleged herein, and that those workers would thereby be harmed, in part because McDonald's knew or should have known, based on the terms of its contracts with Smith Partnership and its knowledge of what had been occurring at the Restaurants and at other restaurants throughout the country, including McDonald's-corporate restaurants, that Smith Partnership would not be able to simultaneously meet McDonald's productivity standards, stay within McDonald's labor and cost budgets, and maintain a profit margin at the rates paid by McDonald's while complying with all applicable state employment law standards.

143.    McDonald's has known or should have known that Smith Partnership was violating and would continue to violate the employment law rights of Plaintiffs and Class Members as alleged herein, because McDonald's closely monitored, supervised, and controlled Smith Partnership' restaurant operations, including the hours worked by Plaintiffs and Class Members, the breaks received by those crew members, the amounts paid to those crew members, and the conditions under which those crew members labored.

144.    Although McDonald's has had the authority to control, and has exercised substantial control, over Smith Partnership' operation of the Restaurants, including the material terms and conditions of the employment of Plaintiffs and other Class Members, McDonald's has failed to ensure compliance with state employment law standards or to implement effective procedures for ensuring such compliance in the Restaurants.  McDonald's also failed to take reasonable measures to prevent the violations alleged herein from continuing to occur including, *inter alia*, by failing to set rates for restaurant services, productivity standards, and staffing and labor budgets that would realistically permit compliance with the applicable labor and employment laws; failing to exercise its authority to monitor, supervise, and control Smith Partnership in a manner that ensured compliance with state labor and employment laws, instead of turning a willful blind eye to violations; and/or failing to prohibit Smith Partnership from continuing to violate Plaintiffs' and Class Members' rights as alleged herein.

145.    The violations and harms to Plaintiffs and Class Members alleged herein are the result of McDonald's failure to exercise due care in the retention, supervision, and/or control of Smith Partnership and, based on the facts described above, which McDonald's knew or should have known when it continued to retain, supervise, and control Smith Partnership, those violations and harms were foreseeable.

### CLASS ACTION ALLEGATIONS

146.    Plaintiffs Ochoa, Sandoval, Rodriguez, and Hedgepeth, as class representatives, bring this action on behalf of a class of all similarly situated individuals, pursuant to Federal Rule of Civil Procedure 23.  The proposed class includes the following similarly situated individuals ("Class Members"):  All individuals currently or formerly employed by Defendants as crew

1  members at one or more of Defendant Smith Partnership's franchised McDonald's restaurants in

2  California ("the Restaurants"), at any time within the period beginning four (4) years prior to the

3  filing of this action and ending at the time this action proceeds to final judgment or settles (the

4  "Class Period").  Plaintiffs reserve the right to name additional class representatives and to identify

5  sub-classes and sub-class representatives as may be necessary and appropriate.

6       147.   <u>Ascertainability.</u>  The identity of all Class Members is readily ascertainable from

7  Defendants' records, and class notice can be provided to all Class Members by conventional means

8  such as U.S. mail, email, and workplace postings.

9       148.   <u>Numerosity.</u>  The size of the class makes a class action both necessary and efficient.

10  The class consists of over 100 McDonald's employees currently or formerly working at the

11  Restaurants during the applicable limitations period.  Members of the class are ascertainable but so

12  numerous that joinder is impracticable.  The class includes future class members who will benefit

13  from the injunctive relief sought herein and whose joinder is inherently impossible.

14       149.   <u>Common Questions of Law and Fact.</u>  This case poses common questions of law and

15  fact, which are likely to generate common answers advancing resolution of the litigation, affecting

16  the rights of all Class Members, including:

17       a.     The legality of Defendants' compensation systems;

18       b.     The policies, practices, programs, procedures, protocols, and plans of Defendants

19              regarding payment of wages;

20       c.     The policies, practices, programs, procedures, protocols, and plans of Defendants

21              regarding payment of overtime premiums;

22       d.     Whether Defendants paid Plaintiffs and Class Members their full wages when due

23              as required by California Labor Code §§204, 206, 223, and 1195.5;

24       e.     Whether Defendants required, suffered, or permitted Plaintiffs and Class Members

25              to work in excess of eight hours per day and/or 40 hours per week;

26       f.     Whether Defendants paid Plaintiffs and Class Members the legally required

27              overtime premium for hours worked in excess of eight hours per day and/or 40

28              hours per week;

g.      Whether Defendants provided Plaintiffs and Class Members with accurate itemized wage statements as required by California Labor Code §226;

h.      Whether Defendants maintained records for Plaintiffs and Class Members as required under California Labor Code §§226 and 1174 and IWC Wage Order No. 5-2001 §7.

i.      Whether Defendants violated California Labor Code §226.7 and 512 and IWC Wage Order 5-2001 §11 by failing to provide Plaintiffs and Class Members with a meal period for every five hours worked and twice for every ten hours worked and by failing to compensate said employees one hour of wages in lieu of each full and timely meal period that was not provided;

j.      Whether Defendants violated California Labor Code §226.7 and IWC Wage Order 5-2001 §12 by failing to provide paid rest breaks to Plaintiffs and Class Members for every four hours or major fraction thereof worked, failed to provide paid rest breaks to Plaintiffs and Class Members in the middle of each work period, and failed to compensate said employees one hour of wages in lieu of each full and timely rest break that was not provided;

k.      Whether Defendants willfully failed to make timely payment of the full wages due to Plaintiffs Ochoa and Hedgepeth and Class Members who quit or have been discharged, as required by California Labor Code §§201-03;

l.      Whether Defendants violated California Labor Code §§221, 250, and 2802 and IWC Wage Order 5-2001 §9 by failing to maintain Plaintiffs' and Class Members' required uniforms or reimburse Plaintiffs and Class Members for the necessary expenses of cleaning their uniforms or other necessary expenses;

m.      Whether Defendants engaged in unfair and unlawful business practices in violation of Business & Professions Code §17200 et seq.;

n.      Whether Defendants are joint employers of Plaintiffs and Class Members;

o.      Whether the named Defendants conspired with each other and/or with any unnamed co-conspirator, as alleged herein;

p.      Whether any Defendants aided and abetted other Defendants in the commission of the violations alleged herein;

q.      Whether any Defendants acted as the agent of other Defendants in the commission of the violations alleged herein;

r.      Whether McDonald's negligently retained, supervised, and/or controlled Smith Partnership; and

s.      What relief is necessary to remedy Defendants' unfair and unlawful conduct as herein alleged.

150.    Typicality.  The claims of the individual plaintiffs are typical of the claims of the class as a whole.  Defendants' unlawful wage policies and practices, which have operated to deny Plaintiffs the overtime premiums, minimum wages, other unpaid wages, and other compensation, benefits, penalties, and protections required by law, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other Class Members lawful compensation.

151.    Adequacy of Class Representation.  The individual plaintiffs can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the class.

152.    Adequacy of Counsel for the Class.  Counsel for Plaintiffs have the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment and class action attorneys who have successfully litigated other cases involving similar wage and hour issues, including on a class action basis.

153.    Propriety of Class Action Mechanism.  This suit is properly maintainable as a class action under Federal Rule of Civil Procedure 23 because Defendants have implemented a series of unlawful schemes that are generally applicable to the class, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole.  This suit is also properly maintainable as a class action because the common questions of law and fact predominate over any questions affecting only individual members of the class.  For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**FIRST CLAIM FOR RELIEF**

**Failure to Pay All Wages When Due**

**[Cal. Labor Code §§204, 206, 223, 225.5 1194.5 1195.5]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

154.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

155.     California Labor Code §204 requires an employer to pay all wages to its employees when those wages are due.  California Labor Code §206 requires that, in a case of a dispute over wages, an employer must pay, without condition and within the time set by statute, all wages, or parts thereof, conceded to be due.  California Labor Code §223 prohibits an employer from secretly paying a lower wage while purporting to pay the required wage designated by statute or by contract.  California Labor Code §225.5 provides that every person who unlawfully withholds wages due any employee in violation of §223 shall be subject to a civil penalty for an initial violation of $100 for each failure to pay each employee, and for each subsequent violation or any willful or intentional violation of $200 for each failure to pay each employee plus 25 percent of the amount unlawfully withheld.  California Labor Code §1195.5 requires an employer to correctly compute and pay wages due to employees, including wages above the minimum wage.

156.     During the Class Period, Defendants have followed and continue to follow several policies and practices directly resulting in their failure to pay Plaintiffs and Class Members all wages for all hours worked when they are due, and of withholding wages due by secretly paying a lower wage than purported.  These policies and practices include, but are not limited to the following:

a.     Altered or Inaccurate Time Records.  On information and belief, Defendants have failed and continue to fail to pay Plaintiffs and Class Members for all hours worked by following a policy and practice of encouraging, permitting, and/or ratifying managers or supervisors routinely to edit or delete time recorded by the punch-in and punch-out system and by failing to accurately record all hours worked and breaks taken by Plaintiffs and Class Members, including but not limited to while the computer system is

off.  On information and belief, these policies and practices have resulted in Defendants paying Plaintiffs and Class Members for less time than they have actually worked.

b. <u>Off-the-Clock Work.</u>  Defendants have followed and continue to follow a policy and practice of requiring, suffering, or permitting Plaintiffs and Class Members to perform uncompensated work off the clock while not punched in, including but not limited to time spent before or after a shift or while a crew member is punched out for a break retrieving or restocking supplies for the restaurant, counting and reconciling cash in the cash registers, performing other tasks that needed to be completed, or waiting after reporting to the restaurant before being permitted to punch in.

c. <u>Minimum Wages, Overtime, and Missed Meal Period and Rest Break Premium Wages.</u> As alleged in the Second through Fifth Claims for Relief below and incorporated by reference here, Defendants have followed and continue to follow a policy and practice of failing to pay Plaintiffs and Class Members minimum wages, overtime compensation, and additional wages due for missed, untimely, or shortened meal periods and rest breaks, thereby failing to pay Plaintiffs and Class Members all wages due for all hours worked.

157.    Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

158.    As a proximate result of Defendants' unlawful actions and omissions, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code.

159.    California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiff Sandoval and current employee Class Members, who are low-wage workers for whom Defendants' failure to pay all wages when due for all hours worked creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring

1  Defendants to pay all wages when due and to keep accurate track of all time Plaintiffs and Class

2  Members spend working each day.

3  **SECOND CLAIM FOR RELIEF**

4  **Failure to Pay Overtime Wages**

5  **[Cal. Labor Code §§510, 1194, 1194.5, 1198; IWC Wage Order No. 5-2001, §3]**

6  **(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

7  **Against All Defendants)**

8      160.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

9  by reference all previous paragraphs.

10     161.    It is unlawful under California law for an employer to require, suffer or permit an

11 employee to work in excess of eight hours per workday or 40 hours per workweek without paying

12 premium wages under California Labor Code §510 and IWC Wage Order 5-2001 §3.

13     162.    California Labor Code §1198 makes employment of an employee for longer hours

14 than the IWC sets or under conditions the IWC prohibits unlawful.  California Labor Code §1194(a)

15 entitles an employee to recover in a civil action the unpaid balance of all overtime compensation due

16 but not paid.

17     163.    Plaintiffs and Class Members are current and former non-exempt employees entitled

18 to the protections of California Labor Code §§510, 1194, and IWC Wage Order No. 5-2001.

19     164.    Plaintiffs and Class Members have worked and at times continue to work in excess

20 of eight hours per workday and in excess of 40 hours per workweek.

21     165.    During the Class Period, Defendants have followed and continue to follow a policy

22 and practice of not paying Plaintiffs and Class Members properly for overtime, and have failed and

23 continue to fail properly to compensate Plaintiffs and Class Members for all overtime hours worked

24 under California law.  For example, Defendants have followed and continue to follow a policy and

25 practice of failing to pay Plaintiffs and Class Members for all overtime hours Defendants require,

26 permit, or suffer Plaintiffs and Class Members to work off the clock; hours that Defendants alter or

27 remove from time records; hours Defendants move from one day to another to avoid overtime rates;

28

1  and hours Defendants require, permit, or suffer Plaintiffs and Class Members to work through meal

2  periods and rest breaks.

3       166.    Defendants have committed and continue to commit the acts alleged herein

4  knowingly and willfully.

5       167.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

6  Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid

7  wages and lost interest, in an amount to be established at trial, and are entitled to recover economic

8  and statutory damages and penalties and other appropriate relief from Defendants' violations of the

9  California Labor Code and IWC Wage Order 5-2001.

10      168.    California Labor Code §1194.5 authorizes injunctions where an employer has

11  willfully violated laws governing wages, hours, or working conditions.  Plaintiff Sandoval and

12  current employee Class Members, who are low-wage workers for whom Defendants' failure to pay

13  required overtime creates substantial hardship, are entitled to preliminary and permanent injunctive

14  relief under the governing legal standards, and are entitled to an order requiring Defendants to pay

15  required overtime premiums and to keep track of the time Plaintiffs and Class Members spend

16  working over eight hours each day and over 40 hours each week.

17                      **THIRD CLAIM FOR RELIEF**

18                   **Failure to Pay Minimum Wages**

19         **[Cal Labor Code §§1182.12, 1194, 1194.2, 1194.5, 1197, 1198;**

20                   **IWC Wage Order No. 5-2001, §4]**

21      **(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

22                   **Against All Defendants)**

23      169.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

24  by reference all previous paragraphs.

25      170.    California Labor Code §§1182.12 and 1197, and IWC Wage Order 5-2001 §4,

26  require Defendants to pay Plaintiffs and Class Members at or above the state minimum wage of

27  $8.00 per hour for every hour Defendants suffer or permit those employees to work.

28

171.     California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.  California Labor Code §§1194(a) and 1194.2(a) provide that an employer that has failed to pay its employees the legal minimum wage is liable to pay those employees the unpaid balance of the unpaid wages as well as liquidated damages in an amount equal to the wages unpaid and interest thereon.

172.     During the Class Period, Defendants have followed and continue to follow a policy and practice of failing to pay Plaintiffs and Class Members at or above the California minimum wage for many hours worked by Plaintiffs and Class Members, including but not limited to hours Defendants require, permit, or suffer Plaintiffs and Class Members to work off the clock; hours that Defendants alter or remove from time records; and hours Defendants require, permit, or suffer Plaintiffs and Class Members to work through unpaid breaks.

173.     Defendants have committed and continue to commit the acts alleged herein knowingly and willfully.

174.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

175.     California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiff Sandoval and current employee Class Members, who are low-wage workers for whom Defendants' failure to pay required overtime creates substantial hardship, are entitled to preliminary and permanent injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants to pay minimum wages and to keep accurate track of the time Plaintiffs and Class Members spend performing all compensable work.

**FOURTH CLAIM FOR RELIEF**

**Failure to Provide Required Meal Periods or Pay Missed Meal Period Wages**

**[Cal. Labor Code §§226.7, 512, 1194.5, 1198;**

**IWC Wage Order No. 5-2001, §11]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

176.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

177.     California Labor Code §226.7(a) prohibits an employer from requiring an employee to work during any meal period mandated by an applicable Industrial Wage Order.  California Labor Code §512 and  IWC Wage Order 5-2001 §11(A) prohibit employers from employing a worker for more than five hours without a meal period of at least 30 minutes.  California Labor Code §512 prohibits employers from employing a worker for more than 10 hours without a second meal period of at least 30 minutes.  Under both California Labor Code §226.7(b) and IWC Wage Order 5-2001 §11(B), if an employer fails to provide an employee a meal period as required, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday that a meal period is not provided as required.

178.     California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

179.     During the Class Period, Defendants have had and continue to have a policy and practice of failing to provide Plaintiffs and Class Members full and timely meal periods required by California Labor Code §§226.7 and 512 and IWC Wage Order 5-2001 §11, including but not limited to through the following:

a.     Missed, Late, and Shortened Meal Periods.  Plaintiffs and Class Members often have not been and are not provided a 30-minute meal period beginning within their first five hours of work.  Plaintiffs and Class Members also often have not been and are not provided a second 30-minute meal period when they work ten hours or more.  When Plaintiffs and Class Members receive meal periods, these meal periods often have been,

1    and continue to be, late or shortened.  Defendants' restaurant locations are frequently

2    busy and Defendants have implemented and continue to implement a policy and practice

3    of understaffing crew members at all Smith Partnership Restaurants.  Defendants have

4    permitted and continue to permit Plaintiffs and Class Members to take breaks only when

5    told to do so by their managers.  Defendants also have prohibited and continue to

6    prohibit Plaintiffs and Class Members from taking breaks when the store is busy or

7    during times when a Mystery Shopper may be coming to the restaurant.  Through these

8    and other policies and practices alleged above and incorporated herein by reference,

9    Plaintiffs and Class Members have regularly been denied, and continue to be denied, the

10   opportunity to take a full, uninterrupted, and timely meal period as required under the

11   California Labor Code §§226.7 and 512, and IWC Wage Order No. 5-2001 §11.

12   b.   Failing to Relieve Employees of all Control During Meal Periods.  On information and

13        belief, Defendants have further implemented and continue to implement a policy and

14        practice of prohibiting Plaintiffs and Class Members from leaving the restaurant

15        property during their meal periods on certain shifts, including overnight shifts, in

16        violation of the requirement that during rest breaks required by California Labor Code

17        §226.7 and IWC Wage Order No. 5-2001 §12, employees must be relieved of any duty

18        or employer control and free to come and go as they please.

19   180.   Defendants have further violated and continue to violate California Labor Code

20   §226.7 and IWC Wage Order No. 5-2001 §11, by having had and continuing to have a policy and

21   practice of failing to pay each of their employees who was not provided with a full and timely meal

22   period an additional one hour of compensation at each employee's regular rate of pay.

23   181.   Defendants have committed and continue to commit the acts alleged herein

24   knowingly and willfully.

25   182.   As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

26   Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid

27   wages and lost interest, in an amount to be established at trial, and are entitled to recover economic

28   and statutory damages and penalties and other appropriate relief from Defendants' violations of the

1   California Labor Code and IWC Wage Order 5-2001.

2       183.    California Labor Code §1194.5 authorizes injunctions where an employer has

3   willfully violated laws governing wages, hours, or working conditions.  Plaintiff Sandoval and

4   current employee Class Members, who are low-wage workers for whom Defendants' failure to

5   provide required meal periods or pay an additional hour's wages when required meal periods are

6   missed, late, or shortened creates substantial hardship, are entitled to preliminary and permanent

7   injunctive relief under the governing legal standards, and are entitled to an order requiring

8   Defendants to provide required meal periods, to pay one hour's wages for every day that an

9   employee's required meal period is missed, late, or shortened, and to keep accurate track of the times

10  Plaintiffs and Class Members begin and end each of their meal periods.

11                       **FIFTH CLAIM FOR RELIEF**

12      **Failure to Provide Required Rest Breaks or Pay Missed Rest Break Wages**

13      **[Cal. Labor Code §§226.7, 1194.5 1198; IWC Wage Order No. 5-2001, §12]**

14      **(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

15                       **Against All Defendants)**

16      184.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

17  by reference all previous paragraphs.

18      185.    California Labor Code §226.7(a) prohibits an employer from requiring an employee

19  to work during any rest break mandated by an applicable Industrial Wage Order.  IWC Wage Order

20  5-2001 §12(A) requires employers to authorize and permit employees who work three and one half

21  or more hours in a day to take a paid rest break of at least 10 minutes for every four hours worked or

22  major fraction thereof, which insofar as practicable shall be in the middle of each work period.

23  Under both California Labor Code §226.7(b) and IWC Wage Order 5-2001 §12(B), if an employer

24  fails to provide an employee a rest break as required, the employer must pay the employee one hour

25  of pay at the employee's regular rate of compensation for each workday that a rest break is not

26  provided as required.

27      186.    California Labor Code §1198 makes unlawful the employment of an employee

28  under conditions the IWC prohibits.

187.     During the Class Period, Defendants have had and continue to have a policy and practice of failing to provide Plaintiffs and Class Members full and timely rest breaks required by California Labor Code §226.7 and IWC Wage Order 5-2001 §12, including but not limited to through the following:

a.   <u>Missed, Late, and Shortened Rest Breaks.</u>  As set forth above, Defendants willfully understaff the Restaurants, in part, on information and belief, to satisfy Defendants' objectives that labor costs be kept to a minimum.  As a direct consequence of this understaffing and imperative to keep labor costs low, Plaintiffs' and Class Members' rest breaks frequently have been and continue to be missed, late, and/or shortened. Plaintiffs and Class Members regularly have not been authorized or permitted to take their first or second 10-minute rest break, have been only authorized or permitted to take less than a full 10-minute rest break, or have been otherwise required to perform work during their first or second 10-minute rest break.

b.   <u>Rest Break Timing.</u>  Additionally, Defendants have followed and continue to follow a policy and practice of failing to provide Plaintiffs and Class Members 10-minute rest breaks in the middle of each work period despite it being reasonably practicable to provide the required break near or at the middle of the work period, including but not limited to by requiring Plaintiffs and Class Members to take their first 10-minute rest break near or at the beginning of their shift or after more than four hours of work, by requiring Plaintiffs and Class Member to take their 10-minute rest breaks consecutively with or shortly before or after their 30-minute meal periods, and by requiring Plaintiffs and Class members to take a second 10-minute rest break near or at the end of their shifts, thereby violating California Labor Code §226.7 and IWC Wage Order No. 5-2001 §12.

c.   <u>Failing to Relieve Employees of all Control During Rest Breaks.</u>  On information and belief, Defendants have further implemented and continue to implement a policy and practice of prohibiting Plaintiffs and Class Members from leaving the restaurant property during their rest breaks on certain shifts, including overnight shifts, in violation

1    of the requirement that during rest breaks required by California Labor Code §226.7 and

2    IWC Wage Order No. 5-2001 §12, employees must be relieved of any duty or employer

3    control and free to come and go as they please.

4         188.    Defendants have further violated and continue to violate California Labor Code

5    §226.7 and IWC Wage Order No. 5-2001 §12, by having had and continuing to have a policy and

6    practice of failing to pay each of their employees who was not provided with a full and timely rest

7    break an additional one hour of compensation at each employee's regular rate of pay.

8         189.    Defendants have committed and continue to commit the acts alleged herein

9    knowingly and willfully.

10        190.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

11   Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid

12   wages and lost interest, in an amount to be established at trial, and are entitled to recover economic

13   and statutory damages and penalties and other appropriate relief from Defendants' violations of the

14   California Labor Code and IWC Wage Order 5-2001.

15        191.    California Labor Code §1194.5 authorizes injunctions where an employer has

16   willfully violated laws governing wages, hours, or working conditions.  Plaintiff Sandoval and

17   current employee Class Members, who are low-wage workers for whom Defendants' failure to

18   provide required rest breaks or pay an additional hour's wages when required rest breaks are missed,

19   late, or shortened creates substantial hardship, are entitled to preliminary and permanent injunctive

20   relief under the governing legal standards, and are entitled to an order requiring Defendants to

21   provide required rest breaks, to pay one hour's wages for every day that an employee's required rest

22   break is missed, late, or interrupted, and to keep accurate track of the times Plaintiffs and Class

23   Members begin and end each of their rest breaks.

24

25

26

27

28

**SIXTH CLAIM FOR RELIEF**

**Failure to Pay All Wages Due to Discharged and Quitting Employees**

**[Cal. Labor Code §§201, 202, 203, 1194.5]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

192.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

193.     California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon the employee's discharge from employment.  California Labor Code §202 requires an employer promptly to pay all compensation due and owing to an employee within 72 hours after that employee's employment terminates, including by resignation.  California Labor Code §203 provides that if an employer willfully fails to pay all compensation due promptly upon discharge or resignation, as required by §§201 and 202, the employer shall be liable for waiting time penalties in the form of continued compensation for up to 30 work days.

194.     By failing to compensate Plaintiffs and Class Members as required by California law, as set forth above – including but not limited to Defendants' failure to properly pay Plaintiffs and Class Members wages for all hours worked when due, overtime wages, minimum wages, and additional wages for non-compliant meal periods and rest breaks – Defendants have willfully failed and continue to fail to pay all accrued wages and other compensation to Plaintiffs Ochoa, Rodriguez, and Hedgepeth and discharged and quitting Class Members in accordance with California Labor Code §§201 and 202.

195.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs Ochoa, Rodriguez, and Hedgepeth and former employee Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial.

196.     By failing to make timely payment of the full wages due to Plaintiffs Ochoa, Rodriguez, and Hedgepeth and Class Members who quit or have been discharged, Defendants are

1  also liable for a penalty to each such employee of up to 30 days' of that employee's wages under

2  California Labor Code §203.

3       197.     California Labor Code §1194.5 authorizes issuance of and injunction where an

4  employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiff

5  Sandoval and current employee Class Members, who are low-wage workers for whom McDonald's

6  failure to pay required wages when due if and when they leave Defendants' employment would

7  create substantial hardship, are entitled to injunctive relief under the governing legal standards, and

8  are entitled to an order requiring Defendants to provide all discharged and terminating employees all

9  accrued wages in accordance with the requirements of California Labor Code §§201-203.

10       **SEVENTH CLAIM FOR RELIEF**

11       **Failure to Maintain Required Records**

12       **[Cal. Labor Code §§226, 1174, 1194.5, 1198; IWC Wage Order No. 5-2001 §7]**

13       **(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

14       **Against All Defendants)**

15       198.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

16  by reference all previous paragraphs.

17       199.     California Labor Code §1174(c)-(d) requires employers to keep records showing the

18  names and addresses of all employees employed, and to keep, at a central location in the State of

19  California or at the establishments at which employees are employed, payroll records showing the

20  hours worked daily by and the wages paid to all employees employed at the establishment.  IWC

21  Wage Order 5-2001 §7(A)(3) further requires employers to keep time records showing when the

22  employee begins and ends each work period, meal period, and split shift interval.  Under §7(A)(5),

23  employers must also record each employee's total hours worked and applicable rates of pay, and

24  must make such information "readily available" to the employee upon request.  Under §7(C), all

25  required records must be in the English language and in ink or other indelible form, properly dated,

26  showing month, day, and year, and must be kept on file by the employer for at least three years at the

27  place of employment or at a central location within the State of California.  Under both §7(C) and

28

1 | California Labor Code §226(b), all required records must be available for inspection by an employee

2 | upon reasonable request.

3 | 200. California Labor Code §1198 makes unlawful the employment of an employee

4 | under conditions the IWC prohibits.

5 | 201. Pursuant to Defendants' policy and practice, Defendants have willfully failed, and

6 | continue willfully to fail, to maintain accurate, complete, and readily available records, in violation

7 | of California Labor Code §1174 and IWC Wage Order 5-2001 §7.

8 | 202. In addition, Defendants have failed and continue to fail to maintain required records

9 | that accurately reflect the actual time and hours worked by Plaintiffs and Class Members and the

10 | regular and overtime rates of pay associated with these hours worked.

11 | 203. Plaintiffs and Class Members have suffered and will continue to suffer actual

12 | economic harm resulting from these recordkeeping violations, as they have been, and will continue

13 | to be, precluded from accurately monitoring the wages to which they are entitled, have been required

14 | to retain counsel and others to evaluate and calculate unpaid wages, and have suffered delays in

15 | receiving the wages and interest that are due and owing to them. Defendants' ongoing violations of

16 | these mandatory recordkeeping laws have caused, and will continue to cause, irreparable harm to

17 | Plaintiffs and Class Members, among other reasons because as long as Defendants fail to maintain

18 | the required records, Plaintiffs and Class Members will be unable to determine or demonstrate the

19 | precise number of hours actually worked, or the wages and penalties owed to them for the hours that

20 | Defendants have required, suffered or permitted them to work.

21 | 204. By willfully failing to maintain the records required by California Labor Code

22 | § 1174(c) or the accurate and complete records required by §1174(d), Defendants are also liable for a

23 | civil penalty of five hundred dollars for each violation under §1174.5.

24 | 205. California Labor Code §1194.5 authorizes issuance of and injunction where an

25 | employer has willfully violated laws governing wages, hours, or working conditions. Plaintiff

26 | Sandoval and current employee Class Members are entitled to injunctive relief under the governing

27 | legal standards, and are entitled to an order requiring Defendants to provide Plaintiffs and Class

28 |

1   Members all of the information required by California Labor Code §1174 and IWC Wage Order 5-

2   2001.

### EIGHTH CLAIM FOR RELIEF

**Failure to Furnish Accurate Itemized Wage Statements**

**[Cal. Labor Code §§204, 226; IWC Wage Order No. 5-2001, §7]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

8   206.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

9   by reference all previous paragraphs.

10   207.     California Labor Code §226(a) requires employers semimonthly or at time of paying

11   wages to provide to their employees detailed wage and hour information including total hours

12   worked, applicable hourly rates, and deductions.  IWC Wage Order 5-2001 §7(B) requires employers

13   semimonthly or at the time of each payment of wages to furnish to each employee an itemized

14   statement in writing showing the following information: all deductions; the inclusive dates of the

15   period for which the employee is paid; the name of the employee or the employee's social security

16   number; and the name of the employer.  California Labor Code §204(b)(2) requires that if an

17   employee works in excess of the employee's normal work period in one pay period and the employer

18   pays for those hours in the following pay period, the hours in excess of the employee's normal work

19   period in the current pay period must be itemized as corrections on the paystub for the next regular

20   pay period, and the paystub containing those corrections must state the inclusive dates of the pay

21   period for which the employer is correcting its initial report of hours worked.  These required

22   disclosures of information are essential to enable employees to determine whether they have been

23   paid in compliance with the law and to determine the identity of all employers who are responsible

24   for any payments that remain due.

25   208.     California Labor Code §226(e) provides that an employee who suffers injury as a

26   result of a knowing and intentional failure by an employer to comply with §226(a) may recover the

27   greater of actual damages or the civil penalties designated by statute of $50 for the initial pay period

28

1    in which a violation occurs and $100 per employee for each violation in a subsequent pay period up

2    to an aggregate penalty of $4,000.

3        209.    California Labor Code §226.3 provides that any employer who violates §226(a)

4    shall further be subject to a civil penalty of $250 per employee per violation in an initial citation and

5    $1,000 per employee for each violation in a subsequent citation for which the employer fails to

6    provide the employee a wage deduction statement or fails to keep the records required in §226(a).

7        210.    California Labor Code §1198 makes employment of an employee under conditions

8    the IWC prohibits unlawful.

9        211.    Pursuant to Defendants' unlawful polices and practices alleged herein, Defendants

10   have knowingly and intentionally failed to furnish Plaintiffs and Class Members with the information

11   required by California Labor Code §226(a) and IWC Wage Order 5-2001 §7(B), including but not

12   limited to the legally mandated disclosures of total hours worked, hourly rates, identity of all joint

13   employers, and an itemization of all deductions taken.  This failure has injured, continues to injure,

14   and was intended to injure Plaintiffs and Class Members by, among other things, enabling

15   Defendants to avoid paying these workers all wages due without detection of wrongdoing; creating

16   confusion among these workers over whether they had received all wages due and owing; making it

17   difficult and expensive for these workers to reconstruct pay records and accurate records of all hours

18   worked; forcing these workers to make mathematical computations to analyze whether the wages

19   paid compensated them for all hours worked; requiring these workers to retain attorneys and others

20   to help them determine the fact, scope, and extent of Defendants' wrongful conduct; and causing

21   delay in these workers recovering their full back pay and interest.

22       212.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

23   Plaintiffs and Class Members have sustained economic damages, including but not limited to unpaid

24   wages and lost interest, in an amount to be established at trial, and are entitled to recover such

25   economic and statutory damages and penalties and other appropriate relief from Defendants'

26   violations of the California Labor Code and IWC Wage Order 5-2001.

27

28

213.     California Labor Code §226(h) authorizes courts to issue injunctive relief to remedy violations of §226(a).  Plaintiffs and Class Members are entitled to injunctive relief under the governing legal standards, and are entitled to an order requiring Defendants: (a) to immediately begin providing to Plaintiff Sandoval and current employee Class Members itemized wage statements containing all of the information required to be disclosed by California Labor Code §226(a); and (b) to immediately provide to all Plaintiffs and Class Members the information required to be disclosed by California Labor Code §226(a), dating back to those employees' beginning of employment or to the start of the applicable limitations period, whichever is further back in time.

**NINTH CLAIM FOR RELIEF**

**Failure to Indemnify Employees for Necessary Expenditures**

**Incurred in Discharge of Duties**

**[Cal. Labor Code §§221, 450, 1198, 2802, 1194.5; IWC Wage Order No. 5 2001, §9]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

214.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs

215.     California Labor Code §2802(a) requires an employer to indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.  California Labor Code §221 makes it unlawful for employers to collect or receive from an employee any part of wages paid.  California Labor Code §450 makes it unlawful for an employer to compel or coerce employees to purchase anything of value from the employer.  IWC Wage Order 5 2001, §9(A), provides that if an employer requires a uniform or part of a uniform to be worn by an employee, the employer must provide and maintain the uniform, or pay for the maintenance of that uniform.

216.     Defendants have failed and continue to fail to indemnify Plaintiffs and Class Members for all business expenses and/or losses incurred in direct consequence of the discharge of their duties, including but not limited to by failing to maintain uniforms Defendants required and continue to require Plaintiffs and Class Members to wear.  Although Defendants have provided

1   Plaintiffs and Class Members with a limited number of uniforms, Defendants have implemented no

2   policy that provides for the maintenance of these uniforms.  Consequently, Plaintiffs and Class

3   Members have been and continue to be required to maintain their uniforms themselves, without

4   being compensated for the costs of such maintenance.  As Defendants run a food service business,

5   the uniforms of Plaintiffs and Class Members regularly become greasy or dirty and necessitate

6   special and/or frequent cleaning.  Defendants have failed and continue to fail to reimburse Plaintiffs

7   and Class Members for the time spent and the reasonable expenses they incur in maintaining their

8   uniforms in violation of California Labor Code §2802 and IWC Wage Order No. 5-2001, §9(A).

9        217.    By requiring Plaintiffs and Class Members to pay for work-related expenses without

10   reimbursement, Defendants, pursuant to their policy and practice, have violated and continue to

11   violate California Labor Code §§221, 450, and 2802.

12        218.    Defendants have committed and continue to commit the acts alleged herein

13   knowingly and willfully.

14        219.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,

15   Plaintiffs and Class Members have sustained economic damages, including but not limited to

16   unreimbursed expenses and unpaid wages and lost interest, in an amount to be established at trial,

17   and are entitled to recover such economic and statutory damages and penalties and other appropriate

18   relief from Defendants' violations of the California Labor Code and IWC Wage Order 5-2001.

19        220.    California Labor Code §1194.5 authorizes injunctions where an employer has

20   willfully violated laws governing wages, hours, or working conditions.  Plaintiff Sandoval and

21   current employee Class Members, who are low-wage workers for whom Defendants' failure to

22   reimburse business expenses creates substantial hardship, are entitled to preliminary and permanent

23   injunctive relief under the governing legal standards, and are entitled to an order requiring

24   Defendants to reimburse Plaintiffs and Class Members for the costs of maintaining their uniforms, or

25   to maintain the uniforms, and to reimburse them for other necessary expenses.

26

27

28

**TENTH CLAIM FOR RELIEF**

**Negligence**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against Defendant McDonald's)**

221.     Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

222.     McDonald's has owed and continues to owe a duty to Plaintiffs and Class Members, both as their joint employer and as an entity that benefits directly from their services, not to subject those individuals to the foreseeable harms as alleged herein that would reasonably result from McDonald's failure to exercise due care in its contracting and supervision of Smith Partnership as the entity it chose to operate the Restaurants as its franchisee.  As the owner of the McDonald's trademark and operator of the multinational McDonald's company and as a franchisor with unusually high systems of control over its franchisees, who operate on term-limited and conditional contracts, McDonald's had and continues to have the contractual, actual, and other authority to ensure that its franchisees comply with all state labor and employment laws and to ensure that Plaintiffs' and Class Members' legal rights are fully protected while working in McDonald's restaurants, serving McDonald's food and selling McDonald's products, under McDonald's direct and indirect supervision.

223.     On information and belief, at all relevant times, McDonald's has retained, supervised, and controlled Smith Partnership as its agent and contractor for the purpose of operating the Restaurants.

224.     McDonald's violated its duty to Plaintiffs and Class Members by failing to exercise due care in the selection, hiring, retention, supervision, and/or control of Smith Partnership.  Given a long history of employment law violations at the Restaurants, and that the terms of the McDonald's-Smith Partnership contract and attendant operating requirements and pressures created powerful incentives for Smith Partnership to violate the labor and employment law rights of Plaintiffs and Class Members, and based on McDonald's close monitoring and control over the Restaurant's operations, McDonald's knew or should have known when it selected, hired, retained, supervised,

1   and controlled Smith Partnership as the franchisee of the Restaurants, that it was creating an undue

2   risk of harm to Plaintiffs and Class Members.

3          225.    As a direct and proximate result of McDonald's conduct as alleged in this

4   Complaint, Plaintiffs and Class Members have been harmed, including but not limited to suffering

5   lost wages and other benefits in amounts to be proven at trial.

6                              **ELEVENTH CLAIM FOR RELIEF**

7                      **California Labor Code Private Attorneys General Act**

8                             **[Cal. Labor Code §2698 et seq.]**

9    **(Brought by All Plaintiffs on behalf of Themselves, the Plaintiff Class, all similarly situated**

10         **current and former McDonald's employees, and the Public Against All Defendants)**

11         226.    Plaintiffs, on behalf of themselves and all aggrieved employees and/or on behalf of

12   the plaintiff class, as well as the general public of the State of California, reallege and incorporate by

13   reference all previous paragraphs.

14         227.    Under the California Labor Code Private Attorneys General Act, California Labor

15   Code §§2698-99 ("PAGA"), any aggrieved employee may bring a representative action as a private

16   attorney general on behalf of the general public, including all other aggrieved employees, to recover

17   civil penalties for their employers' violations of the California Labor Code and IWC Wage Orders.

18   These civil penalties are in addition to any other relief available under the Labor Code, and must be

19   allocated 75 percent to the State of California's Labor and Workforce Development Agency and 25

20   percent to the aggrieved worker, pursuant to California Labor Code §2699.

21         228.    Pursuant to California Labor Code §1198, Defendants' employment of any Plaintiff

22   or Class Member for longer hours than those fixed by IWC Wage Order 5-2001 or under conditions

23   of labor prohibited by Wage Order No 5-2001 is unlawful and constitutes a violation of the

24   California Labor Code, actionable under PAGA.  Pursuant to California Labor Code §1198, it is

25   unlawful for Defendants to have failed to pay or cause to be paid to Plaintiffs and Class Members

26   overtime or minimum wages required by Wage Order 5-2001; to have required Plaintiffs and Class

27   Members to work for longer hours than those fixed, or under conditions of labor prohibited by, Wage

28   Order 5-2001; and to have violated, or refused or neglected to have complied with, any other

1  provision of Wage Order 5-2001 as alleged herein.

2       229.    Plaintiffs allege, on behalf of themselves, all aggrieved employees and/or on behalf

3  of the plaintiff class, as well as the general public of the State of California, that Defendants have

4  violated the following provisions of the California Labor Code and the following provisions of the

5  IWC Wage Orders that are actionable through the California Labor Code and PAGA, as previously

6  alleged herein: California Labor Code §§201-04, 206, 221, 223, 226, 226.7, 450, 510, 512, 1174,

7  1182.12, 1194, 1195.5, 1197-99, 2802 and IWC Wage Order 5-2001 §§3, 4, 7, 9, 11, and 12.  Each

8  of these violations entitles Plaintiffs, as private attorneys general, to recover the applicable statutory

9  civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general

10  public.

11       230.    California Labor Code §2699(a), which is part of PAGA, provides in pertinent part:

12            Notwithstanding any other provision of law, any provision of this code that provides

13            for a civil penalty to be assessed and collected by the Labor and Workforce

14            Development Agency or any of its departments, divisions, commissions, boards,

15            agencies, or employees, for a violation of this code, may, as an alternative, be recovered

16            through a civil action brought by an aggrieved employee on behalf of himself or herself

17            and other current or former employees pursuant to the procedures specified in Section

18            2699.3.

19       231.    California Labor Code §2699(f), which is part of PAGA, provides in pertinent part:

20            For all provisions of this code except those for which a civil penalty is specifically

21            provided, there is established a civil penalty for a violation of these provisions, as

22            follows: . . .

23            (2)  If, at the time of the alleged violation, the person employs one or more

24            employees, the civil penalty is one hundred dollars ($100) for each aggrieved

25            employee per pay period for the initial violation and two hundred dollars ($200)

26            for each aggrieved employee per pay period for each subsequent violation.

27       232.    Plaintiffs are entitled to civil penalties, to be paid by Defendants and allocated as

28  PAGA requires, pursuant to California Labor Code §2699(a) for Defendants' violations of the

1  California Labor Code and IWC Wage Orders for which violations a civil penalty is already

2  specifically provided by law; and Plaintiffs are entitled to civil penalties, to be paid by Defendants

3  and allocated as PAGA requires, pursuant to California Labor Code §2699(f) for Defendants'

4  violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is

5  not already specifically provided.

6        233.     Pursuant to California Labor Code §2699.3, on March 12, 2014, before filing the

7  original Complaint in this action, Plaintiffs, on behalf of themselves and all Class Members, gave

8  written notice by certified mail to the California Labor and Workforce Development Agency

9  ("LWDA") and Defendants of the specific provisions of the California Labor Code and IWC Wage

10  Orders alleged to have been violated, including the facts and theories to support the alleged

11  violations.  The letter included a copy of, and incorporated by reference, the entire original

12  Complaint.  On April 8, 2014, the LWDA sent a letter to Plaintiffs stating that it had received and

13  reviewed Plaintiffs' notice and it did not intend to investigate the alleged violations.

14        234.     On October 1, 2014, before filing this First Amended Complaint, Plaintiffs, on

15  behalf of themselves and all Class Members, sent a supplemental written notice by certified mail to

16  the LWDA and Defendants of the specific provisions of the California Labor Code and IWC Wage

17  Orders alleged to have been violated, including the facts and theories to support the alleged

18  violations, in the Ninth Claim for Relief for Failure to Indemnify Employees for Necessary

19  Expenditures Incurred in Discharge of Duties, which Plaintiffs are adding in this First Amended

20  Complaint.  Plaintiffs will amend this complaint if the LWDA notifies them within 33 days of the

21  postmark of that supplemental notice that it intends to investigate the allegations in the Ninth Claim

22  for Relief.

23        235.     Therefore, Plaintiffs have complied with all of the requirements set forth in

24  California Labor Code §2699.3 to pursue a representative action under PAGA.

25        236.     Under PAGA, Plaintiffs and the State of California are entitled to recover the

26  maximum civil penalties permitted by law for the violations of the California Labor Code and Wage

27  Order 5-2001 that are alleged in this Complaint.

28

**TWELFTH CLAIM FOR RELIEF**

**Unfair and Unlawful Business Practices**

**[Cal. Bus. & Prof. Code §17200 et seq.]**

**(Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class**

**Against All Defendants)**

237.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate by reference all previous paragraphs.

238.    Defendants have engaged in unfair and unlawful business practices in violation of California Business & Professions Code §17200 et seq. by engaging in the unlawful conduct alleged above, including but not limited to: failing to pay all wages when due and secretly paying a lower wage than purported; failing to pay the overtime premiums required by state law; failing to pay the minimum wage required by state law; failing to provide workers with all meal periods and paid rest breaks to which they are entitled; failing to pay workers an additional hour's pay for all days in which they were not provided a full and timely meal or rest break as required by state law; failing to provide employees information required by California Labor Code §§204, 226(a), and 1174 and Wage Order 5-2001; concealing from workers material information concerning Defendants' joint employer status and the nature and extent of the conspiracy in which Defendants are engaged; failing to indemnify workers for necessary expenses they incurred in the discharge of their duties; and negligently retaining, supervising, and/or controlling agents and/or contractors acting on their behalf.

239.    Plaintiffs are informed and believe, and based upon such information and belief, allege that by engaging in the unfair and unlawful business practices complained of above, Defendants were able to lower their labor costs and thereby to obtain a competitive advantage over law-abiding employers with which they compete, in violation of California Business & Professions Code §17200 et seq. and California Labor Code §90.5(a), which sets forth the public policy of California to vigorously enforce minimum labor standards to ensure that employees are not required or permitted to work under substandard and unlawful conditions and to protect law-abiding employers and their employees from competitors that lower their costs by failing to comply with minimum labor standards.

1    240.    As a direct and proximate result of Defendants' unfair and unlawful conduct as

2  alleged herein, Plaintiffs and Class Members have sustained injury and damages, including unpaid

3  wages and lost interest, in an amount to be established at trial.  Plaintiffs and Class Members seek

4  restitution of all unpaid wages owed to Plaintiffs and Class Members, disgorgement of all profits that

5  Defendants have enjoyed as a result of their unfair and unlawful business practices, penalties, and

6  injunctive relief.

7  ### THIRTEENTH CLAIM FOR RELIEF

8  ### Declaratory Judgment

9  ### [Cal. Code of Civil Procedure §1060 et seq.]

10  ### (Brought by All Plaintiffs on behalf of Themselves and the Plaintiff Class

11  ### Against All Defendants)

12    241.    Plaintiffs, on behalf of themselves and the plaintiff class, reallege and incorporate

13  by reference all previous paragraphs.

14    242.    An actual controversy has arisen and now exists between the parties relating to the

15  legal rights and duties of the parties as set forth above, for which Plaintiffs desire a declaration of

16  rights and other relief available pursuant to the California Declaratory Judgment Act, California

17  Code of Civil Procedure §1060 et seq.

18    243.    A declaratory judgment is necessary and proper in that Plaintiffs contend that

19  Defendants have committed and continue to commit the violations set forth above and Defendants,

20  on information and belief, will deny that they have done so and/or that they will continue to do so.

21  ### PRAYER FOR RELIEF

22    WHEREFORE, Plaintiffs respectfully request the following relief:

23    1.    Certification of this action as a class action on behalf of the proposed class under

24  Federal Rule of Civil Procedure 23;

25    2.    Designation of Plaintiffs as representatives of the plaintiff class;

26    3.    A temporary, preliminary, and permanent injunction requiring Defendants to pay

27  Plaintiffs and Class Members all wages, including but not limited overtime, minimum wages, and

28  wages due to discharged and quitting employees, for all hours worked when due, and requiring

1  Defendants to keep accurate track of all time Plaintiffs and Class Members work;

2      4.   A temporary, preliminary, and permanent injunction requiring Defendants to provide

3  Plaintiffs and Class Members all legally required meal periods and rest breaks and to pay an

4  additional hour's pay for every day that a meal or rest break is missed, untimely, or shortened, and

5  requiring Defendants to keep accurate track of the time Plaintiffs and Class Members are provided

6  and receive meal periods and rest breaks;

7      5.   A temporary, preliminary, and permanent injunction requiring Defendants to provide

8  Plaintiffs and Class Members all of the information required by California Labor Code §§226(a) and

9  1174 and IWC Wage Order 5-2001 §7;

10      6.   A temporary, preliminary, and permanent injunction requiring Defendants to reimburse

11  Plaintiffs and Class Members for the costs of maintaining their uniforms, or to maintain the

12  uniforms, and other necessary expenses;

13      7.   A permanent injunction prohibiting Defendants from violating the California Labor

14  Code and IWC Wage Order 5-2001, and committing unlawful and unfair business practices

15  proscribed by California Business & Professions Code §17200 et seq.;

16      8.   A declaratory judgment that Defendants have knowingly and intentionally violated the

17  following provisions of law:

18      a.   California Labor Code §§204, 206, 223, and 1195.5 by failing to pay full wages when

19          due for all hours worked;

20      b.   California Labor Code §§510 and 1194(a) and IWC Wage Order 5-2001 §3, by failing to

21          provide premium wages for work in excess of eight hours per workday or 40 hours per

22          workweek;

23      c.   California Labor Code §§1182.12, 1194(a), 1194.2(a), and 1197 and IWC Wage Order

24          5-2001 §4, by failing to pay at least the California minimum wage;

25      d.   California Labor Code §§226.7 and 512 and IWC Order 5-2001 §§11 and 12, by failing

26          to provide all required meal periods and rest breaks and failing to compensate employees

27          for missed, untimely, or shortened meal periods and rest breaks;

28      e.   California Labor Code §1174 and IWC Wage Order No. 9-2001 §7, by failing to

1    maintain and provide employees with access to complete and accurate records;

2    f.    California Labor Code §226, by failing to provide the information required semimonthly

3         or with each payment of wages;

4    g.    California Labor Code §§201-203, by willfully failing to make timely payment of the

5         full wages due to workers who quit or have been discharged;

6    h.    California Labor Code §221, 450, and 2802 and IWC Wage Order No. 5 2001, §9, by

7         failing to maintain required employee uniforms or reimburse employees for the costs of

8         maintaining their uniforms or for other necessary expenses; and

9    i.    California Business and Professions Code §§17200-08, by violating the provisions set

10        forth in subparagraphs (a)-(h);

11   9.    An award of restitution or damages in the amount of unpaid wages, overtime, minimum

12   wage compensation (plus liquidated damages pursuant to California Labor Code §1194.2), and

13   unlawful deductions from wages (or liquidated damages pursuant to California Labor Code § 226(e),

14   whichever is greater), including interest thereon, subject to proof at trial;

15   10.   An award of statutory penalties pursuant to California Labor Code §§203, 226.3, 558,

16   1174.5, 1197.1, and 2698-99, and California Business & Professions Code §17206, subject to proof

17   at trial;

18   11.   An award of penalties for failure to pay full wages when due pursuant to California

19   Labor Code §§206, 210, and 225.5 subject to proof at trial;

20   12.   An award of waiting time penalties as to Plaintiffs Ochoa, Rodriguez, and Hedgepeth

21   and those Class Members who have quit or been discharged, pursuant to California Labor Code

22   §203, subject to proof at trial;

23   13.   An award of restitution of all amounts owed in unpaid wages, overtime, minimum wage

24   compensation, and unlawful deductions from wages, and interest thereon, in an amount according to

25   proof at trial, pursuant to California Business & Professions Code §17203;

26   14.   Disgorgement of profits and all other appropriate equitable relief authorized by

27   California Business & Professions Code §17203;

28   15.   Prejudgment and postjudgment interest on all sums awarded;

1        16.   Attorneys' fees and litigation expenses in an amount the Court determines to be

2   reasonable, pursuant to Labor Code §§216(b), 218.5, 226(h), 1194(a), 2802, and 2699(g)(1), and

3   California Code of Civil Procedure §1021.5, and such other provisions as may be applicable;

4        17.   Costs of suit; and

5        18.   Such other and further relief as is equitable, just, and proper.

6

7   Dated: October 1, 2014                    Respectfully submitted,

8                                             MICHAEL RUBIN
                                              BARBARA J. CHISHOLM
9                                             P. CASEY PITTS
                                              MATTHEW J. MURRAY
10                                            Altshuler Berzon LLP

11                                            JOSEPH M. SELLERS
                                              ABIGAIL E. SHAFROTH
12                                            Cohen Milstein Sellers & Toll, PLLC

13                                            Attorneys for Plaintiffs

14

15                                By:      s/ Barbara J. Chisholm
16                                         Barbara J. Chisholm

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

3        Plaintiffs, on behalf of themselves and similarly situated McDonald's employees, hereby

4   demand a jury trial on all causes of action and claims with respect to which they have a right to jury

5   trial.

Dated: October 1, 2014                    Respectfully submitted,

6

7                                          MICHAEL RUBIN
                                           BARBARA J. CHISHOLM
                                           P. CASEY PITTS
8                                          MATTHEW J. MURRAY
                                           Altshuler Berzon LLP
9

10                                         JOSEPH M. SELLERS
                                           ABIGAIL E. SHAFROTH
11                                         Cohen Milstein Sellers & Toll, PLLC

12                                         Attorneys for Plaintiffs

13                            By:    _s/ Barbara J. Chisholm_____
                                           Barbara J. Chisholm
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28