MICHAEL RUBIN (SBN 80618)
BARBARA J. CHISHOLM (SBN 224656)
P. CASEY PITTS (SBN 262463)
MATTHEW J. MURRAY (SBN 271461)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail:  mrubin@altber.com
        bchisholm@altber.com
        cpitts@altber.com
        mmurray@altber.com

JOSEPH M. SELLERS (*pro hac vice*)
ABIGAIL E. SHAFROTH (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
E-mail:  jsellers@cohenmilstein.com
        ashafroth@cohenmilstein.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – San Francisco

| | |
|---|---|
| STEPHANIE OCHOA, ERNESTINA SANDOVAL, YADIRA RODRIGUEZ, and JASMINE HEDGEPETH, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>MCDONALD'S CORP., a corporation, MCDONALD'S U.S.A., LLC, a limited liability company, MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., a corporation, THE EDWARD J. SMITH AND VALERIE S. SMITH FAMILY LTD. PARTNERSHIP d/b/a MCDONALD'S, a limited partnership, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO. 3:14-cv-02098-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION (FRCP 23), AND MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT**<br><br>Date:           Wed., May 13, 2015<br>Time:           9:30 A.M.<br>Courtroom:      11<br>Judge:          Hon. James Donato<br><br>Complaint Filed:  March 12, 2014<br>Trial Date:       August 17, 2015<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that at 9:30 A.M. on Wednesday, May 13, 2015, or as soon thereafter as this matter may be heard, in Courtroom 11, 19th Floor, of the above-captioned court at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for certification of the Classes, Subclasses, and claims listed below and the appointment of Class Counsel:

**Proposed Class:**

Class Members consist of all individuals currently or formerly employed by Defendants as crew, crew trainers, or maintenance workers paid on an hourly basis ("crew members") at one or more of Defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership's ("Smith's") franchised McDonald's restaurants in California (the "Restaurants"), at any time within the period beginning four years prior to the filing of this action and ending at the time this action proceeds to final judgment or settles (the "Class Period"). Named Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth seek appointment as representatives of the Class. Plaintiffs seek certification of the Class as defined to pursue all claims alleged herein.

To the extent that Defendants' records establish that certain classwide violations by Defendants did not cause compensable harm to all Class Members, Plaintiffs also seek certification of the following subclasses.

**Proposed Subclasses:**

The Miscalculated Wages Subclass consists of all Class Members who worked at least one shift between the beginning of the Class Period and the date on or about September 15, 2013 when Defendants stopped administering their payroll using the third-party vendor Automatic Business Consulting ("ABC"). Named Plaintiffs Ernestina Sandoval, Yadira Rodriguez, Stephanie Ochoa, and Jasmine Hedgepeth seek appointment as representatives of the Miscalculated Wages Subclass. Plaintiffs seek certification of this Subclass to pursue claims for (1) failure to pay all wages due (1st Claim for Relief), (2) failure to pay overtime wages (2nd Claim for Relief), (3) failure to pay

minimum wages (3rd Claim for Relief), (4) failure to provide accurate itemized waged statements (8th Claim for Relief), (5) failure to maintain required records (7th Claim for Relief), (6) unfair business practices (12th Claim for Relief), (7) negligence (10th Claim for Relief), and (8) declaratory judgment (13th Claim for Relief).

The <u>Overtime Subclass</u> consists of all Class Members who worked a shift scheduled to begin on one calendar day and ending the next calendar day (an "overnight shift") followed by a shift that began the same calendar day as the overnight shift ended, who were not paid all overtime due for work in excess of eight hours on that second day.  Named Plaintiffs Ernestina Sandoval and Stephanie Ochoa seek appointment as representatives of the Overtime Subclass.  Plaintiffs seek certification of this Subclass to pursue claims for (1) failure to pay overtime wages (2nd Claim for Relief), (2) failure to pay all wages due (1st Claim for Relief), (3) failure to provide accurate itemized waged statements (8th Claim for Relief), (4) failure to maintain required records (7th Claim for Relief), (5) unfair business practices (12th Claim for Relief), (6) negligence (10th Claim for Relief), and (7) declaratory relief (13th Claim for Relief).

The <u>Meal Period Subclass</u> consists of all Class Members who worked more than five hours on a shift and did not receive a meal period that began before the end of the fifth hour of work, and all Class Members who worked more than 10 hours on a shift and did not receive a second meal period that began before the end of the tenth hour of work.  Named Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth seek appointment as representatives of the Meal Period Subclass.  Plaintiffs seek certification of this Subclass to pursue claims for (1) failure to provide required meal periods or to pay missed meal period wages (4th Claim for Relief), (2) failure to pay all wages due (1st Claim for Relief), (3) failure to provide accurate itemized waged statements (8th Claim for Relief), (4) failure to maintain required records (7th Claim for Relief), (5) unfair business practices (12th Claim for Relief), (6) negligence (10th Claim for Relief), and (7) declaratory judgment (13th Claim for Relief).

The <u>Missed Rest Break Subclass</u> consists of all Class Members who worked three and a half or more hours on a shift and received no paid rest breaks; all Class Members who worked more than six hours on a shift and received fewer than two paid rest breaks; and all Class Members

who worked more than 10 hours on a shift and received fewer than three paid rest breaks. Named Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth seek appointment as representatives of the Missed Rest Break Subclass. Plaintiffs seek certification of this Subclass to pursue claims for (1) failure to provide required rest breaks or to pay missed rest break wages (5th Claim for Relief), (2) failure to pay all wages due (1st Claim for Relief), (3) failure to provide accurate itemized waged statements (8th Claim for Relief), (4) failure to maintain required records (7th Claim for Relief), (5) unfair business practices (12th Claim for Relief), (6) negligence (10th Claim for Relief), and (7) declaratory judgment (13th Claim for Relief).

The <u>Untimely Rest Break Subclass</u> consists of all Class Members who received one or more paid rest breaks to which they were legally entitled that did not end until 10 or fewer minutes before their shift ended, or that began or ended within 10 or fewer minutes of either a meal period or another rest break. Named Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth seek appointment as representatives of the Subclass. Plaintiffs seek certification of this Subclass to pursue claims for (1) failure to provide required rest breaks or to pay missed rest break wages (5th Claim for Relief), (2) failure to pay all wages due (1st Claim for Relief), (3) failure to provide accurate itemized waged statements (8th Claim for Relief), (4) failure to maintain required records (7th Claim for Relief), (5) unfair business practices (12th Claim for Relief), (6) negligence (10th Claim for Relief), and (7) declaratory judgment (13th Claim for Relief).

The <u>Final Wages Subclass</u> consists of all Class Members whose employment with Defendants terminated during the Class Period and more than 72 hours before judgment or settlement of this action. Named Plaintiffs Stephanie Ochoa, Yadira Rodriguez, and Jasmine Hedgepeth seek appointment as representatives of the Subclass. Plaintiffs seek certification of this Subclass to pursue claims for (1) failure to pay all wages due to discharged and quitting employees (6th Claim for Relief), (2) unfair business practices (12th Claim for Relief), (3) negligence (10th Claim for Relief), and (4) declaratory judgment (13th Claim for Relief).

The <u>Injunction Subclass</u> consists of all Class Members who are currently employed with Defendants. Named Plaintiff Ernestina Sandoval seeks appointment as representative of the

Subclass.  Plaintiffs seek certification of this Subclass to pursue claims for declaratory judgment (13th Claim for Relief) and injunctive claims for (1) failure to pay overtime wages (2nd Claim for Relief), (2) failure to provide required meal periods or to pay missed period wages (4th Claim for Relief), (3) failure to provide required rest breaks or to pay missed rest break wages (5th Claim for Relief), (4) failure to provide accurate itemized wage statements (8th Claim for Relief), (5) failure to provide reimbursement for the time and expense of maintaining uniforms (9th Claim for Relief), (6) failure to pay all wages due (1st Claim for Relief), (7) failure to maintain required records (7th Claim for Relief), (8) failure to provide accurate itemized waged statements listing the names and addresses of all employers (8th Claim for Relief), (9) negligence (10th Claim for Relief), and (10) unfair business practices (12th Claim for Relief).

**Grounds for Relief:**

This motion is made on the grounds that the proposed Class and Subclasses are sufficiently numerous that joinder is impracticable; there are questions of law and fact common to the Class and Subclasses; the Named Plaintiffs' claims are typical of the Class's and Subclasses' claims; and the Named Plaintiffs will adequately represent the Class and Subclasses.  Fed. R. Civ. P. 23(a). Certification of the proposed Class and Subclasses under Federal Rule of Civil Procedure 23(b)(3) is appropriate because common questions predominate over any questions affecting only individual Class members, and class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  Certification of the proposed Injunction Subclass is independently appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

Plaintiffs request appointment of Altshuler Berzon LLP and Cohen Milstein Sellers & Toll, PLLC, as Class Counsel pursuant to Rule 23(g), on the grounds that these counsel have thoroughly investigated the claims in this action, have extensive experience handling class actions, and have adequate resources to litigate this action.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting declarations of Michael Rubin, Joseph M.

Sellers, Matthew J. Murray, Kokaale Amissah-Aidoo, David M. Breshears, Richard Drogin,

Ernestina Sandoval, Yadira Rodriguez, Jasmine Hedgepeth, Stephanie Ochoa, Zamani Harris, and

Maria Matias filed herewith; the files and records in this matter; and such argument as may be

heard on this matter by the Court.


Dated: April 6, 2015                          Respectfully submitted,

                                              By:   s/Matthew J. Murray
                                                       Matthew J. Murray

                                              MICHAEL RUBIN
                                              BARBARA J. CHISHOLM
                                              P. CASEY PITTS
                                              MATTHEW J. MURRAY
                                              Altshuler Berzon LLP

                                              JOSEPH M. SELLERS
                                              (*pro hac vice*)
                                              ABIGAIL E. SHAFROTH
                                              (*pro hac vice*)
                                              Cohen Milstein Sellers & Toll, PLLC

                                              *Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................iii

I.     INTRODUCTION .............................................................................................. 1

II.    FACTS ................................................................................................................ 1

III.   ARGUMENT .................................................................................................... 10

       A.   The Prerequisites of Rule 23(a) Are Satisfied ................................... 10

            1.   The Class and Each Subclass Is So Numerous That Joinder of All Members Is Impracticable .............................. 10

            2.   Plaintiffs' Claims Raise Significant Common Questions of Law and Fact That May Be Answered by Common Evidence ........................ 10

            3.   The Representative Plaintiffs' Claims Are Typical of the Class Claims ...................................................................... 11

            4.   The Representative Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class ............................................ 12

       B.   Certification of the Class and Subclasses Is Proper Under Rule 23(b)(3) ............ 12

            1.   Common Questions Predominate Over Any Individualized Issues .......... 12

                 a.   Common Issues Predominate for the Miscalculated Wages Claims ............................................................... 13

                 b.   Common Issues Predominate for the Overtime Claims ............... 14

                 c.   Common Issues Predominate for the Meal Period and Rest Break Claims ........................................................ 14

                 d.   Common Issues Predominate for the Maintenance-of-Uniforms Claims ............................................................ 19

                 e.   Common Issues Predominate for the Wage Statement Claims ..... 21

                 f.   Common Issues Predominate for Plaintiffs' Derivative Claims ... 21

            2.   A Class Action is Superior to Multiple Individual Actions ...................... 22

                 a.   Class Members Have Limited Interest in Individually Controlling Separate Actions ....................................... 22

                 b.   It Is Desirable to Concentrate Class Members' Claims in This Forum ...................................................... 23

1

c.    Classwide Resolution of Class Members' Claims Will Be Manageable........................................................................................23

C.    Certification of the Injunction Subclass Is Proper Under Rule 23(b)(2)..............23

D.    Alternatively, the Court May Adjudicate Common Issues on a Classwide Basis Pursuant to Rule 23(c)(4) ..........................................................24

IV.    CONCLUSION ..............................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ............................................................................... *passim*

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................................12, 23

*Baumann v. Chase Inv. Servs. Corp.*,
    747 F.3d 1117 (9th Cir. 2014) ...............................................................................22

*Boyd v. Bank of Am. Corp.*,
    300 F.R.D. 431 (C.D. Cal. 2014) ...........................................................................22, 23

*Dilts v. Penske Logistics, LLC*,
    267 F.R.D. 625 (S.D. Cal. 2010) ............................................................................21, 22

*Ellis v. Costco Wholesale Corp.*,
    285 F.R.D. 492 (N.D. Cal. 2012) ...........................................................................25

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................12, 13, 23

*Hopkins v. Stryker Sales Corp.*,
    No. 5:11-CV-02786-LHK, 2012 WL 1715091 (N.D. Cal. May 14, 2012) ................20

*Jakosalem v. Air Serv Corp.*,
    No. 13-cv-05944-SI, 2014 WL 7146672 (N.D. Cal. Dec. 15, 2014) .........................14

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ...............................................................................13, 21

*Kamar v. Radio Shack Corp.*,
    254 F.R.D. 387 (C.D. Cal. 2008), *aff'd*, 375 F. App'x 734 (9th Cir. 2010) ...............13

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ...............................................................................14, 19, 21, 23

*Lindell v. Synthes USA*,
    No. 11-CV-02053-LJO-BAM, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014),
    *adopted in full*, 2014 WL 1794467 (E.D. Cal. May 6, 2014) ..................................20

*Medlock v. Taco Bell Corp.*,
    No. 1:07-cv-01314-SAB, 2014 WL 7178133 (E.D. Cal. Dec. 16, 2014) ...............17, 19

*Ortega v. J.B. Hunt Transp., Inc.*,
    258 F.R.D. 361 (C.D. Cal. 2009) ............................................................................13

*Ortega v. J.B. Hunt Transp., Inc.*,
    No. CV 07-8336-MWF, 2012 WL 6708161 (C.D. Cal. Dec. 18, 2012) .........................16, 19, 22

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...............................................................................................11

*Pina v. Con-Way Freight, Inc.*,
    No. C 10-00100 JW, 2012 WL 1278301 (N.D. Cal. Apr. 12, 2012) .........................................18

*Ricaldai v. U.S. Investigations Servs., LLC*,
    878 F. Supp. 2d 1038 (C.D. Cal. 2012) ................................................................................22

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) ........................................................................................11, 24

*Ste. Marie v. E. R.R. Ass'n*,
    72 F.R.D. 443 (S.D.N.Y. 1976) ...........................................................................................23

*Stockwell v. City & Cnty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .............................................................................................11

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ........................................................................................13, 15

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................................................22, 25

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .........................................................................................................11

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .............................................................................................13

### STATE CASES

*Arias v. Superior Court*,
    46 Cal. 4th 969 (2009).........................................................................................................22

*Armenta v. Osmose, Inc.*,
    135 Cal. App. 4th 314 (2005) ..............................................................................................13

*Ayala v. Antelope Valley Newspapers, Inc.*,
    59 Cal. 4th 522 (2014).........................................................................................................11

*Benton v. Telecom Network Specialists, Inc.*,
    220 Cal. App. 4th 701 (2014)........................................................................................14, 16

*Bradley v. Networkers Int'l, LLC*,
    211 Cal. App. 4th 1129 (2012)........................................................................15, 16, 17, 19

*Brinker Rest. Corp. v. Superior Court*,
  53 Cal. 4th 1004 (2012) ............................................................................... *passim*

*Cochran v. Schwan's Home Serv., Inc.*,
  228 Cal. App. 4th 1137 (2014) ............................................................................20

*Faulkinbury v. Boyd & Assocs., Inc.*,
  216 Cal. App. 4th 220 (2013) ........................................................................16, 18

*Jaimez v. DAIOHS USA, Inc.*,
  181 Cal. App. 4th 1286 (2010) ......................................................................17, 18

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) ............................................................................................11

*Morillion v. Royal Packing Co.*,
  22 Cal. 4th 575 (2000) .........................................................................................20

*Murphy v. Kenneth Cole Prods., Inc.*,
  40 Cal. 4th 1094 (2007) .......................................................................................22

*Sav-on Drug Stores, Inc. v. Superior Court*,
  34 Cal. 4th 319 (2004) .........................................................................................21

*In re Work Unif. Cases*,
  133 Cal. App. 4th 328 (2005) ..............................................................................22

## CALIFORNIA STATUTES

Bus. & Prof. Code §17200 .......................................................................................22

Labor Code §203 ...............................................................................................22, 23

Labor Code §204 .......................................................................................................22

Labor Code §226 .........................................................................................21, 22, 23

Labor Code §226.7 ......................................................................................15, 17, 22

Labor Code §500 .......................................................................................................14

Labor Code §510 .................................................................................................14, 19

Labor Code §512 .......................................................................................................15

Labor Code §1174 .....................................................................................................22

Labor Code §1182.12 ...............................................................................................19

Labor Code §1194 .....................................................................................................19

v

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

Labor Code §1194.5 ........................................................................................................24

Labor Code §1195.5 ...................................................................................................13, 19

Labor Code §1197 ..........................................................................................................19

Labor Code §2698 *et seq* ................................................................................................22

Labor Code §2802 ..........................................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Fed. R. Civ. P. 30 ........................................................................................................1, 2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

## I.    INTRODUCTION

Plaintiffs are current and former fast food workers at McDonald's restaurants operated by Defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership ("Smith") pursuant to franchise agreements with McDonald's USA, LLC ("McDonald's").  Plaintiffs allege that Smith and McDonald's are jointly and severally liable for regularly failing to provide Plaintiffs and their coworkers all earned wages when due, legally required overtime, meal and rest breaks, business expense reimbursement, and accurate itemized wage statements.  The class members' claims turn on common questions and can be proved with classwide evidence.

Plaintiffs challenge a series of common policies and practices by which Defendants systematically underpaid class members by: (1) failing to pay all earned wages through September 2013 because of a consistent error in converting employee time punch data to payroll data; (2) failing to pay daily overtime to class members who work overnight shifts, as a result of legally incorrect parameters programmed into Defendants' automated timekeeping and payroll system; (3) failing to provide meal periods and rest breaks in the time and manner required by California law; (4) failing to reimburse crew members for the time and money needed to iron and clean their McDonald's uniforms; and (5) failing to provide wage statements that accurately list all wages earned and identify McDonald's as an employer.  Plaintiffs' lawsuit also raises the overarching issue of whether McDonald's is a joint employer or otherwise liable under California law; and plaintiffs seek a declaratory judgment and injunctive relief.  *See* Fed. R. Civ. P. 23(b)(2)-(3).

## II.    FACTS

Throughout the Class Period (beginning mid-March 2010, four years prior to the filing of this complaint) Smith has operated five McDonald's franchised restaurants.  Decl. of Matthew J. Murray ("Murray Decl.") Ex. A (Tr. of Rule 30(b)(6) Dep. of Michael Smith, March 19, 2015 ("Smith Dep.")) 113:19-22; Ex. C (Smith' Responses to Interrogs., Set One, March 25, 2015 ("Smith Rog. Resp.")) 2:2-12, 10:15-25; Ex. D (McDonald's Responses to Interrogs., Set One, March 25, 2015 ("McDonald's Rog. Resp.")) 6:16-7:5, 8:1-18; *see* Smith Dep. 110:11-112:9,

114:17-116:23, Exs. 60, 61, 62, 63, 64, 65.[1]  Crew members, crew trainers, and maintenance

workers (together hereinafter "crew members" or "Class Members") are the hourly, non-

managerial employees who perform routine production and service work at the five restaurants.

Smith Dep. 26:7-27:6; Murray Decl. Ex. B (Tr. of Dep. of Guadalupe Ortega, March 20, 2015

("Ortega Dep.")) 32:4-19.[2]  Over 400 crew members have worked at the restaurants during the

Class Period.  *See* Decl. of Edward Smith, Dkt. 2-1, ¶¶8-9 (as of May 7, 2014, Smith had employed

approximately 619 hourly, non-exempt employees); Smith Rog. Resp. 2:13-5:20, 9:1-16 & Ex. A

██████████████████████████████████████████████████████████████████

██████████████████████████.

      <u>McDonald's Relationship with Smith.</u>  McDonald's maintains significant control over the

restaurants' operations.  ███████████████████████████████████████

███████████████████████████████  Smith Dep. 117:9-118:7; McDonald's Rog.

Resp. 8:19-26.  McDonald's franchise agreements require Smith "███████████████████

████████████████████████████████████████████████████████████

███████████████████████████."  Smith Dep. Ex. 64 at p. 3 ¶4.  Those

manuals detail, among other things, "███████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████");  *see also* Smith Dep. 166:10-12.

McDonald's has required Smith to adopt a new management structure, and requires managers to be

trained on McDonald's curriculum.  *See* Ortega Dep. 20:5-25, 109:20-113:24, Ex. 82; Smith Dep.

142:4-143:5, 143:15-146:17, Ex. 70; *see also* Smith Rog. Resp. 8:23-27.  Smith gives each new

crew member a McDonald's-written employee handbook (Ortega Dep. 60:18-64:19, 72:14-22, Exs.

---

[1] All five restaurants continued to be managed and operated on the same basis even after Michael
Smith began operating one of them in April 2014.  Smith Dep. 15:3-4, 19:3-21, 21:19-22:4, 22:16-
20; Smith Rog. Resp. 2:10-12.  References to numbered Exhibits are to documents marked at
depositions, which are attached to the Murray Declaration.

[2] Michael Smith was designated as Smith's Rule 30(b)(6) person most knowledgeable.  Smith Dep.
10:15-19.  He and Guadalupe Ortega directly supervised all five restaurants for the entire class
period.  Ortega Dep. 15:21-22, 16:20-24, 18:3-19:7.  Ms. Ortega provided orientation to new crew
members in all five stores during the whole class period.  Ortega Dep. 21:4-23, 60:2-17.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

6, 81), uses McDonald's Hiring to Win program to screen job applicants (Smith Dep. 76:22-77:12), and conducts employee commitment surveys at McDonald's direction.  Smith Dep. 79:2-34.

██████████████████████████████████████████████████████████████

*See, e.g.*, Smith Dep. Ex. 52.

McDonald's conducts regular and detailed reviews of Smith's operations (Smith Dep. 83:10-87:5, 149:24-150:17, 167:9-168:9; *see, e.g.*, Exs. 52, 53), and requires Smith to ████ ███████████████████████████████.  McDonald's Rog. Resp. 15:23-27.  McDonald's assigns field services managers, business consultants, and an "HR Consultant" to oversee Smith's stores, evaluate compliance with national franchising standards, and provide input on restaurant staffing, scheduling, and other labor and operational matters.  Smith Dep. 38:22-39:2, 153:1-155:4, 172:1-173:22, 176:7-180:3; McDonald's Rog. Resp. 11:21-12:2.  Depending on the results of its extensive, ongoing reviews of Smith's operations, McDonald's reserves the right not to extend the term of its franchise agreements with Smith or to preclude Smith from adding another franchise. Smith Dep. 150:18-151:19.

<u>McDonald's In-Store Processor and Records of Crew Member Time</u>.  McDonald's exercises significant control over restaurant operations and crew member employment, scheduling, and pay by requiring Smith to use a designated In-Store Processor ("ISP") and a standard Point of Service ("POS") system (which McDonald's regularly updates).  Smith Dep. 32:1-6, 57:17, 127:17-128:19; McDonald's Rog. Resp. 14:11-21.  The ISP software ███████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████.  Ortega Dep. 23:6-10, 129:20-130:7, 132:21-134:9, 135:7-9, 135:25-136:5; Smith Dep. 160:21-161:8.  The ISP also █████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████.  Smith Dep. 58:11-60:12, 159:12-160:2, Ex. 46 (████████████████████████), Ex. 71 (████████████████).  Smith relies on the ISP's automatic calculations to determine its overtime obligations and to monitor whether employees received all legally required meal and rest breaks. Smith Dep. 73:22-74:10 ("The ISP tells us" when to pay daily overtime); Ortega Dep. 27:25-28:3,

94:19-25, 95:16-97:17.  McDonald's requires Smith to use a McDonald's-approved payroll vendor for generating payroll.  Smith Dep. 87:15-88:24, 100:16-22, 103:10-12.  ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████  McDonald's Rog. Resp. 14:22-15:1; Smith Dep. 120:17-121:2, 128:23-129:4, 130:3-11, 133:8-134:16, 135:3-7, Ex. 66, Ex. 67 (██████████████████).

Smith's crew members are required to punch into the POS system using a unique employee ID number and password at the beginning and end of each shift, meal period, and rest break.  Smith Dep. 27:14-23, 28:17-29:6, 29:14-16, 30:20-31:14, Ex. 45 at 26; Ortega Dep. 87:8-24; Smith Rog. Resp. 6:4-10.[3]  The ISP records every time punch.  Smith Dep. 55:7-12; Smith Rog. Resp. 6:11-12. On the rare occasions when a crew member forgets to punch or punches incorrectly, the store manager edits the time records to "fix" them so they reflect the crew member's true shift and break times.  Ortega Dep. 91:3-7; Smith Rog. Resp. 6:14-19 ("██████████████████████ ██████████████████████").  Smith pays crew members based on the hours reflected on their time punches, after correction.  Smith Dep. 87:18-88:24, 99:18-25.  Smith has retained crew member punch and payroll data for the full class period.  Smith Dep. 88:25-92:23, Exs. 54, 55; Smith Rog. Resp. 7:25-26.[4]

Miscalculated Wages.  Smith transmits crew member time punch data from its ISP to a third-party vendor, which processes payroll.  Smith Dep. 23:9-23, 87:18-88:24.  Until September 15, 2013, Valerie Smith manually "key[ed] in the hours of the employees" from the ISP-generated pay period reports, and sent that manually-entered data to payroll vendor ABC, which used it to

_____

[3] Murray Decl., Ex. E (Tr. of Dep. of Ernestina Sandoval, Feb. 5, 2015 ("Sandoval Dep.")) 94:18-95:4, 109:24-111:14, 150:23-151:14; Ex. F (Tr. of Dep. of Yadira Rodriguez, March 6, 2015 ("Rodriguez Dep.")) 80:16-81:4, 94:2-95:4; Ex. G (Tr. of Dep. of Jasmine Hedgepeth, March 10, 2015 ("Hedgepeth Dep.")) 116:16-18, 128:18-25; Ex. H (Tr. of Dep. of Stephanie Ochoa, March 16, 2015 ("Ochoa Dep.")) 105:21-106:6, 107:21-108:20, 112:6-113:6; Decl. of Zamani Harris ("Harris Decl.") ¶3; Decl. of Maria Matias ("Matias Decl.") ¶3.

[4] Smith has time punch data in Excel format from October 2012 forward, and time punch summary reports only in PDF form from March 2010 through October 2012.  Smith Dep. 89:3-6, 90:15-91:1, Exs. 54, 55.  Smith has payroll data from its payroll vendors in Excel format for the entire Class Period.  Smith Dep. 105:9-108:10, Exs. 58, 59.

process payroll.  Smith Dep. 20:23-21:14, 100:23-102:2, 105:9-108:10, 175:8-176:3, Exs. 58, 59, 73.  During that period, Ms. Smith made a consistent and fundamental error in inputting payroll time data.  Although the pay period reports reported time in an "███████" format, Defendants paid crew members as if the time had been recorded in an "█████████████" format.  For example, when a crew member's actual recorded work time in the ISP reports and in the time punch data was ███████████████, Defendants only paid for ████████ of work rather than the correct ████████.  *See* Smith Dep. Exs. 73, 57; *see also* Decl. of David M. Breshears ("Breshears Decl.") ¶¶19-25.  This systematic error in translating time punch records occurred in all but two pay periods analyzed from the beginning of the Class Period until ███████████, and resulted in systematic underpayments for all crew members except when █████████████ ██████████████████████████████.  Breshears Decl. ¶¶22-25.

Overtime.  Defendants' management never established a set "workday" for crew members, but instead relied on the ISP to calculate the number of daily overtime hours worked.  Smith Dep. 70:20-25, 73:13-74:10; Ortega Dep. 27:25-28:3, 137:3-23, 138:19-139:1.  Smith has not changed any of the ISP settings since those McDonald's-required systems were installed in the restaurants.  Smith Dep. 32:1-2, 32:22-33:13.

The ISP is pre-programmed by McDonald's to assign all hours worked on a shift to the day on which that shift was scheduled to *start*.  Smith Dep. 95:10-96:6, Ex. 56.  As a result, when a crew member works an overnight shift scheduled to start on one calendar day and continuing into the next, and then works another shift on that second calendar day, the ISP assigns all work on the overnight shift to the *first* day only.  Consequently, ███████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████.  Breshears Decl. ¶¶19-21, 26-30; *see also* Smith Dep. Exs. 56, 57.  Because of this unlawful policy, crew members who work more than eight hours in a 24-hour period as a result of working overnight shifts followed by shifts beginning the next day are systematically deprived of overtime

due.  *See* Breshears Decl. ¶¶26-30.[5]

    Meal and Rest Breaks.  Defendants' time records show every meal period and rest break taken and missed.  Smith Dep. 83:3-8.  Crew members are not permitted to take a meal period or rest break unless and until a manager authorizes that break, and are not permitted to refuse a manager's instruction to take a break.  Smith Dep. 33:8-34:19.[6]  No documents inform crew members when on each shift they can expect to be sent on break, nor are they trained that they are legally entitled to take breaks at particular intervals.  Smith Dep. 35:12-20.[7]  Smith also has no policy of asking crew members to waive any meal periods.  Smith Dep. 64:14-19.

    For most of the Class Period, Smith had *no* written policy regarding meal and rest breaks.  *See* Smith Dep. 37:12-16.  Although Smith provided each crew member with the McDonald's handbook, that handbook was silent as to meal and rest breaks.  *See* Ortega Dep. Ex. 6.  For a brief time at the start of the Class Period, Smith apparently provided new crew members a document called "███████████████████████████████████" that stated: "█████████████████████ ███████████████████████████████████████████████████.  Ortega Dep. 65:17-67:14, 70:11-71:14, Ex. 5 ¶4(F); Smith Dep. 46:21-47:12.[8]  Not until after this lawsuit was filed did Smith begin posting a "McOpCo Rest and Meal Break Policy."  Sandoval Decl. ¶4, Ex. 12.[9]  Smith did not train crew members on this "policy," and crew members are still prohibited

_____

[5] For example, plaintiff Ernestina Sandoval regularly works overnight shifts from 10:00 pm Tuesday evening to 6:00 am Wednesday morning, followed by another shift from 3:00 to 11:00 pm on Wednesdays.  Sandoval Dep. 64:5-11.  She thus regularly works for 14 hours on Wednesdays, yet she is not paid overtime.  Decl. of Ernestina Sandoval ("Sandoval Decl.") ¶8.

[6] Sandoval Dep. 131:17-24, 150:2-13, 166:24-167:13, 169:2-4; Rodriguez Dep. 135:6-136:6, 154:3-17, 161:1-25, 172:18-173:7, 199:9-14; Hedgepeth Dep. 170:7-12, 171:10-18, 181:10-17, 182:7-183:21, 198:7-15; Ochoa Dep. 112:18-113:6, 147:6-9, 174:19-21, 211:11-21; Sandoval Decl. ¶3; Harris Decl. ¶4; Matias Decl. ¶4.

[7] Sandoval Dep. 150:9-11, 178:19-25; Rodriguez Dep. 78:10-16, 149:22-25, 157:6-158:7,; Hedgepeth Dep. 98:11-19, 104:12-107:24, 176:24-178:9, 180:3-181:17, 185:4-20; Ochoa Dep. 211:22-213:8; Decl. of Yadira Rodriguez ("Rodriguez Decl.") ¶3; Decl. of Jasmine Hedgepeth ("Hedgepeth Decl.") ¶3; Harris Decl. ¶5; Matias Decl. ¶5.

[8] The ████████████████████ also said "█████████████████████████████ ██████."  Sandoval Dep. Ex. 5 ¶11.D (all caps in original).  Smith confirmed, however, that "Smith stores did not have any meal and rest break policy posted."  Smith Dep. 37:12-16.

[9] "McOpCo" refers to McDonald's corporate-owned stores.  Smith Dep. 36:8-12; McDonald's Rog. Resp. 7:6-8.  None of the plaintiffs whose employment ended in 2013 or early 2014 ever saw the McOpCo policy posted.  Rodriguez Dep. 149:22-25; Hedgepeth Dep. 176:24-178:9; Ochoa

from taking breaks until directed by a manager. *See* Smith Dep. 33:8-34:19; Ortega Dep. 125:17-19; Sandoval Dep. 131:17-24, 149:22-150:22, 166:24-167:13, 169:2-4, 178:19-25; Sandoval Decl. ¶¶3, 4.

Smith acknowledges that its time punch data accurately reflects when crew members take meal periods and rest breaks and when they miss such breaks. Smith Dep. 83:3-8. Plaintiffs' expert has determined based on a preliminary analysis of that data that approximately: (1) ███ of crew members in the data set were not provided all legally mandated meal periods on one or more shifts exceeding five hours, (2) ███ were provided untimely meal periods, and (3) ███ were not provided all legally mandated rest breaks on one or more shifts exceeding 3-½ hours. Breshears Decl. ¶¶44, 47, 66.[10] Plaintiffs' expert has further determined that as a percentage of relevant shifts: (1) ███ of all shifts between five and six hours had no meal period, (2) ███ of all shifts between six and 10 hours had no second rest break, (3) ███ of all shifts exceeding 10 hours had no second meal period, and (4) ███ of those shifts had no third rest break. Breshears Decl. ¶¶45, 46, 67, 68.[11]

Defendants' time punch data also demonstrates that Defendants systematically failed to provide rest breaks in the middle, or "as near as practicable" to the middle, of crew members' work periods as required by IWC Wage Order No. 5-2001 §12. For example, on ███ of the shifts during the Class Period that required at least one rest break, crew members were not permitted to

Dep. 157:2-16. Current employee plaintiff Ernestina Sandoval did not see it before spring 2014. Sandoval Decl. ¶4. Mr. Smith testified that he received the McOpCo policy from McDonald's by email, but Defendants have failed to produce that email to Plaintiffs. *See* Smith Dep. 35:18-36:15, 37:17-39:18, 179:5-13. Mr. Smith implausibly testified that he has no memory when he posted the McOpCo policy. Smith Dep. 36:13-24. Ms. Ortega could not remember either, but conceded she would not be surprised if crew members did not see the policy until after this lawsuit was filed. Ortega Dep. 124:12-125:4, 126:7-21, 127:25-129:6.

[10] The data set includes all time punch records for October 16, 2012 through November 29, 2014 (the period for which Smith produced time data in Excel format) plus a random sample of the time records for March 2010 through October 15, 2012 (during which time data is only available in PDF format). Breshears Decl. ¶¶6-8, 11; Decl. of Richard Drogin ("Drogin Decl.") ¶¶5-10 (describing sampling methodology). Because the time punch data ███████████████████████████, unique combinations of ██████████████████████████████ were used to determine likely unique crew members. Breshears Decl. ¶¶7, 11, 15.

[11] *See also* Sandoval Dep. 79:3-23, 167:20-168:1; Rodriguez Dep. 150:7-151:16, 157:6-158:1; Hedgepeth Dep. 182:14-184:7, 212:7-22, 239:2-9; Ochoa Dep. 160:1-161:9; Harris Decl. ¶9; Matias Decl. ¶10.

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

take a rest break until within 10 minutes before the end of their shifts, and approximately ███ of crew members in the data set experienced such end-of-shift "rest breaks."  Similarly, ███ of crew members in the data set were required to take their rest breaks within 10 minutes of their meal periods, ███ were required to take one rest break within only 10 minutes of another rest break, and ███ experienced one of these three break timing issues.  Breshears Decl. ¶¶69-71.[12]

Despite these extensive classwide violations, Defendants *never* paid any crew member in the Smith restaurants an extra hour of wages for a missed or late meal period or rest break as required by California law, and Smith has *no policy or procedure*—either written or otherwise communicated to crew members—for making such legally mandated payments.  Smith Dep. 54:21-55:6, 66:11-21, 81:20-82:2; Ortega Dep. 98:11-101:22; Sandoval Decl. ¶7; Rodriguez Decl. ¶4; Hedgepeth Decl. ¶5; Ochoa Decl. ¶5; Harris Decl. ¶14; Matias Decl. ¶14.

McDonald's and Smith strive to maximize sales during "peak hours" (7-9 a.m., 12-2 p.m., and 5-7 p.m.) while minimizing labor costs using McDonald's staff scheduling and positioning tools.  Smith Dep. 43:21-23, 46:14-20, 161:22-162:15, 174:10-175:7; Ortega Dep. 82:6-84:15, 85:18-22.  These labor labor and scheduling practices pressure managers to authorize breaks to crew members in numbers and at times that are not legally compliant.  As a result, Defendants' managers regularly fail to provide crew members breaks during peak hours, when the restaurants are busy, and when no other crew member is available.  *See, e.g.*, Ortega Dep. 68:9-69:7 ("if it's busy, we don't get no breaks at that time," and during "peak times," managers "try to keep everybody on the floor" and "that period time, we don't give you no breaks").[13]  These pressures also explain why managers commonly send crew members on break at the very end of their shifts, or shortly before or after another meal or rest break.  Ortega Dep. 150:12-22; *see supra* n.12.[14]

---

[12] *See also* Sandoval Dep. 114:10-17, 169:20-171:2, 172:22-174:2, 188:12-17; Rodriguez Dep. 155:15-156:16; Hedgepeth Dep. 190:12-192:2; Sandoval Decl. ¶6; Hedgepeth Decl. ¶4; Decl. of Stephanie Ochoa ("Ochoa Decl.") ¶4; Harris Decl. ¶¶10-11; Matias Decl. ¶¶11-12.

[13] Sandoval Dep. 186:11-19; Rodriguez Dep. 150:16-24, 152:19-154:15, 160:14-16, 164:12-165:4, 172:18-174:11, 180:11-23; Hedgepeth Dep. 205:21-206:16, 207:25-208:24, 209:3-10; Ochoa Dep. 162:21-164:5; Harris Decl. ¶¶6, 8; Matias Decl. ¶¶6, 8.

[14] McDonald's also sends "mystery shoppers" to each restaurant to evaluate Smith's performance during peak hours (Smith Dep. 50:25-51:24), and Smith's managers (who receive training about breaks from McDonald's, Smith Dep. 39:19-41:15) regularly prohibit crew members from taking

1    Defendants monitor whether crew members have been provided what Defendants regard to

2    be legally compliant meal and rest breaks by relying on Payroll Labor Exceptions Reports

3    generated by the ISP.  Ortega Dep. 94:19-95:3, 95:20-25; Smith Dep. 58:5-60:12, 63:22-64:1, Ex.

4    46.  If the Payroll Exception Report does not show a "violation"—that a meal period or rest break

5    was owed on a particular shift but not provided—Smith's franchise-wide supervisor, Guadalupe

6    Ortega, does not follow up with the store managers to determine whether all required meal periods

7    and rest breaks were provided.  Ortega Dep. 96:21-97:17.  The stores' ISPs, however, do not

8    monitor many categories of California law violations.  For example, the ISP settings do not flag

9    that (1) ███████████████████████████████████████████████, (2) ████

10   ████████████████████████████████████████████████████████

11   ███, or (3) ██████████████████████████████████████

12   ████████████████████████████████████████████

13   █████████████████████    Smith Dep. 60:19-63:17, Ex. 46; Decl. of Kokaale Amissah-

14   Aidoo ¶¶2-13 & Exs. A-F.  The ISP "Labor Law" settings came pre-programmed with the

15   McDonald's-required system, and neither McDonald's nor Smith modified those settings to match

16   these California-required employment parameters.  Smith Dep. 56:13-18, 137:1-12, Ex. 48 at 50-

17   51.

18   _Uniforms._  Defendants require crew members to iron and wash their McDonald's uniforms.

19   Ortega Dep. 78:25-79:12, 79:16-24 ("You need to wash and iron your shirts."); Smith Dep. 64:20-

20   65:10.[15]  Crew member uniforms become greasy and smelly in the fast food environment, and

21   often must be washed separately.[16]  Smith's management knows that crew members are required to

22   incur time and expense to maintain their uniforms, yet Defendants do not pay for that time or

24   meal periods or rest breaks during those potential mystery shopper hours.  Rodriguez Dep. 221:22-
     224:6; Hedgepeth Dep. 230:22-232:8; Ochoa Dep. 202:1-203:1; Harris Decl. ¶7; Matias Decl. ¶7.

25   [15] Sandoval Dep. 213:10-25, 218:7-8, 219:7-16; Rodriguez Dep. 214:8-215:16, 216:3-11, 218:7-11;
     Hedgepeth Dep. 223:17-224:5, 226:24-227:1; Ochoa Dep. 196:15-197:20, 198:14-16, 199:1-5;
26   Ochoa Decl. ¶7; Harris Decl. ¶19; Matias Decl. ¶18.

27   [16] Sandoval Dep. 216:8-11, 217:19-23, 232:4-25; Rodriguez Dep. 217:6-18, 219:1-14; Hedgepeth
     Dep. 225:17-228:1; Ochoa Dep. 197:21-24, 198:14-22; Hedgepeth Decl. ¶7; Ochoa Decl. ¶7;
28   Harris Decl. ¶19; Matias Decl. ¶18.

9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

expense, as required by law.  Ortega Dep. 79:16-80:15; Sandoval Decl. ¶10; Rodriguez Decl. ¶6;

Hedgepeth Decl. ¶7; Ochoa Decl. ¶7; Harris Decl. ¶19; Matias Decl. ¶18.

   <u>Wage Statements.</u>  Smith provides crew members earnings statements along with their

paychecks.  Smith Dep. 108:12-109:12, Ex. 35.  The statements have never listed McDonald's as

an employer or provided McDonald's address.  Smith Dep. 109:13-21.[17]  The wage statements do

not identify the daily hours worked or indicate whether any required meal period or rest break was

missed, late, or short.  Smith Dep. 110:1-6; *see supra* n.17.

## III. ARGUMENT

   For the reasons set forth below, certification of the proposed Class and Subclasses is proper

under Rule 23(a), (b)(3), and (b)(2).

### A. The Prerequisites of Rule 23(a) Are Satisfied.

#### 1. The Class and Each Subclass Is So Numerous That Joinder of All Members Is Impracticable.

   Rule 23(a)(1)'s requirement that the proposed class be so numerous that joinder of all class

members is "impracticable" is easily satisfied, as there are at least 400 members of the Class and at

least ▮▮▮ members of each Subclass.  *See* Dkt. 2-1, ¶¶8-9; Smith Rog. Resp. 2:13-5:20, 9:1-16 &

Ex. A; Breshears Decl. ¶¶15, 30.[18]

#### 2. Plaintiffs' Claims Raise Significant Common Questions of Law and Fact That May Be Answered by Common Evidence.

   Rule 23(a)(2) requires one or more common questions of law or fact "capable of classwide

resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "So long as there is

even a single common question, a would-be class can satisfy the commonality requirement . . . ."

*Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted); *see also*

*Dukes*, 131 S.Ct. at 2556.  "[A] common contention need not be one that will be answered, on the

---

[17] Sandoval Decl. ¶9; Rodriguez Decl. ¶5; Hedgepeth Decl. ¶6; Ochoa Decl. ¶6; Harris Decl. ¶18; Matias Decl.¶17.

[18] The miscalculated wages subclass includes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; the overtime subclass includes at least ▮▮▮▮▮▮ of the Class; the meal period subclass includes at least ▮▮▮▮▮ of the Class; the missed rest break subclass includes at least ▮▮▮▮ of the Class; the untimely rest break subclass includes at least ▮▮▮▮ of the Class.  *See* Breshears Decl. ¶¶24, 30, 43, 66, 71.

merits, in favor of the class.  Instead, it only must be of such a nature that it is capable of classwide resolution."  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (internal quotation marks, citations, and emphasis omitted).  Even "where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Parsons*, 754 F.3d at 675 (internal quotation marks omitted).

Each claim in this lawsuit rests in part on whether McDonald's is the crew members' joint employer under California law.  *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010); *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531-32 (2014).  This overarching common issue can be resolved through classwide evidence regarding McDonald's relationship with Smith and its authority to control material aspects of the restaurants' operations and crew member working conditions.  *See supra* at 1-4; Decl. of Michael Rubin ("Rubin Decl.") ¶¶4-6 (Trial Plan).  While that one issue is sufficient under Rule 23(a)(2), common issues provable through classwide evidence are also raised by each of Plaintiffs' claims for relief, as discussed *infra* at 12-22.

### 3. The Representative Plaintiffs' Claims Are Typical of the Class Claims.

Rule 23(a)(3) requires the class representatives' claims to be "typical of the claims . . . of the class," Fed. R. Civ. P. 23(a)(3), meaning "'reasonably coextensive . . .; they need not be substantially identical.'"  *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "'[T]ypicality refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought.'"  *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (internal quotation marks and brackets omitted).

Typicality is easily satisfied.  Each Named Plaintiff worked as a Smith crew member and is a Class Member.  Sandoval Decl. ¶1; Rodriguez Decl. ¶1; Hedgepeth Decl. ¶1; Ochoa Decl. ¶1. Each brings the same claims as the Class and Subclasses with few exceptions, and each Subclass

has at least one class representative.[19]

### 4. The Representative Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class.

The final requirement of Rule 23(a) is that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where the proposed representatives have no conflicts of interest and are represented by qualified counsel. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d at 1020-21.

These elements are easily met. Plaintiffs have the same interests and suffered the same types of injuries as other crew members and have no conflicts with the proposed Class or Subclasses. Also, Plaintiffs have retained experienced class counsel, through whom they have diligently prosecuted this matter.[20]

### B. Certification of the Class and Subclasses Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact "predominate" over individual ones and that a class action be "superior" to other available effective adjudication methods.

### 1. Common Questions Predominate Over Any Individualized Issues.

Predominance under Rule 23(b)(3) "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013). (internal quotation marks omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022 (internal quotation marks omitted). In analyzing the relationship between common and individual issues, the focus must be on Plaintiffs' "*actual* legal theory."

---

[19] Plaintiff Sandoval is a member of the Injunction Subclass. Sandoval Decl. ¶1. The other plaintiffs are members of the Final Wages Subclass. Rodriguez Decl. ¶1; Hedgepeth Decl. ¶1; Ochoa Decl. ¶1. Each Plaintiff is a member of each other Subclass, except only Plaintiffs Ochoa and Sandoval represent the overtime pay subclass. Breshears Decl. ¶¶24, 30, 43, 66, 71.

[20] Plaintiffs request appointment of Altshuler Berzon LLP and Cohen Milstein Sellers and Toll, PLLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g). As demonstrated in the present motion and supporting papers, proposed Class Counsel have thoroughly investigated the claims in this action, have extensive experience handling class actions, and have adequate resources to litigate this action. *See* Rubin Decl. ¶¶15-21; Decl. of Joseph M. Sellers ¶¶3-5.

1  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,*

2  *AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (emphasis in original).

3         As explained below, resolution of each claim alleged by Plaintiffs will turn on classwide

4  issues that predominate over any individual issues.  "When the claim is that an employer's policy

5  and practices violated labor law, the key question for class certification is whether there is a

6  consistent employer practice that could be a basis for consistent liability."  *Kamar v. Radio Shack*

7  *Corp.*, 254 F.R.D. 387, 398-99 (C.D. Cal. 2008), *aff'd*, 375 F. App'x 734 (9th Cir. 2010).  Where

8  an employer has uniformly applied workplace policies, as here, predominance is "easily

9  established."  *Id.*; *see Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009)

10  (class actions are routinely certified where "the focus of the proposed class action will be on the

11  words and conduct of the defendants rather than on the behavior of the individual class members").

12         In this case, the damages calculations will principally rest on classwide data, but even if

13  that were not true, "'[i]n this circuit . . . damage calculations alone cannot defeat class

14  certification.'"  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) (quoting *Leyva v.*

15  *Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013)); *see also Yokoyama v. Midland Nat'l Life*

16  *Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) ("The potential existence of individualized damage

17  assessments . . . does not detract from the action's suitability for class certification.").

18              **a.  Common Issues Predominate for the Miscalculated Wages Claims.**

19         Under California law, employers must "correctly compute[] and pa[y]" all wages earned.

20  Labor Code §1195.5; *see id.* §§204, 223.  Yet from the beginning of the Class Period through

21  approximately September 15, 2013, Smith erroneously transmitted to ABC payroll data recorded in

22  the ISP's "████████" format as if it had been recorded in an "███████████████"

23  format.  *See supra* at 4-5.  This resulted in systematic classwide underpayment that affected each

24  crew member's rights to accurate pay for all hours worked, including overtime and minimum

25  wages.  *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005) (under California law,

26  unlike federal law, minimum wage must be paid for each hour worked).  Damages can easily be

27  calculated by comparing the total hours actually worked (shown by ISP time punch records) with

28

the hours paid (shown by the payroll records).  *See, e.g.*, *Abdullah*, 731 F.3d at 966-67; *Leyva*, 716

F.3d at 514; *see also* Rubin Decl. ¶¶7-8 (Trial Plan).

### b.  Common Issues Predominate for the Overtime Claims.

Under California law, "[a]ny work in excess of eight hours in one workday . . . shall be

compensated at the rate of no less than one and one-half times the regular rate of pay for an

employee."  Labor Code §510(a); *see id.* §1194; IWC Wage Order No. 5-2001 §3(A)(1).  A

"workday" is "any consecutive 24-hour period commencing at the same time each calendar day."

Labor Code §500(a); *see* IWC Wage Order No. 5-2001 §2(U).

Defendants relied on the McDonald's-required ISP system to calculate overtime, a system

programmed to attribute all hours worked on a particular shift to the day on which the shift was

scheduled to begin, *regardless* of when the shift ended.  *See supra* at 5.  The consequence of this

automated practice is that no crew member earned overtime, despite working more than eight hours

in a single 24-hour period, when an overnight shift of fewer than eight hours (counted as Day 1,

even though it ends the next day) was followed by a day shift of fewer than eight hours.  Plaintiffs

contend this is unlawful, because under California law "overtime calculations should be based on

the amount of work completed by an employee during any single twenty-four hour workday

period, regardless of whether the employee works continuously through the day divide."

*Jakosalem v. Air Serv Corp.*, No. 13-cv-05944-SI, 2014 WL 7146672, at *3 (N.D. Cal. Dec. 15,

2014).  This classwide practice is easily provable through the ISP program settings and crew

member time records, and damages can easily be calculated using Defendants' time and payroll

records.  *See Abdullah*, 731 F.3d at 966-67; *Leyva*, 716 F.3d at 514; *see also Benton v. Telecom

Network Specialists, Inc.*, 220 Cal. App. 4th 701, 723, 741 (2014); Rubin Decl. ¶¶9-10 (Trial Plan).

### c.  Common Issues Predominate for the Meal Period and Rest Break Claims.

California employers have an affirmative "obligation to provide" meal periods to their

employees and "must authorize and permit" rest breaks.  *Brinker Rest. Corp. v. Superior Court*, 53

Cal. 4th 1004, 1031, 1040 (2012).  "An employer may not employ an employee for a work period

of more than five hours per day without providing the employee with a meal period of not less than

30 minutes," and "may not employ an employee for a work period of more than 10 hours per day

without providing the employee with a second meal period of not less than 30 minutes . . . ."  Labor Code §512(a); *see* IWC Wage Order No. 5-2001 §11.[21]  In addition, rest breaks must be provided "insofar as practicable . . . in the middle of each work period," at a rate of 10 minutes for every four hours "or major fraction thereof."  IWC Wage Order No. 5-2001 §12.  Thus, "[e]mployees are entitled to 10 minutes of rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on," and California employers have a "duty to make a good faith effort to authorize and permit rest breaks in the middle of each work period" unless "infeasible."  *Brinker*, 53 Cal.4th at 1029, 1031.  If an employer fails to comply with any of these obligations, it must "pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest . . . period is not provided."  Labor Code §226.7(c).

Plaintiffs' meal and rest break claims present several predominating common issues, as each of Plaintiffs' theories of liability—which are the basis for the Court's class certification analysis, *ConocoPhillips*, 593 F.3d at 808—can be proven through classwide evidence.  *See* Rubin Decl. ¶11 (Trial Plan).

Smith's time records reflect when crew members took each break—and, just as important, when each break was missed or untimely.  Because of Smith's manager-directed break policy, under which no break may be taken unless and until a manager sends the crew member on break and no order to take a break may be refused, Defendants' records necessarily reflect the times when managers provided or authorized breaks—and when they failed to do so.[22]  Those records, which constitute common classwide evidence, document ███████████ of instances in which Defendants failed to provide class members a timely meal period or rest break as required by law.  Breshears Decl. ¶¶44-46, 66-68, 71.  *See, e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, No. CV 07-8336-

---

[21] Employees who work shifts between five and six hours, and between 10 and 12 hours, may waive a meal period with the "mutual consent" of their employer, Labor Code §512(a), but Smith has no policy authorizing such waivers.  Smith Dep. 64:14-19.

[22] Under California law, "if an employer's records show no meal period for a given shift, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided . . . ."  *Bradley v. Networkers Int'l, LLC*, 211 Cal.App.4th 1129, 1144 (2012) (citing *Brinker*, 53 Cal.4th at 1052 (Werdegar, concurring)).

MWF (FMOX), 2012 WL 6708161, at *3 (C.D. Cal. Dec. 18, 2012) ("[C]lass wide questions include whether the policies of [the employer] sufficiently 'provided' Plaintiffs with an opportunity to take code-compliant breaks . . . .").[23]

Evidence of Defendants' manager-directed break policy and the resulting time records are the only proof Plaintiffs need to establish the pervasive classwide meal and rest break violations throughout the Class Period.  Plaintiffs' experts' preliminary review of the data produced by Defendants indicates that more than ███ of the Class Members suffered meal and rest break violations, with ████████████████ during shift lengths the ISP was not programmed to flag as requiring a meal period or rest break required by California law.  *See supra* at 9 (ISP did not flag ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████); *see also* Breshears Decl. ¶¶43, 66, 71.

Under California law, it makes no difference *why* an employer failed to provide a legally required meal period or rest break.  *See, e.g., Bradley*, 211 Cal.App.4th at 1149 ("'[a]n employer is required to authorize and permit the amount of [rest and meal] break time[s] called for under the wage order for its industry.  If it does not . . . it has violated the wage order and is liable.'") (quoting *Brinker*, 53 Cal. 4th at 1033.  An employer's liability for meal and rest break violations can be established through classwide proof of the employer's failure to adopt a lawful break policy, coupled with proof that employees were regularly not provided breaks.  *See Abdullah*, 731 F.3d at 962; *Benton*, 220 Cal.App.4th at 726 (class certification appropriate where plaintiffs' theory was that employer "violated wage and hour requirements by failing to adopt a policy authorizing and permitting meal and rest breaks"); *Faulkinbury*, 216 Cal.App.4th at 237 ("[T]he lawfulness of Boyd's lack of rest break policy and requirement that all security guard employees remain at their posts can be determined on a classwide basis."); *Bradley*, 211 Cal.App.4th at 1150 (employer's

---

[23]  Because Defendants' manager-directed break policy and all missed and untimely breaks can be proven through classwide evidence, it makes no difference that crew members sometimes took legally compliant breaks.  Where, as here, an employer's policy fails affirmatively to provide all required meal and rest breaks, "'[w]hether or not the employee was able to take the required break goes to damages.'"  *Abdullah*, 731 F.3d at 961-62 (quoting *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal.App.4th 220, 235 (2013)).

"(uniform) *lack* of a rest and meal break policy and its (uniform) *failure* to authorize employees to take statutorily required rest and meal breaks" presented "matters of common proof") (emphasis in original).

Here, classwide evidence reflects that Defendants did not adequately train shift managers and crew members regarding when meal periods and rest breaks were required, and failed to have any lawful written or otherwise communicated meal and rest break policy for much of the Class Period that affirmatively "authorized" or "provided" meal or rest breaks.[24]  Instead, management relied on the "Labor Law" parameters on the restaurants' ISPs—which were set incorrectly and, therefore, failed to alert Defendants to the unlawfulness of their practices.[25]

Defendants also never paid (and never had any policy or procedure to permit payment) of the extra hour of wages required by Labor Code §226.7(c) for late or missed meal periods and rest breaks (which presents another classwide issue supporting certification).[26]

The record includes substantial evidence that Smith's managers commonly refused to authorize meal periods or rest breaks when their restaurants were busy, when there was insufficient staff coverage, and when a McDonald's mystery shopper might be visiting.  Moreover,

_____

[24] Smith's posting of the McOpCo Rest and Meal Break policy in the restaurants sometime late in the Class Period, without changing any of its practices and policies concerning such breaks, did not serve to "authorize" or "provide" crew members with legally required breaks.  Defendants may argue otherwise, but the questions of when the policy was posted and what impact that posting had on Defendants' compliance are additional common questions that can be resolved through classwide evidence.

[25] Whether Defendants' well-documented practice of failing to provide rest breaks until near the end of work shifts, or until right before or after another meal or rest break, violates the requirement that rest breaks "insofar as practicable shall be in the middle of each work period," IWC Wage Order No. 5-2001 §12(A), also raises a common issue concerning what is legally "practicable." *See Brinker*, 53 Cal.4th at 1031.  The evidence shows that all crew members engage in the same basic food preparation, service, and cleaning duties, and nothing about these duties would make it impracticable for a crew member to cease work to take a break in the middle of a work period. *See, e.g.*, Rodriguez Dep. 251:20-25.  Only Defendants' efforts to keep labor costs low during busy work periods explains why they so frequently failed to provide mid-shift rest breaks.

[26] *See, e.g.*, *Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286, 1294, 1299-1300 (2010) (where employer did not pay employees for missed meal and rest breaks, its "failure to pay . . . missed meal and rest period compensation" was a common policy that supported class certification); *Medlock v. Taco Bell Corp.*, No. 1:07-cv-01314-SAB, 2014 WL 7178133, at *4 (E.D. Cal. Dec. 16, 2014) (certifying class challenging employer's automatic payment of half-hour's pay rather than hour's pay for missed meal periods; noting "[t]he fact that, hypothetically, some undefined number of employees were not entitled to any meal premium pay does not defeat class certification").

1    Defendants' managers frequently provided "rest breaks" at the very end of a shift, or shortly before

2    another meal or rest break, rather than in the middle of a work period, as required by California

3    law.  *See supra* at 7-8.  These violations can be proved based on the ISP time records, scheduling

4    records, and management and crew member testimony.  *See, e.g.*, Smith Dep. 161:22-162:15,

5    174:10-175:7, Ex. 71; Ortega Dep. 82:6-84:15, 85:18-22, 146:5-8; *supra at* nn.12-14.  Because

6    evidence of these practices that discourage or preclude lawful breaks will be common to the class,

7    these claims are appropriate for certification.  *See, e.g.*, *Pina v. Con-Way Freight, Inc.*, No. C 10-

8    00100 JW, 2012 WL 1278301, at *7 (N.D. Cal. Apr. 12, 2012) (certifying class where "informal

9    policies of discouraging the taking of breaks would likely be susceptible to common proof,"

10   including common practice that class members "sought the permission of their supervisor before

11   taking a meal break, and that such permission was given only after . . . deliveries were

12   completed"); *Jaimez*, 181 Cal.App.4th at 1301, 1305 (certification appropriate based on common

13   policy of giving employees so much work they were unable to take breaks).  "[A]n employer may

14   not undermine a formal policy of providing meal breaks by pressuring employees to perform their

15   duties in ways that omit breaks."  *Brinker*, 54 Cal.4th at 1040 (citing *Cicairos v. Summit Logistics,*

16   *Inc.*, 133 Cal. App. 4th 949, 962-63 (2005); *Jaimez*, 181 Cal.App.4th at 1304-05 ("proof of

17   common scheduling policy that made taking breaks extremely difficult would show violation");

18   *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010) ("informal anti-meal-break

19   policy enforced through ridicule or reprimand would be illegal") (quotation marks omitted)).

20       The common issues presented by Plaintiffs' theories of liability (and the common issue of

21   whether McDonald's is a joint employer or otherwise liable) predominate over any individual

22   issues.  No questions regarding why an individual break was missed or late will be relevant

23   because Defendants did not permit crew members to skip breaks they were ordered to take, or to

24   take breaks without being told to do so.  As the Ninth Circuit has recognized, under California law,

25   "'[t]he employer's liability arises by adopting a uniform policy that violates the wage and hour

26   laws.  Whether or not the employee was able to take the required break goes to damages.'"

27   *Abdullah*, 731 F.3d at 961-62 (quoting *Faulkinbury*, 216 Cal.App.4th at 235; italics in original).

28   "[A]n employer is obligated to *provide* the rest and meal breaks, *and if an employer does not do so,*

the fact that an employee did not take the break cannot reasonable be considered a waiver. 'No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it.'" *Bradley*, 211 Cal.App.4th at 1151 (italics in original; quoting *Brinker*, 53 Cal.4th at 1033); *see Ortega*, 2012 WL 6708161, at *2-3 (California law "requires that an employer must sufficiently provide a break before an employee's reason for foregoing the break become analytically significant").

Damages for each meal and rest break claim can easily be calculated based on Defendants' time punch records. *See Abdullah*, 731 F.3d at 966 (in light of employer's time records, "it would not be difficult to determine [the employer's] liability to individual plaintiffs, nor would it be overly-burdensome to calculate damages"); *Leyva*, 716 F.3d at 514.[27]

**d. Common Issues Predominate for the Maintenance-of-Uniforms Claims.**

California law requires employers to indemnify employees "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties," including "all reasonable costs." Labor Code §2802(a)-(b). "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." IWC Wage Order No. 5-2001 §9(A).

Defendants require members to "wash and iron" their McDonald's uniforms regularly. Ortega Dep. 79:16-24, 80:3-15; Smith Dep. 64:20-65:10; *supra* nn.15-16. Yet Defendants do not reimburse crew members for the time and expense incurred to comply with this requirement. Whether that common policy is lawful can be resolved in a single stroke for all crew members.

First, whether the time crew members spend ironing their uniforms before each shift is compensable, and thus whether Defendants failed to pay crew members for all hours worked in violation of Labor Code §§204, 1195.5, 510, 1182.12, 1197, 1194 and related laws, presents a predominating common question.

Second, whether Defendants' policy requiring crew members to clean their own

---

[27] *See, e.g.*, *Medlock*, 2014 WL 7178133, at *5, 8 (certification of meal and rest break claims appropriate where record reflected improperly recorded breaks were not a "significant problem" in employer's time records; court reasoned that "records pertaining to missed and shortened breaks were generally reliable" because employer "generated reports based on those records").

1   McDonald's uniforms violates California law presents a predominating common question as well.

2   *See, e.g., Cochran v. Schwan's Home Serv., Inc.*, 228 Cal.App.4th 1137, 1145 (2014) (reversing

3   denial of class certification; "To show liability under section 2802, an employee need only show

4   that he or she was required to [engage in an employer-required task involving an expense], and he

5   or she was not reimbursed."). Under California law, when a uniform must be worn as a condition

6   of employment, the uniform "shall be . . . maintained by the employer," IWC Wage Order No. 5-

7   2001 §9(A), even when the uniform requires no special maintenance beyond routine cleaning. *Cf.*

8   *Cochran*, 228 Cal.App.4th at 1144-45 (employer's "reimbursement obligation [is not] limited to

9   the situation in which the employee incurred an extra expense that he or she would not have

10  otherwise incurred absent the job").[28]

11          Third, due to the fast food service environment in which they work and the limited number

12  of uniforms provided, crew members must wash their uniforms more frequently than other clothes

13  and often must wash them separately from their other clothes. *See supra* n.16; Ortega Dep. 80:3-

14  15. Whether these common additional requirements involve time and expenses that must be

15  reimbursed under California law is also a question that can be resolved for the class as a whole.

16  *See Lindell v. Synthes USA*, No. 11-CV-02053-LJO-BAM, 2014 WL 841738, at *9 (E.D. Cal. Mar.

17  4, 2014), *adopted in full*, 2014 WL 1794467 (E.D. Cal. May 6, 2014) ("When the evidence

18  suggests there is a commonality of employment obligation and common types of expenses incurred

19  by [employees], 'the underlying legal issues and many of the factual determinations are common to

20  all class members.'") (quoting *Dilts*, 267 F.R.D. at 640); *Hopkins v. Stryker Sales Corp.*, No. 5:11-

21  CV-02786-LHK, 2012 WL 1715091, at *7 (N.D. Cal. May 14, 2012) ("[A] fact finder could look

22  at the putative class members' duties and the common types of expenses and determine whether a

23  type of expense is necessary to carry out those duties on a class-wide basis").

24          Any individualized damages considerations regarding the specific time and expenses

25  incurred by crew members in maintaining their uniforms do not defeat certification. *See Jimenez*,

26  _____

27  [28] Although the Division of Labor Standards Enforcement has offered guidance that employers
    need not reimburse employees for the expense of laundering of uniforms if the uniforms can be
    machine washed along with regular clothes, that guidance is entitled to "no deference" under

28  California law. *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 582 (2000)

765 F.3d at 1167; *Leyva*, 716 F.3d at 513; *see also Lindell*, 2014 WL 841738, at *10, 14; *Dilts*, 267 F.R.D. at 640; Rubin Decl. ¶12 (Trial Plan).[29]

### e. Common Issues Predominate for the Wage Statement Claims.

California law requires that "[e]very employer shall" provide each employee "an accurate itemized statement in writing showing" a variety of required information, including all "wages earned" and "the name and address of the legal entity that is the employer . . . ." Labor Code §226(a); *see* IWC Wage Order No. 5-2001 §7. Where an employer fails to provide accurate and complete information, its employees are entitled to statutory penalties. Labor Code §226(e)(1), (2)(A)-(B). Defendants' wage statements never listed McDonald's as an employer and never listed McDonald's address. Smith Dep. 109:13-21; *supra* n.17. Whether Defendants violated Labor Code §226 by failing to provide this information will turn on the common question whether McDonald's is the crew members' joint employer. *See supra* at 10-11. Damages can be calculated by assessing how many unlawful wage statements each crew member received. *See* Rubin Decl. ¶13 (Trial Plan).

### f. Common Issues Predominate for Plaintiffs' Derivative Claims.

Plaintiffs also seek certification of several claims that are derivative of their claims that Defendants failed to pay them all wages due, overtime wages, for missed and untimely meal periods and rest breaks, and for the time and costs of maintaining their uniforms. These derivative claims should be certified for the same reasons as the underlying claims.

Thus, Plaintiffs' claims under Labor Code §226 for Defendants' failure to provide itemized wage statements that "accurate[ly]" show total "wages earned" should be certified because crew members' wages statements do not reflect all wages due, overtime wages, missed meal or rest

---

[29] To the extent Defendants may argue that different class members have complied with the washing and ironing requirement in different ways, that dispute goes to damages, not liability. Plaintiffs need only prove the scope of Defendants' classwide policies requiring such washing and ironing. The extent to which individual class members complied with those mandatory policies can be proven, at the damages phase, through expert testimony, representative testimony, Defendants' time records, and extrapolation from a statistical sample—especially given the small number of variables involved. *See* Rubin Decl. ¶12; *see, e.g.*, *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 333 (2004) ("statistical sampling . . . does not dispense with proof of damages but rather offers a different method of proof") (internal quotation marks omitted); *Brinker*, 53 Cal. 4th at 1054 (Werdegar, J., concurring).

break wages, or wages for time spent or expenses incurred maintaining uniforms.  *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 441 (C.D. Cal. 2014) (certifying inaccurate wage statement claims); *Ortega*, 2012 WL 6708161 at *4 (same). [30]  Similarly, Plaintiffs' claims for failure to pay all wages due under Labor Code §204, unfair business practices under Bus. & Prof. Code §17200, failure to pay all wages due upon discharge or resignation under Labor Code §203, and failure to maintain required records under Labor Code §1174 and IWC Wage Order No. 5-2001 §7, are each partially derivative of claims discussed above.  *See, e.g.*, *Boyd*, 300 F.R.D. at 442 (certifying similar claims); *Dilts*, 267 F.R.D. at 640 (same).  Plaintiffs' negligence claims against McDonald's for failing to exercise due care in the selection, hiring, retention, supervision, and control of Smith in its operation of the restaurants will turn on classwide evidence regarding McDonald's interactions with Smith, and are otherwise derivative of Plaintiffs' other claims. [31]

### 2.  A Class Action is Superior to Multiple Individual Actions.

Plaintiffs also satisfy the superiority requirement of Rule 23(b)(3).  "A class action is the superior method for managing litigation if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  In employment cases involving low-wage workers like this, the alternative to a class action is no case at all.

### a.  Class Members Have Limited Interest in Individually Controlling Separate Actions.

Class treatment is appropriate because the "risks entailed in suing one's employer are such that the few hardy souls who come forward should be permitted to speak for others when the vocal

---

[30] Payments due under Labor Code §226.7 for missed or late meal or rest breaks "are a form of wages."  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1114 (2007).  So are payments to employees to maintain work uniforms.  *In re Work Unif. Cases*, 133 Cal.App.4th 328, 338 (2005).  Thus, if an employer fails to make such payments, it violates Section 226 "by failing to include premium pay" for each missed or late meal or rest period (and for each uniform maintenance cost) on wage statements.  *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F. Supp. 2d 1038, 1047 n.4 (C.D. Cal. 2012).

[31] Plaintiffs are entitled to pursue all of their Labor Code Private Attorneys General Act ("PAGA") claims, beginning one year before Plaintiffs' complaint was filed, on a representative action basis *without* certification under Rule 23.  *See Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121, 1123-24 (9th Cir. 2014); *Arias v. Superior Court*, 46 Cal.4th 969, 975 (2009); Labor Code §2698 *et seq.*  Consequently, Plaintiffs are not seeking certification of their PAGA claims.  Plaintiffs also bring individual non-derivative claims, but do not seek to certify them.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

ones are otherwise fully qualified." *Ste. Marie v. E. R.R. Ass'n*, 72 F.R.D. 443, 449 (S.D.N.Y. 1976). Where, as here, the cost of many individual actions would be prohibitively high and the damages at issue relatively modest, few if any class members would seek to vindicate their rights individually. *See Leyva*, 716 F.3d at 515; *Amchem*, 521 U.S. at 617; *Hanlon*, 150 F.3d at 1023.

### b. It Is Desirable to Concentrate Class Members' Claims in This Forum.

Plaintiffs are not aware of any ongoing litigation by class members asserting similar claims (further demonstrating that class litigation is the only practical means of resolving these claims). It is logical and efficient to concentrate litigation of class members' California state law claims in this forum, given that the claims involve California law and the restaurants at issue are all located in this District. *See* Dkt. 2-1 ¶6.

### c. Classwide Resolution of Class Members' Claims Will Be Manageable.

Class litigation will remain manageable due to the predominance of common issues. As demonstrated above, the many common, dispositive issues in this case can be adjudicated on a classwide basis using common evidence, and any individualized damages can be adjudicated after classwide resolution of liability. *See* Rubin Decl. ¶¶3-14 (describing Trial Plan).

All wages due, overtime, and meal period and rest break damages can be calculated using Defendants' time and payroll records.[32] Damages for Defendants' maintenance-of-uniforms violations can be determined once liability is established through representative evidence and statistical sampling. *See Boyd*, 300 F.R.D. at 444. Damages for Defendants' wage statement violations can be calculated using the standard statutory rates. *See* Labor Code §226(e)(1). Damages and penalties for the derivative claims can be calculated in the same fashion as the corresponding primary claims or by relying on standard statutory rates. *See, e.g.*, Labor Code §203 (penalties for failure to pay all wages due upon termination based on employee's wage rate).

### C. Certification of the Injunction Subclass Is Proper Under Rule 23(b)(2).

In addition to the Rule 23(b)(3) damages claims discussed above, Plaintiffs independently

---

[32] Although Defendants failed to maintain time records in electronically manipulable format from before October 2012, Defendants kept PDF records from that period. Smith Dep. 89:3-6, 90:15-91:1, Exs. 54, 55.

seek certification under Rule 23(b)(2) to pursue injunctive and declaratory relief under Labor Code §§1194.5 and 226(h) to enjoin Defendants' further overtime, meal and rest break, maintenance-of-uniforms, wage statement, and other violations.

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  The rule does not require the court "to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125.  "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Id.* (internal quotation marks omitted).  It does not matter if "some class members may have suffered no injury or different injuries from the challenged practice"; and "unlike actions brought under one of the other 23(b) prongs, questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions." *Id.* (internal quotation marks omitted).

Here, injunctive and declaratory relief is appropriate to order Defendants: (1) to adopt a lawful "workday" and to calculate and pay crew members overtime when they work over eight hours in that lawful workday; (2) to implement a lawful meal and rest break policy that authorizes and provides timely, lawfully required meal periods and rest breaks and pays an hour's wages when such a break is not provided; (3) to adopt a policy to pay crew members for the time and reimburse them for the expense of maintaining their uniforms, either by providing a sufficient monetary allowance to cover the time and costs of ironing and cleaning the uniforms or by having Defendants wash and iron the uniforms for crew members free of charge; and (4) to update their wage statements to list McDonald's name and address as crew members' employer.

### D.  Alternatively, the Court May Adjudicate Common Issues on a Classwide Basis Pursuant to Rule 23(c)(4).

Even if the Court were to conclude that the requirements of Rule 23(b)(3) or Rule 23(b)(2) are not met, the Court should still utilize the resource-conserving mechanism available under Rule

23(c)(4) to adjudicate those issues capable of classwide resolution separately before turning to any remaining individualized issues. *See* Fed. R. Civ. P. 23(c)(4); *see, e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 544 (N.D. Cal. 2012). As the Ninth Circuit has explained in the context of an action under Rule 23(b)(3): "Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule [23(c)(4)] and proceed with class treatment of these particular issues." *Valentino*, 97 F.3d at 1234. The same reasoning applies under Rule 23(b)(2). Thus, at a minimum, the Court should certify for classwide resolution under Rule 23(c)(4) the common issue of whether McDonald's is a joint employer of crew members at the restaurants, and any other common issue the Court finds amendable to classwide resolution.

## IV.   CONCLUSION

For the foregoing reasons, the proposed Class and Subclasses should be certified under Rule 23(b)(3) and Rule 23(b)(2), and Altshuler Berzon LLP and Cohen Milstein Sellers & Toll, PLLC should be appointed as class counsel.

Date:   April 6, 2015                          Respectfully submitted,

                                               By:   s/Matthew J. Murray
                                                         Matthew J. Murray

                                               MICHAEL RUBIN
                                               BARBARA J. CHISHOLM
                                               P. CASEY PITTS
                                               MATTHEW J. MURRAY
                                               Altshuler Berzon LLP

                                               JOSEPH M. SELLERS
                                               (*pro hac vice*)
                                               ABIGAIL E. SHAFROTH
                                               (*pro hac vice*)
                                               Cohen Milstein Sellers & Toll, PLLC

                                               *Attorneys for Plaintiffs*