Fred W. Alvarez (SBN 68115)
Allison B. Moser (SBN 223065)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone: 650.739.3939
Facsimile: 650.739.3900
Email: falvarez@jonesday.com
         amoser@jonesday.com

Matthew W. Lampe (SBN 4620852) (pro hac vice)
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: 212.326.3939
Facsimile: 212.755.7306
Email: mlampe@jonesday.com

Lawrence C. DiNardo (SBN 3128594) (pro hac vice)
Elizabeth B. McRee (SBN 6275501) (pro hac vice)
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone: 312.782.3939
Facsimile: 312.782.8585
Email: emcree@jonesday.com

Attorneys for Defendants McDonald's Corporation,
McDonald's USA, LLC and McDonald's Restaurants
of California, Inc.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| STEPHANIE OCHOA, ERNESTINA SANDOVAL, YADIRA RODRIGUEZ, and JASMINE HEDGEPETH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MCDONALD'S CORP., a corporation, MCDONALD'S U.S.A., LLC, a limited liability company, MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., a corporation, THE EDWARD J.  SMITH AND VALERIE S. SMITH FAMILY LIMITED PARTNERSHIP d/b/a MCDONALD'S, a limited partnership, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.  3:14-cv-02098-JD<br><br>**DEFENDANTS MCDONALD'S CORP., MCDONALD'S USA, LLC, AND MCDONALD'S RESTAURANTS OF CALIFORNIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:          Wed., May 13, 2015<br>Time:          9:30 a.m.<br>Courtroom:  11<br>Judge:         Hon. James Donato<br><br>Complaint Filed:  March 12, 2014<br>Trial Date:         September 14, 2015 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 2

   A.   The Court Should Decide Whether Plaintiffs' Claims Can Be Maintained
        Against McDonald's Before Deciding Class Certification .................................... 2

   B.   Time Record Data From Putative Class Members Confirms That
        Certification Should Be Denied ............................................................................. 5

        1.   Time Record Data Shows That There Is No Systemic Policy Or
             Practice Not To Provide Meal and Rest Breaks, And That Any
             Violations Cannot Be Proven Through Common Evidence ...................... 5

             (a)   Time Record Data Does Not Demonstrate Either A Common
                   Practice Of Denying Meal Breaks, Or Show Any Pattern In The
                   Crew Members Or Shifts With Unrecorded Breaks..................7

             (b)   Time Record Data Does Not Demonstrate Either A Common
                   Practice Of Denying Rest Breaks Or Show Any Pattern In The
                   Crew Members Or Shifts With Unrecorded Breaks..................8

        2.   Time Record Data Shows That There Is A Class Conflict
             Precluding Certification Of Plaintiffs' Daily Overtime Claim ................ 10

   C.   Plaintiffs' "Trial Plan" Does Not Overcome The Defects In Their Class
        Certification Motion, And Does Not Show How Their Claims Can Be
        Tried On A Representative Basis .......................................................................... 11

III. CONCLUSION ............................................................................................................. 13

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

4

CASES

5

*Aleksick v. 7-Eleven, Inc.*
205 Cal. App. 4th 1176 (2012).................................................................................2

6

7

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P,*
247 F.R.D. 156 (C.D. Cal. 2007) ......................................................................10, 11

8

9

*Andrews Farms v. Calcot, Ltd.,*
No. CV-F-07-0464, 2009 WL 1211374 (E.D. Cal. May 1, 2009)...........................10

10

11

*Blackwell v. SkyWest Airlines, Inc.,*
245 F.R.D. 453 (S.D. Cal. 2007).............................................................................11

12

13

*Brody v. AstraZeneca Pharms., LP,*
No. CV 06-6862 ABC, 2008 U.S. Dist. LEXIS 107301 (C.D. Cal. June 11,
2008) .........................................................................................................................3

14

15

*Brown v. Fed. Express Corp.,*
249 F.R.D. 580 (C.D. Cal. 2008) ...........................................................................11

16

17

*Bucklin v. Am. Zurich Ins. Co.,*
No. 2:11-CV-05519-SVW-MRW, 2013 U.S. Dist. LEXIS 86342 (C.D. Cal.
June 19, 2013)............................................................................................................3

18

19

*Christopher v. SmithKline Beecham Corp.,*
No. CV-08-1498-PHXFJM, 2009 U.S. Dist. LEXIS 108992 (D. Ariz. Nov. 20,
2009) .........................................................................................................................3

20

21

*Clarke v. JPMorgan Chase Bank, N.A.,*
No. 08 Civ. 2400 (CM), 2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. March 26,
2010) .........................................................................................................................3

22

23

*Hadjavi v. CVS Pharmacy, Inc.,*
No. 10-4886, 2011 WL 3240763 (C.D. Cal. July 25, 2011)....................................5

24

25

*Howard v. CVS Caremark Corp.,*
No. 13-cv-04748, 2014 WL 7877404 (C.D. Cal. Dec. 9, 2014).............................10

26

27

*Muller v. Am. Mgmt. Ass'n Int'l,*
368 F. Supp. 2d 1166 (D. Kan. 2004) ......................................................................4

28

ii

*Patterson v. Domino's Pizza, LLC*,
 60 Cal. 4th 474 (2014) ......................................................................................2

*Rivera v. Schering Corp.*,
 No. CV 08-1743-GW(JCx), 2008 U.S. Dist. LEXIS 111105 (C.D. Cal. Aug.
 14, 2008) ...........................................................................................................3

*Smith v. Johnson & Johnson*,
 No. 06-4787 (JLL), 2008 U.S. Dist. LEXIS 104952 (D.N.J. Dec. 30, 2008),
 *aff'd* 593 F.3d 280 (3d Cir. 2009)......................................................................3

*Sultan v. Medtronic, Inc.*,
 No. 11-4132, 2012 WL 3042212 (C.D. Cal. July 23, 2012)................................5

*Taylor v. Waddell & Reed, Inc.*,
 No. 09cv2909 AJB (WVG), 2012 U.S. Dist. LEXIS 212 (S.D. Cal. Jan. 3,
 2012) ...................................................................................................................3

*Vann v. Massage Envy Franchising LLC*,
 No. 13-cv-2221, 2015 WL 74139 (S.D. Cal. Jan. 6, 2015)................................2

*Wal-Mart v. Dukes*,
 131 S. Ct. 2541 (2011) ........................................................................................4

*Winans v. Starbucks Corp.*,
 796 F. Supp. 2d 515 (S.D.N.Y. 2011) ................................................................3

**STATUTES**

Fair Labor Standards Act ...........................................................................................3, 4

**OTHER AUTHORITIES**

Cal. IWC Wage Order No. 5-2001...............................................................................5

Rule 23 ............................................................................................................... passim

iii

1    **I.      INTRODUCTION**

2            McDonald's Corporation, McDonald's USA, LLC, and McDonald's Restaurants of

3    California, Inc. (collectively, "McDonald's") join in all the arguments that co-Defendant Edward

4    J. Smith and Valerie S. Smith Family Limited Partnership ("Smith") makes in its Opposition to

5    Plaintiffs' Motion for Class Certification.  McDonald's writes separately to address Plaintiffs'

6    arguments that the Court should certify all or part of their proposed class based on allegations that

7    McDonald's is either a joint employer with, or principal of, Smith, as well as the expert findings

8    Plaintiffs use to support their motion and the "trial plan" declaration from Michael Rubin.

9            The Court should decide the threshold question of whether McDonald's is a joint

10   employer before deciding whether to certify a class. McDonald's will be moving for summary

11   judgment on this issue before the hearing on class certification, and a decision dismissing

12   McDonald's from the case will moot class certification against McDonald's, thus saving the time,

13   expense, and confusion that would result from the issuance of multiple Rule 23 opt-out notices to

14   putative class members that may result from deciding class certification before the joint employer

15   issue.  In addition, Plaintiffs' joint employer allegations do nothing to advance the resolution of

16   the certification question because they do not overcome individualized underlying issues related

17   to liability that are necessary for the Court to decide, as discussed in Smith's Opposition and in

18   parts II and III of this brief.

19           As for Plaintiffs' expert analysis of meal and rest break practices, Plaintiff's expert's

20   report amounts to little more than an exercise in counting unrecorded breaks, which is insufficient

21   to establish that the breaks were not taken or provided to crew members, much less that common

22   questions of fact or law predominate with respect to Plaintiffs' claims.  In fact, as McDonald's

23   expert, Dr. David Lamoreaux, states in his report, the data viewed in context shows that there

24   cannot be any common policy or practice to withhold meal or rest breaks, considering the high

25   number of recorded breaks and/or the variances in recorded breaks between crew members who

26   work in the same restaurants for the same managers.  Plaintiffs' expert's analysis of daily

27   overtime pay also fails to provide a foundation for class certification because it does not consider

28   the negative impact Plaintiffs' unfounded daily overtime argument would have on other putative

1

1   class members, who would lose overtime pay if Plaintiffs' speculative theory prevailed.

2          All this data analysis, as well as the arguments set forth in Smith's Opposition, strip

3   Plaintiffs' "trial plan" of any substance.  Their trial plan is basically a rehash of their Motion for

4   Class Certification and relies on the same demonstrably incorrect fact assertions and faulty data

5   analysis as their motion.  There is nothing in Plaintiffs' motion or trial plan that shows they can

6   actually prove the individualized claims of putative class members with representative evidence,

7   except for the single claim related to miscalculated overtime wages, and thus neither their motion

8   nor their trial plan supports certification.

9   **II.     ARGUMENT**

10          **A.     The Court Should Decide Whether Plaintiffs' Claims Can Be Maintained
                     Against McDonald's Before Deciding Class Certification.**

11

12          McDonald's is a defendant in this case only because Plaintiffs allege in their First

13   Amended Complaint that McDonald's is their joint employer, or the principal of Plaintiffs' actual

14   employer, Smith.  By pursuing claims against McDonald's, Plaintiffs are urging a dramatic

15   rejection of settled authority, affirmed barely six months ago by the California Supreme Court,

16   that a franchisor is not a joint employer of its franchisee's employees.  *See, e.g.*, *Patterson v.*

17   *Domino's Pizza, LLC*, 60 Cal. 4th 474 (2014) (granting summary judgment to franchisor, finding

18   it was not a joint employer).  In *Patterson*, the California Supreme Court, as numerous other

19   courts have done, decided this joint employer question as a matter of law.  *See, Patterson*, 60 Cal.

20   4th, at 496 (agreeing with the trial court's finding, "as a matter of law, that no agency relationship

21   existed between franchisor and franchisee," and that franchisor was not the employer of

22   franchisees' employees).  *See also Vann v. Massage Envy Franchising LLC*, No. 13-cv-2221,

23   2015 WL 74139 (S.D. Cal. Jan. 6, 2015) (granting summary judgment to franchisor on joint

24   employer allegations, thereby mooting class certification claims); *Aleksick v. 7-Eleven, Inc.* 205

25   Cal. App. 4th 1176, 1180 (2012) (affirming grant of summary judgment in favor of franchisor,

26   stating that "[t]he trial court correctly determined 7-Eleven is entitled to judgment as a matter of

27   law").  Consistent with *Patterson*, prior to the Court's hearing on Plaintiffs' motion for class

28   certification, scheduled for May 13, McDonald's will move for summary judgment on the joint

2

1  employer issue.  The Court should consider McDonald's motion before deciding whether a class

2  should be certified here.

3          Numerous courts both within and outside the Ninth Circuit, in the exercise of their

4  discretion and inherent authority to manage cases in a practicable and efficient manner, have

5  considered summary judgment motions either before or at the same time as plaintiffs' Rule 23

6  class certification motions or Fair Labor Standards Act conditional certification motions, and

7  have denied the certification motion as moot after granting summary judgment to defendants.

8  *See, e.g., Bucklin v. Am. Zurich Ins. Co.*, No. 2:11-CV-05519-SVW-MRW, 2013 U.S. Dist.

9  LEXIS 86342, at *60 (C.D. Cal. June 19, 2013) (granting employer's motion for summary

10  judgment on meal and rest break claims, and denying as moot plaintiffs' motion for class

11  certification); *Taylor v. Waddell & Reed, Inc.*, No. 09cv2909 AJB (WVG), 2012 U.S. Dist.

12  LEXIS 212, at **2-3 (S.D. Cal. Jan. 3, 2012) (granting employer's motion for partial summary

13  judgment and denying as moot plaintiffs' motion for conditional class certification); *Christopher*

14  *v. SmithKline Beecham Corp.*, No. CV-08-1498-PHXFJM, 2009 U.S. Dist. LEXIS 108992, at

15  **14-15 (D. Ariz. Nov. 20, 2009) (granting employer's summary judgment motion and denying

16  as moot plaintiffs' motion for conditional certification); *Brody v. AstraZeneca Pharms., LP*, No.

17  CV 06-6862 ABC (MANx), 2008 U.S. Dist. LEXIS 107301, at **28-29 (C.D. Cal. June 11,

18  2008) ("For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. In

19  light of the foregoing, Plaintiff's Motion for Class Certification is STRICKEN AS MOOT.");

20  *Rivera v. Schering Corp.*, No. CV 08-1743-GW(JCx), 2008 U.S. Dist. LEXIS 111105, at *12

21  (C.D. Cal. Aug. 14, 2008) (granting defendant's motion for summary judgment, and denying

22  plaintiffs' motion for class certification as moot).  *See also Winans v. Starbucks Corp.*, 796 F.

23  Supp. 2d 515, 520 (S.D.N.Y. 2011) (granting defendant's motion for summary judgment on

24  plaintiff's state law claims and accordingly denying as moot plaintiffs' Rule 23 class certification

25  motion); *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM)(DCF), 2010 U.S. Dist.

26  LEXIS 33264, at *2 (S.D.N.Y. March 26, 2010) (granting defendant's summary judgment motion

27  on plaintiffs' FLSA and state wage and hour claims, and accordingly denying as moot plaintiffs'

28  collective action certification motion); *Smith v. Johnson & Johnson*, No. 06-4787 (JLL), 2008

3

U.S. Dist. LEXIS 104952, at *36-37 (D.N.J. Dec. 30, 2008), *aff'd* 593 F.3d 280 (3d Cir. 2009) (granting employer's motion for summary judgment over FLSA claims, and accordingly refusing to consider plaintiff's conditional certification motion as moot); *Muller v. Am. Mgmt. Ass'n Int'l*, 368 F. Supp. 2d 1166, 1177 (D. Kan. 2004) (granting employer's motion for summary judgment on FLSA claims and accordingly denying plaintiffs' motion for class certification as moot).

Here, if class certification were granted before the Court even has a chance to consider whether a claim can be maintained against McDonald's, it likely would result in a waste of time and resources, not to mention confusion to class members. Once a class is certified, Rule 23(c)(2)(B) requires the Court to direct notice to class members informing them of, among other things, the nature of the action; the claims, issues, and defenses of the parties; and class members' right to be excluded from the case. If McDonald's is later dismissed because it is not a joint employer and thus no claim can be stated against it, the Court would have to direct that notice be re-sent, undoubtedly resulting in confusion for class members who would question why they are receiving a second notice, and also may lead them to change their decision about whether to exclude themselves from the lawsuit. At the very least, this would needlessly waste time and resources, and delay the ultimate resolution of the case while the Court resolved the inevitable administrative issues resulting from issuance of multiple notices.

Further, none of Plaintiffs' joint employer allegations advance the Court's class certification inquiry, even though Plaintiffs assert that they create common questions. In *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), the Supreme Court instructed that it is not enough to simply establish that there are some questions of law or fact common to the class. Instead:

> "What matters to class certification ... is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id*. at 2551 (internal citations omitted).

Here, Plaintiffs' joint employer claims do not "drive the resolution of the litigation" because they only address who is a proper defendant. They do nothing to establish whether there was a violation of California's meal and rest break requirements, or whether putative class

4

1   members were required to incur additional expense to maintain their uniform items, or whether

2   some Plaintiffs were unlawfully denied overtime pay on overnight shifts that spanned two work

3   days.[1]

4          McDonald's summary judgment motion will fully address all of the inaccuracies in

5   Plaintiffs' First Amended Complaint and their class certification motion concerning McDonald's

6   role in Smith's business operations.  As demonstrated by the numerous cases that have dealt with

7   threshold issues up front, there is no reason for the Court to decide certification before addressing

8   the question of whether McDonald's even belongs in this case.

9   **B.    Time Record Data From Putative Class Members Confirms That
          Certification Should Be Denied.**

10

11  **1.    Time Record Data Shows That There Is No Systemic Policy Or
          Practice Not To Provide Meal and Rest Breaks, And That Any
          Violations Cannot Be Proven Through Common Evidence.**

12

13         Smith's Opposition sets forth in detail all the reasons Plaintiffs' meal and rest break

14  claims cannot be decided on a classwide basis.  (Smith Opp. at 9-18.)  McDonald's joins Smith's

15  arguments on meal and rest break claims and will not restate in detail here all the authority

16  holding that IWC Wage Order No. 5-2001's requirement that an employer "provide" meal

17  periods, and "authorize and permit" rest breaks makes such claims unsuitable for certification.  It

18  is enough to say here that courts interpreting California law routinely deny certification of meal

19  and rest break classes because "the Court would be forced to proceed store-by-store and

20  employee-by-employee," *Hadjavi v. CVS Pharmacy, Inc.*, No. 10-4886, 2011 WL 3240763, at *8

21  (C.D. Cal. July 25, 2011), "to determine in each instance whether the statutorily required

22  opportunity for a meal break was provided," and "in each instance why the meal period was

23  missed," *Sultan v. Medtronic, Inc.*, No. 11-4132, 2012 WL 3042212, at *2 (C.D. Cal. July 23,

24  2012).  And, as discussed in Smith's Opposition, there are numerous individualized issues in this

25  ───────────────

26  [1] Indeed, this precise point is highlighted by Plaintiffs' allegation that crew members'
    wages may have been miscalculated as a result of an alleged error either in the submission of
    crew member hours information to Smith's payroll company, or in the translation of that

27  information by the payroll company.  (Class Cert. Motion at 4-5.)  Plaintiffs' joint employer
    arguments have no impact on the allegation that Smith's own error, or an error by its payroll

28  vendor, led to the underpayments in question.

5

1    case, including whether crew members understood Smith's meal and rest break policies, whether

2    crew members accurately recorded all meal and rest breaks, whether any unrecorded breaks were

3    provided, and the extent to which putative class members decided to forgo breaks, each of which

4    makes classwide adjudication unfeasible.

5           To further illustrate the varied circumstances of putative class members, and the lack of

6    questions of fact or law common to the class, McDonald's retained an expert, Dr. David P.

7    Lamoreaux, to analyze putative class members' time record data, as well as the methodology and

8    conclusions of Plaintiffs' expert, David M. Breshears, with regard to Plaintiffs' meal and rest

9    break claims.  For the sake of consistency, Dr. Lamoreaux's report relies on the coding of the data

10   in Mr. Breshears' report, and his designations of shifts, rest breaks and meal breaks, without

11   independently determining, or opining on, whether those designations are correct.  Neither Dr.

12   Lamoreaux nor McDonald's espouse Mr. Breshears designations – including his conclusion that

13   any particular break is a meal or rest break – but nonetheless use them in the report and in this

14   brief to demonstrate that Mr. Breshears' analysis does not support class certification.

15          As a threshold matter, despite Plaintiffs' contentions in their motion (at 7), nothing in Mr.

16   Breshears' analysis concludes, nor could it conclude, that anyone in the time data he reviewed

17   was not "provided" the opportunity to take a meal or rest break.  Mr. Breshears' analysis was

18   limited to counting the specific number of meal and rest breaks that were recorded or not

19   recorded by crew members at Smith's restaurants.  His analysis cannot answer whether crew

20   members actually recorded all the rest breaks they took – indeed, his analysis wholly ignores

21   admissions from Plaintiffs in their depositions that they often failed to record meal and rest breaks

22   that they took (Smith Opp. at 5-6) – nor is Mr. Breshears in any position to determine whether a

23   break that a crew member did not record was in fact provided to, and declined by, the crew

24   member.  Mr. Breshears' analysis reflects the breaks that were recorded – nothing more – and

25   even the limited value of that analysis is diminished by Plaintiffs' attempt to manipulate those

26   calculations to create the appearance of a common pattern of meal and rest break violations where

27   none exists.

28

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO.  3:14-cv-02098-JD**

(a)    **Time Record Data Does Not Demonstrate Either A Common Practice of Denying Meal Breaks, Or Show Any Pattern In The Crew Members Or Shifts With Unrecorded Breaks.**

Mr. Breshears finds that many crew members in the data set he analyzed have at least ███ of an unrecorded meal break in shifts exceeding ██████. (Class Cert. Motion, Decl. of David M. Breshears ("Breshears Decl.") ¶¶ 33-36.)  But, of course, one instance of an unrecorded meal break amongst potentially hundreds of shifts hardly shows a common policy or practice of denying that crew member the opportunity to take meal breaks.  In setting such a low threshold for his analysis, Mr. Breshears fails to note the tremendous variation across the five restaurants, and amongst crew members within the same restaurant, as to the number of unrecorded meal breaks in shifts exceeding five hours.  Dr. Lamoreaux shows in his report that in each restaurant, individual crew members will record a meal break anywhere from ████████ of the time, depending on the employee. (Decl. of David P. Lamoreaux, Ph.D. ("Lamoreaux Decl.") Ex. A, Report in the Matter of *Ochoa et al. v. McDonald's Corp. et al.* ("Lamoreaux Report") at 6, Fig. 1.)  Thus, at location 1405, for example, ████ of crew members always record a meal break in a shift of over ████. (Lamoreaux Report, Fig. 1.)  The great majority of crew members at location 1405 record a meal break in more than ███ of shifts of over ████. (Lamoreaux Report, Fig. 1.)  But some crew members, albeit small numbers, record meal breaks in ████████ or even less of their shifts. (Lamoreaux Report, Fig. 1.)  As Dr. Lamoreaux shows, this variation is present in each Smith restaurant at issue in this case. (Lamoreaux Report, Fig. 1.)  This wide variation amongst crew members – and the large percentage of crew members who record meal breaks the vast majority of the time – refutes Plaintiffs' assertion that Defendants engage in a common policy or practice of failing to provide meal breaks.

Mr. Breshears also finds that about ███ of shifts between ██████████ did not have a recorded meal break, while less than ███ of shifts in excess of ██████ did not have a recorded meal break. (Breshears Decl. ¶ 35.)  About ███ of all shifts that Mr. Breshears identifies as having an unrecorded meal period occur during shifts between ██████████. (Lamoreaux Report at 7.)  As Dr. Lamoreaux states in his report, the stark contrast in the behavior of crew

7

members working a five to six hour shift versus a shift of more than six hours is unsurprising, and completely consistent with crew members having the opportunity to take, and declining, a meal break.  Indeed, crew members have every incentive not to take meal breaks during shifts of five to six hours.  "[T]aking an unpaid meal period offers no pecuniary benefit to the crew member since the meal period is unpaid, but potentially imposes additional opportunity costs on the crew member that they would not otherwise incur if they work their scheduled shift though to completion."  (Lamoreaux Report at 7.)  Most notably, crew members may forgo leisure time and time spent on other activities as a result of a 30-minute, unpaid extension of their shift.  (Lamoreaux Report at 7.)  Given the strong incentive to work shifts to completion in the five to six hour range, deciding whether unrecorded meal periods were the result of choices and preferences of crew members will require individual inquiry.

Mr. Breshears and Dr. Lamoreaux agree that over ███ of shifts in excess of ██████ show a recorded meal period.  Clearly, this too is inconsistent with a policy or practice of systematically denying crew members the opportunity to take a meal break.  (Lamoreaux Report at 7.)  Moreover, in addition to being very rare, there is considerable variation amongst crew members with respect to recording meal periods during shifts of this length.  About ███ of crew members always record a meal break in shifts in excess of ██████.  (Lamoreaux Report at 8.)  Plaintiffs Stephanie Ochoa, Jasmine Hedgepeth, and Yadira Rodriguez recorded a meal break *in every single shift* they worked in excess of ██████, and Ernestina Sandoval recorded a meal break *in* ██████ shifts in that range.  (Lamoreaux Report at 8.)  But other crew members – albeit very few – never record a meal break.  (Lamoreaux Report at 8, Fig. 2.)  Again, this is completely inconsistent with Plaintiffs' claim that they can show a common policy or practice of failing to provide meal breaks.

      **(b)**     **Time Record Data Does Not Demonstrate Either A Common Practice Of Denying Rest Breaks Or Show Any Pattern In The Crew Members Or Shifts With Unrecorded Breaks.**

Mr. Breshears states that ██████ of crew members in the data set who worked a shift exceeding ██████ have at least one instance of an unrecorded rest break.  (Breshears Decl.

8

1   ¶ 66.)  As with meal breaks, however, this analysis – focusing on whether a crew member has just

2   one instance of an unrecorded rest break in potentially hundreds of shifts – provides the Court

3   with almost no evidence of a common policy or plan not to provide rest breaks to crew members.

4   In fact, Mr. Breshears finds that ████ of shifts lasting between ██████████ have a recorded

5   rest break.  (Lamoreaux Report at 9.)  Despite these high totals, the data shows large variation

6   from crew member to crew member within a restaurant.  For instance at location 7498, the

7   percentage of shifts in the ██████████ range where an individual crew member failed to record

8   a rest break varies from ███ to more than ███, and at both location 1745 and 7634, it varies from

9   ██████████  (Lamoreaux Report at 10, Fig. 3.)

10      Mr. Breshears' report also finds that about ███ of shifts between ██████████ did not

11  have a second recorded rest break (meaning that about ███ <u>did</u> have a second recorded rest

12  break).  (Breshears Decl. ¶ 67.)  The fact that nearly ███ of shifts between ██████████

13  include a recorded rest break shows that there is no common policy or practice of denying second

14  rest breaks to crew members.  (Lamoreaux Report at 10-11.)  This conclusion is bolstered by

15  crew-member–to-crew-member variation in the percentage of unrecorded second rest breaks

16  within each restaurant.  (Lamoreaux Report at 11, Fig. 4.)  For instance, as Dr. Lamoreaux

17  demonstrates, across all locations, the percentage of recorded second rest breaks ranges from ███

18  ██████ depending on the individual crew member.  (Lamoreaux Report, Fig. 4.)

19      Moreover, Dr. Lamoreaux's analysis refutes Plaintiffs' twin arguments that time data can

20  be relied upon to determine whether a crew member took a rest break and that rest breaks were

21  always "manager directed."  (Class Cert. Motion at 15-16.)  Dr. Lamoreaux points to extreme

22  differences in rest breaks recorded by two crew members who worked the same or similar shifts

23  at location 1405 from 2012 through 2014.  One of these crew members, ██████████,

24  recorded first and second rest breaks in over ███ of her shifts.  The other, ██████████,

25  recorded first and second rest breaks only about ███ of the time.  (Lamoreaux Report at 11.)  If

26  crew members always recorded their breaks, and if rest breaks were always manager directed, as

27  Plaintiffs contend, there could not possibly be such a wide variation in the number of breaks

28  recorded by two crew members working similar shifts in the same restaurant, and therefore

9

1    reporting to the same restaurant general manager and shift managers.  In fact, the only

2    explanation consistent with Plaintiffs' arguments would be that the same general manager or shift

3    manager treated two crew members completely differently when it came to providing them with

4    rest breaks.  But Plaintiffs cannot make that argument because it would only confirm that the

5    question of whether crew members were permitted rest breaks by Smith's general managers or

6    shift managers has to be decided on an employee-by-employee basis.

7    Thus, time record data, when viewed in context, clearly demonstrates no common policy

8    or practice of failing to provide crew members with meal or rest breaks.  Rather, it confirms all

9    the reasons provided in the Smith Opposition for why class certification cannot be granted on

10   Plaintiffs' meal and rest break claims.

11   **2.      Time Record Data Shows That There Is A Class Conflict Precluding
          Certification Of Plaintiffs' Daily Overtime Claim.**

12

13   As Smith discusses in its Opposition, Plaintiffs' claim that Smith failed to pay all daily

14   overtime wages whenever a crew member worked an overnight shift followed by a shift

15   beginning the next day suffers from a fatal defect that precludes certification – Plaintiffs cannot

16   satisfy either Rule 23(a)(3)'s requirement that a plaintiff's claim be "typical of the claims … of

17   the class," or Rule 23(a)(4)'s requirement that the plaintiff "fairly and adequately protect the

18   interests of the class."  It is black-letter law that where the claims of a named plaintiff create a

19   conflict of interest with the claims of other putative class members, certification of the proposed

20   class is inappropriate.  *See, e.g., Howard v. CVS Caremark Corp.*, No. 13-cv-04748, 2014 WL

21   7877404, at *19 (C.D. Cal. Dec. 9, 2014) (denying motion for class certification where "potential

22   conflicts of interest between" plaintiffs and some putative class members demonstrated that

23   "[p]laintiffs and their counsel are not adequate representatives as to all class members"); *Andrews*

24   *Farms v. Calcot, Ltd.*, No. CV-F-07-0464, 2009 WL 1211374, at *11 (E.D. Cal. May 1, 2009)

25   (concluding that plaintiffs failed to meet Rule 23(a)(4) where a "conflict of interest exists

26   between the interests of the class representatives" and putative class members, and thus, "the

27   class representatives cannot represent adequately the interests" of putative class members); *Allied*

28   *Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P*, 247 F.R.D. 156, 177 (C.D. Cal.

10

2007) (noting that "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class") (citations omitted).

Here, Mr. Breshears' and Dr. Lamoreaux's analyses confirm such a conflict exists.  Mr. Breshears found that ▮ of the putative class is affected, in at least one payroll period, by Smith's calculation of overtime based on the day the shift began, as opposed to the calendar day method that Plaintiffs "contend" is appropriate.  (Breshears Decl. ¶ 30.)  But as Dr. Lamoreaux's analysis shows, there are ▮ paychecks involving ▮ crew members (or ▮ of the putative class) that would have lower calculated overtime hours due to calculating overtime on a calendar day, and ▮ shifts corresponding with ▮ overtime hours that would be counted as straight time rather than overtime. (Lamoreaux Report at 4.) Accordingly, Plaintiffs' calendar-day overtime claims are in an unavoidable and fundamental conflict with other members of the class who have an on-going interest in the continuation of Smith's current lawful calculation method, and would stand to be negatively affected if Plaintiffs prevail, making this issue not suitable for certification.

**C.      Plaintiffs' "Trial Plan" Does Not Overcome The Defects In Their Class Certification Motion, And Does Not Show How Their Claims Can Be Tried On A Representative Basis.**

After considering the anecdotal evidence in Smith's brief, along with Mr. Breshears' and Dr. Lamoreaux's time record analyses, the "trial plan" set forth in the Declaration of Michael Rubin falls apart.  (Class Cert. Motion, Decl. of Michael Rubin ("Rubin Decl.").)  The purpose of a trial plan is to inform the Court how the class action mechanism can resolve classwide liability questions efficiently and with representative evidence.  *See, e.g., Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 583 n.2 (C.D. Cal. 2008) ("An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 470 (S.D. Cal. 2007) (denying certification, noting that "[i]t appears that Plaintiff's trial plan does not allow for handling the dispute on a representative

11

1    basis; instead, it more than likely calls for an individual adjudication of the claim"). Plaintiffs'

2    "trial plan" does none of this because it does not credibly discuss either the testimonial evidence

3    or the time record data, electing instead to rely on unsupported assertions that common issues of

4    fact and law are present. As a result, the Rubin Declaration is nothing more than additional

5    argument in the guise of a trial plan, and suffers from the same defects as Plaintiffs' class

6    certification motion – it ignores variability in each class member's claims, asserts that there is no

7    variability, and thus concludes that the claims can be resolved through representative evidence.

8         For instance, the Rubin Declaration states that Plaintiffs can prove liability on their meal

9    and rest break claims through representative testimony that crew members were never trained on

10   when they could take breaks, only took breaks when specifically directed by a manager, and

11   always clocked out at the beginning of breaks and back in at the end. (Rubin Decl. ¶ 11.) But, as

12   Smith's Opposition describes, all those predicates for Plaintiffs' class certification arguments are

13   refuted by the fact record. As Plaintiffs and other crew members admit, they were instructed on

14   their entitlement to breaks, including by their managers at the time of hiring, through postings in

15   their restaurants, and through reminders from managers during their shifts. (Smith Opp. at 3-5,

16   12-13.) Plaintiffs and other crew members also were able dictate if and when they took their

17   breaks by asking managers for permission to take breaks, scheduling break times in advance –

18   sometimes at the beginning or end of a shift, sometimes in combination with other breaks – so

19   they could attend to personal matters during their shifts, and by consulting with other crew

20   members when no manager was available. (Smith Opp. at 5, 13-14.) And Plaintiffs and crew

21   members also admit that they sometimes forgot to clock out and back in for breaks, making it

22   impossible to determine if a break was taken, much less permitted. (Smith Opp. at 5-6, 14.) All

23   this is confirmed by the time record data, as described by Dr. Lamoreaux, which demonstrates

24   that there is no systematic denial of meal and rest breaks to crew members and no pattern

25   consistent with Plaintiffs' theory of "manager directed" breaks, even amongst crew members with

26   the same managers.

27        Similarly, the Rubin Declaration glosses over individualized issues on uniform

28   maintenance claims by stating that Plaintiffs can present representative testimony establishing

12

1   that crew members are required to wash and iron their uniforms before each shift without

2   reimbursement for their time and expense (Rubin Decl. ¶ 12), while ignoring testimony from

3   Plaintiffs themselves that they wash their uniform items with the rest of their clothes, sometimes

4   as infrequently as once every two weeks, as well as testimony that they can and do request

5   additional uniform items to avoid cleaning expenses (Smith Opp. at 6-7, 19-20).  And, of course,

6   Plaintiffs' trial plan for their daily overtime claim ignores the fact, as discussed by Dr.

7   Lamoreaux, that Plaintiffs' theory will actually deprive certain putative class members of their

8   opportunity for overtime pay.

9        Once these predicates and assumptions collapse, as described in Smith's Opposition and

10  confirmed by Dr. Lamoreaux, Plaintiffs are left with no trial plan at all.  They have no plan to try

11  by representative evidence all 500-plus putative class members' individualized claims regarding

12  whether they were provided meal and rest breaks, whether they incurred additional uniform

13  maintenance expenses, or whether they were properly paid daily overtime, or any of the

14  derivative claims arising from those allegations.  Thus, not only can they not meet Rule 23(b)(3)'s

15  requirement that common issues predominate, they also have utterly failed to show how class

16  adjudication is superior to other methods of adjudication for fairly and efficiently adjudicating the

17  controversy, or that a class action is a manageable way to resolve Plaintiffs' and putative class

18  members' claims.  Simply stated, each Plaintiff's and putative class member's claims will have to

19  be tried individually, and Plaintiffs' "trial plan" does nothing to change that fact.

20  **III.    CONCLUSION**

21       For the reasons explained above, McDonald's respectfully requests that the Court decide

22  McDonald's forthcoming motion for summary judgment on the joint employer issue before

23  deciding Plaintiffs' Motion for Class Certification, and/or deny Plaintiffs' motion for the reasons

24  stated in Smith's Opposition and parts II and III of this brief.

25

26

27

28

1    Dated: April 25, 2015                Respectfully submitted,

2                                JONES DAY

3

4                                By:   */s/ Elizabeth B. McRee*

5                                   Fred W. Alvarez
                                   Allison B. Moser

6                                   Matthew W. Lampe
                                   Lawrence C. DiNardo

7                                   Elizabeth B. McRee

8                                  Attorneys for Defendants
                                   MCDONALD'S CORPORATION;

9                                  MCDONALD'S USA, LLC;
                                   MCDONALD'S RESTAURANTS OF

10                                CALIFORNIA, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14