UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE OCHOA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MCDONALD'S CORP., et al.,<br><br>    Defendants. | Case No. 14-cv-02098-JD<br><br>**ORDER RE MOTION TO STRIKE DEPOSITION CHANGES**<br><br>Re: Dkt. No. 108 |

In this putative employment class action, three of the defendants -- all various McDonald's corporate entities -- move to strike 106 of the 161 changes plaintiffs have made to the deposition transcripts of the four named plaintiffs by means of errata sheets. The Court denies the motion subject to renewal if warranted.

Plaintiffs invoke Rule 30(e) of the Federal Rules of Civil Procedure, which allows the deponent to review the deposition transcript or recording within 30 days of notice of availability and make "changes in form or substance" by signing "a statement listing the changes and the reasons for making them." A testimony change under Rule 30(e) does not expunge the original deposition testimony; both the original transcript and recording are retained and can be shown to the trier of fact. *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). This allows a witness to impeached on the basis of the change.

The text of Rule 30(e) does not set out any limitations on how many or what kind of changes may be made to deposition testimony. That has led to differences of opinion in the courts on the application of the rule. Some courts allow any and all changes, even ones that contradict the original sworn testimony, so long as the changes are timely. *See Devon Energy Corp. v. Westacott*, No. H-09-1689, 2011 WL 1157334, at *4-6 (S.D. Tex. Mar. 24, 2011) (collecting cases). Those courts treat the opportunity for impeachment as the sole and best consequence of

changing testimony. *Id*. Other courts take a much more stringent line and forbid changes that alter sworn testimony. In the view of these courts, depositions are not "take home examinations" where the deponent can say any old thing under oath and then make artful changes once the transcript is reviewed at leisure outside the testimony room. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n. 5 (10th Cir. 2002).

The Ninth Circuit permits changes but stops short of an anything-goes approach. Specifically, the circuit applies the "sham affidavit" rule to Rule 30(e) changes. *Hambleton Bros. Lumber Co. v. Balkin Enterprises.*, 397 F.3d 1217, 1225 (9th Cir. 2005). This means that a deponent can change her testimony so long as she provides a statement showing that the changes are legitimate and not "purposeful rewrites tailored to manufacture an issue of material fact" to avoid a pending summary judgment motion. *Id*. Just as a sham affidavit cannot be used to gin up an issue of fact by contradicting a witness's prior deposition testimony, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991), a sham transcript correction will not be allowed to achieve the same end. Rule 30(e) does not permit "changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton*, 397 F.3d at 1225.

*Hambleton* supplies a slight twist by adding that "Rule 30(e) is to be used for corrective, and not contradictory, changes." *Id*. at 1226. Some opinions have understood this statement as creating an additional rule that transcript changes contradicting the original testimony are per se improper. *See, e.g.*, *Lewis v. The CCPOA Benefit Trust Fund*, No. C-08-03228-VRW (DMR), 2010 WL 3398521, at *3-4 (N.D. Cal. Aug. 27, 2010); *Teleshuttle Techs. LLC v. Microsoft Corp.*, No. C04-02927 JW(HRL), 2005 WL 3259992, *2 (N.D. Cal. Nov. 29, 2005). This Court declines to read that sharp restriction into *Hambleton*. Had that bright-line test been the circuit's holding, it would have said so and would not have discussed the sham affidavit rule in the detail and manner that it did. The circuit's discussion of the sham affidavit rule in *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009), also supports the conclusion that a per se test was not intended by *Hambleton*'s reference to "contradictory" changes. In that case, the circuit pointed out that although its cases often recite a blanket rule that "a party cannot create an issue of fact by an

affidavit contradicting . . . prior deposition testimony," that rule does not in fact automatically dispose of every case involving a contradictory affidavit. *Id.* at 998.  Rather, the district court "must make a factual determination that the contradiction was actually a 'sham'" before applying it. *Id*. Consequently, the Court finds that *Hambleton* forbids deposition changes under Rule 30(e) to the same extent when new testimony would be impermissible when submitted in the form of an affidavit.

The application of *Hambleton* outside summary judgment is unclear.  The case itself addresses only summary judgment, and some courts have extended *Hambleton* outside of the summary judgment context, *see Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C08-04990 JW (HRL), 2011 WL 2940289, at *1 (N.D. Cal. Jul. 20, 2011); *Tourgeman v. Collins Fin. Servs., Inc.*, Case No. 08-CV-1392, 2010 WL 4817990 * 3 (S.D. Cal., Nov. 22, 2010), while others have declined to do so, *see Paige v. Consumer Programs, Inc.*, No. CV 07-2498-FMC (RCx), 2008 WL 2491665, at *3-4 (C.D. Cal. May 13, 2008).

The Court does not need to decide that issue here.  The altered deposition testimony has been cited only in the context of plaintiffs' motion for class certification.  Unlike summary judgment, in deciding class certification, the Court may "resolve any factual disputes necessary to determine whether there [is] a common pattern and practice that could affect the class *as a whole*." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).  The sham affidavit rule and its possible application under Rule 30(e) are not relevant in this context because the Court is not subject to tactical hamstringing over fake fact disputes, but can give altered testimony the weight it deserves.  The Court also declines the invitation to undertake the back-breaking task of evaluating more than 100 transcript changes in a vacuum and without some demonstration by the parties that the changes will be material to the outcome of the case.

The Court advises the parties that it has serious concerns about whether a number of the changes would survive if challenged in the context of a summary judgment motion.  The sheer number of challenged edits -- 106 across four witnesses -- is huge and dwarfs the 10 changes to a single deponent's testimony that another court in this district found to be a "significant number" (though excusable in that case because they all related to the same topic).  *See Johnson v. CVS*

3

1  *Pharmacy, Inc.*, No. C 10-03232 WHA, 2011 WL 4802952, at *3 (N.D. Cal. Oct. 11, 2011). The

2  Court also has concerns that the changes were lawyer-driven: at the telephonic hearing on this

3  issue, plaintiffs' counsel stated that the deposition transcripts were first reviewed by plaintiffs'

4  attorneys, who then went through the transcripts with the plaintiffs. The changes were not initially

5  raised by the deponents themselves.

6        Even more concerningly, the changes sometimes make significant alterations of the

7  testimony for dubious reasons. For example, plaintiffs changed the following testimony:

> Q. And regardless of whether you recall specifically seeing Exhibit 12, was the meal and rest break policy explanation that they gave you during your training in line with what is in Exhibit 12?
> MR. MURRAY: Objection. Vague as to what "in line" is.
> THE WITNESS: They didn't tell me all the hours, they just told me the shift hours that I am working.
> Q. Right, so the ones we walked through earlier where it was 3 hours to 30 minutes to 5 hours, and 5 hours and 1 minute to 6 hours and then 6 hours to 10 hours, the ones that would have been relevant to your shifts --
> A. Yes.
> Q. -- did the managers go over the meal and rest break policy with respect to those shifts?
> MR. MURRAY: Objection. Compound.
> THE WITNESS: ~~Yes~~**A manager told me I would be given one 30-minute meal and two 10-minute rest breaks, but I do not remember being told anything about the timing of those breaks or about which shifts would make me eligible for them**.

Stephanie Ochoa Dep. Tr. 214:4-214:24, Dkt. No. 106-7. In justifying this change, plaintiffs

pointed to testimony that the deponent gave on redirect examination by her own counsel,

purporting to modify her answer:

> Q. Did anyone, any manager ever explain to you rules or a policy regarding when or how many meal and rest breaks you would get on different kinds of shifts?
> A. No.
> . . .
> Q. Why earlier today did you say that this reflected the policy at the restaurant where you worked?
> A. Well, I assumed these were the correct ones, since they had the McDonald's on it. So I thought it was accurate to the right answer.
> Q. So that testimony was -- if you had not seen this document before, would you have testified the same way?
> A. No.
> Q. Was that testimony based on anything other than looking at this document today?
> A. No.

1 *Id.* at 212:13-17, 212:21-213:8.  But this testimony was purporting to correct testimony that came
2 *before* page 212; it obviously did not apply to the testimony on page 214, because that testimony
3 had not yet been given.

4 In another example, for which plaintiffs did not cite testimony elsewhere in the transcript
5 for support:

> Q. Are you aware of your restaurant having any policy or practice prohibiting you from leaving the store during a break?
> A. No**Sometimes**.

Hedgepeth Dep. Tr. 180:22-25, Dkt. No. 108-1.  While billed as a "clarification," the modified response is actually less clear than the original answer:  Does it mean that the deponent was only sometimes aware of her restaurant having a policy regarding leaving the store during break?  Or that she was aware of a policy that prohibited her from sometimes leaving?  Or that she sometimes did leave, regardless of the policy and practice?

In light of these and other examples, the Court allows defendants to renew their motion to strike if plaintiffs rely on the modified testimony in the course of any future summary judgment briefing to try to establish a dispute of material fact.  Until then, the motion to strike is denied.

**IT IS SO ORDERED.**

Dated: June 2, 2015

_____
JAMES DONATO
United States District Judge