1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7    STEPHANIE OCHOA, et al.,                    Case No.  14-cv-02098-JD
              Plaintiffs,
8
        v.                                       **ORDER GRANTING IN PART AND
9                                                DENYING IN PART DEFENDANTS'
     MCDONALD'S CORP., et al.,                   ADMINISTRATIVE MOTION TO SEAL**
10
              Defendants.                        Re: Dkt. No. 100
11

12         This order addresses defendants' April 20, 2015, administrative motion to seal portions of

13   plaintiffs' motion for class certification and various documents associated with it.  *See* Dkt. No.

14   100.  Plaintiffs oppose the motion almost in its entirety.  *See* Dkt. No. 102.  The Court grants the

15   motion in part and denies it in part.

16   **I.   GOVERNING STANDARD**

17         In our circuit, in evaluating a motion to seal, two different standards apply depending on

18   whether the request is being made in connection with a dispositive motion or a non-dispositive

19   motion.

20         For dispositive motions, the historic, "strong presumption of access to judicial records"

21   fully applies, and a party seeking sealing must establish "compelling reasons" to overcome that

22   presumption.  *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006)

23   (quoting *Foltz v. State Farm Mutual Auto Insurance Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)).

24   This standard presents a "high threshold," and "a 'good cause' showing will not, without more,

25   satisfy" it.  *Id.* at 1180 (citations omitted).  When ordering sealing in this context, the district court

26   must also "articulate the rationale underlying its decision to seal."  *Apple Inc. v. Psystar Corp.*,

27   658 F.3d 1150, 1162 (9th Cir. 2011).

28

1    The non-dispositive motion context is different.  There, "the usual presumption of the

2    public's right of access is rebutted," the "public has less of a need for access to court records

3    attached only to non-dispositive motions," and the "public policies that support the right of access

4    to dispositive motions, and related materials, do not apply with equal force to non-dispositive

5    materials." *Kamakana*, 447 F.3d at 1179-80 (citations omitted).  Therefore, in that context,

6    materials may be sealed so long as the party seeking sealing makes a "particularized showing"

7    under the "good cause" standard of Federal Rule of Civil Procedure 26(c).  *Id*. at 1180 (quoting

8    *Foltz*, 331 F.3d at 1138).

9         In our district, in addition to meeting the applicable standard under *Kamakana*, all parties

10   requesting sealing must also comply with Civil Local Rule 79-5, including that rule's requirement

11   that the request must "establish[] that the document, or portions thereof, are privileged, protectable

12   as a trade secret or otherwise entitled to protection under the law" (*i.e.*, is "sealable").  Civil L.R.

13   79-5(b).  The sealing request must also "be narrowly tailored to seek sealing only of sealable

14   material." *Id*.

15   **II.      DISCUSSION**

16        This sealing request relates to a motion for class certification.  Although certification

17   motions may lead, as a practical matter, to a case-ending result, the "vast majority" of courts in

18   this circuit apply the "good cause" standard when evaluating associated administrative motions to

19   seal. *See In re High Tech Employee Antitrust Litig.*, 2013 WL 163779, at *2 n.1 (N.D. Cal.

20   Jan.15, 2013).  The Court applies that standard here.

21        Defendants have submitted declarations from Savan Vaghani, *see* Dkt. No. 100-1, and

22   Michael Smith, *see* Dkt. No. 100-2, to justify their requests to seal.  By and large, the reasons

23   provided in these declarations do not come close to meeting the "good cause" standard -- and on

24   the scant occasions when they do, the proposed redactions are often not "narrowly tailored to seek

25   sealing only of sealable material." *See* Civil L.R. 79-5(b).  For example, with respect to the

26   franchise agreements for each of the restaurants at issue in this case, the Vaghani declaration

27   simply says that the documents "contain confidential and proprietary business information,

28   including financial terms" that if disclosed "may be exploited by competitors."  Vaghani Decl. ¶ 6

United States District Court
Northern District of California

2

at 6:1-13.  But as the Court has explained previously, *see* Dkt. No. 99, establishing good cause to seal a portion of a document requires a "particularized showing" that "specific prejudice or harm" will result if the information is disclosed.  *See Kamakana*, 447 F.3d at 1180, 1186.  "An unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient."  *Hodges v. Apple, Inc.*, No. 13-cv-01128-WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (quoting *Dunbar v. Google, Inc.*, No. 5:12-cv-003305-LHK, 2012 WL 6202719, at *4-5 (N.D. Cal. Nov. 18, 2013)).

With respect to other documents, the declarations claim that "[t]he information sought to be sealed is not available to the public and could not be recreated from publically available sources."  *See, e.g.*, Vaghani Decl. ¶ 6 at 7:13-15; Smith Decl. ¶ 5 at 3:19-20.  The mere fact that information was not previously available cannot be sufficient to seal a document; if it were, the requirement that a party must show "good cause" to seal a document even if it has produced it pursuant to a protective order would be a dead letter.  *See Kamakana*, 447 F.3d at 1180 (requiring a particularized showing of "good cause" even for "preserving the secrecy of sealed discovery material"); Civil L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

And as detailed in the following table, the Court finds the grounds for sealing to be implausible in several instances.  For example, the Vaghani declaration makes the conclusory assertion that merely disclosing the features of its In-Store Processor would allow McDonald's competitors a free ride on McDonald's work.  *See* Vaghani Decl. ¶ 7, at 9:6-18.  This is overblown.  A competitor might possibly derive unfair benefits if details about the implementation of those features were disclosed, but the fear that McDonald's would suffer competitive harm from simply describing them is not plausible.  It is also hard to see how information about the format in which Smith Family Partnership records time periods in its billing records could cause any competitive harm, as Smith broadly claims.  *See* Smith Decl. ¶ 10.  Defendants claim that this type of information is sealable simply because it relates to payroll data, *see* Dkt. No. 100 at 4, but good cause to seal a document cannot be satisfied by "[s]imply mentioning a general category of

privilege, without any further elaboration or any specific linkage with the documents . . . .”
*Martin v. Wells Fargo Bank N.A.*, No. CV 12-06030 SI, 2013 WL 5441973, at *2 (N.D. Cal. Sept. 30, 2013) (quoting *Kamakana*, 447 F.3d at 1180, 1184).  That kind of sealing request appears to be geared more towards hiding information that plaintiffs claim is evidence of wrongdoing from the public than hiding truly sensitive information.

The Court addresses each specific request to seal in the following table.  While defendants' motion suggests that they seek sealing of Exhibits 65 and 81 to the Declaration of Matthew J. Murray in Support of Plaintiffs' Motion for Class Certification, *see* Dkt. Nos. 84-4, 84-10, neither of their declarations address these two documents, and the Court consequently denies the request to seal them.  In light of the guidance provided in this order, the Court strikes the remaining pending motions to seal, *see* Dkt. Nos. 101, 106, 120, 128, 142, and orders defendants to refile a single motion by June 12, 2015, covering any remaining materials it believes are sealable given the standards set forth in this order.  Any materials that defendants no longer believe are sealable should be filed in the public record at that time.  With respect to the documents or portions of documents with respect to which the administrative motion to seal is denied, below, the party submitting the document must comply with Civil Local Rule 79-5(f)(3) and file revised redacted versions of the document within 7 days, or else the documents sought to be sealed will not be considered by the Court.

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| 1 | 2:8-9 | This portion of Plaintiffs' Motion cites to and relies on confidential payroll data, public disclosure would provide competitors with a detailed account of Smith's internal operations. *See* Smith Declaration, ¶ 9 (10:4-10:6). | **Denied.**  No good cause has been shown to seal information relating to the number of individuals employed by Smith. |
|  | 2:11-18; 3:3, 6-7 | This portion of Plaintiffs' Motion discusses confidential terms of the Franchise Agreement between Smith and McDonald's USA; disclosure of which would undermine McDonald's | **Denied.**  Not only has no good cause been shown to seal this material, but both of the quotes |

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 8 (12:13-14:10). | appear in a version of the McDonald's standard franchise agreement that has been publicly filed in another case. *See* Dkt. No. 103-6. |
| | 3:19-26; 4:2-6; 4:13-14; 5:3-11; 5:21-23 | This portion of Plaintiffs' Motion discusses the ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a McDonald's restaurant business. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Vaghani Declaration, ¶ 8 (14:11-15:21); Smith Declaration, ¶ 9 (10:7-10:18). | **Denied.** No good cause has been shown to seal this information, which relates to general requirements McDonald's imposes on the Smith Family Partnership, general features of Smith's payroll system, and features of defendants' In-Store Processor. |
| | 7:6, 8, 11-13, 17, FN10; 9:1-2, 4-5 | This portion of the Plaintiffs' motion cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. Public disclosure would provide competitors with a detailed account of Smith's internal operations *See* Smith Declaration, ¶ 9 (10:18-11:1). | **Denied.** No good cause has been shown to seal the results of plaintiffs' expert analysis. The mere fact that this information is not currently public does not constitute good cause. |
| | 9:9-13 | This portion of Plaintiffs' Motion discusses the ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a | **Denied.** Good cause has not been shown to seal what types of meal and rest breaks are |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | McDonald's restaurant business. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Vaghani Declaration, ¶ 8 (15:22-16:5). | flagged by defendants' In-Store Processor. |
| | 10:15-16, FN18 | This portion of the Plaintiffs' Motion cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. Public disclosure would provide competitors with a detailed account of Smith's internal operations. *See* Smith Declaration, ¶ 9 (10:18-11:1). | **Denied.** No good cause has been shown to seal information relating to the number of individuals employed by Smith. The mere fact that this information is not currently public does not constitute good cause. |
| | 13:22 | This portion of Plaintiffs' Motion discusses the ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a McDonald's restaurant business. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP | **Denied.** The information sought to be sealed simply relates to the format in which Smith transmitted payroll data to its payroll vendor, and no good cause has been shown to seal it. |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Smith Declaration, ¶ 9 (10:18-11:1). | |
| | 15:21; 16:7-8 | This portion of Plaintiffs' Motion cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. Public disclosure would provide competitors with a detailed account of Smith's internal operations *See* Smith Declaration, ¶ 9 (10:18-11:1). | **Denied.** No good cause has been shown to seal these rough estimates of the number of alleged meal and rest break violations. |
| | 16:11-12 | This portion of Plaintiffs' Motion discusses the ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a McDonald's restaurant business. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Vaghani Declaration, ¶ 8 (16:6-16:17). | **Denied.** Good cause has not been shown to seal what types of meal and rest breaks are flagged by defendants' In-Store Processor. |
| 2 | ¶¶ 2-3 (1:9-15) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of confidential McDonald's reports generated exclusively for Smith based on Smith payroll data and related | **Denied.** No good cause has been shown to seal this information.  The mere fact that the |

7

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | information relates to payroll data does not constitute good cause. |
| | ¶¶ 4-5 (1:17-18, 20-24, 26-27) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of confidential McDonald's reports generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | **Granted** with respect to the names of the employees for privacy reasons, and otherwise **denied.** |
| | ¶ 6 (2:1-4) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | **Denied.** No good cause has been shown to seal this information. The mere fact that the information relates to payroll data does not constitute good cause. |
| | ¶¶ 7-8 (2:9-10, 12-13, 15-16) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of confidential McDonald's reports generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | **Granted** with respect to the names of the employees for privacy reasons, and otherwise **denied.** |
| | ¶ 9 (2:18-21) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | **Denied.** No good cause has been shown to seal this information. The mere fact that the information relates to payroll data does not constitute good cause. |
| | ¶ 10 (2:24-28) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | **Denied.** No good cause has been shown to seal this information. The mere fact that the information relates to payroll data does not constitute good cause. |
| | ¶¶ 11-12 (3:2-3, 5-6, 8-9) | This portion of the Amissah-Aidoo | **Granted** with |

8

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | declaration cites to and discusses the contents of a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | respect to the names of the employees for privacy reasons, and otherwise **denied.** |
| | ¶ 13 (3:11-13) | This portion of the Amissah-Aidoo declaration cites to and discusses the contents of a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 8 (9:15-9:19). | **Denied.**  No good cause has been shown to seal this information.  The mere fact that the information relates to payroll data does not constitute good cause. |
| 3 | Employee Data Generated by Report | Exhibit A to the Amissah-Aidoo declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 7 (8:14-9:5). | **Granted** with respect to the employee names and the IDs in the second column for privacy reasons, and otherwise **denied.**  The mere fact that the information relates to payroll data does not constitute good cause. |
| 4 | Employee Data & Analysis Generated by Report | Exhibit B to the Amissah-Aidoo declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration ¶ 7 (9:6-9:14). | **Granted** with respect to the employee names and the IDs in the first column for privacy reasons, and otherwise **denied.**  The mere fact that the information relates to payroll data does not constitute good cause. |
| 5 | Employee Data Generated by Report | Exhibit C to the Amissah-Aidoo declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. | **Granted** with respect to the employee names and the IDs in the second column for |

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | *See* Smith Declaration ¶ 7 (8:14-9:5). | privacy reasons, and otherwise **denied.** The mere fact that the information relates to payroll data does not constitute good cause. |
| 6 | Employee Data & Analysis Generated by Report | Exhibit D to the Amissah-Aidoo declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration ¶ 7 (9:6-9:14). | **Granted** with respect to the employee names and the IDs in the first column for privacy reasons, and otherwise **denied.** The mere fact that the information relates to payroll data does not constitute good cause. |
| 7 | Employee Data Generated by Report | Exhibit E to the Amissah-Aidoo declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration ¶ 7 (8:14-9:5). | **Granted** with respect to the employee names and the IDs in the second column for privacy reasons, and otherwise **denied.** The mere fact that the information relates to payroll data does not constitute good cause. |
| 8 | Employee Data & Analysis Generated by Report | Exhibit F to the Amissah-Aidoo declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration ¶ 7 (9:6-9:14). | **Denied.** The mere fact that the information relates to payroll data does not constitute good cause. |
| 9 | ¶¶ 7-15 (2:21-22, 24-25, 2:27-3:1, FN; 23:4, 6, 11; FN3; 3:12, 16-18; FN4; FN5; 4:5-7, 9-11; 4:18-19, 21-22; FN5; FN7) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith | **Denied.** The mere fact that defendants have designated this information confidential and that it is not |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | Declaration ¶ 11 (11:2-11:6). | currently public does not constitute good cause. |
| | ¶ 16 (5:3-7; FN 8) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| | ¶ 17 (5:11-15; FN10, FN11, FN12) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| | ¶ 18 (5:19-20) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| | ¶¶ 20-21 (6:9-11, 14-15; FN14; FN15) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| | ¶¶ 22-25 (6:20-24; FN16; 7:3, 5-6, 8-10, 13) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | | does not constitute good cause. |
| | ¶¶ 26-30 (7:20-22; 8:2-5, 7-23; FN17, FN18; 8:24 – 9:1-2, 5, 7-8) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| | ¶¶ 33-47 (10:1-3, 7-10, 12-19, 22-23, 26; 11:1, 6, 8-11, 13, 16, 25; FN 20; FN 23; 12:1, 5-8; FN24; FN25; 12:10-13; FN26; FN27; 12:15-17; FN28; FN29; 12:20-21)

¶¶ 51-64 (13:16-19, 21-24, 26; 14:1-11, 13-21, 24, 26, FN31, 15:1, 6, 9-11, 13, 15, 18, 20, 23, FN33)

¶¶ 66-71 (16:4, 6-7, 9-12, 14-17, 19-20, 21-22, FN34, FN35, FN36, FN37, FN38, FN39, FN40, FN41; 17:1-2, 4-12, 14, 16-18, FN42, FN43, FN44, FN45, FN46) | This portion of the Breshears Declaration cites to and relies on confidential payroll data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| | ¶74 (Page 18, Chart) | This portion of the Breshears Declaration cites to and summarizes confidential payroll data and related employee data, this information is not available to the public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | **Denied.**  The mere fact that defendants have designated this information confidential and that it is not currently public does not constitute good cause. |
| 10 | ¶ 9 (4:9-12); ¶11 (5:1-4); Appendix 2 | This portion of the Drogin Declaration cites to and summarizes confidential payroll data and related employee data, this information is not available to the | **Denied.**  The mere fact that defendants have designated this information |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|-----|------------------------------|-----------------------------------|----------------------------|
| | | public and could not be recreated from publicly-available sources. *See* Smith Declaration, ¶ 11 (11:2-11:6). | confidential and that it is not currently public does not constitute good cause. |
| 11 | 58:11-64:1; 76:1-4 | This portion of the Michael Smith Deposition Transcript discusses the ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a McDonald's restaurant business. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Smith Declaration, ¶ 6 (6:17-7:5); Vaghani Declaration ¶ 7 (9:21-10:19). | **Denied.** No good cause has been shown to seal general information relating to defendants' In-Store Processor. |
| | 110:21 – 112:14 | This portion of the Michael Smith Deposition Transcript discusses details and confidential terms of the franchise agreements between Smith and McDonald's USA, disclosure of which would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Smith Declaration, ¶ 6 (7:6-7:13). | **Denied.** No good cause has been shown to seal general information relating to defendants' franchise agreement. Moreover, defendants did not designate this portion of the transcript as confidential pursuant to the protective order, waiving their claim |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | | that it is confidential. *See* Dkt. No. 103-5. |
| | 117:9-121:25 | This portion of the Michael Smith Deposition Transcript discusses details and confidential terms of the franchise agreements between Smith and McDonald's USA, including specific fee arrangements between Smith and McDonald's USA, disclosure of which would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 7 (10:20-11:7). | **Denied.**  No good cause has been shown to seal this information generally concerning to the relationship between McDonald's and Smith. |
| | 133:1-15; 137:13-25; 159:1-162:8 | This portion of the Michael Smith Deposition Transcript discusses  the functionality of ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a McDonald's restaurant business, and reports generated through these systems. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Vaghani Declaration, ¶ 7 (11:8-11:22); Smith Declaration, ¶ 6 (7:13-7:20). | **Denied.**  The declarations' claims of competitive harm from the disclosure of this information are conclusory, and do not constitute good cause. |
| 12 | 132:25 – 139:25 | This portion of the Guadalupe Ortega Deposition Transcript discusses  the functionality of ISP and POS systems, proprietary hardware and software applications developed by McDonald's | **Granted** for privacy reasons with respect to the name at 139:18, 23, and otherwise |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | specifically for use in running a McDonald's restaurant business, and the contents of reports generated through these systems. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Vaghani Declaration, ¶ 7 (11:23-12:7). | **denied.** No good cause has been shown to seal this information, and the request is not narrowly tailored. In addition, to the extent defendants move to seal other portions of the Ortega deposition transcript not included in their proposed order, *see, e.g.*, Dkt. 100-2 ¶ 6, at 7:13-22, that request is **denied**. |
| 13 | Response to Special Interrogatory No. 2 (2:19 – 2:26; 3:4 - 5:20) | This portion of the Smith Interrogatory Responses lists the names of Smith employees, their job titles and, in some instances, their dates of employment. These individuals are not parties to this lawsuit and have not consented to the public disclosure of their employment information. *See* Smith Declaration, ¶ 5 (2:13-3:4). | **Granted** for privacy reasons. |
| | Response to Special Interrogatory No. 3 (6:4 – 6:19) | This portion of the Smith Interrogatory Responses discusses in detail the functionality of the ISP and POS systems, proprietary hardware and software applications developed by McDonald's specifically for use in running a McDonald's restaurant business. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order | **Denied.** No good cause has been shown to seal general functionality of defendants' Point of Sale and In-Store Processor systems. |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|-----|------------------------------|-----------------------------------|-----------------------------|
| | | data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Smith Declaration, ¶ 5 (2:13-3:4). | |
| | Response to Special Interrogatory No. 5 (7:17 – 7:21) | This portion of the Smith Interrogatory Responses discusses in detail the functionality of the ISP system and a specific report. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets."  Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Smith Declaration, ¶ 5 (2:13-3:4). | **Denied.**  No good cause has been shown to seal general functionality of defendants' Point of Sale and In-Store Processor systems. |
| | Response to Special Interrogatory No. 7 (8:13 – 8:16) | This portion of the Smith Interrogatory Responses discusses in detail the functionality of the ISP system. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Smith Declaration, ¶ 5 | **Denied.**  No good cause has been shown to seal general functionality of defendants' Point of Sale and In-Store Processor systems. |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | (2:13-3:4). | |
| | Response to Special Interrogatory No. 10 (10:10 – 10:18; 10:20 – 13:7; 13:14 – 13:17) | This portion of the Smith Interrogatory Responses lists the names of both Smith and McDonald's employees, and in many instances, their job titles. These individuals are not parties to this lawsuit and have not consented to the public disclosure of their employment information. *See* Smith Declaration, ¶ 5 (2:13-3:4). | **Granted** for privacy reasons. |
| | Exhibit A (in its entirety) | Exhibit A to the Smith Interrogatory Responses lists Smith employee names, positions, dates of hire and wage rates. These individuals are not parties to this lawsuit and have not consented to the public disclosure of their personal information related to their employment with Smith. *See* Smith Declaration, ¶ 5 (2:13-3:4). | **Granted** for privacy reasons with respect to the names and employee number columns, and otherwise **denied**. |
| 14 | Response to Interrogatory No. 2 (8:3-12) | This portion of McDonald's USA's Interrogatory Responses summarizes in detail the terms included in the franchise agreements between Smith and McDonald's USA, disclosure of which would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 6 (3:9-3:28). | **Denied.** No good cause has been shown to seal general information regarding McDonald's USA's responsibilities with respect to Smith. No concrete evidence of potential competitive harm has been provided. |
| | Response to Interrogatory No. 5 (11:18 – 12:7); Response to Interrogatory No. 6 (12:25 – 13:14) | This portion of McDonald's USA's Interrogatory Responses summarizes in detail the terms included in the franchise agreements between Smith and McDonald's USA and the benefits provided to Smith as a McDonald's USA franchisee, disclosure of which would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 6 (3:9-3:28). | **Denied.** No good cause has been shown to seal general information regarding services McDonald's provides with respect to Smith. No concrete evidence of potential competitive harm has been provided. |
| | Response to | This portion of McDonald's USA's | **Denied.** No good |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | Interrogatory No. 7 (14:11 – 15:1; 15:3 – 15:27) | Interrogatory Responses discusses in detail the functionality of the POS, ISP and R2D2 software and the reports generated by these tools, including specific reports received by Smith. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system," and that required operations procedures and methods "constitute confidential trade secrets." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System.  This portion further discusses confidential terms on the franchise agreement with Smith and the contents of tools offered to Smith pursuant to its franchise relationship with McDonald's USA. *See* Vaghani Declaration, ¶ 6 (3:9-3:28). | cause has been shown to seal general information regarding the relationship between McDonald's and Smith and the tools provided by McDonald's. |
| 15 | Individual Names and Phone Numbers | Exhibit 5 to the Murray Declaration, the VES Crew Rules and Regulations, includes the name of a Smith employee and her title.  This individual is not a party to this lawsuit  and has not consented to the public disclosure of her employment information.  This document further contains the personal telephone number of Michael Smith, who has not consented to the disclosure of this information. *See* Smith Declaration, ¶ 5 (3:4-3:8). | **Granted** for privacy reasons with respect to the name of the Smith employee and Michael Smith's telephone number. |
| 16 | Entire Document Excluding Cover Page, Confidentiality Disclaimers and Table of Contents/Headers | Exhibit 45 to the Murray Declaration is the People Practices section of the Operations and Training Manual. The franchise agreement specifically grants Smith access to business manuals, such as this document, with detailed information, including operational | **Denied.**  This request is not "narrowly tailored to seek sealing only of sealable material." *See* Civil L.R. 79-5(b). |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | procedures, methods of inventory control, business practices and policies and advertising policies for informational purposes.  Disclosure of the information contained in this document would provide competitors of McDonald's and Smith a detailed account of McDonald's business strategies, policies, and practices that are available only to McDonald's employees and McDonald's franchisees, who have paid fees to obtain these materials as a unique and valuable benefit of their franchise relationship with McDonald's. *See* Vaghani Declaration, ¶ 6 (4:1-4:22). | |
| 17 | Employee Data & Analysis Generated by Report | Exhibit 46 to the Murray Declaration is a report generated exclusively for Smith based on Smith payroll data and related employee data.  The contents, information and analysis provided in this report are derived from Smith employee data and have commercial value to competitors and would provide them with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System. *See* Smith Declaration, ¶5 (3:8-3:16). | **Granted** for privacy reasons with respect to the names and employee number columns, and otherwise **denied**. |
| 18 | Entire Document | Exhibit 48 to the Murray Declaration describes in detail procedures and information in connection with the use of the ISP software, disclosure would risk the likelihood that competitors will reap the benefits of this document without incurring the administrative costs of development. The franchise agreement between McDonald's and the Smith's provides that McDonald's "own[s] all proprietary rights in and to the McDonald's system." Information relating to POS and ISP functionality, along with the output of such systems (e.g., sales data, order data, product mix, etc.), has commercial value to competitors and would provide them | **Denied.**  This request is not "narrowly tailored to seek sealing only of sealable material." *See* Civil L.R. 79-5(b). Good cause has not been shown to seal numerous portions of this document -- for example, general information on how to use the In-Store Processor. |

19

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | with an unfair business advantage, including knowledge of how to imitate and/or duplicate the McDonald's System.  This portion further discusses confidential terms on the franchise agreement with Smith and the contents of tools offered to Smith pursuant to its franchise relationship with McDonald's USA. *See* Vaghani Declaration, ¶ 6 (4:23-5:13). | |
| 19 | Substantive information in Table of Contents and pgs. 1-25 | Exhibit 52 to the Murray Declaration is a Business Review Report containing specifics on Smith business operations and suggested guidance from McDonald's USA as how to maximize profits.  Disclosure of the information contained in this document would provide competitors of the McDonald's Defendants a strategic and unfair business advantage by allowing competitors a detailed and firsthand account of the key business strategies and profit-driving factors considered and offered as optional guidance exclusively to franchisees of McDonald's USA during the interactive business review process. *See* Smith Declaration, ¶ 5 (3:16-4:6). | **Granted.** Although the Smith declaration does not provide specificity as to the competitive harm defendants might suffer from public disclosure of this information, the information appears to be of the type that might be exploitable by competitors. |
| 20 | Substantive information in pgs. 1-4 | Exhibit 53 to the Murray Declaration is a communication between McDonald's USA and Smith contains specifics on Smith business operations and suggested guidance from McDonald's USA as how to maximize profits. Disclosure of the information contained in this document would provide competitors of the McDonald's Defendants a strategic and unfair business advantage by allowing competitors a detailed and firsthand account of the key business strategies and profit-driving factors considered and offered as optional guidance exclusively to franchisees of McDonald's USA during the interactive business review process. *See* Vaghani | **Granted.** Although the Smith declaration does not provide specificity as to the competitive harm defendants might suffer from public disclosure of this information, the information appears to be of the type that might be exploitable by competitors. |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | Declaration, ¶ 6 (5:14-5:28). | |
| 21 | Employee Data Generated by Report | Exhibit 54 to the Murray Declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 5 (4:7-4:15). | **Granted** for privacy reasons with respect to the names and employee number columns, and otherwise **denied**. |
| 22 | Employee Data Generated by Report | Exhibit 55 to the Murray Declaration is a spreadsheet of Smith employee data, including employee names, ID numbers, dates and hours of employment.  These individuals are not parties to this lawsuit and have not consented to the public disclosure of their employment information. *See* Smith Declaration, ¶ 5 (4:16-4:20). | **Granted** for privacy reasons with respect to the names and badge number columns, and otherwise **denied**. |
| 23 | Employee Data Generated by Report | Exhibit 56 to the Murray Declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 5 (4:7-4:15). | **Granted** for privacy reasons with respect to the names and employee number columns, and otherwise **denied**. |
| 24 | Employee Data Generated by Report | Exhibit 57 to the Murray Declaration is a confidential McDonald's report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 5 (5:1-5:7). | **Granted** for privacy reasons with respect to the names and employee number columns, and otherwise **denied**. |
| 25 | Employee Data Generated by Report | Exhibit 58 to the Murray Declaration is a spreadsheet of Smith employee data, including employee names, rates of pay, dates and hours of employment. These individuals are not parties to this lawsuit and have not consented to the public disclosure of their employment information.  Furthermore, this spreadsheet contains wage rates, earnings amounts and check numbers. Public disclosure of this information grants competitors of Smith an unfair advantage by providing insight into Smith's wage structure. *See* Smith Declaration, ¶ 5 (5:7-5:13). | **Granted** for privacy reasons with respect to the name column, and otherwise **denied**. |

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| 26 | Employee Data Generated by Report | Exhibit 59 to the Murray Declaration is a spreadsheet of Smith employee wage history, including employee names, rates of pay, dates and hours of employment.  These individuals are not parties to this lawsuit and have not consented to the public disclosure of their employment information.  Furthermore, this spreadsheet includes pay rates, earnings amounts and check numbers.  Public disclosure of this information grants competitors of Smith an unfair advantage by providing insight into Smith's wage structure. *See* Smith Declaration, ¶ 5 (5:13-5:19). | **Granted** for privacy reasons with respect to the names and employee number columns, and otherwise **denied**. |
| 27 | Entire Document | Exhibit 60 to the Murray Declaration is the 800 Market Street Franchise Agreement, disclosure of this document would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Smith Declaration, ¶ 5 (5:20-6:6). | **Denied.**  The standard agreement on which this document was based was filed in the public docket in another case.  *See Wilson v. McDonald's Corp.*, No. 5:14-cv-11082-JCO-MJH (E.D. Mich.), ECF. No. 45-14, *available at* Dkt. No. 103-6. Defendants have not shown good cause to seal this particular version of the agreement. |
| 28 | Entire Document | Exhibit 61 to the Murray Declaration is the 6623 San Pablo Franchise Agreement, disclosure of this document would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 6 (6:1-6:13). | **Denied.**  The standard agreement on which this document was based was filed in the public docket in another case.  *See Wilson v. McDonald's Corp.*, No. 5:14-cv-11082-JCO-MJH (E.D. Mich.), ECF. No. |

United States District Court
Northern District of California

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | | 45-14, *available at* Dkt. No. 103-6. Defendants have not shown good cause to seal this particular version of the agreement. |
| 29 | Entire Document | Exhibit 62 to the Murray Declaration is the 2301 MacDonald Ave Franchise Agreement, disclosure of this document would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 6 (6:1-6:13). | **Denied.** The standard agreement on which this document was based was filed in the public docket in another case. *See Wilson v. McDonald's Corp.*, No. 5:14-cv-11082-JCO-MJH (E.D. Mich.), ECF. No. 45-14, *available at* Dkt. No. 103-6. Defendants have not shown good cause to seal this particular version of the agreement. |
| 30 | Entire Document | Exhibit 63 to the Murray Declaration is the 4514 Telegraph Ave Franchise Agreement, disclosure of this document would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 6 (6:1-6:13). | **Denied.** The standard agreement on which this document was based was filed in the public docket in another case. *See Wilson v. McDonald's Corp.*, No. 5:14-cv-11082-JCO-MJH (E.D. Mich.), ECF. No. 45-14, *available at* Dkt. No. 103-6. Defendants have not shown good cause to seal this particular version of the agreement. |
| 31 | Entire Document | Exhibit 64 to the Murray Declaration is | **Denied.** The |

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | the 1330 Jackson Street Franchise Agreement, disclosure of this document would undermine McDonald's USA's ability to negotiate future franchise agreements and compete in the marketplace. *See* Vaghani Declaration, ¶ 6 (6:1-6:13). | standard agreement on which this document was based was filed in the public docket in another case. *See Wilson v. McDonald's Corp.*, No. 5:14-cv-11082-JCO-MJH (E.D. Mich.), ECF. No. 45-14, *available at* Dkt. No. 103-6. Defendants have not shown good cause to seal this particular version of the agreement. |
| 32 | Portions of Pgs. 1-2 | Portions of Exhibit 66 to the Murray Declaration contains specific information on training tools offered to Smith in improving the operations of its restaurant and the frequency with which Smith takes advantage of these tools. Public disclosure of this information would put Smith and McDonald's at a competitive disadvantage.  *See* Vaghani Declaration, ¶ 7 (6:1-6:21). | **Granted** for privacy reasons with respect to individual email addresses, but otherwise **denied**. No particularized showing of competitive harm has been made. |
| 33 | Entire Document | Exhibit 67 to the Murray Declaration is a report containing commercially sensitive information made available exclusively to franchisees of McDonald's USA in furtherance of confidential business strategies. This document is a tool to be used by franchisees as an optional resource in developing scheduling practices and staffing practices and is unique to the McDonald's restaurant business. *See* Vaghani Declaration, ¶ 6 (8:24-9:11). | **Granted** for privacy reasons with respect to the names and ID numbers, and otherwise **denied.** The mere fact that the information has been made available exclusively to franchisees does not constitute good cause to seal it, and the allegations of competitive harm are too conclusory to constitute good |

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|---|---|---|---|
| | | | cause to seal. |
| 34 | Entire Document | Exhibit 70 to the Murray Declaration contains specific information on training tools offered to Smith in improving the operations of its restaurant and the frequency with which Smith takes advantage of these tools. *See* Vaghani Declaration, ¶ 6 (8:11-8:23). | **Denied** with respect to the portion attached at Dkt. No. 92-10. The mere fact that the information has been made available exclusively to franchisees does not constitute good cause to seal it. |
| 35 | Restaurant Operations Data Generated by Report | Exhibit 71 to the Murray Declaration is a confidential report containing detailed sales data and related information regarding the daily operations of a Smith restaurant. The information in this report (e.g., sales data, order data, transaction time, etc.), has commercial value to competitors and would provide them with an unfair business advantage. *See* Smith Declaration, ¶ 5 (6:7-6:13). | **Granted.** Although the Smith declaration does not provide specificity as to the competitive harm defendants might suffer from public disclosure of this information, the information appears to be of the type that might be exploitable by competitors. |
| 36 | Employee Data Generated by Report | Exhibit 73 to the Murray Declaration is a confidential report generated exclusively for Smith based on Smith payroll data and related employee data. *See* Smith Declaration, ¶ 5 (5:1-5:7). | **Granted** for privacy reasons with respect to the names and ID numbers, and otherwise **denied.** The fact that a report was generated exclusively for Smith does not constitute good cause. |
| 37 | Entire Document | Exhibit 82 to the Murray Declaration contains a specific list of training curriculum made available exclusively to franchisees of McDonald's USA. The McDonald's Defendants have | **Denied.** Defendants have not made a particularized showing that they |

| Tab | Exact Portions to be Sealed | Particularized Reason for Sealing | Grant or Denial of Request |
|-----|------------------------------|------------------------------------|-----------------------------|
| | | expended substantial time, effort and resources to develop this curriculum. Disclosure of the information contained in this document would provide competitors of McDonald's and Smith a detailed account of McDonald's business strategies, policies, and practices that are available only to McDonald's employees and McDonald's franchisees, who have paid fees to obtain these materials as a unique and valuable benefit of their franchise relationship with McDonald's. *See* Vaghani Declaration, ¶ 6 (8:24-9:11). | will suffer competitive harm if their competitors are aware of the general topics that form part of their restaurant management curriculum. |

**IT IS SO ORDERED.**

Dated: June 5, 2015

_____

JAMES DONATO
United States District Judge

United States District Court
Northern District of California