1  MICHAEL RUBIN (SBN 80618)
   BARBARA J. CHISHOLM (SBN 224656)
2  P. CASEY PITTS (SBN 262463)
   MATTHEW J. MURRAY (SBN 271461)
3  Altshuler Berzon LLP
   177 Post Street, Suite 300
4  San Francisco, California 94108
   Telephone: (415) 421-7151
5  Facsimile: (415) 362-8064
   E-mail: mrubin@altber.com
6          bchisholm@altber.com
           cpitts@altber.com
7          mmurray@altber.com

8  JOSEPH M. SELLERS (*pro hac vice*)
   ABIGAIL E. SHAFROTH (*pro hac vice*)
9  Cohen Milstein Sellers & Toll, PLLC
   1100 New York Ave NW, Suite 500
10 Washington, DC 20005
   Telephone: (202) 408-4600
11 Facsimile: (202) 408-4699
   E-mail: jsellers@cohenmilstein.com
12         ashafroth@cohenmilstein.com

13 Attorneys for Plaintiffs

14            IN THE UNITED STATES DISTRICT COURT

15         NORTHERN DISTRICT OF CALIFORNIA – San Francisco

16 STEPHANIE OCHOA, *et al.*, on behalf of          CASE NO. 3:14-cv-02098-JD
   themselves and others similarly situated,
17                                                  **PLAINTIFFS' OPPOSITION TO MOTION FOR**
                              Plaintiffs,           **SUMMARY JUDGMENT OF DEFENDANTS**
18                                                  **MCDONALD'S USA, LLC, MCDONALD'S**
   vs.                                              **CORPORATION, AND MCDONALD'S**
19                                                  **RESTAURANTS OF CALIFORNIA, INC.**
   MCDONALD'S CORP., *et al.*,
20                                                  Date:           July 8, 2015
                              Defendants.           Time:           10:00 A.M.
21                                                  Courtroom:      11
                                                    Judge:          Hon. James Donato
22
                                                    Complaint Filed: March 12, 2014
23                                                  Trial Date:      September 14, 2015

24                                                  REDACTED VERSION OF DOCUMENT
25                                                  SOUGHT TO BE SEALED

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................iii

I.      INTRODUCTION ..............................................................................................1

II.     MCDONALD'S RELATIONSHIP WITH SMITH .........................................2

        A.      The Franchise Agreements .................................................................2

        B.      McDonald's National Franchising Standards Affect Workplace
                Conditions and Directly Affect the Viability of Smith's Business .........................3

        C.      McDonald's Regular Monitoring of Smith and Its Use of
                McDonald's Systems ..........................................................................6

III.    ARGUMENT ......................................................................................................7

        A.      McDonald's Status as Plaintiffs' Joint Employer Depends on Disputed Facts .......8

                1.      McDonald's relies on the wrong legal standard .........................8

                2.      McDonald's right to control and actual control over plaintiffs'
                        wages, hours, and working conditions are factually disputed ..................10

                        a.      McDonald's right to control and actual control over
                                plaintiffs' wages are factually disputed .........................10

                        b.      McDonald's right to control and actual control over
                                plaintiffs' hours are factually disputed ..........................12

                        c.      McDonald's right to control and actual control over
                                plaintiffs' working conditions are factually disputed ...................15

                        d.      The nature and extent of McDonald's control over plaintiffs'
                                wages, hours, and working conditions are disputed facts .............22

                3.      There are material factual disputes concerning whether McDonald's
                        suffered or permitted plaintiffs to work .....................................23

                4.      There are material disputed facts concerning whether McDonald's
                        established a common law employment relationship with plaintiffs .......25

                        a.      Whether Smith and its managers were McDonald's actual
                                agents is factually disputed .........................................25

                        b.      Whether Smith and its managers were McDonald's
                                ostensible agents is factually disputed ..........................26

        B.      Whether McDonald's Is Liable for Its Own Negligence Depends on
                Disputed Facts ................................................................................28

                1.      McDonald's owed plaintiffs a legal duty .................................29

                2.      Whether McDonald's breached its duties presents disputed issues
                        of fact ...................................................................................29

C.    Whether McDonald's Corporation Is an Employer or Otherwise Liable
       Along with McDonald's USA, LLC Turns on Disputed Facts ............................ 30

D.    In the Alternative, Summary Judgment Should Be Denied Under Rule 56(d) ..... 30

IV.    CONCLUSION ................................................................................................................ 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Akaosugi v. Benihana National Corp.*,
    282 F.R.D. 241 (N.D. Cal. 2012) ...................................................................16, 30

*Alexander v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 981 (9th Cir. 2014) ............................................................. *passim*

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................7

*Braboy v. Staples, Inc.*,
    2011 WL 743139 (N.D. Cal. Feb. 24, 2011) ...............................................28

*Bureerong v. Uvawas*,
    922 F. Supp. 1450 (C.D. Cal. 1996) .........................................................29

*Butler v. McDonald's Corp.*,
    110 F. Supp. 2d 62 (D. R.I. 2000) .......................................................18, 26

*Carillo v. Schneider Logistics, Inc.*,
    CV-11-8557 CAS (DTBx) (C.D. Cal. May 13, 2013) .................................28, 29

*Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*,
    2014 WL 183956 (C.D. Cal. Jan. 14, 2014)...........................12, 16, 17, 21

*Cervantez v. Celestica Corp.*,
    618 F. Supp. 2d 1208 (C.D. Cal. 2009) ......................................................16

*Courtland v. GCEP-Surprise, LLC*,
    2013 WL 3894981 (D. Ariz. July 29, 2013)..................................................9

*Dudley v. 4-McCar-T, Inc.*,
    2011 WL 1742184 (W.D. Va. May 4, 2011) ..................................................9

*Garrett v. San Francisco*,
    818 F.2d 1515 (9th Cir. 1987) ....................................................................31

*Gray v. McDonald's USA, LLC*,
    874 F. Supp. 2d 743 (E.D. Tenn. 2012) .........................................................9

*Guifu Li v. A Perfect Day Franchise, Inc.*,
    281 F.R.D. 373 (N.D. Cal. 2012) ..............................................................15

*Hammit v. Lumber Liquidators, Inc.*,
    19 F. Supp. 3d 989 (S.D. Cal. 2014) ...........................................................16

*Juarez v. Jani-King*,
　　2012 WL 177564 (N.D. Cal. Jan. 23, 2012)................................................................9

*Mosley v. McDonald's Corp.*,
　　2008 WL 1883451 (N.D. Ill. April 25, 2008) ...........................................................9

*Phillips v. TLC Plumbing, Inc.*,
　　172 Cal. App. 4th 1133 (2009)...............................................................................29

*Rodriguez v. SGLC, Inc.*,
　　2012 WL 5704403 (E.D. Cal. Nov. 12, 2012) ........................................................24

*Singh v. 7-Eleven, Inc.*,
　　2007 WL 715488 (N.D. Cal. March 8, 2007) ...........................................................9

*Taylor v. Shippers Transport. Express, Inc.*,
　　2014 WL 7499046 (C.D. Cal. Sept. 30, 2014) ..........................................................8

*Torres v. Air to Ground Servs., Inc.*,
　　300 F.R.D. 386 (2014)............................................................................................20

*Torres-Lopez v. May*,
　　111 F.3d 633 (9th Cir. 1997) .............................................................................16, 21

*Vann v. Massage Envy Franchising LLC*,
　　2015 WL 74139 (S.D. Cal. Jan. 6, 2015) ..................................................................9

**STATE CASES**

*Alecksick v. 7-Eleven, Inc.*,
　　205 Cal. App. 4th 1176 (2012)..............................................................................21

*Ayala v. Antelope Valley Newspapers, Inc.*,
　　59 Cal. 4th 522 (2014)..........................................................................10, 25, 26

*Beck v. Arthur Murray, Inc.*,
　　245 Cal. App. 2d 976 (1966) ...........................................................................26, 28

*C.A. v. William S. Hart Union High Sch. Dist.*,
　　53 Cal. 4th 861 (2012)...........................................................................................29

*Castaneda v. Ensign Grp., Inc.*,
　　229 Cal. App. 4th 1015 (2014).................................................................18, 20, 30

*Deutsch v. Masonic Homes of Cal., Inc.*,
　　164 Cal. App. 4th 748 (2008) ................................................................................29

*Guerro v. Superior Court*,
　　213 Cal. App. 4th 912 (2013) ...............................................................................11

PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD

*Kaplan v. Coldwell Banker Residential Affiliates, Inc.,*
  59 Cal. App. 4th 741 (1997) ........................................................................27, 28

*Kuchta v. Allied Builders Corp.,*
  21 Cal. App. 3d 541 (1971) ...................................................................................26

*Lawson v. Schmitt Boulder Hill, Inc.,*
  398 Ill. App. 3d 127 (2010) ..................................................................................29

*Martinez v. Combs,*
  49 Cal. 4th 35 (2010)................................................................................ *passim*

*Merril v. Navegar, Inc.,*
  26 Cal. 4th 465 (2001) ...........................................................................................28

*Miller v. McDonald's Corp.,*
  150 Or. App. 274 (1997) .............................................................18, 26, 27, 28

*Nichols v. Arthur Murray, Inc.,*
  248 Cal. App. 2d 610 (1967) ................................................................................17

*Patterson v. Domino's Pizza, LLC,*
  60 Cal. 4th 474 (2014) ............................................................................. *passim*

*Rowland v. Christian,*
  69 Cal. 2d 108 (1968) .............................................................................................29

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,*
  48 Cal. 3d 341 (1989) .......................................................................................9, 25

*Thompson v. Occidental Life Ins. Co.,*
  276 Cal. App. 2d 559 (1969) ...............................................................................27

**STATUTES**

Cal. Civ. Code §2298 ................................................................................................26

Cal. Civ. Code §2230 ................................................................................................26

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ...................................................................................................7

Fed. R. Civ. P. 56(d) .................................................................................................30

IWC Wage Order No. 2001-5 §2 ......................................................................10

# I.  INTRODUCTION

A reasonable jury could easily conclude, based on the record evidence, that McDonald's shares legal responsibility for the wage-and-hour violations occurring at the Smith Family Partnership's ("Smith's") five franchised restaurants.[1]  McDonald's ignores most of this evidence and misstates the governing legal standards in an effort to pin the blame on its franchisee alone, even though McDonald's controlled, directly and indirectly, nearly every aspect of Smith's operations.  McDonald's insists that *Patterson v. Domino's Pizza, LLC,* 60 Cal. 4th 474 (2014), absolves it from all possible liability.  But *Patterson* only addressed joint employer liability under the FEHA common law standard for sexual harassment committed by one co-worker against another.  The governing standard here is provided by *Martinez v. Combs,* 49 Cal. 4th 35 (2010), which sets forth the joint employer standards under the Labor Code and IWC Wage Orders.

There is no special exception for "franchisor" employers under California law.  Under *Martinez*, McDonald's will be liable as a joint employer if the jury finds that it *either*: 1) exercises control, directly or indirectly, over wages, hours, *or* working conditions at the Smith stores; *or* 2) suffers or permits wage-and-hour violations to occur there; *or* 3) has the right to control the manner and means of plaintiffs' work *or* (under common law agency principles) has caused or permitted Smith to act as its ostensible agent.  McDonald's defends its comprehensive oversight over Smith's "operations" (McDonald's term for its combined protocols covering staffing, scheduling, hiring, training, orientation, employee retention practices, and internal organizational structure) by insisting that Smith was entirely free to ignore McDonald's detailed workplace standards.  Yet a jury applying *Martinez* could reasonably find that as a practical matter—and in actual fact—Smith had no meaningful discretion in how it: recorded and calculated compensable time; scheduled and trained its workers; defined those workers' duties, workplace positioning, task-timing, and required attire; and implemented other McDonald's-originated personnel policies and practices.

McDonald's also "suffered and permitted" the wage-and-hour violations at issue through its data-tracking and control over Smith's staffing levels, shift configurations, and payroll

---

[1] Plaintiffs refer to Defendants McDonald's USA, LLC and McDonald's Corporation collectively as "McDonald's," unless otherwise stated.

programming.  Despite McDonald's protestation that Smith can operate its restaurants however it chooses, McDonald's economic leverage—exercised through its unilateral authority to set conditions for franchise retention and renewal, block or permit acquisition of new franchises, mandate expensive restaurant rebuilds, and terminate Smith's franchises for any violation of McDonald's standards—has compelled Smith as a matter of economic necessity to comply with McDonald's so-called "recommendations."  And McDonald's has caused plaintiffs reasonably to believe Smith was its agent through its extensive efforts to project an image of uniformity across all its restaurants to current and prospective employees (not just customers).  Because a jury could find McDonald's liable on the current record, summary judgment must be denied.

## II.  MCDONALD'S RELATIONSHIP WITH SMITH

To place the nature of McDonald's control over wages, hours, and working conditions in context, we begin by describing the Smith/McDonald's relationship and the varied mechanisms used by McDonald's to ensure compliance with its comprehensive "McDonald's System."

### A.  The Franchise Agreements

McDonald's and Smith entered into a separate, standardized Franchise Agreement for each Smith store.  Dkt. Nos. 175-5–175-9; McD. Inter. Resp. (Set One) No. 4; Dkt. 2-1; ███████ ████████████████████████████████████████████████████████████████████████████████ Each Agreement imposes numerous obligations, including that Smith "adher[e] ... to standards and policies of McDonald's providing for the uniform operation of all McDonald's restaurants" and that it exercise "strict adherence ... to McDonald's prescribed standards of Quality, Service, and Cleanliness" and ██████████████████████████████████████████████████████ ████████████████████████████████████████ Dkt. 175-6 §1(c); ███████████ ███████████████████████████████████████████ The Franchise Agreements also require Smith to "employ adequate personnel so as to operate the Restaurant at its maximum capacity and efficiency"; enroll owners and "managers, present and future, at Hamburger University or at such other training center as may be designated by McDonald's from time to time"; and "promptly

---

[2] Deposition exhibits are cited by the number assigned to those exhibits at the depositions, and are attached to the accompanying Declaration of P. Casey Pitts using the same numbers.  Cited deposition transcript and discovery response excerpts are at Pitts Decl. Exs. A–L, N-Q.

adopt and use exclusively the formulas, methods, and policies contained in [McDonald's] business manuals," which McDonald's may also "modif[y] from time to time." Dkt. 175-6 §§4, 6, 12(g).

The agreements establish the financial terms of the franchise, requiring Smith to pay a sizeable initial fee, rents set by McDonald's ███████████████████ *see infra* at 21, and a monthly "service fee" of 4% of the store's gross monthly sales. McD. Inter. Resp. (Set One) No. 2; ████████████ Dkt. 175-6 §8; Dkt. 164-6 at 24-28.

McDonald's has the contractual right to inspect or audit Smith's "compliance with the standards and policies of the McDonald's System," ████ and all other terms of the Agreements. Dkt. 175-6 §§10, 12; ████████████ McDonald's may declare a material breach and terminate an agreement if Smith "fail[s] to maintain and operate the Restaurant ... in compliance with the standards prescribed by the McDonald's System," Dkt. 175-6 §18(a)—many of which are subjective or so vague as to be capable of interpretation only by McDonald's. *See infra* at 4. Smith is prohibited from selling or transferring any franchise rights without McDonald's approval. ███████████ Dkt. 175-6 §§15(b), (c); ██████

**B. McDonald's National Franchising Standards Affect Workplace Conditions and Directly Affect the Viability of Smith's Business**

McDonald's secures Smith's compliance with the "standards prescribed by the McDonald's System," Dkt. 175-6 §18(a), through regular inspections and reviews. ███████████



PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD



PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD

1

2

3

4

5

6

7

8    **C.    McDonald's Regular Monitoring of Smith and Its Use of McDonald's Systems**

9

10

11

12

13

14

15

16    Dkt. 175-6 §3.[8]

17

18

19

20

21

22

23

24

25

26

27

28

1 ████████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████

3     McDonald's also requires or pressures Smith to use an extensive set of pre-packaged

4 systems, policies and procedures to enable Smith to implement the "McDonald's System." ███

5 ████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████

16 **III.    ARGUMENT**

17     McDonald's cannot meet its substantial burden of "show[ing] that there is no genuine

18 dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ.

19 P. 56(a).  At this stage, plaintiffs' "evidence ... is to be believed, ... all justifiable inferences are to

20 be drawn in [their] favor," and plaintiffs "need only present evidence from which a jury might

21 return a verdict in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986).

22 Numerous disputes of material fact preclude summary judgment.

23     **A.  McDonald's Status as Plaintiffs' Joint Employer Depends on Disputed Facts.**

24        **1.  McDonald's relies on the wrong legal standard.**

25     McDonald's acknowledges that California's "Industrial Wage Commission Wage Orders

26 determine who is an employer under the Labor Code."  Mot. (Dkt. 174) at 11.  Under those Wage

27 ██████████████████████████████████████████████████████████████████

28 ███████████████████████████████████████████████████████████████

Orders, "employ" has three alternative definitions: "(a) to exercise control over the wages, hours, or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 64; *Taylor v. Shippers Transport. Express, Inc.*, 2014 WL 7499046, at *9 n.4 (C.D. Cal. Sept. 30, 2014) (citing cases).

McDonald's fails to apply this disjunctive three-part test, asserting that under *Patterson* a franchisor may only be a joint employer if it retains a "'comprehensive and immediate level of day-to-day authority over matters such as hiring, firing, direction, supervision, and discipline of the employee.'" Mot. at 1-2, 12-13, 17 (quoting *Patterson*, 60 Cal. 4th at 499). But *Patterson* addressed sexual harassment claims under the Fair Employment and Housing Act ("FEHA"), not wage and hour claims under the Labor Code and IWC Wage Orders, and was expressly "limited" "to determining the circumstances under which an employment or agency relationship exists as a prerequisite to pursuing statutory and tort theories *like those alleged against* [*Domino's*]"—tortious sexual harassment. 60 Cal. 4th at 503 (emphasis added).[10] In contrast, for wage and hour claims, "the IWC's definition of employment incorporates the common law definition as one [of three independent] alternative[s]." *Martinez*, 49 Cal. 4th at 64 (italics omitted). An entity like McDonald's may thus be an "employer" under the Labor Code even if it has no common law employment or agency relationship and is not an "employer" under FEHA. *See also id.* at 50 n.16 (citing several statutes, including FEHA, with different definitions of "employer").

Sound public policy supports this distinction. FEHA liability rests on the common law right-to-control "factors such as hiring, direction, supervision, discipline, discharge and relevant day-to-day aspects of the *workplace behavior of the franchisee's employees*" because a FEHA claim seeks to hold an employer liable for its own employees' tortious misconduct in "injur[ing] each other on the job." *Patterson*, 60 Cal. 4th at 478 (emphasis added); *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 352 (1989) (common law master-servant test arose to

---

[10] *Patterson* did not carve out a special rule for franchisors, even in the FEHA context. The Court simply applied the settled rule that "traditional common law principles of agency and respondeat superior supply the proper analytical framework *under FEHA*." *Id.* at 499 (emphasis added).

"define an employer's liabilities for [tort] injuries caused *by* his employees").[11] In contrast, Labor Code and Wage Order protections protect employees from being subjected to unlawful wages, hours, or working conditions that may result from policies or practices an "employer" has the practical ability to control or modify, whether or not it directly oversees the day-to-day behaviors of each individual employee. "[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protections." *Martinez*, 49 Cal. 4th at 61; *see Borello*, 48 Cal. 3d at 352.[12]

As shown below, disputed material facts, including facts regarding the nature, extent, and practical effect of McDonald's actual control and ability to control the relevant aspects of Smith's operations, preclude summary judgment under *Martinez*'s three alternative "employer" definitions.

### 2. McDonald's right to control and actual control over plaintiffs' wages, hours, and working conditions are factually disputed.

Under the Wage Order's definition of "employer," McDonald's will be deemed plaintiffs' joint employer if the jury finds it "directly *or indirectly, or through an agent or any other person,* ... exercise[d] control over wages, hours, *or* working conditions of any person." Wage Order No. 2001-5 §2(H) (emphases added). "[P]hrased as it is in the alternative (i.e., 'wages, hours, *or*

_____

[11] The 4-3 Court in *Patterson*, authored by former Associate Justice Baxter, concluded based on the evidence presented that Domino's "could not have prevented the misconduct [*i.e.,* one franchisee employee's sexual harassment of another] and corrected its effects." 60 Cal. 4th at 499. In the present case, by contrast, a reasonable jury could easily find, even under the common law test, that McDonald's maintained sufficient contractual, economic, and operational power to prevent or require prompt remediation of the Labor Code violations at issue. *See infra* at 24-28.

[12] Most of the cases on which McDonald's relies are inapposite, not only because they address substantially different facts, but also because they fail to apply the alternative grounds for "employer" status under *Martinez*. Some apply only a common law or agency test. *See, e.g.,* *Juarez v. Jani-King*, 2012 WL 177564, at *4 (N.D. Cal. Jan. 23, 2012) (analyzing claims by *franchisor*, not franchisor's employees); *Singh v. 7-Eleven, Inc.*, 2007 WL 715488, at *4, 7 (N.D. Cal. March 8, 2007); *Vann v. Massage Envy Franchising LLC*, 2015 WL 74139, at *6-7 (S.D. Cal. Jan. 6, 2015). Others apply the federal "economic realities" test applicable to Title VII and other federal claims, which is narrower than the *Martinez* test. *See Martinez*, 49 Cal. 4th at 66 (Labor Code protections "provide greater protection to workers than federal law affords and does not incorporate federal law"); *see also Courtland v. GCEP-Surprise, LLC*, 2013 WL 3894981, at *1 (D. Ariz. July 29, 2013) (Title VII); *Dudley v. 4-McCar-T, Inc.*, 2011 WL 1742184, at *3 (W.D. Va. May 4, 2011) (Title VII and ADA); *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 749-50 (E.D. Tenn. 2012) (Title VII); *Mosley v. McDonald's Corp.*, 2008 WL 1883451, at *2-3 (N.D. Ill. April 25, 2008) (Title VII and other federal claims in case where pro se litigant "admit[ted] ... McDonald's Corporation was not [his] employer").

working conditions')," the right to directly or indirectly control any one of these factors, or the actual direct or indirect exercise of control over any of the factors in practice, is independently sufficient to establish employer status. *Martinez*, 49 Cal. 4th at 59 (emphasis in original); *id.* ("IWC's 'employer' definition has the obvious utility of reaching situations in which multiple entities control different aspects of the employment relationship."); *cf. Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014) (under common law, focus is "right" to control).

### a. McDonald's right to control and actual control over plaintiffs' wages are factually disputed.

Contrary to McDonald's assertions, a jury could conclude that McDonald's either exercised indirect control over plaintiffs' wages, or retained a right to do so, through the operation of McDonald's ISP software that automatically makes certain wage-related decisions, through financial pressures to keep wages low, and through trainings and instruction on wage-setting.

Use of ISP for Timekeeping and Payroll. McDonald's requires Smith to install McDonald's proprietary ISP on a required POS as part of its comprehensive IT "Store Systems." ■

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



McDonald's engages in "effective control over wages."  *Guerro v. Superior Court*, 213 Cal. App. 4th 912, 949 (2013).[16]

<u>Pressures on Wages.</u>  McDonald's indirectly affects crew members' wages in several other ways too.

**█████████████████████████████████████████████████████**

**██████████████████████████████████████** *see also* Slater-Carter Decl. ¶28 (franchisee pressured to reduce "labor costs and thereby increase the funds available for reinvestment into the business"); **████████████** Such "indirect[]" "influence" on plaintiffs' rate of pay through "pressuring [Smith] to minimize its costs" constitutes indirect exercise of control over wages sufficient to establish an employment relationship. *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, 2014 WL 183956, at *9 (C.D. Cal. Jan. 14, 2014).[17]

      **b. McDonald's right to control and actual control over plaintiffs' hours are factually disputed.**

Employer status can be established by "constrain[ing]" or influencing hours, without "set[ting] specific working hours down to the last minute." *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 989 (9th Cir. 2014) (applying common law test); *see Carillo*, 2014 WL 183956, at *8, *16 (defendant "influenced" workers' hours through "oversight of [subcontractor's] operating budget," including "the review of a staffing chart ... that sets forth the hours worked per employee and the ratio between supervisors and line employees").

A jury could find that McDonald's directly or indirectly exercised control over plaintiffs' hours. Through its franchise agreements, McDonald's requires Smith to employ "adequate personnel so as to operate the Restaurant at its maximum capacity and efficiency." Dkt. 175-6 §12(g). McDonald's polices this requirement by **███████████████████████████████████**
**████████████████████████████████████████████████**
**████████████████████████████████████████████████████**
**███ █ ███████████████████████████████████████████**
**████████████████████████████████████████████████████**

**█ ████████████████████████████████████████████████**
**████████████████████████████████████████████████████**
**████████████████████████████████████████████ ██████**
**████████████████████████████ ███**

---

[18] *See also* Slater-Carter Decl. ¶30 (McDonald's required franchisees to use "appropriate scheduling and timekeeping programs," and franchisee understood that ISP's built-in programs were the only ones "declared appropriate" by McDonald's).



Formal Evaluations of Staffing and Scheduling.

The ISP, Scheduling and Breaks.

PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD



8    <u>Monitoring of Staffing Efficiency through the ISP</u>



Manager Training on Scheduling.

### c. McDonald's right to control and actual control over plaintiffs' working conditions are factually disputed.

Even if McDonald's had no control over hours or wages, a jury could find McDonald's liable as an "employer" based on the substantial evidence showing McDonald's direct and indirect control over plaintiffs' working conditions. *See Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 402 (N.D. Cal. 2012). Plaintiffs need not show that McDonald's controlled every aspect of their working conditions. *See Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208, 1214 (C.D. Cal. 2009). The term "working conditions" encompasses all aspects of plaintiffs' employment, from the job duties and tasks they must perform, to their management and training, to employment policies. *Cf. Torres-Lopez v. May*, 111 F.3d 633, 642 (9th Cir. 1997) ("working

conditions" relevant to employer status encompass more than direct supervision).

Plaintiffs' Job Duties and Tasks.  In practical effect, McDonald's dictated plaintiffs' job duties, the activities they were required to perform, and the specific manner in which they were required to work.  *See Carillo*, 2014 WL 183956, at *8 (denying summary judgment where defendant established the direct employer's "operating procedures, including procedures that governed [plaintiffs'] daily job functions," and "conducted audits of operations" to ensure compliance); *Hammit v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1003 (S.D. Cal. 2014) (same, where disputed facts as to whether defendant's "store procedures and policies controlled [plaintiff's] day-to-day work").

████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████ *Cf. Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 258, 284 (N.D. Cal. 2012) (evidence of joint employer status included that "[a]ll fourteen locations have the same job titles, job descriptions, use the same … point-of-sale system, and are subject to the same customer service requirements and mystery shopper surveys").[24]

████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████

PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD



Through these direct and indirect requirements, McDonald's controls not only the *results* of plaintiffs' work (i.e., end products and service times) but also the *manner* of achieving those results. *See Martinez*, 49 Cal. 4th at 76 ("[C]ontrol over how services are performed is an important, perhaps even the principal, test for the existence of an employment relationship").[26] The court in *Miller v. McDonald's Corp.*, 150 Or. App. 274, 281 (1997), held that McDonald's requirement that a franchisee "use the precise methods that [McDonald's] established, both in the

---

[26] *See also Carillo*, 2014 WL 183956, at *8 (joint employer control can be shown "by establishing various operating metrics and productivity goals," "closely monitor[ing] productivity levels," and "provid[ing] suggestions about how to improve productivity, and there was an expectation that [contractor] would follow these suggestions"); *Nichols v. Arthur Murray, Inc.*, 248 Cal. App. 2d 610, 615-16 (1967) (franchisor's has agency relationship where "[m]any of the controls conferred were not related anywise to the protection of the defendant's trade name, … including, e.g., requirements that franchisee provide certain reports); *Alexander*, 765 F.3d at 990 (fashion and grooming requirements, specifications of truck shelving, and service area limits were controls over manner, not results, because in delivery driver context "'results,' reasonably understood, refers to timely and professional delivery of packages").

17

[Franchise] Agreement and in the detailed manuals that the Agreement incorporated," resulted in a disputed fact issue regarding whether the franchisee was McDonald's agent, for purposes of a customer's negligence claim. *Accord Butler v. McDonald's Corp.*, 110 F. Supp. 2d 62, 68 (D. R.I. 2000). Similar reasoning precludes summary judgment here, where McDonald's extensive requirements governing every detail of plaintiffs' work would support a jury's finding that McDonald's exercises direct or indirect control over plaintiffs' working conditions.

<u>Management of Plaintiffs' Work</u>. A jury could also conclude that McDonald's exercises indirect control over how plaintiffs were managed (an important work condition) based on ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*See Castaneda v. Ensign Grp., Inc.*, 229 Cal. App. 4th 1015, 1022 (2014) (parent company "sent dietary, housekeeping, and medical records consultants to [subsidiary] to advise departments *on how to perform their duties*," supporting joint employer finding) (emphasis in original).

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ ██████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████



█ ███████████████████████████████████████████████████████

████████████████████████████████████████████████████ ███



Personnel Policies and Practices.  Although control over personnel practices is not

necessary to establish "employer" status, a jury could reasonably conclude that McDonald's

exercised such control, given that nearly every personnel policy and practice used in Smith's stores

is provided or dictated by McDonald's.

PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD

_See Alexander_, 765 F.3d at 989 ("appearance requirements clearly constitute control" reflecting employer status).

Plaintiffs' Work Environment. "[O]wnership or control of the premises of employment is a key consideration in determining joint employer liability." _Carillo_, 2014 WL 183956, at *10, 15-16.[35]

[32] 2d Sandoval Dec. ¶2; [REDACTED] Given all this, it should be no surprise that plaintiffs believed McDonald's was their employer. _See infra_ at 27. "Evidence that an employee believes there is 'an employer-employee relationship' is a relevant factor" in the analysis of "employer" status. _Castaneda_, 229 Cal. App. 4th at 1021; _see Martinez_, 49 Cal. 4th at 77 (relevant that employees "believed they owed their obedience to" alleged employer).

[33] _See also_ Slater-Carter Decl. ¶32 (McDonald's forced franchisee to use McDonald's preferred survey vendor rather than a different professional survey organization). [REDACTED]

[35] _Cf. Torres-Lopez_, 111 F.3d at 640 (ownership of land is relevant under federal law "for the obvious reason that without the land, the worker might not have work, and because a business that



Dkt. 164-2 §§2(a)(iv), 12(d), 20(a);

### d. The nature and extent of McDonald's control over plaintiffs' wages, hours, and working conditions are disputed facts.

McDonald's contends that compliance with many of its standards is optional and that Smith has unbridled discretion with respect to implementing McDonald's "best practices."  As the above demonstrates, however,

_____

owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors") (internal quotation marks omitted)

[36] *Alecksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176 (2012), is thus readily distinguishable. There, plaintiff relied *only* on the fact that 7-Eleven provided payroll processing.  It had no control over any other working conditions at issue, and plaintiff "concede[d] 'it is undisputed that 7-Eleven is *not* the employer of the class members.'"  *Id.* at 1190 (italics in original).

PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD



_see also_ Slater-Carter Decl. ¶¶10-11, 16-17.[38]

Former franchisee Kathryn Slater-Carter describes how McDonald's pressures franchisees to comply with McDonald's "recommended" systems and programs and the possible negative repercussions if the franchisee does not. "[E]ach instruction provided by McDonald's to its franchisees regarding the operation of their restaurants ... carries with it the threat that non-compliance will result in an adverse decision regarding eligibility for growth and rewrite, which in turn may lead to termination of the franchise, significant devaluation of the franchise, or both." Slater-Carter Decl. ¶9.[39] As Slater-Carter explains at ¶35:

> McDonald's has inserted itself into practically every aspect of a franchise restaurant's operations, and ... has imposed staffing structures, staffing schedules, and training requirements that are not freely chosen by franchisees. McDonald's uses its regular operations reviews and Business Reviews, as well as visits and communications from McDonald's staff, to ensure that franchisees understand that complying with and

[38] Slater-Carter was denied eligibility for growth and rewrite based in part upon McDonald's decision to disallow practices it had long accepted and blessed. _Id._ ¶16 (franchisee ineligible because wife rather than husband attended meetings of regional advertising cooperative).

[39] _See also id._ ¶19 ("[E]very instruction that representatives of McDonald's gave us regarding the operation of our stores carried the implied threat that, if we disregarded McDonald's instructions, it would be held [] against us when McDonald's reviewed our eligibility for growth and rewrite. This was particularly true as to the instructions and 'action items' included in the Business Review and formal operations reviews, and as to directions coming from McDonald's business consultants, field service managers, and vice presidents, who played a direct role in deciding whether our franchise relationship with McDonald's would continue.").

22

implementing the McDonald's System is necessary if franchisees want to remain eligible for growth and rewrite and to be successful.

Franchisees like Smith have a strong incentive to avoid termination or a finding of ineligibility because they invest significant capital in their franchised stores (frequently because McDonald's required it) and may incur significant debt; the profits generated by the stores' operation are needed to recover that investment or repay debt. *Id.* ¶¶11, 15; █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

For all these reasons, McDonald's repeated assertions that its tools, systems, and directives are all purely voluntary or optional, and that it exercises no control over Smith or plaintiffs, are disputed material factual statements that can only be resolved at trial.

   **3. There are material factual disputes concerning whether McDonald's suffered or permitted plaintiffs to work.**

The Court should also deny summary judgment because whether McDonald's "suffered or permitted" plaintiffs to work under unlawful conditions rests on disputed factual issues.

A defendant may be a Labor Code "employer," even if it does *not* exercise control over wages, hours, or working conditions, if it "*permit*[*s* workplace violations] by acquiescence, []or *suffer*[*s* such violations] by a failure to hinder" them. *Martinez*, 49 Cal. 4th at 69 (internal quotation marks omitted; emphases in original). Here, as in *Rodriguez v. SGLC, Inc.*, 2012 WL 5704403, at *13 (E.D. Cal. Nov. 12, 2012), whether McDonald's had the power to prevent or to require the prompt remediation of the California law violations at issue presents a material disputed fact. First, a jury could conclude that McDonald's created—and had the ability to change—the

4█ ████████████████████████████████████████████

███████████████████████████████████████████████

conditions giving rise to those violations (e.g., by how it set up the ISP and pressured Smith to cut labor costs), and that McDonald's knew or should have known about those violations given its extensive monitoring and influence over Smith's operations.

Second, a jury could also conclude that, even if McDonald's did not directly create the violations, it retained the power to identify and cure them—or to require Smith to cure them upon threat of termination or denial of growth and rewrite. The franchise agreements require Smith to adopt and implement McDonald's policies and procedures and to follow McDonald's standards, ████████████████████████████████████████████ and McDonald's may immediately terminate the agreement for non-compliance with any standard, including the requirement that it "comply with all federal, state, and local laws." Dkt. 164-2 §12(k); *see supra* at 2-3. Based on McDonald's ██████████████████████████████████████████ ████████████████████████████████████████████████████ *see supra* at 3-7, 10-21, a jury could reasonably conclude that McDonald's retains broad authority either formally ███████████████████████████ or effectively (through its power to direct, monitor, and control Smith's processes) to require Smith to avoid or remediate the violations at issue. Instead, McDonald's chose to turn a blind eye, allowing Smith to profit unlawfully from those violations—thereby ██████████████████████████████ ████████████████████████████████████████████████████████

This constitutes "suffering or permitting" under California law. Because a reasonable jury could conclude, based on the record evidence and reasonable inference, that McDonald's knew or should have known about the alleged wage and hour violations and because it retained sufficient contractual and economic power to compel Smith to prevent those violations or remediate past violations, summary judgment may not be granted under the suffer-or-permit standard.

### 4. There are material disputed facts concerning whether McDonald's established a common law employment relationship with plaintiffs.

While franchisors are not "*automatically*" treated as employers under the traditional common law test, they become employers, even under *Patterson*, if a franchisee acts as their agent in any material respect. *Patterson*, 60 Cal. 4th at 478, 499.

### a. Whether Smith and its managers were McDonald's actual agents is factually disputed.

Under the traditional common law agency test, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Borello,* 48 Cal. 3d at 350 (internal quotation marks omitted). "[W]hat matters under the common law is not how much control a hirer *exercises,* but how much control the hirer retains the *right* to exercise." *Ayala*, 59 Cal. 4th at 533 (emphases in original). "[T]he right to control test does not require absolute control." *Alexander*, 765 F.3d at 990. California courts "also recognize a range of secondary indicia ... that may in a given case evince [a common law] employment relationship." *Ayala*, 59 Cal. 4th at 532 (listing indicia).

Extensive evidence demonstrates McDonald's substantial right of control over Smith's operations and the workplace conditions at issue. *Supra* at 10-21. This evidence goes far beyond what the Court found to exist in *Patterson*, not only as to the franchisees' general operations, but also with respect to the specific dispute (whether Domino's could have prevented franchise employee sexual harassment).[41] In sharp contrast, McDonald's retains the power to exercise significant control over matters directly related to plaintiffs' claims. *See supra* at 10-21.

McDonald's acknowledges that plaintiffs *could* prove agency by demonstrating that it "exercise[s] indirect control over Smith's operations by acting jointly or in conjunction with Smith to 'reduce labor costs'" and "'by maintaining, encouraging, and approving policies and practices that have the purpose and effect of depriving Plaintiffs and Class Members of their full and timely wages when due,'" but contends that those allegations "lack[] evidentiary support." Mot. at 18 (quoting FAC ¶29). A reasonable jury could conclude otherwise. *See, e.g.*, *supra* at 10-15.

A jury could also find that most secondary indicia California courts consider under the common law employer test favor plaintiffs here: 1) plaintiffs were not engaged in an occupation distinct from McDonald's business; 2) plaintiffs' occupation (preparing and serving food) is not usually done without supervision; 3) plaintiffs required no special skill to do their jobs; 4) plaintiffs supplied no instrumentalities of their work while McDonald's supplied the physical land

---

[41] *See Patterson*, 60 Cal. 4th at 487, 501 (franchisor had no "input or oversight" on hiring, provided no "guidance to franchisees on handling personnel issues," and played no role "with respect to training employees on how to treat each other at work, and how to avoid sexual harassment").

and buildings and controlled the construction and design of the workplace; 5) plaintiffs were long-term employees; 6) plaintiffs were paid by the hour, not the job; 7) plaintiffs' work was an integral, regular part of McDonald's business of preparing and serving fast food; and 8) plaintiffs believed they were employed by McDonald's.[42]  *See Ayala*, 59 Cal. 4th at 532 (2014) (listing these secondary indicia of employer status); *Alexander*, 765 F.3d at 994-97 (not all secondary indicia must align).  Any factual disputes about these indicia further preclude summary judgment.

### b.  Whether Smith and its managers were McDonald's ostensible agents is factually disputed.

A jury could separately conclude that Smith was McDonald's ostensible agent.  The common law employer test applies "traditional common law principles of agency," *Patterson*, 60 Cal. 4th at 449, and agency may be actual or ostensible under California law.  Civ. Code §§2298, 2230.  "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is really not employed by him." *Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 547 (1971) (franchisee was ostensible agent of franchisor); *Beck v. Arthur Murray, Inc.*, 245 Cal. App. 2d 976, 981-82 (1966).  Thus, plaintiffs may establish McDonald's employer status even if McDonald's did not retain the right of control necessary to establish an *actual* agency relationship.  *Cf. Miller*, 150 Or. App. at 278-79 (no summary judgment for McDonald's in negligence action due to disputed facts regarding apparent agency of franchisee); *Butler*, 110 F. Supp. 2d at 70 (same).

Ostensible agency exists where 1) the person dealing with the agent does so with reasonable belief in the agent's authority, 2) that belief is "generated by some act or neglect of the principal sought to be charged," and 3) the relying party is not negligent.  *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 747 (1997).  Generally, ostensible agency is "for a trier of fact to resolve [and] should not [be] decided by an order granting a summary judgment." *Thompson v. Occidental Life Ins. Co.,* 276 Cal. App. 2d 559, 564 (1969).[43]

There is considerable evidence that McDonald's caused plaintiffs to believe Smith was

---

[42] *See* 2d Sandoval Decl. ¶¶1-2; 2d Rodriguez Decl. ¶¶1-2; 2d Ochoa Decl. ¶¶1-2; 2d Hedgepeth Decl. ¶¶1-2.

[43] The Court in *Patterson* expressly noted that "[t]here [wa]s no issue of ostensible agency in the present case," and thus did not comment on the issue.  60 Cal. 4th at 494 n.18.

McDonald's agent. Plaintiffs believed they were employed by McDonald's and that Smith was McDonald's agent and they relied on their beliefs in applying and continuing to work at the restaurants. 2d Sandoval Decl. ¶¶2-3; 2d Rodriguez Decl. ¶¶2-3; 2d Hedgepeth Decl. ¶¶2-3; 2d Ochoa Decl. ¶¶2-3. Those beliefs were reasonable. McDonald's engages in extensive advertising and other efforts to create the impression that all of its restaurants are alike and that all McDonald's restaurant employees work for McDonald's. *See* Shafroth Decl. Exs. A-B (McDonald's website refers to "1.5 million McDonald's employees," which necessarily includes employees at franchised stores, and celebrated "62,000 new employees who joined our team through our first-ever National Hiring Day"); ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ *see also Miller*, 150 Or. App. at 278.

      Plaintiffs worked in McDonald's restaurants, were required to wear McDonald's uniforms, prepared McDonald's products using McDonald's-branded packaging, and were trained to refer to the restaurant as "McDonald's" to customers. *Supra* at n.42. Plaintiffs also knew their managers were trained by McDonald's. *Id.* Three plaintiffs, like many class members, applied for their jobs at Smith through McDonald's website. *Id.* ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Plaintiffs' paystubs also had large McDonald's-logo watermarks in the background. *Supra* at n.42; Dkt. 83-4 at 21; 2d. Sandoval Decl. Ex. A. The posted crew schedules had McDonald's logos and named no other entity. 2d. Sandoval Decl. ¶2; 2d. Rodriguez Decl. ¶2. ████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Smith's policy postings regarding breaks, uniforms, and safety also all had McDonald's logos without identifying any other entity. Dkt. 83-3; 2d Sandoval Decl. ¶2.p. No one told plaintiffs that McDonald's was *not* their employer. *Supra* at n.42.

      In the face of this extensive messaging, McDonald's took no steps other than to include minimal and confusing language in its orientation materials stating that "your employer" is a

"McDonald's Franchisee" that owns and operates "[t]he McDonald's restaurant where you work." Dkt. 83-2 at 7. As unsophisticated low-wage workers, plaintiffs did not understand this language, *supra* at n.42—which should not be surprising, given that the language does not provide the name of any entity other than McDonald's. Whether this buried disclaimer is sufficient to override the substantial evidence of ostensible agency presents a factual question for a jury.[44]

### B. Whether McDonald's Is Liable for Its Own Negligence Depends on Disputed Facts.

"To prevail on their negligence claim, plaintiffs must show that [McDonald's] owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries." *Carillo v. Schneider Logistics, Inc.*, CV-11-8557 CAS (DTBx) (C.D. Cal. May 13, 2013) (Dkt. 144-20) ("*Carillo*, May 13, 2013 Order") at 12 (quoting *Merril v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001)). Plaintiffs' negligence claim turns on material factual disputes as well.

### 1. McDonald's owed plaintiffs a legal duty.

McDonald's asserts that it owed plaintiffs no duty of care but it offers no facts or analysis to support that assertion, thereby waiving the argument. *See* Mot. at 23 (arguing only that plaintiffs cannot establish McDonald's breached its duty proximately causing injury). In any event, application of the relevant factors in *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968), establishes that McDonald's did have a legal duty to plaintiffs. *See Carillo*, May 13, 2013 Order at 13-14 (applying seven *Rowland* factors to conclude Wal-Mart owed legal duty to subcontractors' employees); *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1140 (2009).[45]

---

[44] *See Miller*, 150 Or. App. at 284 ("The possible existence of a sign identifying [the McDonald's franchisee] as the operator does not alter the conclusion that there is an issue of apparent agency for the jury."). This Court should not "demand [of plaintiff] a higher level of sophistication about the nature of franchising than the general public can be expected to have," and should leave the question of ostensible agency for the jury. *Id.*; *see Kaplan*, 59 Cal. App. 4th at 747-48; *Beck*, 245 Cal. App. 2d at 981 (applying ostensible agency principles "in no way endangers" franchise "system of enterprise," because the franchisor "defendant could have easily protected itself by requiring that its licensee inform the public of his licensee status in more effective ways"). McDonald's cites *Braboy v. Staples, Inc.*, 2011 WL 743139, at *1-2 (N.D. Cal. Feb. 24, 2011), which rejected an argument that a franchisor was an "employer" under *Martinez* solely because the franchisor was "referenced" in some hiring documents. The *Braboy* court did not address an ostensible agency theory, and the plaintiff relied only on "references" to the franchisor in hiring documents, not the various forms of evidence of ostensible agency present here.

[45] A defendant need not have "actual notice" or "specific warning" of a risk to owe a duty of care with respect to that risk. *Deutsch v. Masonic Homes of Cal., Inc.*, 164 Cal. App. 4th 748, 783-84 (2008). For negligent hiring or retention claims, reason to know that the entity hired or retained

McDonald's knew or should have known of the risks that plaintiffs would suffer the wage and hour violations at issue, given McDonald's oversight (including its ability to audit Smith's ISP outputs) and economic pressures. *See supra* at 10-21. McDonald's is a huge multi-national corporation with massive bargaining power. ██████████████████████████████ ████████████████████████████████████████████ By contrast, plaintiff low-wage fast food workers had little power to protect themselves. As a matter of public policy and moral justice, and given "the value of negligence actions in providing compensation to injured parties and preventing future harm of the same nature," *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 878 (2012), McDonald's should be required to take actions (and avoid others) in its interactions with Smith to prevent these harms. Recognizing McDonald's duty here will not unduly burden McDonald's, given the amount of detailed oversight over Smith it already conducts. *Cf. Lawson v. Schmitt Boulder Hill, Inc.*, 398 Ill. App. 3d 127, 134-35 (2010) (McDonald's failed to refute that it assumed duty of care to employee of franchisee).

### 2. Whether McDonald's breached its duties presents disputed issues of fact.

"[T]he elements of breach of ... duty and causation are ordinarily questions of fact for the jury's determination." *Phillips*, 172 Cal. App. 4th at 1139 (internal quotation marks omitted). Here, a jury could find that McDonald's breached its duties to plaintiffs and caused them injury by:

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████

_____

was employing workers in violation of law is sufficient. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

**C. Whether McDonald's Corporation Is an Employer or Otherwise Liable Along with McDonald's USA, LLC Turns on Disputed Facts.**[46]

McDonald's asserts that summary judgment should be granted to McDonald's Corporation because that entity has no "contractual or other direct relationship with Smith." Mot. at 24. ███

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ A corporate parent cannot shield itself from employer status by operating through a subsidiary. *Akaosugi*, 282 F.R.D. at 258 (fact that subsidiaries with separate "corporate officers, boards of directors, tax identification numbers, and tax returns" owned individual restaurants did not absolve parent company of employer status); *Castaneda*, 229 Cal. App. 4th at 1017 (corporation that "exercises some control over" subsidiary corporation "may also be the employer of the employees of the corporation it owns").[47] At the least, the extent to which McDonald's Corporation controls McDonald's USA and is involved with McDonald's USA's control and influence over Smith and the plaintiffs presents disputed facts.

**D. In the Alternative, Summary Judgment Should Be Denied Under Rule 56(d).**

If Court concludes that plaintiffs' factual showing is insufficient evidence, it should alternatively deny summary judgment under Fed. R. Civ. P. 56(d) to permit plaintiffs to complete discovery of the "facts essential to justify [their] opposition." *See* Rule 56(d) Decl. of Matthew J. Murray. *See Garrett v. San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).

**IV. CONCLUSION**

For the foregoing reasons, McDonald's motion for summary judgment should be denied.

Date: June 19, 2015                    Respectfully submitted,


By:    s/Michael Rubin
          Michael Rubin

MICHAEL RUBIN
BARBARA J. CHISHOLM
P. CASEY PITTS

---

[46] Plaintiffs do not oppose the motion for summary judgment on behalf of McDonald's Restaurants of California, Inc., which operates McDonald's corporate-owned restaurants in California.

[47] ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

MATTHEW J. MURRAY
Altshuler Berzon LLP

JOSEPH M. SELLERS
(*pro hac vice*)
ABIGAIL E. SHAFROTH
(*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO MCDONALD'S MOTION FOR SUMMARY JUDGMENT;
CASE NO. 3:14-cv-02098-JD