MICHAEL RUBIN (SBN 80618)
BARBARA J. CHISHOLM (SBN 224656)
P. CASEY PITTS (SBN 262463)
MATTHEW J. MURRAY (SBN 271461)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: mrubin@altber.com
        bchisholm@altber.com
        cpitts@altber.com
        mmurray@altber.com

JOSEPH M. SELLERS (*pro hac vice*)
ABIGAIL E. SHAFROTH (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
E-mail: jsellers@cohenmilstein.com
        ashafroth@cohenmilstein.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – San Francisco

| | |
|---|---|
| STEPHANIE OCHOA, ERNESTINA SANDOVAL, YADIRA RODRIGUEZ, and JASMINE HEDGEPETH, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>MCDONALD'S CORP., a corporation, MCDONALD'S U.S.A., LLC, a limited liability company, MCDONALD'S RESTAURANTS OF CALIFORNIA, INC., a corporation, THE EDWARD J. SMITH AND VALERIE S. SMITH FAMILY LTD. PARTNERSHIP d/b/a MCDONALD'S, a limited partnership, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO. 3:14-cv-02098-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON MISCALCULATED WAGES AND WORKDAY OVERTIME VIOLATIONS AND DERIVATIVE CLAIMS**<br><br>Date:          August 12, 2015<br>Time:          10:00 A.M.<br>Courtroom:   11<br>Judge:         Hon. James Donato<br><br>Complaint Filed:   March 12, 2014<br>Trial Date:        September 14, 2015 |

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on August 12, 2015, or as soon thereafter as this matter may be heard, in Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs will and hereby do move this Court for an order granting partial summary judgment in their favor and against Defendant The Edward J. Smith and Valerie S. Smith Family Ltd. Partnership ("Smith") pursuant to Federal Rule of Civil Procedure 56 and Northern District of California Civil Local Rules 7-2, 7-4, and 56.

Plaintiffs seek partial summary judgment as to liability on claims arising out of their miscalculated wage and overtime claims, on the grounds that undisputed facts demonstrate that: (1) from the beginning of the class period through September 15, 2013, Smith systematically underpaid all hourly employees, including Plaintiffs and members of the proposed Miscalculated Wages Subclass,[1] by incorrectly paying them as if their regular, overtime, and double-time hours had been recorded in an "hours:hundredths of an hour" format rather than in an "hours:minutes" format, thus resulting in fewer hours paid than worked; and (2) Smith failed to pay Plaintiffs and other members of the proposed Overtime subclass premium pay for hours worked in excess of eight hours in a workday, as a result of Smith's failure to establish and follow a "workday" and its use of a program for calculating overtime that failed to identify as overtime hours those hours worked in excess of eight hours in a 24-hour period when an employee works overnight shift followed by a shift beginning the same day as the overnight shift ended.

As a result of these two systemic practices, Smith failed to pay Plaintiffs and class members all wages due (1st Claim for Relief), all overtime wages due (2nd Claim for Relief), and all minimum wages due (3rd Claim for Relief), and failed to pay those who were discharged or quit all wages due upon termination (6th Claim for Relief). Moreover, these practices also resulted in

---

[1] Plaintiffs' Motion for Class Certification (Dkt. 157), which seeks certification of a Miscalculated Wage Subclass and Overtime Subclass, among others, is currently pending, and a hearing on the motion was held on May 13, 2015. Dkt. 138.

failure to maintain accurate required records (7th Claim for Relief) and to provide accurate wage statements (8th Claim for Relief), and render Smith liable on a derivative basis for unfair business practices (12th Claim for Relief) and violations of several provisions of the California Labor Code subject to penalties recoverable through the Private Attorneys General Act ("PAGA") (11th Claim for Relief).[2]

Plaintiffs therefore respectfully request that the Court issue an order granting Plaintiffs partial summary judgment and holding that Smith violated California's wage payment, minimum wage, and overtime laws by failing to pay Plaintiffs and putative class members for all recorded regular, overtime, and double-time hours prior to mid-September 2013 and by failing to establish a permissible workday and to pay all overtime due to Plaintiffs and putative class members for work exceeding eight hours in a 24-hour period. Plaintiffs further request a ruling that, as a consequence of the above two violations, Smith unlawfully failed to pay all regular, minimum wage, and overtime wages due, failed to pay all wages due to discharged and terminated employees, failed to maintain accurate records, failed to provide accurate wage statements, and engaged in unfair business practices, and is liable to Plaintiffs under the PAGA for violations and of the Labor Code and penalties recoverable through PAGA.

Once partial summary judgment is entered, further proceedings on the claims related to these miscalculated wages and overtime violations will be needed only to determine damages and statutory penalties. As set forth in Plaintiffs' trial plan, damages for these violations may be readily determined using the time and pay records produced by Smith, which reflect the work hours recorded versus the hours paid as well as the shift punch times from which overtime due for work exceeding eight hours in a work day can be calculated. Dkt. 80 at ¶¶ 2-9.[3]

---

[2] Plaintiffs maintain that McDonald's is jointly liable for these violations, but do not seek summary judgment as to McDonald's in this motion because there is a material factual dispute concerning McDonald's liability, as set forth in Plaintiffs' Opposition to the McDonald's Defendants Motion for Summary Judgment. Dkt. 183. If the Court grants the partial summary judgment requested herein, such ruling would be law of the case and would apply to McDonald's to the extent it is found to be Plaintiffs' joint employer or is jointly liable for these violations under one of Plaintiffs' other theories of joint liability.

[3] In his declaration submitted in support of the Motion for Class Certification, Plaintiffs' expert David Breshears explained how he identified unpaid regular and overtime hours based on these violations from the data available in Excel format, including from a random sample of the time

1    Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying

2  Memorandum of Points and Authorities; the supporting declarations of Abigail E. Shafroth and

3  Matthew J. Murray and exhibits thereto, filed herewith; all of the pleadings and papers on file in

4  this matter; and upon such further evidence and argument as may be presented at the hearing of this

5  motion.

6  Dated: June 29, 2015                    Respectfully submitted,

7                                          By:  /s/ Abigail E. Shafroth
8                                                  Abigail E. Shafroth

9                                          MICHAEL RUBIN
10                                         BARBARA J. CHISHOLM
                                           P. CASEY PITTS
11                                         MATTHEW J. MURRAY
                                           Altshuler Berzon LLP
12
                                           JOSEPH M. SELLERS
13                                         (*pro hac vice*)
                                           ABIGAIL E. SHAFROTH
14                                         (*pro hac vice*)
                                           Cohen Milstein Sellers & Toll, PLLC
15

16                                         *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25  punch data maintained in PDF format and entered into Excel format at Plaintiffs' expense.  Dkt.
    159 (Breshears Decl.) at ¶¶ 6-30.  Plaintiffs have not presented damages for resolution in this
26  motion because two-and-a-half years of Defendants' time records were maintained only in PDF
    format and Plaintiffs will need to undertake the data entry of the  remainder of those records in a
27  useable format should this matter proceed to damages adjudication for the putative class and for
    PAGA penalties.
28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

      A.   Defendant's Franchised McDonald's Restaurants and Employees ................... 2

      B.   Defendant's Timekeeping System .................................................................. 3

      C.   Defendant's Method for Calculating Daily Overtime Hours ............................ 4

      D.   Defendant's Payroll Process and Miscalculation of Payroll Hours
           Through September 2013 ................................................................................ 5

III.  ARGUMENT .................................................................................................... 7

      A.   Legal Standard ............................................................................................. 7

      B.   Defendant Miscalculated Hours for Payroll and Failed to Pay All
           Wages Due in Violation of California's Wage Payment Laws ........................ 8

      C.   Defendant Failed to Pay Overtime or Doubletime Wages for All
           Hours Worked in Excess of Eight in a Single "Workday" in Violation
           of California's Overtime Laws ..................................................................... 11

      D.   Defendant Violated California's Unfair Competition Law As a Result
           of its Miscalculation of Wages and Failure to Pay All Workday
           Overtime Due .............................................................................................. 14

      E.   PAGA Entitles Plaintiffs to Recover Civil Penalties Stemming from
           Smith's Miscalculation of Wages and Failure to Pay All Workday
           Overtime Due .............................................................................................. 16

IV.   CONCLUSION ............................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Addisu v. Fred Meyer, Inc.*,
   198 F.3d 1130 (9th Cir. 2000) ......................................................................................7

*Amaral v. Cintas Corp. No. 2*,
   163 Cal. App. 4th 1157 (2008) ....................................................................................17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ......................................................................................................7

*Arias v. Superior Court*,
   209 P.3d 923 (Cal. 2009) ............................................................................................16

*Armenta v. Osmose, Inc.*,
   135 Cal. App. 4th 314 (2005) ......................................................................................10

*Balasanyan v. Nordstrom, Inc.*,
   913 F. Supp. 2d 1001 (S.D. Cal. 2012) .........................................................................9

*Barlow v. Ground*,
   943 F.2d 1132 (9th Cir. 1991) ......................................................................................7

*Baumann v. Chase Inv. Servs. Corp.*,
   747 F.3d 1117 (9th Cir. 2014) ....................................................................................16

*Butler v. Homeservices Lending LLC*,
   2013 WL 1285567 (S.D. Cal. Mar. 26, 2013) ............................................................20

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014) ....................................................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................................7

*Cortez v. Purolator Air Filtration Prods.*,
   23 Cal. 4th 163 (2000) ...........................................................................................14, 15

*Fields v. W. Marine Products Inc.*,
   2014 WL 547502 (N.D. Cal. Feb. 7, 2014) ................................................................11

*Gonzalez v. Downtown LA Motors, LP*,
   215 Cal. App. 4th 36 (2013) ........................................................................................11

*Green v. Lawrence Serv. Co.*,
   2013 WL 3907506 (C.D. Cal. July 23, 2013) .............................................................16

ii

*Jakosalem v. Air Serv Corp.*,
    2014 WL 7146672 (N.D. Cal. Dec. 15, 2014) ...........................................................12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ...................................................................................................15

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .....................................................................................................14

*Lopez v. G.A.T. Airline Ground Support, Inc.*,
    2010 WL 2839417 (S.D. Cal. July 19, 2010) ..................................................................20

*People v. Los Angeles Palm, Inc.*,
    121 Cal. App. 3d 25 (1981) ..............................................................................................15

*Podolsky v. First Healthcare Corp.*,
    50 Cal. App. 4th 632 (1996) ............................................................................................15

*Ridgeway v. Wal-Mart Stores, Inc.*,
    2014 WL 2600326 (N.D. Cal. June 10, 2014) ..................................................................10

*Rieve v. Coventry Health Care, Inc.*,
    870 F. Supp. 2d 856 (C.D. Cal. 2012) ..............................................................................10

*Roth v. Comerica Bank*,
    799 F. Supp. 2d 1107 (C.D. Cal. 2010) ..............................................................................8

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*,
    505 F. Supp. 2d 609 (N.D. Cal 2007) ...........................................................................12, 13

*Yadira v. Fernandez*,
    2011 WL 2434043 (N.D. Cal. June 14, 2011) ..................................................................20

**STATUTES**

Cal. Bus. & Prof. Code § 17200 et seq. (California Unfair Competition Law) ...............2, 14, 15, 22

Cal. Labor Code § 201................................................................................................9, 14, 19

Cal. Labor Code § 202................................................................................................9, 14, 19

Cal. Labor Code § 203..........................................................................................................9

Cal. Labor Code § 204...............................................................................................8, 14, 18

Cal. Labor Code § 210........................................................................................................18

Cal. Labor Code § 223..............................................................................................11, 14, 18, 19

Cal. Labor Code § 225.5...........................................................................................11, 18, 19

Cal. Labor Code § 226 ................................................................................................19, 20

Cal. Labor Code § 500 ................................................................................................12, 13

Cal. Labor Code § 510 .................................................................................................*passim*

Cal. Labor Code § 558 ........................................................................................................18

Cal. Labor Code § 1174 .............................................................................................20, 21

Cal. Labor Code § 1182.12 .........................................................................................9, 17

Cal. Labor Code § 1194 .......................................................................................9, 10, 11

Cal. Labor Code § 1197 ...............................................................................................9, 17

Cal. Labor Code § 1197.1 ..................................................................................................17

Cal. Labor Code § 2698 *et seq*. ("PAGA") ............................................................*passim*

Cal. Labor Code § 2699 ...........................................................................9, 16, 17, 19, 20

Cal. Labor Code § 2699.3 ..................................................................................................16


**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .......................................................................................................1, 16

Fed. R. Civ. P. 56 ..................................................................................................................7

IWC Wage Order 5-2001 ..............................................................................*passim*

## I.    INTRODUCTION

Plaintiffs are current and former crew members at McDonald's restaurants operated by Defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership ("Smith") pursuant to franchise agreements with Defendant McDonald's USA, LLC ("McDonald's"). Plaintiffs bring this wage and hour suit on their own behalf, as a representative action under the California Private Attorney General Act, and a putative class action under Rule 23.[4]  While several issues in this suit—including Defendants' liability for failing to provide required and timely meal and rest breaks, for failing to reimburse work-related expenses, and McDonald's joint liability generally—involve factual disputes that must be resolved at trial, Smith's liability for violations stemming from two undisputed wage calculation practices is ripe for resolution by this Court.

The undisputed facts demonstrate that Smith engaged in practices that deprived Plaintiffs and other crew members of legally earned wages.  First, Defendants concede that from the beginning of the class period through September 15, 2013, Smith systematically underpaid all hourly employees by incorrectly paying them as if their regular, overtime, and double-time hours had been recorded in an "hours:hundredths of an hour" format rather than in an "hours:minutes" format, resulting in fewer regular and overtime hours paid than worked.  Smith is therefore liable for violation of the California Labor Code and Wage Order provisions requiring payment of all wages due on an ongoing basis and upon termination of employment, and payment of minimum wages for all hours worked and of premium wages for overtime hours.

The undisputed facts also show that the McDonald's software on which Smith relied to calculate overtime failed to identify overtime hours resulting from work in excess of eight hours in a 24-hour period that occurred when an employee worked an overnight shift followed by a shift beginning the same day as the overnight shift ended.  Smith is therefore liable for violation of the Labor Code and Wage Order provisions requiring payment of premium wages for hours worked in excess of eight in a consecutive 24-hour period, and payment of all wages due on an ongoing basis

---

[4] Plaintiffs' Motion for Class Certification (Dkt. 157), which seeks certification of a Miscalculated Wage Subclass and Overtime Subclass, among others, is currently pending, and a hearing on the motion was held on May 13, 2015.  Dkt. 138.

and upon termination of employment.

As a result of each of these two failures to pay wages due, Smith is liable for derivative violations of the California Unfair Competition Law and provisions of the Labor Code requiring maintenance of accurate time and payroll records and provision of accurate wage statements, as well as Labor Code provisions giving rise to penalties recoverable through PAGA. Plaintiffs therefore respectfully request that the Court issue an order granting Plaintiffs partial summary judgment as to liability for the violations resulting from Defendant's wage miscalculation and overtime practices.

## II. FACTUAL BACKGROUND

### A. Defendant's Franchised McDonald's Restaurants and Employees

Beginning prior to the start of the limitations period and Class Period on March 12, 2010, Smith has operated five McDonald's franchised restaurants in Oakland and Richmond, California. Dkt. 161-2 (Tr. of Rule 30(b)(6) Dep. of Michael Smith, March 19, 2015 ("M. Smith Dep.")) 113:19-22; Dkt. 161-5 (Smith Inter. Resp.) No. 1; Dkt. 161-7 (McDonald's Inter. Resp.) No. 1 (6:16-7:5) & No. 2 (8:1-18); *see also* Dkt. 161-2 (M. Smith Dep.) 110:11-112:9, 114:17-116:23; Dkt. 164-1–164-8 (Exs. 60, 61, 62, 63, 64, 65).[5] Michael Smith and Guadalupe Ortega supervised and managed all five restaurants throughout the Class Period. Dkt. 161-3 (Tr. of Dep. of Guadalupe Ortega, March 20, 2015 ("Ortega Dep.")) 15:21-22, 16:20-24, 18:3-19:7, 21:4-23, 60:2-17. Three of the five restaurants are open 24 hours a day seven days a week: one is open 24 hours

---

[5] Edward Smith filed a declaration on May 7, 2014 stating that the Smith Family Partnership owns and operates all five restaurants. Dkt. 2-1 (Decl. of Edward Smith ("E. Smith Decl.")) ¶¶ 2, 6; *see also* Decl. of Abigail E. Shafroth ("Shafroth Decl.") Ex. A (Tr. of Dep. of Edward Smith, June 11, 2015 ("E. Smith Dep.")) 13:13-16:15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. A (E. Smith Dep.) 15:6-12; 35:7-21; 220:10-18; ▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 26:22-28:20, 29:10-32:4, 33:18-34:22, 41:8-43:12, 71:8-25; Shafroth Decl. Exs. 310 ▮▮▮▮▮▮▮▮▮▮, 311 ▮▮▮▮▮▮▮); Shafroth Decl. Ex. B (Tr. of Rule 30(b)(6) Dep. of Bruce Steinhilper, April 7, 2015 ("Steinhilper Dep.")) 36:19-38:16. Edward and Valerie Smith transferred their share of the franchise rights in the Jackson Street location to Michael Smith in April of 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Dkt. 2-1 ¶ 6 & Ex. A (E. Smith Dep.) 29:10-32:4; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A (E. Smith Dep.) 41:8-43:20; *see also* Dkt. 161-1 (M. Smith Dep.) 15:3-4, 19:3-21, 21:19-22:4, 22:16-20.

1   on each of Friday and Saturday; and the Jackson location is open from 5 a.m. to 1 a.m. daily.  Dkt.

2   106-1 (Smith Opp. to Class Certification) at 7:6-12; Shafroth Decl. Ex. C (M. Smith Dep.) 25:17-

3   26:3.  Employees at the 24-hour locations sometimes work overnight shifts that span two days.

4   Dkts. 161-1–161-2 (M. Smith Dep.) 95:10-96:3.

5          During the class period, Smith has employed more than 600 hourly, non-exempt employees

6   at the five restaurants.  Dkt. 2-1 (E. Smith Decl.) ¶¶ 2, 8-9.  These hourly, non-exempt employees

7   include crew members, crew trainers, and maintenance workers (together hereinafter "crew

8   members" or "putative Class Members")—the non-managerial employees who perform routine

9   production and service work at the five restaurants.  Dkt. 161-1 (M. Smith Dep.) 26:7-27:6; Dkt.

10  161-3 (Ortega Dep. 32:4-19); *see also* Dkts. 161-5–161-6 (Smith Inter. Resp.) Nos. 2, 9 & Ex. A

11  thereto (Smith employee roster).  Crew member duties include cleaning, preparing food, and taking

12  food orders and operating the cash register and drive-thru window.  Dkt. 161-1 (M. Smith Dep.)

13  26:7-27:6.  Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine

14  Hedgepeth are current or former crew members who worked at the Smith restaurants during the

15  Class Period.  Dkt. 184 (Decl. of Ernestina Sandoval ("Sandoval Decl.")) ¶ 1; Dkt. 185 (Decl. of

16  Jasmine Hedgepeth ("Hedgepeth Decl.")) ¶ 1; Dkt. 186 (Decl. of Stephanie Ochoa ("Ochoa

17  Decl.")) ¶ 1; Dkt. 187 (Decl. of Yadira Rodriguez ("Rodriguez Decl.")) ¶ 1.

18      **B.      Defendant's Timekeeping System**

19          Crew members' work time is tracked using McDonald's proprietary ISP ("In-Store

20  Processor) software and Point of Sale system ("POS").  Dkt. 161-1 (M. Smith Dep.) 27:14-23;

21  Shafroth Decl. Ex. D (Tr. of Rule 30(b)(6) Dep. of Michael Lewis, April 8, 2015 ("Lewis Dep."))

22  60:7-61:18; 79:21-80:12; *see also* Dkt. 161-5 (Smith Inter. Resp.) No. 3.  Smith relies on the

23  McDonald's ISP to determine how many regular and overtime hours each employee should be

24  compensated for each pay period.  Dkts. 161-1–161-2 (M. Smith Dep.) 73:22-74:10, 100:23-102:2.

25          Crew members are required to punch into the POS using a unique employee ID number and

26  password at the beginning and end of each shift, meal period, and rest break.  Dkt. 161-1 (M. Smith

27  Dep.) 27:14-23, 28:17-29:6, 29:14-16, 30:20-31:14, Dkt. 162-3 (Ex. 45) at 26; Dkt. 161-4 (Ortega

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

Dep.) 87:8-24; Dkt. 161-5 (Smith Inter. Resp.) No. 3.[6]  Crew members' time punches are stored

and analyzed according to formulas programmed into the ISP.   Dkt.  161-1 (M. Smith Dep.) 55:7-

12; Dkt. 161-5 (Smith Inter. Resp.) No. 3; Ex. D (Lewis Dep.) 159:22-160:5.  It is undisputed that

in the ISP's time punch analysis, the ISP assigns all time punches and hours for a shift to the

"payroll date" on which the shift *began* regardless of when the hours were actually worked.  Dkt.

106-1 (Smith Opp. to Class Certification) at 7:12-14; Dkt. 161-1 (M. Smith Dep.) 95:9-96:6; Dkt.

163-8 (Ex. 56); Ex. D (Lewis Dep.) 160:15-25, 161:7-18.  Thus for overnight shifts, i.e., those that

go past midnight, all hours worked during the shift are attributed by the ISP to the date the shift

began, even though many of those hours may be worked on the subsequent date.  *Id.*[7]

## C.   Defendant's Method for Calculating Daily Overtime Hours

Smith's Rule 30(b)(6) designee on the topic of overtime practices testified that Smith does

not have a defined workday and that he did not know what period the organization looked at for the

purposes of determining whether an employee had worked over eight hours in a workday.  Dkt.

161-1 (M. Smith Dep.) 10:8-19, 70:23-25, 73:1-21 and Shafroth Decl. Ex. 43.  Rather, Smith relies

on McDonald's ISP to identify which hours worked by crew members should be paid as overtime

hours, including daily overtime hours.  M. Smith Dep. (Dkt. 161-1) 70:20-25, 73:13-74:10; Ortega

Dep. (Dkts. 161-3–161-4) 27:25-28:3, 137:3-23, 138:19-139:1.  The ISP, however, does not track

whether employees have worked more than eight hours in a 24-hour workday period.  Instead, the

ISP calculates daily overtime hours by determining only whether more than eight hours of work

---

[6] When a crew member forgets to punch or punches incorrectly—a rare occurrence—a store manager adjusts that particular time record to "fix" the entry to reflect the crew member's actual shift and break times. Dkt. 161-4 (Ortega Dep.) 91:3-7; Dkt. 161-5 (Smith Inter. Resp.) No. 3.

[7] The time punch records for the entire class period are available.  The ISP generates and saves "Time Punch Summary Reports" in PDF format showing the time punches for restaurant employees on a pay period basis, and Smith has produced those records.  Dkt. 161-1 (M. Smith Dep.) 89:14-91:1, Dkt. 163-6 (Ex. 54); Dkt. 161-5 (Smith Inter. Resp.) No. 6.  Additionally, Smith contracts with a third-party vendor called QsrSoft that collects time punch and other data from Smith's ISPs, and Smith has produced time punch data in Excel format for its restaurants obtained from QsrSoft for the period since October 2012.  Dkt. 161-1 (M. Smith Dep.) 88:25-92:23, 163-6– 163-7 (Exs. 54, 55); Dkt. 161-5 (Smith Inter. Resp.) Nos. 3, 6; *see also* Shafroth Decl. Ex. E (Tr. of Dep. of John Witherspoon, April 29, 2015 ("Witherspoon Dep.")) 21:16-27:4 & Witherspoon Ex. 139 (███████████████████████████████████████████████████████████████████████).

have been *assigned to a given payroll date*. Ex. D (Lewis Dep.) 159:22-160:5, 160:15-25, 161:7-18; *see also* Dkts. 161-1–161-2 (M. Smith Dep.) 95:9-96:6, Dkts. 163-8–163-9 (Exs. 56, 57); Dkt. 159 (Decl. of David M. Breshears ("Breshears Decl.")) ¶¶ 26-30. As explained above, the ISP assigns all hours for a shift to the payroll date on which the shift *began*, rather than assigning each hour to the date it was actually worked. As a result, when a crew member works an overnight shift that begins the night of Day 1 and ends the following morning of Day 2, and then begins another shift later in the day on Day 2, the ISP assigns all time worked for the overnight shift to Day 1 and all time worked during the second shift to Day 2. Ex. D (Lewis Dep.) 159:22-160:5, 160:15-25, 161:7-18; Dkt. 159 (Breshears Decl.) ¶¶ 27-28. Consequently, a crew member is not paid overtime if she works more than eight hours total in Day 2 as a result of the combination of the morning hours from the overnight shift and the hours worked on the second shift on Day 2. Dkt. 159 (Breshears Decl.) ¶¶ 26-30; *see also* Ex. D (Lewis Dep.) 160:15-25, 161:7-18.

This method of calculating overtime based on hours assigned to a payroll date, rather than hours worked in an established 24-hour workday, deprived nearly one third of all crew members, including Plaintiffs Sandoval and Ochoa, of overtime wages, and reduced total overtime wages paid by approximately 1%. Dkt. 159 (Breshears Decl.) ¶ 30.

**D.    Defendant's Payroll Process and Miscalculation of Payroll Hours Through September 2013**

Smith submits the number of regular, overtime, and double-time hours that the ISP has calculated each crew member worked in the pay period to its McDonald's-approved payroll vendor to process payroll. Dkt. 161-2 (M. Smith Dep.) 100:16-102:24, 103:10-12; Dkt. 163-10 (Ex. 58), Dkt. 164-12 (Ex. 73); Ex. D (Lewis Dep.) 160:1-5. Smith used ABC (Automatic Business Consultants) as its payroll vendor until switching to its current payroll vendor, Mize Houser, in 2013. Ex. A (E. Smith Dep.) 45:20-47:14; Dkt. 161-2 (M. Smith Dep.) 105:9-108:11; Dkts. 163-10–163-11 (Exs. 58-59). When Smith used ABC as its payroll vendor, Valerie Smith manually "key[ed] in the hours of the employees" from the ISP-generated Pay Period Reports, reflecting each employee's total regular, overtime, and double-time hours for the pay period, and sent that manually-entered data to ABC to process payroll. Dkts. 161-1–161-2 (M. Smith Dep.) 20:23-

21:24, 100:23-102:2, 175:8-176:3; Dkt. 164-12 (Ex. 73). After Smith switched to using Mize Houser as its payroll vendor, Smith started using a vendor called QsrSoft to transfer ISP payroll data, including the regular and overtime hours worked as calculated by the ISP, electronically to Mize Hauser to process payroll. Dkts. 161-1–161-2 (M. Smith Dep.) 87:18-88:24, 100:23-102:2, 105:9-108:10 and Dkts. 163-10–163-12 (Exs. 58, 59, 73); Ex. E (Witherspoon Dep.) 52:1-53:13.[8] Both payroll vendors processed wage statements that reflected the number of regular and overtime hours paid for the pay period as a whole, without showing a breakdown of the hours paid by day. Dkt. 161-2 (M. Smith Dep.) 108:12-110:6, Dkt. 83-4 (Ex. 35).

It is undisputed that during the period from the beginning of the class period in March 2010 through September 15, 2013, when Valerie Smith manually keyed in the employees' regular, overtime, and double-time hours taken from Pay Period Reports for payroll, Smith consistently underpaid all hourly employees, including Plaintiffs and other crew members. Dkt. 159 (Breshears Decl.) ¶¶ 19-25; Dkt. 110-1 (Decl. of David P. Lamoreaux ("Lamoreaux Decl.")) at 1, 4. Although the ISP generated Pay Period Reports that generated time in "hour:minute" format, Smith paid crew members as if that time had been recorded in an "hour.hundredths of an hour" format. Dkt. 159 (Breshears Decl.) ¶ 22; see also Dkt. 163-9 (Ex. 57) & Dkt. 164-12 (Ex. 73) (Pay Period Reports). For example, if a crew member's actual recorded regular work hours in the ISP Pay Period Report and the time punch data were 40 hours and 50 minutes for a pay period, Smith only paid the crew member for 40.50 hours of work at the regular rate, rather than the correct 40.83 hours. Dkt. 159 (Breshears Decl.) ¶ 22. Smith consistently made this error in all but two of the pay periods from the beginning of the class period through September 15, 2013, resulting in systematic underpayments for all crew members. Dkt. 159 (Breshears Decl.) ¶¶ 22-25. McDonald's expert also confirmed that this error was made between March 2010 and September 2013. Dkt. 110-1 (Lamoreux Decl.) at 1, 4. Smith's counsel conceded in open court that this payment error was made, that Plaintiffs' miscalculated wages claims are suitable for classwide

---

[8] Smith has produced the ISP-generated Pay Period Reports in PDF format, as well as the payroll data (in Excel format) reflecting regular, overtime, and doubletime hours and wages actually paid from its payroll vendors. Dkts. 161-1–161-2 (M. Smith Dep.) 87:18-88:24, 100:23-102:2, 105:9-108:10 and Dkts. 163-10–163-12 (Exs. 58, 59, 73); see also Ex. D (Lewis Dep.) 80:17-84:8.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

1   resolution, and that Smith planned to pay the actual amount of lost wages, though not penalties.

2   Dkt. 137 (Tr. of Proceedings, May 13, 2015) 79:13-81:4.

3   This error always resulted in paying for less time than was actually recorded, other than

4   when an employee worked a whole number of hours (e.g., 39:00),[9] because the minutes worked

5   were effectively divided by 100 rather than by 60, systematically reducing the amount of time paid.

6   Dkt. 159 (Breshears Decl.) ¶ 23.  Further, because overtime and double-time hours were recorded

7   separately by the ISP and on the Pay Period Reports Smith used to key in hours for payroll,

8   whenever a crew member was paid for overtime or double-time the amount of time paid at those

9   rates was also systematically reduced.  Dkt. 159 (Breshears Decl.) ¶¶ 22-24; Dkt. 161-2 (M. Smith

10  Dep.) 100:23-102:24, 175:11-176:3; Dkt. 164-12 (Ex. 73).  Due to this error, at least 731 hours

11  were underpaid in the pay periods analyzed by Plaintiffs' expert.  Dkt. 159 (Breshears Decl.) ¶ 25.

12  **III.    ARGUMENT**

13  **A.    Legal Standard**

14  A motion for summary judgment should be granted if "there is no genuine dispute as to any

15  material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a);

16  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A genuine dispute exists if the

17  non-moving party presents evidence from which a reasonable jury, viewing the evidence in the

18  light most favorable to that party, could resolve the material issue in the non-movant's favor.

19  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Barlow v. Ground*, 943 F.2d 1132,

20  1134–36 (9th Cir. 1991).  The moving party bears the initial burden of identifying the portions of

21  the pleadings and evidence that demonstrate the absence of a triable issue of material fact.  *Celotex*

22  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the

23  burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a

24  genuine issue for trial."  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

25

26

27  _____
    [9] Hours worked were recorded as whole numbers in only approximately 1.6% of the entries during
    the relevant period, and thus hourly employees were underpaid their regular wages the rest of the

28  time.  Dkt. 159 (Breshears Decl.) ¶¶ 23-24.

1

**B.    Defendant Miscalculated Hours for Payroll and Failed to Pay All Wages Due in Violation of California's Wage Payment Laws**

2

Given the undisputed facts demonstrating that Smith systematically paid Plaintiffs and all

3

crew members for fewer regular and overtime work hours than were actually recorded until mid-

4

September 2013, Plaintiffs are entitled to partial summary judgment on their claims that Smith

5

violated California's laws requiring payment of all wages due (1st Claim for Relief), all overtime

6

wages due (2nd Claim for Relief), and all minimum wages due (3rd Claim for Relief), and payment

7

of all wages due upon termination (6th Claim for Relief).

8

As detailed above in Part II.D, from the beginning of the class period in March 2010

9

through September 15, 2013, Smith consistently underpaid all hourly employees, including

10

Plaintiffs and other crew members, by paying time recorded by the ISP in "hour:minute" format as

11

if it had been recorded in an "hour.hundredths of an hour" format, resulting in the systematic

12

payment of less time at each of the regular, overtime, and double-time rates than was actually

13

recorded as worked in Smith's time records.  *See supra* \*\*.  Both Plaintiffs' and McDonald's

14

experts confirmed this error, which is readily apparent by comparison of Defendant's time and

15

payroll records, and Smith's counsel conceded during the hearing on Plaintiffs' Motion for Class

16

Certification that this payment error had been made.  Dkt. 159 (Breshears Decl.) ¶¶ 19-25; Dkt.

17

110-1 (Lamoreux Decl.) at 1, 4; Dkt. 137 (Tr. of Proceedings, May 13, 2015) 79:13-81:4.

18

These facts give rise to several violations of California's wage payment laws.  First, by

19

failing to pay wages for all time worked, Smith failed to pay all wages due to employees on regular

20

pay dates in violation of California Labor Code § 204.  Section 204 requires payment of "[a]ll

21

wages . . . earned" twice per month on employees' regular paydays.  *See Roth v. Comerica Bank*,

22

799 F. Supp. 2d 1107, 1121 (C.D. Cal. 2010) ("Under California Labor Code § 204(a), '[a]ll wages

23

. . . earned by any person in any employment are due and payable twice during each calendar

24

month, on days designated in advance by the employer as the regular paydays.'").  There is no

25

dispute that these wages were earned but not paid on employees' regular paydays, and thus Smith

26

plainly is liable for violation of Section 204.

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

Second, for this same reason, Smith is liable for failing to pay all wages due upon termination of employment to Plaintiffs Ochoa, Rodriguez, and Hedgepeth,[10] and other crew members whose employment terminated during the class period, in violation of California Labor Code §§ 201 and 202.[11]  *Cf. Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1010 & n.9 (S.D. Cal. 2012) (recognizing that §§ 201-203 claims were derivative of the minimum wage violation and thus survival of minimum wage claim on summary judgment meant survival of wage payment claims).  Section 201 of the Labor Code requires an employer who discharges an employee to pay all wages earned but unpaid immediately upon the employee's discharge from employment, and section 202 similarly requires an employer promptly to pay all wages earned but unpaid to an employee who resigns within 72 hours after that employee's employment terminates.  Smith failed to pay "all wages earned but unpaid" as a result of the wage miscalculation at the time of former employees' termination and thus is liable on this claim.

Third, by failing to pay *any* wages for the amounts of time that were recorded in the ISP but not paid as a result of this practice, Smith failed to pay at least the "applicable minimum wage for all hours worked" in violation of the California minimum wage laws.  IWC Wage Order 5-2001 §4(B);[12] *see also* Cal. Labor Code §§ 1182.12 and 1197 (requiring payment of minimum wage as set by the Industrial Welfare Commission or "IWC"); Cal. Labor Code § 1194 (authorizing private right of action to recover unpaid minimum and overtime wages).[13]  This violation was committed against all  crew members prior to September 2013, regardless of their regularly hourly rate,

---

[10] Plaintiff Ochoa was employed at a McDonald's restaurant operated by Smith from June 2013 through February 2014.  Dkt. 186 (Ochoa Decl.) ¶ 1.  Plaintiff Rodriguez was so employed from June 2013 through August 2014.  Dkt. 187 (Rodriguez Decl.) ¶ 1.  Plaintiff Hedgepath was so employed from April 2012 through October 2013.  Dkt. 185 (Hedgepeth Decl.) ¶ 1.

[11] Violations of these sections are subject to civil penalties under PAGA.  *See infra*; *see also* Cal. Labor Code § 2699(f).  Additionally, California Labor Code § 203 provides that if an employer willfully fails to pay all compensation due upon termination as required by §§ 201 and 202, the employer shall be liable for waiting time penalties in the form of continued compensation for up to 30 days.  Plaintiffs preserve for trial their claim for waiting time penalties under § 203, but do not seek summary judgment on that issue in this motion.

[12] IWC Wage Order 5-2001 applies to "all persons employed in the public housekeeping industry," § 1, which includes any business that "provides meals," including restaurants.  *Id.* § 2(P)(1).

[13] PAGA penalties are also applicable to violations of California minimum wage law.  *See infra **.

1    because under California minimum wage law, employees must be compensated for all time worked

2    at either the legal minimum wage or the contractual hourly rate, and compliance cannot be

3    established by averaging hourly compensation across paid and unpaid time. *Armenta v. Osmose,*

4    *Inc.*, 135 Cal. App. 4th 314, 323-24 (2005); *see also Ridgeway v. Wal-Mart Stores, Inc.*, 2014 WL

5    2600326, at *5 (N.D. Cal. June 10, 2014) (recognizing and following *Armenta*'s interpretation of

6    California minimum wage law on this point, and noting difference from federal minimum wage

7    law).  Thus, an employer's failure to pay for any time worked violates California minimum wage

8    law.  *See, e.g., Armenta*, 135 Cal. App. 4th at 324 (holding that trial court correctly determined that

9    employer violated § 1194 by failing to pay for time spent processing paperwork).  As no material

10   facts are disputed as to Smith's failure to pay Plaintiffs and its other hourly employees minimum

11   wages for the time recorded but not paid as a result of the incorrect conversion of minutes to

12   hundredths of an hour, this Court should hold that Smith violated California minimum wage law.[14]

13        Fourth, by failing to pay any wages for the amounts of overtime and double-time hours that

14   were recorded by the ISP but not paid as a result of this practice, Smith failed to pay the premium

15   wages required for work in excess of eight hours per workday or 40 hours per workweek in

16   violation of California overtime law.  Cal. Labor Code § 510; IWC Wage Order 5-2001 §3

17   (requiring payment of overtime wages at a rate of time-and-one half the regular rate of pay for

18   hours over 40 per week or over eight per workday and double-time wages at a rate of twice the

19   regular rate of pay for hours in excess of 12 per day, and declaring failure to do so unlawful); Cal.

20   Labor Code § 1194 (authorizing private right of action to recover unpaid minimum and overtime

21   wages); *see also Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 866 (C.D. Cal. 2012)

22   ("Section 510 . . .  requires that employees be compensated with overtime pay for any work in

23   excess of eight hours per day or in excess of forty hours in one week").[15]  As Smith does not and

24

25   _____
     [14] Smith's counsel represented to Plaintiffs and the Court that Smith intended to pay the actual
     amount of unpaid wages due on that claim, but not penalties. Dkt. 137 (Tr. of Proceedings, May
26   13, 2015) 79:13-81:4.  If Smith pays a portion of the amount due on this claim, but not the full
     amount due inclusive of interest, liquidated damages, applicable penalties, costs and statutory
27   attorneys' fees, additional amounts due will need to be determined in subsequent proceedings.
     [15] PAGA penalties are also applicable to violations of California overtime law.  *See infra **.*
28

1  cannot dispute that Plaintiffs and other crew members are non-exempt and sometimes worked

2  overtime hours, and as the time and pay records confirm that when the ISP recorded overtime and

3  double-time hours a portion of those overtime hours was not paid due to the incorrect conversion of

4  minutes to hundredths of an hour, there are no issues of material fact and the Court should grant

5  partial summary judgment in favor of Plaintiffs and hold that Smith violated California overtime

6  law by failing to pay overtime wages for all overtime hours worked.[16]

7      Finally, because Smith purported to pay Plaintiffs and other hourly employees all wages

8  due at the minimum, regular, and overtime wage rate and issued paystubs showing payment of all

9  hours listed on the paystub, but in fact paid less wages than were due as a result of the conversion

10  of minutes to hours, Plaintiffs are entitled to judgment on Plaintiffs' claim under California Labor

11  Code § 223, which makes it unlawful for an employer "to secretly pay a lower wage" than the

12  statutory or contractual wages required, while purporting to pay the required amount.  *See*

13  *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 50 (2013) (explaining that failure to

14  pay an employee at all for certain hours would violate § 223 due to failure to provide the pay

15  "promised 'by statute'").[17]

16      **C.    Defendant Failed to Pay Overtime or Double-time Wages for All Hours
17      Worked in Excess of Eight in a Single "Workday" in Violation of California's
       Overtime Laws**

18      The parties do not dispute the relevant facts regarding Defendant's method for calculating

19  overtime for work over eight hours in a day.  Thus, the only issue to resolve is whether that method

20  violates California's state overtime laws.  Because Defendant's method of calculating overtime

21  failed to identify and compensate at a premium rate hours worked in excess of eight in a

22  "workday"—i.e., a consistent 24-hour period—Plaintiffs are entitled to partial summary judgment

23  on their claims that Smith violated California's laws requiring payment all overtime wages due

24  _____

25  [16] A finding that Smith is liable for violation of overtime requirements would mean that Smith is
    liable to Plaintiffs and class members for the balance of those unpaid overtime wages and interest

26  thereon, as well as costs and reasonable attorneys' fees.  Cal. Labor Code § 1194; *see also Fields v.
    W. Marine Products Inc.*, 2014 WL 547502, at *7 (N.D. Cal. Feb. 7, 2014).  These amounts may be
    determined in subsequent proceedings.

27  [17] Violation of § 223 is subject to civil penalties under PAGA.  *See infra ***; *see also* Cal. Labor
    Code § 225.5.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

1    (2nd Claim for Relief), as well as derivative claims for failure to pay all wages due (1st Claim for

2    Relief) and upon termination (6th Claim for Relief).

3        Section 510 of the Labor Code provides in relevant part:

4        Eight hours of labor constitutes a day's work. *Any work in excess of eight hours in
         one workday. . .* shall be compensated at the rate of no less than one and one-half
5        times the regular rate of pay for an employee. *Any work in excess of 12 hours in one
         day* shall be compensated at the rate of no less than twice the regular rate of pay for
6        an employee.

7    Cal. Labor Code § 510(a) (emphases added).  Section 500, in turn, defines a "workday" or "day" as

8    "any consecutive 24-hour period commencing at the same time each calendar day."[18]  Therefore

9    employers must pay overtime "based on the amount of work completed by an employee during any

10   single twenty-four hour workday period, regardless of whether the employee works continuously

11   through the day divide." *Jakosalem v. Air Serv Corp.*, 2014 WL 7146672, at *3 (N.D. Cal. Dec.

12   15, 2014).  "California's overtime laws are remedial and are to be construed so as to promote

13   employee protection."  *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d

14   609, 617 (N.D. Cal 2007).

15       The undisputed facts demonstrate that Smith did not establish any "workday" for

16   determining when Plaintiffs and other members of the proposed Overtime subclass worked in

17   excess of eight hours in a workday, and Smith used the McDonald's ISP program to calculate

18   overtime in a manner that was not based on a consistent 24-hour period and, moreover, was not

19   even based on a 24-hour period. *See supra* **.  As shown above, the ISP does not use a

20   "consecutive 24-hour period commencing at the same time each calendar day" to identify work in

21   excess of eight hours for which overtime is due.  *See supra* **.  Rather, the ISP only identifies

22   whether more than eight hours of work have been assigned to a "payroll date," which is a creature

23   of the ISP.  *Id.*  Because the ISP assigns hours to a payroll date based on when the shift containing

24

25   _____
     [18] The applicable IWC Wage order provisions governing overtime requirements for the restaurant
     industry are substantively identical.  Section 3 of Wage Order No. 5-2001 requires payment of
26   "[o]ne and one-half (1½) times the employee's regular rate of pay for all hours in excess of eight
     (8) hours . . . and . . . [d]ouble the employee's regular rate of pay for all hours worked in excess of
27   12 hours in any workday."  Like Labor Code § 500, the Wage Order define a "workday" or "day"
     as "any consecutive 24-hour period beginning at the same time each calendar day."  IWC Wage
28   Order No. 5-2001 § 2(U).

those hours *started*, rather than based on when those hours were actually worked, *id.,* the payroll date does not reflect hours worked within a "24-hour period," let alone a "consecutive 24-hour period," as required under Cal. Labor Code § 500.

The consequence of Defendant's failure to establish a lawful workday and its reliance on the ISP, is that when crew members work overnight shifts and then return to work a second shift the same day as their overnight shift ended, they are not paid overtime for work in excess of eight hours resulting from the combination of the morning hours from the overnight shift and the additional hours worked later that same day.  *See supra* ** (citing Dkt. 159 (Breshears Decl.) ¶¶ 19-21, 26-30).  For example, Smith's time records reflect on April 1, 2014, Plaintiff Sandoval began an overnight shift at 11:05 p.m. and worked until 6:14 a.m. on April 2 (with one 33-minute unpaid meal period), and then worked a second shift on April 2 from 3:59 p.m. until 12:03 a.m. (with one 29-minute unpaid meal period).  Dkt. 163-8 (Ex. 56) at SMITH66710; *see also* Dkts. 161-1–161-2 (M. Smith Dep.) 95:9-96:6; Dkt. 159 (Breshears Decl.) ¶ 29.  Despite Sandoval working a total of 13.21 hours on April 2, the ISP failed to recognize any overtime worked because the ISP assigned all hours from the overnight shift (6.60 hours) to April 1 and all hours from the second shift (7.58 hours) to April 2, designating all of the hours as regular hours.  *Id.*[19]  This method of calculating overtime based on hours assigned to a payroll date, rather than hours worked in an established 24-hour workday, deprived nearly one third of all crew members, including Plaintiffs Sandoval and Ochoa, of overtime wages, and reduced total overtime wages paid by approximately 1%.  Dkt. 159 (Breshears Decl.) ¶ 30.

Employers are not required to use the calendar day as the "workday" for overtime purposes, nor are they required to establish the same workday for all employees, and there are often good reasons to use another 24-hour period, such as to align an employee's shift start with the beginning of their "workday."  *See, e.g., Jakosalem*, 2014 WL 7146672, at *2.  For example, McDonald's

_____

[19] This is a typical schedule for Plaintiff Sandoval, who regularly worked overnight shifts from approximately 10:00 pm Tuesdays to 6:00 am Wednesday morning, followed by another shift Wednesday afternoon from 3:00 to 11:00 pm.  Dkt. 82-7 (Sandoval Dep.) 64:5-11.  She thus regularly works for over 13 hours on Wednesdays (even assuming she is provided two unpaid half-hour meal breaks, which she does not always receive), yet is not paid overtime for this work.  Dkt. 74 (Decl. of Ernestina Sandoval, April 3, 2015) ¶8.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD

could design its ISP software to identify as overtime all hours over eight in the 24-hour period that begins from the time a crew member's shift starts.  Thus in the above example, that system would recognize overtime hours as a result of Plaintiff Sandoval's work in excess of eight hours in the 24-hour period commencing when her overnight shift started on April 1 at 11:05 p.m. and ending at April 2 at 11:05 p.m.

But the ISP does not simply use a *different* 24-hour period.  It does not use a 24-hour period at all.  And as a result, Plaintiffs' hours worked in excess of eight in the calendar day or other consecutive 24-hour period are and have not been identified by the ISP or paid by Smith.  The Court should therefore hold that Defendant's method for calculating workday overtime violates Section 510 of the California Labor Code (as well as Wage Order No. 5-2001 § 3, the substantively identical provision of the applicable restaurant industry wage order), and should grant Plaintiffs' motion for partial summary judgment on their overtime claim on this basis.

Additionally, because the failure to pay all overtime due necessarily means that "all wages due" were not paid, for the same reasons as discussed as discussed *supra* **, the Court should also grant partial summary judgment on Plaintiffs' derivative claims that Smith failed to pay all wages due in violation of California Labor Code §§ 201, 202, 204, and 223.

### D.    Defendant Violated California's Unfair Competition Law As a Result of its Miscalculation of Wages and Failure to Pay All Workday Overtime Due

Plaintiffs are entitled to partial summary judgment with respect to their derivative claims under the California Unfair Competition Law ("UCL") arising out of the miscalculated wage and workday overtime violations.  *See Cortez v. Purolator Air Filtration Prods.*, 23 Cal. 4th 163, 178, (2000) ("recogniz[ing] that any business act or practice that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair business practice").

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200).  To prevail on a claim under the UCL, a plaintiff must demonstrate that "economic injury" occurred as a result of a "business act or practice" that was "unlawful, unfair *or* fraudulent."  *Id.* at 320, 322 (emphasis added); *see also Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1473 (2014)

1  (noting that because the definition is "written in the disjunctive," it encompasses "three varieties of

2  unfair competition—acts or practices which are unlawful, or unfair, or fraudulent"). To prevail

3  under the unlawful act or practice of the UCL, a plaintiff must show "anything that can properly be

4  called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v.*

5  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). When an employer "clearly violates

6  California law," it "constitutes an unfair business practice within the meaning of the statute."

7  *People v. Los Angeles Palm, Inc.*, 121 Cal. App. 3d 25, 35 (1981). "It is not necessary to show the

8  defendant intended to injure anyone since a violation of the UCA is a strict liability offense."

9  *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996).

10      With respect to the miscalculated wage claims, the undisputed facts demonstrate that Smith

11  failed to pay Plaintiffs and other crew members for all recorded work hours through September

12  2013. *See supra.* This constitutes a violation of the UCL because: (1) Plaintiffs suffered economic

13  injury (lost wages), (2) as a result of a business practice (employee wage calculation and payment),

14  (3) that was unlawful (the underpayments violated the California Labor Code). *See, e.g.*, *Los*

15  *Angeles Palm*, 121 Cal. App. 3d at 35 (holding that employer's practice of "[i]mproperly crediting

16  tips against a minimum wage" violated California law and thus "constitutes an unfair business

17  practice within the meaning of the statute").

18      Similarly, if the Court grants Plaintiffs partial summary judgment on the daily overtime

19  claim, summary judgment should likewise be granted on the UCL claim arising out of that theory

20  based on the same elements of (1) lost overtime wages, (2) as a result of Defendant's wage

21  calculation practices, (3) that violated the California Labor Code.

22      The Court should therefore hold that Smith violated the UCL and that the UCL's four-year

23  statute of limitations is applicable to recovery of damages, including unpaid wages due, minimum

24  wages, and overtime, resulting from the miscalculated wage and workday overtime violations. *See,*

25  *e.g., Cortez*, 23 Cal. 4th at 168 (four-year UCL statute of limitations applies to claims premised on

26  failure to pay overtime wages due).

27

28

**E.     PAGA Entitles Plaintiffs to Recover Civil Penalties Stemming from Smith's Miscalculation of Wages and Failure to Pay All Workday Overtime Due**

This Court should also grant Plaintiffs summary judgment with respect to their derivative claims under the California Labor Code Private Attorney General Act ("PAGA") arising out of the miscalculated wage and workday overtime violations.  *See, e.g.*, *Green v. Lawrence Serv. Co.*, 2013 WL 3907506, at *5 n.5 (C.D. Cal. July 23, 2013) ("Plaintiff's PAGA claims are derivative of her underlying Labor Code claims. Defendant does not make any procedural or substantive challenges to Plaintiff's handling of the PAGA claims. Accordingly, as noted throughout this Order, whether each PAGA claim succeeds or fails is determined by the merits of the substantive claims on which each is based.").

PAGA authorizes an aggrieved employee, acting as a private attorney general on behalf of the public generally and other current and former aggrieved employees, to recover civil penalties for the employer's violations of the Labor Code and Wage Orders.  Cal. Labor Code §§ 2698-99; *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1119 (9th Cir. 2014).[20]  Plaintiffs are entitled to pursue their PAGA claims on a representative action basis, without certification under Rule 23 of the Federal Rules of Civil Procedure.  *See Baumann*, 747 F.3d at 1121, 1123-24; *Arias v. Superior Court*, 209 P.3d 923, 929–30 (Cal. 2009).[21]  PAGA authorizes employees to recover civil penalties specified under any provision of the Labor Code or incorporated IWC Wage Orders that provides for a civil penalty collectible by the California Labor & Workforce Development Agency ("LWDA"), and provides a catchall penalty provision under Labor Code § 2699, authorizing recovery of civil penalties for "all provisions of [the Labor Code] except those for which a civil penalty is specifically provided" in amounts of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent

---

[20] An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Labor Code § 2699(c).

[21] Plaintiffs satisfied PAGA's notice requirements, Cal. Labor Code § 2699.3, by providing written notice of the alleged Labor Code violations and supporting facts and theories by certified mail to the LWDA  and all Defendants both prior to filing their Complaint on March 12, 2014, and again prior to filing their Amended Complaint on October 1, 2014.  *See* Decl. of Matthew J. Murray, June 26, 2015 ¶¶ 2, 4 & Exs. A & C thereto. The notices included copies of, and incorporated by reference, the original and then Amended Complaint.  *Id.* at ¶¶ 2, 4.  The LWDA declined to take action.  *Id.* at ¶¶ 3, 5 & Ex. B.

violation.  Cal. Labor Code § 2699(a) & (f).  Civil penalties are thus available under PAGA for violation of any provision of the Labor Code, either in the amount specified for violation of that provision, or, where no penalty is specified, in the default amounts specified in § 2699(f).[22]

Plaintiffs' Eleventh Claim for Relief seeks civil penalties under PAGA for violations of various Labor Code and IWC Wage order provisions, and Plaintiffs are entitled to partial summary judgment with respect to the violations arising out of Defendant's miscalculated wages and unlawful workday overtime calculations.  Specifically, for the reasons set forth below and *supra* III.B -C, Plaintiffs request an order finding that the following provisions were violated and civil penalties are thus applicable under PAGA, in amounts to be subsequently determined.

1.  <u>Sections 1182.12 and 1197 (Failure to Pay Minimum Wages)</u>.  For the reasons shown *supra* **,  Defendant's miscalculation of wages resulted in failure to pay any wages for work time recorded but not paid in violation of California's minimum wage laws, including §§ 1182.12 and 1197.  Under PAGA, penalties are thus recoverable under California Labor Code § 1197.1, which provides that employers who pay "a wage less than the minimum . . . *shall be subject* to a civil penalty," in addition to restitution of wages and liquidated damages due to the employee, in the amount of $100 for any intentional initial violation for each underpaid employee for each pay period with underpayment, and $250 for each subsequent violation for each underpaid employee and pay period, regardless of intent.[23]  This Court should thus hold that Smith violated §§ 1182.12 and 1197, and that Plaintiffs may recover civil penalties under § 1197.1 as part of their PAGA action.

2.  <u>Section 510 (Failure to Pay Overtime Wages)</u>.  For the reasons shown *supra* **, Defendant's miscalculation of overtime wages during payroll and its independent failure to pay all workday overtime hours violated California's overtime laws, including § 510.  Under PAGA,

---

[22] The civil penalties awarded under PAGA, which are in addition to any other relief available under the Labor Code, are allocated 75% to the LWDA, and 25% to the aggrieved workers (with a few exceptions for wage penalties to be paid entirely to the aggrieved employees).

[23] The term "shall" renders penalties mandatory.  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1210 (2008) (construing similar "shall be subject to" civil penalty language in for violations of § 210 and § 225.5).

penalties are thus recoverable under California Labor Code § 558, which provides that an employer that violates the overtime provisions "*shall be subject* to a civil penalty" of $50 "for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages" and $100 for each subsequent violation "for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages."[24]   This Court should thus hold that Smith violated § 510, and that Plaintiffs may recover civil penalties under § 558 as part of their PAGA action.

   3. <u>Section 204 (Failure to Pay All Wages Due)</u>.  Defendant's miscalculation of wages in payroll and its independent failure to pay all workday overtime wages resulted in failure to pay all wages due, in violation of § 204.  *See supra* \*\*.  Labor Code § 210 provides for additional penalties on this basis, stating that "[i]n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employees as provided in Section[] 204 . . . *shall be subject* to" civil penalties of $100 for each failure to pay each employee for an initial violation, and $200 for each failure for each subsequent violation, plus 25% of the amount of unpaid wages unlawfully withheld.  This Court should thus hold that Smith violated § 204, and that Plaintiffs may recover civil penalties under § 210 as part of their PAGA action.

   4. <u>Section 223 (Unlawful Withholding of Wages Due)</u>.  As explained above, the underlying miscalculated wage and overtime violations resulted in Smith's payment of lower wages while purporting to pay all wages required by contract and by the minimum wage and overtime statutes, in violation of § 223.  *See supra* \*\*.  Section 225.5 provides for additional penalties on this basis, stating that "[i]n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section [] 223 *shall be subject* to" civil penalties of $100 for each failure to pay each employee, and $200 for each failure to pay for each subsequent violation, plus 25

---

[24] "Wages recovered pursuant to [§ 558] shall be paid to the affected employee."  Cal. Labor Code § 558(a)(3).

1    percent of the amount unlawfully withheld." The Court should thus hold that Smith violated § 223,

2    and that Plaintiffs may recover civil penalties under § 225.5 as part of their PAGA action.

3         5. <u>Sections 201 and 202 (Failure to Pay All Wages Due Upon Termination)</u>. As

4    explained *supra* \*\*, any failure to pay minimum and/or overtime wages to employees due to

5    employees whose employment later terminated necessarily results in a failure to pay all wages due

6    upon termination, in violation of § 201 (discharged employees) and § 202 (quitting employees).

7    Like many former crew members, Plaintiffs Ochoa, Rodriguez, and Hedgepeth suffered unpaid

8    minimum and overtime wages as a result of the wage miscalculation and workday overtime errors,

9    which were not paid at the time of their terminations in late 2013 and in 2014.[25] Thus, to the extent

10   the Court grants Plaintiffs partial summary judgment on their minimum wage and overtime claims,

11   the Court should also hold that Smith violated §§ 201-202. Civil penalties for this violation are

12   available under the PAGA default penalty provision, § 2699(f).

13        6. <u>Section 226 (Failure to Provide Accurate Wage Statements)</u>. Defendant's

14   miscalculated wage and workday overtime violations also result in violation of California's

15   requirement that employers issue accurate wage statements. Section 226(a) of the Labor Code

16   provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an *accurate* itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . .

21

22   Cal. Labor Code § 226(a) (emphasis added).

23        Smith provided Plaintiffs and other crew members with paystubs reflecting hours worked,

24   wage rates, and gross wages. *See supra* \*\*. However, because Smith paid crew members for less

25   time than was actually worked due to its payroll miscalculation through September 15, 2013, the

26   pay stubs Smith provided did not *accurately* show "total hours worked by the employee," and thus

27   violated Cal. Labor Code § 226(a). Similarly, because Defendants' improper method of workday

---

[25] Dkt 185 (Hedgepeth Decl.) ¶ 1; Dkt. 186 (Ochoa Decl.) ¶ 1; Dkt. 187 (Rodriguez Decl.) ¶ 1.

28

1    overtime calculation failed to identify all workday overtime hours, the resulting pay stubs also

2    failed to accurately show the total number of overtime hours worked and subject by law to the

3    time-and-one-half or double-time rate.  *See, e.g.*, *Butler v. Homeservices Lending LLC*, 2013 WL

4    1285567, at *8 (S.D. Cal. Mar. 26, 2013) (explaining that liability under § 226 was dependent on

5    whether defendant was liable for failing to pay all overtime due).

6           Section 226.3 provides that "[a]ny employer who violates subdivision (a) of Section 226

7    *shall be subject* to a civil penalty in the amount of two hundred fifty dollars ($250) per employee

8    per violation."   Therefore, because Smith is liable for the miscalculated wage and overtime

9    violations, it is also liable for violation of § 226(a), and subject to civil penalties under PAGA,

10   including those in § 226.3.  *See Yadira v. Fernandez*, 2011 WL 2434043, at *3 (N.D. Cal. June 14,

11   2011) (holding that plaintiff was entitled to civil penalties under § 226.3 for violation of 226(a),

12   and noting that although § 226.3 provides discretion to not penalize for inadvertent first violations,

13   it is nonetheless "not required that defendant have any particular intent or other mental state in

14   order to be liable" under the provision).[26]

15          7.  Section 1174, IWC Wage Order 5-2001 § 7 (Failure to Maintain Accurate Required

16   Records).  Smith's miscalculated wage and workday overtime violations similarly result in

17   recordkeeping violations.  Section 1174(d) of the Labor Code requires that employers must:

18           Keep, at a central location in the state or at the plants or establishments at which
19           employees are employed, payroll records showing the hours worked daily by and the
             wages paid to . . . employees employed at the respective plants or establishments. . . .

20          Similarly, Section 7 of IWC Wage Order 5-2001, applicable to employers in the restaurant

21   industry, provides:

22           (A) Every employer shall keep accurate information with respect to each employee
             including the following:
23                   . . .

24                   (3) Time records showing when the employee begins and ends each work period.
25                   Meal periods, split shift intervals and total daily hours worked shall also be

---

26   [26] In *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417, at *6 (S.D. Cal. July 19,
     2010), the court granted plaintiffs summary judgment on liability under § 226(a) and held that
27   penalties were applicable under § 2699(f), but did not evaluate the availability of penalties under §
     226.3.  Plaintiffs are entitled to penalties under § 226.3, but request penalties under § 2699(f) in the
28   alternative if the court concludes penalties are not available under § 226.3.

recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period . . .

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.
. . .

(C) All required records . . . shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

Smith maintains Pay Period Reports at each of its restaurants reflecting compensable hours worked, the wage rate, and gross wages for such hours. *See supra* **.  However, as discussed above, through September 15, 2013, Smith failed to pay for all of the hours reflected on the Pay Period Reports, and thus these reports do not accurately reflect the hours or wages actually paid to Plaintiffs and other crew members, in violation of both Cal. Labor Code § 1174(d) and  IWC Wage Order 5-2001 § 7.  Similarly, as a result of Defendants' improper method of assigning hours worked to a payroll date different than the actual date worked and failing to properly identify all overtime hours worked in a workday, Smith's records do not accurately show the total daily hours worked as required by both recordkeeping provisions.  Plaintiffs are thus entitled to partial summary judgment as to Smith's liability for recordkeeping violations under Cal. Labor Code § 1174(d) and IWC Wage Order 5-2001 § 7.[27]

## IV.    CONCLUSION

The undisputed facts—Smith's own time and pay records and both defendants' witnesses—establish that Smith systematically miscalculated regular and overtime hours worked for payroll purposes through September 15, 2013, and failed to establish a 24-hour "workday" for purposes of calculating daily overtime, resulting in failure to pay overtime due when Plaintiffs work over eight hours in a calendar day or other 24-hour period as a result of back-to-back overnight and daytime shifts.  Plaintiffs are therefore entitled to judgment as a matter of law that these practices violated California's minimum wage and overtime laws, and resulted in violations of the Unfair

---

[27] Plaintiffs preserve their claim for penalties for violation of § 1174 and IWC Wage Order 5-2001 § 7, but do not seek summary judgment on that issue in this motion.

1  Competition Law and provisions of the California Labor Code governing payment of wages due

2  upon termination, recordkeeping, and wage statements, as well as Labor Code provisions giving

3  rise to penalties recoverable through PAGA.

4  Dated: June 29, 2015                    Respectfully submitted,

5                                          By:  /s/ Abigail E. Shafroth
6                                                  Abigail E. Shafroth

7                                          MICHAEL RUBIN
                                           BARBARA J. CHISHOLM
8                                          P. CASEY PITTS
                                           MATTHEW J. MURRAY
9                                          Altshuler Berzon LLP

10                                         JOSEPH M. SELLERS (*pro hac vice*)
                                           ABIGAIL E. SHAFROTH (*pro hac vice*)
11                                         Cohen Milstein Sellers & Toll, PLLC

12                                         *Attorneys for Plaintiffs*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMO OF POINTS AND AUTHORITIES; CASE NO. 3:14-cv-02098-JD