1  MICHAEL RUBIN (SBN 80618)
   BARBARA J. CHISHOLM (SBN 224656)
2  P. CASEY PITTS (SBN 262463)
   MATTHEW J. MURRAY (SBN 271461)
3  Altshuler Berzon LLP
   177 Post Street, Suite 300
4  San Francisco, California 94108
   Telephone: (415) 421-7151
5  Facsimile: (415) 362-8064
   E-mail:  mrubin@altber.com
6          bchisholm@altber.com
           cpitts@altber.com
7          mmurray@altber.com

8  JOSEPH M. SELLERS (*pro hac vice*)
   Cohen Milstein Sellers & Toll, PLLC
9  1100 New York Ave NW, Suite 500
   Washington, DC 20005
10 Telephone: (202) 408-4600
   Facsimile: (202) 408-4699
11 E-mail:  jsellers@cohenmilstein.com

12 Attorneys for Plaintiffs

13                 IN THE UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA – San Francisco

15 STEPHANIE OCHOA, *et al.*,              CASE NO. 3:14-cv-02098-JD

16                     Plaintiffs,          **PLAINTIFFS' NOTICE OF MOTION AND
                                            MOTION FOR PRELIMINARY APPROVAL OF
17 vs.                                      SETTLEMENT WITH SMITH DEFENDANT
                                            AND FOR PRELIMINARY CERTIFICATION
18 MCDONALD'S CORP., *et al.*,              OF SETTLEMENT CLASS; MEMORANDUM
                                            OF POINTS AND AUTHORITIES**
19                     Defendants.
                                            Date: January 27, 2016
20                                          Time: 9:30 a.m.
                                            Courtroom: 11
21                                          Judge: Hon. James Donato
22
                                            Complaint Filed:     March 12, 2014
23                                          Trial Date:          Not set

24

25

26

27

28

1    PLEASE TAKE NOTICE that on January 27, 2016, at 9:30 a.m. or as soon thereafter as the

2    matter may be heard, in Courtroom 11 of the United States District Court for the Northern District

3    of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs

4    Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth will and hereby

5    do move this Court for an order preliminarily approving the partial class action settlement in this

6    matter, between plaintiffs (on their own behalf and on behalf of all similarly situated employees)

7    and defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership ("Smith").

8    The partial settlement does not affect any of the other defendants in this case and does not release

9    any claims against any of those other defendants.

10    Pursuant to Federal Rule of Civil Procedure 23, plaintiffs request that this Court:

11    1.   Conditionally certify a settlement class comprising all individuals currently or formerly

12    employed as crew members at one or more of defendant Smith's franchised McDonald's

13    restaurants in California, at any time between March 12, 2010 and the present.

14    2.   Appoint plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine

15    Hedgepeth as class representatives;

16    3.   Appoint Altshuler Berzon LLP and Cohen Milstein Sellers & Toll PLLC as class

17    counsel for the settlement class;

18    4.   Grant preliminary approval of the partial class action settlement;

19    5.   Grant approval of the proposed injunctive relief;

20    6.   Approve the proposed form of notice and proposed method of notice to plaintiffs and

21    prospective class members in the class, including the proposed claim form;

22    7.   Appoint CPT Group, Inc. as the claims administrator; and

23    8.   Schedule a hearing for final approval of the settlement.

24    This motion is made on the grounds that the settlement between plaintiffs and Smith is the

25    product of extended arms-length, good-faith negotiations, is fair and reasonable to the class, and

26    warrants preliminary approval for the reasons set forth in the accompanying Memorandum of

27    Points and Authorities.

28

1    Plaintiffs' motion is based on this notice of motion and motion; the accompanying

2 Memorandum of Points and Authorities; the accompanying declarations of Michael Rubin and

3 Valerie Smith; the Settlement Agreement and exhibits, including the proposed Claim Form (for

4 class members who are not automatically eligible ); Class Notice; and Plan of Allocation; the

5 Proposed Order; the Court record in this action; all matters of which the Court may take notice; and

6 such arguments as the Court permits at the hearing on this Motion.

7 Date:   December 21, 2015                    Respectfully submitted,

8

                                             By:   s/Michael Rubin
9                                                     Michael Rubin

10                                           MICHAEL RUBIN
                                             BARBARA J. CHISHOLM
11                                           P. CASEY PITTS
                                             MATTHEW J. MURRAY
12                                           Altshuler Berzon LLP

13                                           JOSEPH M. SELLERS
                                             (*pro hac vice*)
14                                           Cohen Milstein Sellers & Toll, PLLC
                                             *Attorneys for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ..................................................................................................ii

3    I.    INTRODUCTION .................................................................................................... 1

4    II.   FACTS AND CASE HISTORY ............................................................................... 2

5          A.    The Litigation ............................................................................................... 2

6          B.    Discovery...................................................................................................... 2

7          C.    Settlement Discussions ................................................................................ 3

8    III.  THE SETTLEMENT AGREEMENT ...................................................................... 3

9    IV.   PROVISIONAL CLASS CERTIFICATION ........................................................... 7

10         A.    The Proposed Class Meets the Requirements of Rule 23(a) ........................ 8

11               i.    Rule 23(a)(1): Numerosity ................................................................ 8

12               ii.   Rule 23(a)(2): Commonality ............................................................. 8

13               iii.  Rule 23(a)(3): Typicality .................................................................. 9

14               iv.   Rule 23(a)(4): Adequacy of Representation ...................................... 9

15         B.    The Proposed Class Meets the Requirements of Rule 23(b)(2) ................... 10

16         C.    The Proposed Class Meets the Requirements of Rule 23(b)(3) ................... 11

17               i.    Common Questions Predominate Over Any Individual Issues ................. 11

18               ii.   Class Treatment Is Superior to Individualized Actions............................ 12

19   V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........................ 13

20   VI.   PROPOSED SCHEDULING ORDER...................................................................... 15

21   VII.  CONCLUSION ...................................................................................................... 15

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ...................................................................................9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...............................................................................................9

*Barbosa v. Cargill Meat Solutions Corp.*,
  No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013) ..................13

*Beck v. Boeing. Co.*,
  60 F. App'x 38 (9th Cir. 2003) ..............................................................................10

*Cervantez v. Celestica Corp.*,
  253 F.R.D. 562 (C.D. Cal. 2008) ............................................................................9

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................14

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .........................................................................11, 13

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .....................................................................................8

*Diaz v. Hillsborough Cnty. Hosp. Auth.*,
  165 F.R.D. 689 (M.D. Fla. 1996) ..........................................................................10

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..............................................................................................14

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ................................................................................14

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) ............................................................................9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................1, 7, 11

*Johnson v. Shaffer*,
  No. 2:12-cv-1059, 2013 WL 5934156 (E.D. Cal. Nov. 1, 2013) ...........................10

*Jordan v. Cnty. of Los Angeles*,
  669 F.2d 1311 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983) ...........8

ii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
WITH SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008).................................................................................12

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .......................................................................................1

*In re Live Concert Antitrust Litig.*,
   247 F.R.D. 98 (C.D. Cal. 2007)...................................................................................9

*McClellan v. SFN Group, Inc.*,
   No. C 10-5972, 2012 WL 2367905 (N.D. Cal. June 21, 2012).....................................9

*McManus v. Fleetwood Enter., Inc.*,
   320 F.3d 545 (5th Cir. 2003) .....................................................................................10

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002) ...............................................................................13

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) .....................................................................................9

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013) ................................................................................13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................................13

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ......................................................................................13

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ......................................................................................11

*Rodriguez v. D.M. Camp & Sons*,
   No. 1:09-cv-00700, 2012 WL 6115651 (E.D. Cal. Dec. 7, 2012) ................................8

*Rodriguez v. West Pub. Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................6

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................6

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007).........................................................................13

*Tierno v. Rite Aid Corp.*,
   No. C 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) .................................12

*Vallabhapurapu v. Burger King Corp.*,
   No. C 11-00667 WHA, 2012 WL 2568183 (N.D. Cal. July 2, 2012)...........................10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................ 8, 10

*Zinser v. Accufix Research Inst. Inc. Corp.*,
    253 F.3d. 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).......................... 12

**Rules**

Federal Rules of Civil Procedure
    Rule 23................................................................................................*passim*
    Rule 23(a) ......................................................................................... 7, 8, 11
    Rule 23(a)(1) ............................................................................................ 8
    Rule 23(a)(2) ............................................................................................ 8
    Rule 23(a)(3) ............................................................................................ 9
    Rule 23(a)(4) ...................................................................................... 9, 10
    Rule 23(b)(2) ......................................................................... 2, 7, 10, 11
    Rule 23(b)(3) ........................................................................ 2, 10, 11, 12
    Rule 23(c)(2)(B) ..................................................................................... 14
    Rule 23(c)(2)(B)(v) ............................................................................... 14
    Rule 23(e) .............................................................................................. 14
    Rule 23(e)(2) ......................................................................................... 13

**Other Authorities**

Newberg on Class Actions §8.17 (5th ed. 2013) ........................................................ 14

7A Wright, Fed. Prac. & Proc. Civ. §1768 (3d ed. 2005-11 Supp.)........................... 10

**I. INTRODUCTION**

Plaintiffs request preliminary approval of their proposed settlement with defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership d/b/a McDonald's ("Smith").[1] The settlement, which reflects Smith's documented financial constraints, includes injunctive relief and installment payments totaling $700,000, plus the costs of notice and administration, with the first installments totaling $400,000 to be paid into a joint escrow account within 10 days after preliminary approval or March 1, 2016, whichever comes later. *See* Decl. of Michael Rubin ("Rubin Decl.") Ex. A (Settlement Agreement ("Ex. A")) ¶¶28, 30, 39. These amounts are in addition to the $65,267.68 Smith has already paid or committed to pay to the members of the Miscalculated Wages Subclass. Ex. A ¶1(o); *see* Decl. of Valerie Smith ("Smith Decl.") ¶¶3-4. All settlement payments have been personally guaranteed by Edward Smith and Valerie Smith. Ex. A ¶¶47-49.

The settlement is the product of lengthy, arms-length negotiations following extensive litigation, substantial discovery, and numerous in-person and telephonic mediation sessions conducted by Magistrate Judge Jacqueline Corley. Plaintiffs believe that this settlement is fair, adequate, and well within the range of reasonableness, particularly given Smith's current financial condition. *Id.* ¶¶5-6; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823-24 (9th Cir. 2012) (taking defendant's financial condition into account in determining reasonableness).

The proposed Class Notice, which will be translated into Spanish and will be mailed (and emailed) in English and Spanish to all class members whose contact information is known to defendant Smith or can be obtained through reasonable skip-tracing and other efforts, will provide class members the best practicable notice and will allow each class member a fair opportunity to evaluate the settlement, including the class member's estimated recovery and the scope of the releases. Rubin Decl. Ex. A ¶1(g); 16(e) & Ex. 2 thereto. The notices will also be available on a publicly accessible website.

---

[1] Plaintiffs continue to litigate this case against the remaining McDonald's defendants on the theory that these defendants are jointly and severally liable for the full amounts owed to plaintiffs and the class members under the governing state and federal laws and under the other theories of liability alleged in plaintiffs' First Amended Complaint, Dkt. #40.

1    For the reasons set forth below, plaintiffs request that this Court grant preliminary approval of

2  the settlement, provisionally certify the settlement class, approve the Class Notice, approve the

3  injunctive relief agreed to by the parties, and establish a schedule for final settlement approval.

4  **II.    FACTS AND CASE HISTORY**

5      **A.  The Litigation**

6      This is a wage and hour lawsuit brought on behalf of current and former McDonald's

7  employees at five Bay Area restaurants operated by defendant Smith under franchise agreements with

8  defendant McDonald's USA, LLC ("McDonald's").  Plaintiffs filed their initial Complaint on March

9  12, 2014 and their First Amended Complaint on October 1, 2014, alleging that Smith and

10  McDonald's are jointly and severally liable for numerous California Labor Code violations.  *See* Dkt.

11  #1, 40.  The Complaints challenge a series of common policies and practices by which defendants

12  systematically underpaid class members, including by: (1) failing to pay all earned wages through

13  because of a consistent error in converting employee time punch data to payroll data; (2) failing to

14  pay daily overtime to class members who work overnight shifts as a result of defendants' automated

15  timekeeping system; (3) failing to provide meal periods and rest breaks as required by California law;

16  (4) failing to reimburse crew members for the time and money needed to iron and clean their

17  McDonald's uniforms; and (5) failing to provide accurate wage statements that list all wages earned

18  and identify McDonald's as an employer.  Plaintiffs' lawsuit also raises the overarching issue of

19  whether McDonald's is a joint employer or otherwise liable for the relief requested.  *See* Dkt. #1, 40.

20  Plaintiffs seek damages and injunctive relief.  *See* Fed. R. Civ. P. 23(b)(2), 23(b)(3).

21      After extensive discovery, plaintiffs filed Motions for Class Certification and for Partial

22  Summary Judgment, both of which remain pending (but need not be resolved to evaluate the fairness

23  of this Settlement).  *See* Dkt. #70, 224.  McDonald's also filed a Motion for Summary Judgment

24  challenging plaintiffs' theories of joint and derivative liability, which this Court granted in part and

25  denied in part.  Dkt. # 129, 289.  That ruling has no effect on preliminary approval of the settlement.

26      **B.  Discovery**

27      The parties have engaged in extensive discovery – including dozens of depositions –

28  concerning the merits of plaintiffs' claims, class certification issues, and defendants' liability under

2

various legal theories. Rubin Decl. ¶¶4, 6. Since this case was filed in March 2014, defendants have produced hundreds of thousands of pages of documents, including payroll and time records for the plaintiff class. *Id*. ¶6. A date for trial on plaintiffs' claims against the McDonald's defendants has not yet been set, but is expected to take place in the summer or fall of 2016.

### C. Settlement Discussions

Plaintiffs and Smith began serious settlement discussions in the spring of 2015, after Smith acknowledged the validity of plaintiffs' claims concerning time conversion errors and agreed to pay plaintiffs and the Miscalculated Wages Subclass $65,267.68 toward resolution of those claims. At that time, Smith did *not* agree to pay liquidated damages or interest on liquidated damages to the Miscalculated Wages Subclass, although those payments are included in the current settlement. *Id.* ¶4 & Ex. A (hereinafter "Ex. A") ¶40(a). At the Court's suggestion, the parties began participating in a series of mediations and discussions under the direction of Magistrate Judge Corley, which sometimes included the McDonald's defendants and on one occasion included two other franchisees who were sued jointly with McDonald's in different lawsuits. *Id.* ¶4; Dkt. #243, 281.

After Smith submitted confidential financial information to plaintiffs, which plaintiffs' counsel reviewed with the assistance of a forensic accountant, and after Smith agreed to provide most of the injunctive relief it was capable of providing (which was limited by the fact that several of plaintiffs' claims rest on the programming of McDonald's required ISP time-keeping software that Smith has no ability to modify), the parties under Magistrate Judge Corley's supervision were able to reach a mutually agreeable settlement. Rubin Decl. ¶5.

The four named plaintiffs fully support the settlement, as do plaintiffs' counsel, who believe the settlement is fair, reasonable, adequate, and in the best interests of the plaintiff class members. *Id.* ¶8. The settlement reflects not only the risks and uncertainties of litigation, but also Smith's documented, current financial condition and ability to pay while continuing to operate its McDonald's franchises. *Id.*

### III. THE SETTLEMENT AGREEMENT

The Settlement establishes a non-reversionary $700,000 fund that subject to Court approval, will be distributed, together with any remainder of the Miscalculation Subclass payments, in

accordance with the Plan of Allocation set forth as Exhibit C to the Settlement Agreement.  The Plan of Allocation provides for payment to class members to be paid on a pro rata basis, based principally on the number of weeks worked by each class member.  The Settlement also provides for the following payments to be made from the settlement fund: (1) a payment of $24,000 to California's Labor and Workforce Development Agency ("LWDA") pursuant to the California Labor Code Private Attorneys General Act ("PAGA"); (2) a payment of $35,000 for plaintiffs' counsel's litigation expenses; (3) a payment of $2,000 as "service fees" to each of the four named plaintiffs who have each submitted declarations, been deposed at length, and have personally participated in several mediation sessions; and (4) a payment of $150,000 for plaintiffs' counsels' statutory attorneys' fees.  Ex. A ¶¶30-34.  Any of those payments that are reduced or eliminated by the Court will be added to the funds available for distribution to the class.  *Id.* ¶44(b).

Smith will fund this settlement with a $150,000 initial payment to be made to an interest-bearing escrow account (jointly controlled by Plaintiffs' counsel and Smith's counsel) within 10 days after preliminary approval, and a $250,000 payment into that account on the later of March 1, 2016 or 10 days after preliminary approval, followed by an additional $200,000 payment within one year of the Settlement Effective Date, and a third $100,000 payment within two years of the Effective Date. *Id.* ¶¶28, 30.  Smith will also add to the settlement fund the remainder from the $65,267.68 Miscalculated Wages subclass payment that Smith is unable to distribute to Miscalculated Wages Subclass members after diligent efforts to locate those individuals.  *Id.* ¶¶1(o), (p), 30.[2]  Separate and apart from these amounts, Smith will also pay the Claims Administrator, CPT Group, Inc. for all costs of Class Notice and settlement administration.  *Id.* ¶39.

The settlement funds will be distributed in a maximum of three installments.  The first

_____

[2] Smith represents that it began sending checks to members of the Miscalculated Wages Subclass on or about August 19, 2015.  Smith Decl. ¶¶3-4.  As of December 8, 2015, only 240 members of the 642-member subclass had cashed their checks, in the total amount of $31,600.81.  *Id.*  Smith, however, had not yet mailed checks (totaling approximately $12,000) to subclass members whose addresses it could not locate, and had not searched for current addresses for 129 subclass members whose checks were returned as undeliverable (totaling approximately $22,000).  *Id.*  Smith is now working with the proposed Claims Administrator to obtain accurate contact information for all Miscalculated Wages Subclass members who have not yet received or cashed their designated payments, and to mail those payments.  *Id.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD

installment will include all court-approved service fees and plaintiffs' litigation expenses (in an amount not to exceed $35,000 – which is far less than actual expenses to date), with the remainder distributed to the class members. *Id.* ¶33. The second installment will include plaintiffs' court-approved statutory attorneys' fees (in an amount not to exceed $150,000 – which likewise is far below counsel's lodestar), with the remainder distributed to class members. *Id.* ¶34. The third installment will complete payments to class members and include the payment to the LWDA. *Id.*

As set forth in the Plan of Allocation, payments to class members will be calculated based principally upon the number of weeks each class member worked during the class period (March 12, 2010 to the date of preliminary approval), with former employees each receiving a separate, additional amount to compensate them on a per capita basis for their waiting time penalties claims. *Id.* ¶40. The employee-portion of the PAGA penalty payment of $8,000 will be distributed on a pro rata basis for each week worked after March 12, 2013 (the start of the PAGA limitations period). *Id.* All other distributions will be made on a proportional pro rata basis for each week worked. *Id.*

In addition to the monetary payments, the Settlement further provides for the following injunctive relief, which will take effect within 10 days after preliminary settlement approval:

    a. Smith shall pay overtime premiums to any Plaintiff, Class Member, or future hourly employee who works more than eight hours in any designated workday (such designation to be made in advance in writing to the affected employee(s)) or, if no workday is so designated, in any 24-hour period.

    b. Smith shall review all time and payroll records at least once at the end of each pay period, either manually or through re-programming of its timekeeping and payroll software, and shall pay an additional one hour's wages to each Plaintiff, Class Member, or future hourly employee for each day during that pay period on which the time records (as may be adjusted in accordance with existing policy, upon approval of the affected employee and a representative of Smith) reflect that such Plaintiff, Class Member, or future hourly employee was not provided all full and timely 30-minute meal periods as required by California law, and for each day during that pay period on which the time records reflect that such Plaintiff, Class Member, or future hourly employee was not provided all full and timely 10-minute paid rest breaks as required by California law. For purposes of this paragraph, rest breaks are not timely if they begin or end within 15 or fewer minutes of the beginning or end of a shift, work period, meal period, or another rest break.

    c. Smith shall provide wage statements to Plaintiffs, Class Members, and future employees that separately record regular hours and overtime hours each pay period, the rate of pay, premium wages for missed, untimely, or short meal periods and rest breaks, and any deductions taken from that pay.

    d. Smith shall provide a clean apron to each Plaintiff, Class Member, and future employee at the start of such employee's shift if that employee is assigned to work in the kitchen or other position where the employee's uniform would be exposed to grease or smoke.

1    *Id.* ¶26.

2    Before the deadline for class members to object or opt out, plaintiffs' counsel will file a

3    motion for statutory attorneys' fees and expenses, with the total requested fees not to exceed

4    $150,000, and the total requested expenses not to exceed $35,000.  *Id.* ¶37.  Before the final approval

5    hearing, plaintiffs will also apply to the Court for an award of $2,000 to each of the four named

6    plaintiffs for the considerable services they rendered to the class.  *Id.* ¶38.  These amounts reflect the

7    time and effort these workers have expended on behalf of the class, including by participating in

8    factual investigation and case discussions with counsel, providing declarations, appearing for their

9    depositions, participating in mediations with Magistrate Judge Corley (including for one plaintiffs

10   after completing an all-night shift ending just hours before the full-day mediation began), and

11   assisting with other discovery.  *See* Rubin Decl. ¶11.  Such "awards are fairly typical in class action

12   cases." *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Staton v. Boeing Co.*,

13   327 F.3d 938 (9th Cir. 2003).  Even if the Court requires a showing of special circumstances to

14   justify such service awards, those circumstances are present here.

15   The Settlement Agreement provides that Smith will provide the Claims Administrator with

16   the Putative Class List within 10 days after preliminary approval, together with updated information

17   reflecting Smith's administration of the Miscalculated Wages Subclass distribution.  Ex. A ¶16(b).

18   The Claims Administrator will then mail the class notice to each class member within 10 days of

19   receiving the Putative Class List.  *Id.* ¶16(d).  The Claims Administrator will also make a Claim Form

20   available to any class member who does not receive the mailed class notice.  *Id.* ¶16(e).  The only

21   class members actually required to file a Claim Form are those who do not receive class notices at

22   their home address (i.e., when a class notices is returned as undeliverable and no updated address can

23   be located).  Settlement checks for all others will be mailed to those home addresses.  *Id.* ¶16(e).

24   Each personalized notice will state the recipient's estimated settlement amount (assuming full

25   participation), the deadline for submitting a Claim Form if a form is necessary, and the deadlines and

26   procedures for opting out of or objecting to the Settlement.  *Id.* ¶16(e) & Ex. 1.  Class members who

27   must submit claim forms will have 75 calendar days to do so.  *Id.*  Late claim forms will be denied

28   unless the class member establishes good cause.  *Id.* ¶17.  Class members will have 60 days from the

1  postmarked date of notice to opt out or object.  *Id.* ¶18-19.  All settlement documents will be

2  translated into Spanish, and both language versions will be mailed to class members.  *Id.* ¶1(g).

3          Upon the Settlement's Effective Date, all class members who have not opted out will be

4  deemed to have released Smith and all related entities (defined as *not* including the remaining

5  McDonald's defendants or any of their related entities) from all claims that were or could have been

6  asserted in the First Amended Complaint based upon the facts alleged.  *Id.* ¶45.  If no objections are

7  filed, the Effective Date will be the date of final approval.  *Id.* ¶1(*l*).  If objections are filed and

8  overruled, the Effective Date will be the expiration of the time permitted for any appeal, collateral

9  attack, or other challenge or the resolution of such challenges.  *Id.*

10          The Claims Administrator will make an initial payment to class members within 30 days after

11  the Effective Date, and second and third payments within one and two years respectively of the initial

12  payment date (unless Smith chooses to accelerate the payments).  *Id.* ¶¶33-34.  Any amounts

13  uncashed by 120 days after the respective date of distribution will be redistributed among all other

14  class members in proportion to their initial settlement shares.  *Id.* ¶44(b).  If the total amount of

15  remaining funds after redistribution does not exceed $10,000, these funds will be donated as *cy pres*,

16  split between the National Employment Law Project and Bay Area Legal Aid.  *Id.*  If there are other

17  settlements against other defendants in this case, or other class notices, the parties will work together

18  in good faith to minimize costs of notice and administration and to promote efficiency.  *Id.* ¶9.

19  **IV.    PROVISIONAL CLASS CERTIFICATION**

20          When considering a request for certification of a settlement class, the Court must determine

21  "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules

22  of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3)

23  typicality, and (4) adequacy of representation."  *Hanlon,* 150 F.3d at 1019.  "[T]he parties seeking

24  class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

25  (3)."  *Id.* at 1022.  Plaintiffs seek provisional certification of the following class:

26        All individuals currently or formerly employed by Defendants as crew members at one
      or more of Defendant Smith's franchised McDonald's restaurants in California, at any

27        time between March 12, 2010 and the present.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH
SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD

1   Provisional certification of the proposed settlement class is appropriate for the reasons stated below.

2   **A.  The Proposed Class Meets the Requirements of Rule 23(a)**

3   i.   *Rule 23(a)(1): Numerosity*

4   Rule 23(a) requires that the class be so numerous that joinder of all members would be

5   "impracticable."  Fed. R. Civ. P. 23(a)(1).  This standard is usually satisfied by a class of more than

6   40 people.  *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

7   There are almost 750 hourly employees of Smith that fall within the class definition.  *See* Rubin Decl.

8   ¶9.  Numerosity is therefore satisfied.  *See Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1319-20

9   (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983).

10   ii.   *Rule 23(a)(2): Commonality*

11   Rule 23(a) next requires that there be "questions of law or fact common to the class."  Fed. R.

12   Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that their claims "depend upon a

13   common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of

14   each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)

15   (internal quotation marks and citations omitted); *Rodriguez v. D.M. Camp & Sons*, No. 1:09-cv-

16   00700, 2012 WL 6115651, at *5 (E.D. Cal. Dec. 7, 2012) (granting preliminary approval).

17   As plaintiffs previously demonstrated in their class certification briefing, *see, e.g.*, Dkt. #70,

18   their claims against Smith present several common questions capable of classwide resolution.  These

19   include: (1) whether Smith's compensation system for crew members' wages and overtime payments

20   was legal and sufficient to timely pay all crew members for time worked; (2) whether Smith had a

21   classwide practice of failing to permit crew members to take all legally mandated meal and rest

22   breaks or to provide premium pay in lieu of a break; (3) whether Smith failed to provide crew

23   members with accurate, itemized wage statements, as required by the Labor Code; (4) whether Smith

24   failed to maintain classwide records as required by the Labor Code and IWC Wage Orders; (5)

25   whether Smith willfully failed to timely pay full wages to class members who quit or were

26   discharged, as required by the Labor Code; and (6) whether Smith's classwide practice of failing to

27   maintain crew member uniforms or to reimburse crew members for the necessary expenses of

28   maintaining their own uniforms violated the Labor Code and the IWC Wage Orders.  Rubin Decl. ¶9.

Commonality can be satisfied by a single common issue.  *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 570 (C.D. Cal. 2008); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996).  Each of the issues raised by plaintiffs in their First Amended Complaint is independently sufficient to establish commonality.  *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (commonality "does not . . . mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single *significant* question of law or fact.") (emphasis in original) (citations and internal quotation marks omitted); *McClellan v. SFN Group, Inc.*, No. C 10-5972, 2012 WL 2367905, at *4 (N.D. Cal. June 21, 2012).  Here, the Court should find that the commonality requirement is satisfied because plaintiffs have presented numerous, significant questions common to the proposed settlement class.

### iii.   *Rule 23(a)(3): Typicality*

Rule 23 also requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is met when "Plaintiffs' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 117 (C.D. Cal. 2007) (internal quotation marks and citation omitted); *see Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012).

Plaintiffs' claims are substantially similar to the claims of the absent class members, all of which arise from Smith's common policies and practices.  All named plaintiffs and class members are or were low-wage, hourly, non-exempt workers in one or more of Smith's franchised McDonald's restaurants.  All class claims arise out of the same alleged events and conduct and relate to Smith's policies and practices of inadequately compensating its workers.  Plaintiffs' claims are sufficiently typical in light of the similar factual and legal circumstances giving rise to all class members' claims.

### iv.   *Rule 23(a)(4): Adequacy of Representation*

Rule 23 requires that class representatives fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  Class representatives are adequate when they have common, not antagonistic, interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

1   "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of

2   representative status." 7A Wright, Fed. Prac. & Proc. Civ. §1768 at 389-90 (3d ed. 2005-11 Supp.).

3          Here, the named class representatives have the same types of interests and have suffered the

4   same types of injury as all other class members. *See* Rubin Decl. ¶10. In addition, the named

5   plaintiffs have already provided significant, valuable assistance in the investigation and prosecution

6   of this matter, including by responding to discovery requests and sitting for depositions, and through

7   their participation in mediation and the entire settlement process have helped to bring about the

8   agreement now before this Court. *Id.* ¶11. They are thus "adequate" within the meaning of Rule

9   23(a)(4). Plaintiffs' counsel are also "adequate" because they have extensive experience in class

10  action wage-and-hour litigation and have vigorously pursued these claims throughout this litigation.

11  *Id.* ¶12. Accordingly, the designated plaintiffs should be appointed as class representatives for their

12  respective classes, and plaintiffs' counsel should be appointed as class counsel.

13              **B.   The Proposed Class Meets the Requirements of Rule 23(b)(2)**

14         Rule 23(b)(2) permits certification of a class if "the party opposing the class has acted or

15  refused to act on grounds that apply generally to the class, so that final injunctive relief or

16  corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

17  23(b)(2). As *Wal-Mart v. Dukes* explained, "Rule 23(b)(2) applies only when a single injunction or

18  declaratory judgment would provide relief to each member of the class," but does not apply where

19  individualized injunctive, declaratory, or monetary damages are necessary. 131 S. Ct. at 2557; *see*

20  *also Johnson v. Shaffer*, No. 2:12-cv-1059, 2013 WL 5934156, at *13 (E.D. Cal. Nov. 1, 2013).[3]

21  This inquiry is "encompassed in the commonality requirement of Rule 23(a)." *See Diaz v.*

22  *Hillsborough Cnty. Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996); *accord McManus v.*

23  *Fleetwood Enter., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) ("Rule 23(b)(2)'s requirement that a

24  defendant have acted consistently towards the class is plainly more permissive than 23(b)(3)'s

25

26  ───────────────────
    [3] In situations where plaintiffs seek certification for both injunctive and monetary purposes, courts
27  permit plaintiffs to move under both Rule 23(b)(2) and (b)(3). *See Beck v. Boeing. Co.*, 60 F. App'x
    38, 39 (9th Cir. 2003) (noting that there is no rule against so-called "hybrid" certification); *see also*
28  *Vallabhapurapu v. Burger King Corp.*, No. C 11-00667 WHA, 2012 WL 2568183, at *4 (N.D. Cal.
    July 2, 2012) (applying this rule post-*Wal-Mart*).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH
SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD

1  requirement that questions common to the class predominate over individual issues.").

2       Plaintiffs have sought – and a key portion of their Settlement Agreement provides – injunctive

3  relief that, to the extent Smith has power to do so, will prospectively help alleviate the harms to the

4  class resulting from defendants' systematic and improper policies and practices concerning wage

5  calculations, meal and rest breaks, overtime, record-keeping, provision of accurate wage statements,

6  and uniform maintenance.  The policies and practices at issue "constitute shared grounds" for all

7  individuals in the class, because they deprived all class members of the wages and employment

8  information owed to them under the law.  *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014)

9  (Rule 23(b)(2)'s "requirements are unquestionably satisfied when members of a putative class seek

10  uniform injunctive or declaratory relief from policies or practices that are generally applicable to the

11  class as a whole.").  The Court should therefore certify plaintiffs' Rule 23(b)(2) class for settlement.

12       **C.  The Proposed Class Meets the Requirements of Rule 23(b)(3)**

13       "To qualify for certification under [Rule 23(b)(3)], a class must satisfy two additional

14  conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any

15  questions affecting only individual members,' and class resolution must be 'superior to other

16  available methods for the fair and efficient adjudication of the controversy.'"  *Hanlon*, 150 F.3d at

17  1022 (quoting Fed. R. Civ. P. 23(b)(3)).  Those requirements are satisfied as well.

18       i.  *Common Questions Predominate Over Any Individual Issues*

19       The predominance inquiry "tests whether proposed classes are sufficiently cohesive to

20  warrant adjudication by representation," and focuses on the "relationship between the common and

21  individual issues."  *Hanlon*, 150 F.3d at 1022 (quotation marks and citation omitted).  "When

22  common questions present a significant aspect of the case and they can be resolved for all members

23  of the class in a single adjudication, there is clear justification for handling the dispute on a

24  representative rather than on an individual basis."  *Id*. (quotation marks and citation omitted).[4]

25  _____

26  [4] For purposes of provisional certification, plaintiffs only need establish that some of their claims
    may be adjudicated on a classwide basis; provisional certification of every claim slated for settlement
    is not necessary, because the scope of the parties' release can extend beyond the scope of the specific

27  claims at issue.  *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992)
    (allowing classwide release that included unpleaded claims because they arose "from the same

28  common nucleus of operative fact").

1    "When the claim is that an employer's policy and practices violated labor law, the key

2    question for class certification is whether there is a consistent employer practice that could be a basis

3    for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

4    Classes are often certified where "an employer's uniform policy . . . is uniformly implemented, since

5    in that situation predominance is easily established." *Id.* (citing *In re Wells Fargo Home Mortg.*

6    *Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007)).  Strict uniformity is not required

7    to satisfy the "predominance" prong, however.  "[T]he existence of certain individualized or

8    deviating facts will not preclude certification if most class members were subjected to a company

9    policy in a way that gives rise to consistent liability or lack thereof." *Id.*

10    Common questions relate to Smith's policies and practices concerning meal and rest breaks,

11    time recording, overtime compensation, record-keeping, wage statements, and uniform maintenance.

12    These common policies are applied and practiced consistently throughout the stores owned by Smith.

13    *See* Dkt. #70-95, 120-22.  The existence and operation of these policies and practices will be proven

14    with common, classwide evidence.  Plaintiffs fully briefed predominance in their Motion for Class

15    Certification and direct the Court to those arguments, which they incorporate by reference.  *See id.*

16              ii.   *Class Treatment Is Superior to Individualized Actions*

17    Rule 23(b)(3)'s second requirement is that "resolution of the issues on a classwide basis [be]

18    superior to other methods available for the fair and efficient adjudication of the controversy." *Tierno*

19    *v. Rite Aid Corp*., No. C 05-02520, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006).  This

20    requirement is also satisfied here.

21    In considering whether a class action is superior, the Court must focus on whether "efficiency

22    and economy" would be advanced by class treatment.  *Zinser v. Accufix Research Inst. Inc. Corp*.,

23    253 F.3d. 1180, 1190 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) (internal quotations

24    omitted).  Here, concentrating the adjudication of claims into a single proceeding is highly desirable.

25    The alternative would be an influx of individual claims for small monetary amounts by individuals

26    who most likely could not afford to pursue them or who lack sufficient knowledge of their rights to

27    pursue them.  Having separate but nearly identical lawsuits filed by almost 750 individuals would be

28    wasteful and inefficient for the parties and the judiciary alike.  *See Zinser*, 253 F.3d at 1190-91.  The

12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH
SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD

1   high cost of litigating these cases would dwarf any potential recovery for any individual worker, and

2   most of those aggrieved individuals would likely forgo vindicating their rights if they were forced to

3   proceed separately. *Cf. Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-cv-00275-SKO, 2013 WL

4   3340939, at *11 (E.D. Cal. July 2, 2013) ("The potential recovery by any individual plaintiff is

5   relatively small and thus individual members of the class would likely be unwilling or unable to

6   institute separate suits."). Accordingly, certification is superior to any other method of resolving this

7   matter, as it will promote economy, expediency, and efficiency.

8   **V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

9        The Court's review of a class action settlement requires two steps. *See Nat'l Rural*

10   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). First, the Court must

11   decide whether to grant preliminary approval, provisionally certify the class, and order notice to the

12   class to inform them of their rights and their opportunity to be heard at the Fairness Hearing, when

13   "arguments and evidence may be presented in support of and in opposition to the settlement."

14   *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *In re Online DVD-Rental*

15   *Antitrust Litig.*, 779 F.3d 934, 945-47 (9th Cir. 2015). Second, it must hold a fairness hearing to

16   assess if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A "strong

17   judicial policy . . . favors settlements, particularly where complex class action litigation is

18   concerned." *Class Plaintiffs*, 955 F.2d at 1276 (citations omitted).

19        At the preliminary stage, a settlement will be found presumptively fair if it "appears to be the

20   product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

21   improperly grant preferential treatment to class representatives or segments of the class, and falls

22   within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079

23   (N.D. Cal. 2007) (internal quotations omitted); *accord Monterrubio v. Best Buy Stores, L.P.*, 291

24   F.R.D. 443, 454-55 (E.D. Cal. 2013).

25        The Parties negotiated the present settlement in good faith and at arm's length. *See* Rubin

26   Decl. ¶7. Substantial discovery, investigation, and research over the past two years has enabled

27   experienced class action counsel to assess the strengths and weaknesses of plaintiffs' claims and the

28   benefits of the settlement. Plaintiffs' counsel believe the settlement is fair, reasonable, adequate and

1   in the best interest of the class members in light of all known facts and circumstances, including the

2   risk of significant delay, Smith's weakened financial situation, and the possible defenses to this

3   litigation. *Id.* ¶¶7-9.  The settlement will provide recoveries that are significant to the class members

4   and will be allocated in a manner that roughly approximates the proportional value of their individual

5   claims.  The Settlement also provides critical injunctive relief to currently employed class members

6   and future employees.  The proposed settlement thus satisfies the standards for preliminary approval.

7          Under Rule 23(e), the Court upon preliminary approval must "direct notice in a reasonable

8   manner to all class members who would be bound" by the proposed settlement.  That notice must be

9   the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).   Notice is

10  satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with

11  adverse viewpoints to investigate and to come forward and be heard" and provides notice that the

12  court will exclude from the class any member who requests exclusion. *Churchill Village, LLC v.*

13  *Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B)(v).  Such notice is

14  reasonable if mailed to each member of a settlement class "who can be identified through reasonable

15  effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

16         Here, the form and manner of the class notices and claims forms have been negotiated and

17  agreed upon by the parties' counsel and will be mailed (and emailed) in English and Spanish.  The

18  class notices will inform class members of, among other things: (1) the nature of this action and the

19  essential terms of the settlement; (2) the allocation of the settlement funds, including an estimate of

20  each class member's settlement share, the requests for class representative service payments and for

21  attorneys' fees and expenses, and the administrative costs that will be deducted from the settlement

22  funds; (3) how to participate, opt out, or object to the settlement; (4) this Court's procedures for final

23  approval; and (5) how to obtain additional information.  The class notices are written to be as clear as

24  possible.  The notices encourage class members to contact plaintiffs' counsel with any questions, and

25  designate a Spanish-speaking contact in plaintiffs' counsel's offices. *See* Newberg on Class Actions

26  §8.17 (5th ed. 2013); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012).

27         The proposed delivery method and deadlines are also reasonable.  Within 10 days of receiving

28  the putative class list from Smith, the claims administrator will send notices to class members by

first-class mail at the addresses provided on this list.  *See* Ex. A ¶16(d).  If a class member's address has changed and no forwarding address is available, the claims administrator will use electronic search procedures to obtain a current address (just as it is currently doing with respect to the distribution to the Miscalculated Wages Subclass). *Id.* ¶6(d) & (e).  Class members will have 75 days after the notice is mailed to object to or opt out from the settlement, and to file a claim form, in the event one is necessary). *Id.* ¶¶17-19.  The parties believe these time periods are fair and reasonable.

## VI.    PROPOSED SCHEDULING ORDER

The following schedule sets forth a proposed sequence for the relevant dates and deadlines assuming the Court preliminarily approves the Settlement.

| Event | Time Limits According to Agreement |
| --- | --- |
| Deadline to provide class database to claims administrator | 10 calendar days after Preliminary Approval Order |
| Deadline to mail Class Notice | 10 calendar days after receiving Class List |
| Deadline for filing fees motion | At least 28 days before opt-out deadline (within 32 days after Class Notice is mailed) |
| Deadline for requests not to participate and for objections | 60 days after the Class Notice is mailed |
| Deadline for filing Claim Forms | 75 days after the Class Notice is mailed |
| Deadline for filing Motion for Named Plaintiffs' Service Awards; Motion for Final Approval | 28 days prior to Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, but no sooner than 120 days after the Preliminary Approval Order |

## VII.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court: (1) provisionally certify the proposed settlement class; (2) appoint the named plaintiffs as the class representatives; (3) appoint plaintiffs' counsel as class counsel; (4) grant preliminary approval to the parties' settlement; (5) approve the injunctive relief agreed to in this settlement; (6) approve the distribution of the proposed class notices and claims forms; (7) appoint CPT Group, Inc. as the claims administrator; and (8) schedule a final approval hearing.  A proposed order is submitted herewith.

Date:   December 21, 2015                   Respectfully submitted,


By:  ___s/Michael Rubin_____
        Michael Rubin

MICHAEL RUBIN
BARBARA J. CHISHOLM

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD

1

2
P. CASEY PITTS
MATTHEW J. MURRAY
Altshuler Berzon LLP

3

4
JOSEPH M. SELLERS
(*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC

5

6
*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH
SMITH AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM; No. 3:14-cv-02098-JD