MICHAEL RUBIN (SBN 80618)
BARBARA J. CHISHOLM (SBN 224656)
P. CASEY PITTS (SBN 262463)
MATTHEW J. MURRAY (SBN 271461)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail:  mrubin@altber.com
         bchisholm@altber.com
         cpitts@altber.com
         mmurray@altber.com

JOSEPH M. SELLERS (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
E-mail:  jsellers@cohenmilstein.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – San Francisco

| | |
|---|---|
| STEPHANIE OCHOA, *et al.*,<br><br>                    Plaintiffs,<br><br>vs.<br><br>MCDONALD'S CORP., *et al.*,<br><br>                    Defendants. | CASE NO. 3:14-cv-02098-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL AND NAMED PLAINTIFF SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:              July 20, 2016<br>Time:              10:00 a.m.<br>Courtroom:     11<br>Judge:            Hon. James Donato<br><br>Complaint Filed:   March 12, 2014<br>Trial Date:          Not set |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that, pursuant to this Court's March 11, 2016 Order Certifying Settlement Class and, *inter alia*, Granting Preliminary Approval of the Proposed Class Action Partial Settlement and Plan of Allocation (Dkt. 305), on July 20, 2016 at 10:00 a.m, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James Donato, Courtroom 11, 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth will, and hereby do, move this Court to grant final approval of the class action settlement between plaintiffs and Defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership d/b/a McDonald's ("Smith") and to award each of the four named plaintiffs $2,000 in service awards.

This Motion is made on the grounds that the settlement – to which no objections or opt-outs have been filed – is fair, reasonable, and adequate, and the named plaintiff service awards, which are less than half the amount deemed presumptively reasonable by courts in this Circuit, are more than justified by the substantial time and efforts each named plaintiff expended in this litigation, the significant risks to current and future employment they shouldered by stepping forward on behalf of their low-income current and former coworkers, and the significant benefits they have achieved for those coworkers through this settlement.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting declarations of plaintiffs Stephanie Ochoa, Ernestina Sandoval, Jasmine Hedgepeth, and Yadira Rodriguez, and the Declaration of Matthew J. Murray, filed herewith; the executed Settlement Agreement (Dkt. 304-1); the Court record in this action; all matters of which the Court may take notice; and such argument as the Court permits at the hearing on this Motion.

Date:   June 22, 2016                           Respectfully submitted,

By:   __/s/ Matthew J. Murray__

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL RUBIN
BARBARA J. CHISHOLM
P. CASEY PITTS
MATTHEW J. MURRAY
Altshuler Berzon LLP

JOSEPH M. SELLERS (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC

*Attorneys for Named Plaintiffs and Class*

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 2

        A.      Summary of the Lawsuit and Procedural History ................................. 2

        B.      Settlement ........................................................................................... 4

        C.      Notice to Class Members ...................................................................... 5

III.    SETTLEMENT TERMS ................................................................................ 6

IV.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................ 10

        A.      The Significant Relief Offered in the Settlement Supports Approval .... 11

        B.      The Risks and Delay of Further Litigation Support Approval .............. 13

        C.      The Substantial Discovery Completed and the Stage of the Proceedings
                Support Approval ................................................................................. 14

        D.      The Lack of Opposition by the Class Supports Approval ..................... 14

        E.      The Experience and Views of Class Counsel Support Approval ........... 15

        F.      The *Bluetooth* Factors Support Approval .............................................. 15

V.      THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED ........... 16

        A.      Plaintiffs Took Significant Actions That Benefited the Class as a
                Whole, and They Expended Substantial Time in Assisting with the
                Successful Prosecution of the Lawsuit and the Settlement with Smith .... 17

        B.      The Risks Plaintiffs Took Support Their Request for Service Awards .... 20

        C.      The Reasonableness of Plaintiffs' Request Favors Granting Service Awards .... 21

        D.      Plaintiffs Should Be Awarded Service Payments to Encourage Private
                Attorneys General to Enforce Important Remedial Statutes ................. 24

VI.     CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*In re Austrian and German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...........................................................................12

*In re Bluetooth Headset Products Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................................15, 16

*Boyd v. Bechtel Corp.*,
485 F.Supp. 610 (N.D. Cal. 1979) ...............................................................................11

*Brazil v. Dell Inc.*,
No. C-07-01700 RMW, 2012 WL 1144303 (N.D. Cal. Apr. 4, 2012) ................................20, 22

*Bredbenner v. Liberty Travel, Inc.*,
No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).........................................20

*Chavez v. PVH Corp.*,
No. 13-CV-01797-LHK, 2015 WL 9258144 (N.D. Cal. Dec. 18, 2015)......................18, 22, 23

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................10, 11, 12

*Connolly v. Weight Watchers N. Am. Inc.*,
No. 14-CV-01983 TEH, 2014 WL 3611143 (N.D. Cal. July 21, 2014) ....................................20

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
No. C-10-02124 SI, 2014 WL 186375 (N.D. Cal. Jan. 16, 2014)............................................23

*Dent v. ITC Serv. Grp., Inc.*,
No. 12-CV-0009 JCM, 2013 WL 5437331 (D. Nev. Sept. 27, 2013).........................................22

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) ....................................................................................11

*Garner v. State Farm Mut. Auto Ins.*,
No. 08-CV-1365 CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................17, 18, 22, 23

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)
*aff'd*, 331 F. App'x 452 (9th Cir. 2009) .......................................................................23

*Graham v. Overland Solutions, Inc.*,
No. 10-CV-0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) .....................................23

*Guippone v. BH S&B Holdings, LLC.*,
No. 09-CV-01029 CM, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) .......................................21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................1, 10, 11, 13

*Harris v. Vector Marketing Corp.*,
No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ..............................23

*In re High-Tech Emp. Litig.*,
11-CV-02509 LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...............20, 22, 23

*Hopson v. Hanesbrands, Inc.*,
No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009).........................24

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ....................................................................1, 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...............................................................................24

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) .................................................................................8

*Nat'l Rural Telecomm. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)...............................................................13, 14, 15

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .........................................................................10, 11

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)...............................................................16, 21, 22

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..................................................................................15

*Rodriguez v. West Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................9, 17, 20, 24

*Ross v. U.S. Bank Nat'l Ass'n*,
No. C07-02951SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ...........................20

*Sauby v. City of Fargo*,
No. 3:07-CV-10 RRE, 2009 WL 2168942 (D. N. Dakota, Jul. 16, 2009) ..................25

*Smith v. Am. Greetings Corp.*,
No. 14-CV-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016).........16, 18, 23

*In re Smithkline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990)..........................................................................24

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................... *passim*

iii

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
AND NAMED PLAINTIFF SERVICE AWARDS; MPA; CASE NO. 3:14-cv-02098-JD

*Tennille v. Western Union Co.*,
No. 09-CV-00938 MSK, 2013 WL 6920449 (D. Col. Dec. 31, 2013) ......................................24

*Thornton v. East Texas Motor Freight*,
497 F.2d 416 (6th Cir. 1974) ...........................................................................................24

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .........................................................................18, 23

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................10, 14, 19

*In re Visa Check/ Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...............................................................12

*Wade v. Kroger Co.*,
No. 3:01-CV-699-R, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008).........................................23

*Willner v. Manpower Inc.*,
No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 20, 2015)..................................18, 22

*Wren v. RGIS Inventory Specialists*,
No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................................18, 24

**RULES**

Fed. R. Civ. P. 23 .........................................................................................2, 3, 5, 10

**OTHER AUTHORITIES**

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments
to Named Plaintiffs in Employment Discrimination Class Actions*,
10 Emp. Rts. & Emp. Pol'y J. 101 (2006)...................................................................21

Elisabeth M. Sperle, *Here Today, Possibly Gone Tomorrow: An Examination of
Incentive Awards and Conflicts of Interest in Class Action Litigation*,
23 Geo. J. Legal Ethics 873 (2010) ......................................................................24, 25

## I.      INTRODUCTION

Plaintiffs request final approval of their proposed settlement with defendant The Edward J. Smith and Valerie S. Smith Family Limited Partnership d/b/a McDonald's ("Smith").[1]  The settlement, which reflects Smith's documented financial constraints, includes injunctive relief and installment payments totaling $700,000, plus the costs of notice and administration.  *See* Dkt. 304-1 (Settlement Agreement) ¶¶25-26, 28, 30, 39.  These amounts are in addition to the $65,267.68 Smith committed to pay to members of the Miscalculated Wages Subclass or, to the extent any portion of that payment is undeliverable, to the settlement class.  *Id.* ¶¶1(o)-(p), 30-31.  All settlement payments have been personally guaranteed by Edward Smith and Valerie Smith.  Dkt. 301-4 ¶¶47-49.

The settlement is the product of lengthy, arms-length negotiations following extensive litigation, substantial discovery, and numerous in-person and telephonic mediation sessions conducted by Magistrate Judge Jacqueline Corley.  Plaintiffs believe this settlement is fair, adequate, and well within the range of reasonableness, particularly given Smith's current financial condition.  *Id.* ¶¶5-6; *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823-24 (9th Cir. 2012) (taking defendant's financial condition into account in determining reasonableness).  Following the parties' revision of the settlement to ensure that any potential class members who do not receive actual notice of the settlement will not release their claims, this Court concluded that the settlement "has no obvious defects" and is "fair, adequate, and reasonable," and granted preliminary settlement approval on March 11, 2016.  Dkt. 305 at 3.

Following the Court's preliminary approval order, the Notice of Class Settlement was mailed to all 851 class members, in both English and Spanish, and the claims administrator reports that only 56 notices were ultimately undeliverable, leaving a total of 795 participating class members as of June 17, 2016.  *See* Dkt. 305; Decl. of Matthew J. Murray in Support of Plaintiffs'

---

[1] Plaintiffs continue to litigate this case against the remaining McDonald's defendants on the theory that these defendants are jointly and severally liable for the full amounts owed to plaintiffs and the class members.

Motion for Final Settlement Approval and Named Plaintiff Service Awards ("Murray Decl.") ¶¶2, 9 & Ex. A.[2]  The notices were also made available on a publicly accessible website.  *Id.* ¶6.  The claims administrator has informed the parties that as of June 17, 2016, *not one member of the class chose to opt out of the settlement or objected to any of its terms.  Id.* ¶3 & Ex. A.  In accordance with the Court's comments at the preliminary approval hearing, the settlement provides that *only* class members who receive actual notice of the settlement through receipt or review of the Notice of Class Settlement before the deadline for opting out (and who do not validly opt out) will release their claims and be bound by the settlement.  Dkt. 304-1 ¶1(z).

Class counsel, who are experienced employment class action attorneys and are thoroughly familiar with the law and facts of this case, believe the settlement is in the best interests of the class.  Because the settlement is "fair, reasonable, and adequate," final approval should be granted. Fed. R. Civ. P. 23(e)(2).  Moreover, plaintiffs request a modest award of $2,000 in service awards to each of the four named plaintiffs.  These awards are well below the $5,000 awards that courts in this Circuit have concluded are presumptively reasonable, and are more than justified by the time and efforts expended by the named plaintiffs in achieving significant benefits to the class through this settlement, the significant risks they took in bringing suit against their current or former employers, and the public interest in encouraging individuals like these to act as private attorneys general to vindicate the rights of their low-income and vulnerable current and former coworkers.

## II.     FACTUAL BACKGROUND

### A.     Summary of the Lawsuit and Procedural History

This is a wage and hour lawsuit brought on behalf of current and former McDonald's employees at five Bay Area restaurants operated by defendant Smith pursuant to franchise agreements with defendant McDonald's USA, LLC ("McDonald's").  Plaintiffs filed their initial Complaint on March 12, 2014 and their First Amended Complaint on October 1, 2014, alleging

---

[2] Pursuant to the Settlement, the claims administrator will provide a declaration detailing the notice process and the number of opt-outs and objections received, among other things, by no later than 14 days before the final approval hearing and an updated declaration by no later than three days before the final approval hearing, if there are any changes. Dkt. 304-1 ¶21.  Plaintiffs will provide the Court with those declaration(s). Murray Decl. ¶5.  The claims administrator's most recent report to the parties reflects that the claims administrator has received no opt-outs or objections to the settlement.  Murray Decl. ¶3 & Ex. A.

that Smith and McDonald's are jointly and severally liable for numerous California Labor Code violations. *See* Dkt. 2-1 Ex. A; Dkt. 40. The Complaints challenge, *inter alia*, a series of common policies and practices by which defendants systematically underpaid class members, including by: (1) failing to pay all earned wages because of a consistent error in converting employee time punch data to payroll data; (2) failing to pay daily overtime to class members who work overnight shifts, as a result of defendants' pre-set automated timekeeping system settings; (3) failing to provide meal periods and rest breaks as required by California law or to pay premium wages for missed, untimely, or incomplete meal periods or rest breaks; (4) failing to reimburse crew members for the time and money needed to clean and iron their McDonald's uniforms; and (5) failing to provide accurate wage statements that list all wages earned and identify McDonald's as an employer. Plaintiffs' lawsuit also raises the overarching issue of whether McDonald's is a joint employer or otherwise liable for the relief requested. *See* Dkt. 2-1 Ex. A; Dkt. 40; Dkt. 50 (Motion for Class Certification). Plaintiffs seek damages and injunctive relief. *See* Fed. R. Civ. P. 23(b)(2), 23(b)(3).

The parties engaged in extensive discovery – including more than a dozen depositions (in California and Illinois) – concerning the merits of plaintiffs' claims, class certification issues, and defendants' liability under various legal theories. Dkt. 307 ¶13. Since this case was filed in March 2014, defendants have produced more than 100,000 pages of documents, including payroll and time records for the plaintiff class. *Id.*

The parties have also engaged is significant motion practice. Plaintiffs filed a Motion for Class Certification, as well as a Motion for Partial Summary Judgment. Dkts. 70, 224. These motions remain pending, but need not be resolved to evaluate the fairness of this settlement.[3] McDonald's also filed a Motion for Summary Judgment challenging plaintiffs' theories of joint and derivative liability, which this Court granted in part and denied in part. Dkts. 129, 289. That ruling has no effect on approval of the settlement.[4] A date for trial on plaintiffs' claims against the McDonald's defendants has not yet been set.

---

[3] The Court stayed briefing on Plaintiffs' Motion for Partial Summary Judgment in light of the parties' ongoing settlement discussions. Dkts. 240, 254.

[4] The parties also engaged in extensive additional motion practice regarding McDonald's mostly unsuccessful requests to seal numerous documents. *See* Dkt. 306 at 3 (summarizing motions).

1    This Court granted provisional class certification for the purposes of settlement as part of

2    granting preliminary approval of this settlement.  Dkt 305.  Pursuant to the preliminary approval

3    order, on May 3, 2016, plaintiffs filed an unopposed Motion for Attorneys' Fees and Costs seeking

4    reimbursement of only a portion of the costs actually incurred to date and a small fraction of class

5    counsel's lodestar.  Dkt 306.

6    **B.    Settlement**

7    Plaintiffs and Smith began serious settlement discussions in the spring of 2015, after Smith

8    acknowledged the validity of plaintiffs' claims concerning time conversion errors and agreed to

9    pay plaintiffs and the Miscalculated Wages Subclass $65,267.68 toward resolution of those claims.

10   Dkt. 307 ¶15.  At that time, Smith did not agree to pay liquidated damages or interest on the

11   liquidated damages to the Miscalculated Wages Subclass, although those payments are included in

12   the current settlement.  Dkt. 297-1 ¶4; Dkt. 304-1 ¶40(a).  At the Court's suggestion, the parties

13   began participating in a series of mediations and discussions under the direction of Magistrate

14   Judge Corley, which sometimes included the McDonald's defendants and on one occasion included

15   two other franchisees who were sued jointly with McDonald's in different lawsuits.  Dkt. 297-1 ¶4;

16   Dkt. 307 ¶15; Dkts. 243, 281.

17   After Smith submitted confidential financial information to plaintiffs, which plaintiffs'

18   counsel reviewed with the assistance of a forensic accountant, and after Smith agreed to provide

19   most of the injunctive relief it was capable of providing (which was limited by the fact that certain

20   of plaintiffs' claims rest on the programming of McDonald's required ISP time-keeping software

21   that Smith has no ability to modify), the parties under Magistrate Judge Corley's supervision were

22   able to reach a mutually agreeable settlement.  Dkt. 297-1 ¶5; Dkt. 307 ¶16.

23   The four named plaintiffs fully support the settlement, as do plaintiffs' counsel, who

24   believe the settlement is fair, reasonable, adequate, and in the best interests of the plaintiff class

25   members.  Dkt. 297-1 ¶¶7-8.  The settlement reflects not only the risks and uncertainties of

26   litigation, but also Smith's documented, current financial condition and ability to pay while

27   continuing to operate its McDonald's franchises where many class members continue to work.  *Id.*

28

1

### C.      Notice to Class Members

2

The claims administrator has informed the parties that on April 7, 2016, it mailed class

3

notices to each of the 851 individuals on the putative class list provided by Smith.  Murray Decl. ¶2

4

& Ex. A.  Of the notices mailed, 76 were returned with a forwarding address, and the claims

5

administrator re-mailed new notices to those forwarding addresses.  *Id.*  Another 95 notices were

6

returned with no forwarding address.  *Id.*  The claims administrator performed a skip trace on each

7

of these notices to attempt to find an updated address.  *Id.*  Class counsel were also contacted by

8

numerous class members, who provided updated contact information, and class counsel provided

9

those updated addresses to the claims administrator.  *Id.* ¶7.  The claims administrator re-mailed a

10

total of 151 notices, including 76 to forwarding addresses provided by the post office and another

11

75 to addresses obtained through skip trace or through information from class counsel and/or at the

12

request of a class member.  *Id.* Ex. A.  Of those 151 re-mailed notices, only 19 were returned a

13

second time as undeliverable.  *Id.*  The claims administrator considers a total of 58 notices as

14

undeliverable, including the 19 notices returned after a second attempted delivery and 39 notices

15

that were returned after the initial mailing and were skip traced but for which no new address was

16

discovered.  *Id.*  The claims administrator also maintains a website where class members can

17

access the settlement agreement, class notice, and claim forms.  *Id.* ¶6.  Any class member who

18

does not receive or review the class notice before the deadline for opting out will not release any

19

claims or be bound by the settlement.  Dkt. 304-1 ¶1(z).  The claims administrator has received 44

20

responses, all of which are valid claim forms.  Murray Decl. Ex. A.  The settlement agreement does

21

not require class members who receive the notice at their correct address to file a claim form.  Dkt.

22

304-1 ¶¶16(e)(e)-16(e)(f).  Only two of the 44 claim forms received were from individuals whose

23

notices were considered undeliverable, and thus were required to submit a claim form for

24

participation in the settlement.  Murray Decl. Ex. A.

25

Pursuant to the settlement, class members have 60 days from the date that a class notice is

26

mailed to them to opt out or submit an objection.  Dkt. 304-1 ¶¶18(b), 19(a).  That period passed on

27

June 6, 2016 for the vast majority of the class, who were mailed class notices on April 7, 2016, and

28

whose notices were not returned as undeliverable.  The deadline for opt-outs and objections for

other class members depends on the date on which they were sent a subsequent class notice at their correct address.[5]

The claims administrator reports that as of June 17, 2016, the claims administrator had not received any opt-outs, objections, disputes, deficient claim forms, late claim forms or invalid claim forms.  Murray Decl. Ex. A.  There are thus 795 participating class members who will be sent settlement checks if the Court grants final approval of the settlement, including 793 whose notices were deliverable and two class members whose notices were returned as undeliverable but who submitted valid claim forms.  *Id.*

## III.    SETTLEMENT TERMS

The settlement agreement establishes a non-reversionary $700,000 fund that, subject to Court approval, will be distributed, together with any remainder of the Miscalculation Subclass payments, in accordance with the Plan of Allocation set forth as Exhibit C to the Settlement Agreement.  The Plan of Allocation provides for payment to class members to be paid on a pro rata basis, based principally on the number of weeks worked by each class member.  The Settlement also provides for the following payments to be made from the settlement fund: (1) a payment of $24,000 to California's Labor and Workforce Development Agency ("LWDA") pursuant to the California Labor Code Private Attorneys General Act ("PAGA"); (2) a payment of $35,000 for plaintiffs' counsel's litigation expenses; (3) a payment of $2,000 as "service fees" to each of the four named plaintiffs, who have each produced documents, submitted interrogatory responses and multiple declarations, been deposed at length, and have personally participated in extensive settlement discussions, including two plaintiffs who each attended two all-day mediation sessions (*see infra* at 16-25); and (4) a payment of $150,000 for plaintiffs' counsel's statutory attorneys' fees.  Dkt. 304-1 ¶¶30-34.  Any of those payments that are reduced or eliminated by the Court will be added to the funds available for distribution to the class.  *Id.* ¶¶ 37-38, 44(b).

Smith has already made an initial payment of $400,000 to an interest-bearing account to fund this settlement.  Murray Decl. ¶8.  Smith will make an additional $200,000 payment within

---

[5] Prior to the final settlement hearing, the parties will provide the Court with updated information about the deadline(s) for opt-outs and objections for class members who were re-mailed class notices.

1   one year of the settlement's effective date, and a third $100,000 payment within two years of the

2   effective date.  Dkt. 304-1 ¶¶28, 30.  Smith will also add to the settlement fund the remainder from

3   the $65,267.68 Miscalculated Wages Subclass payment that Smith is unable to distribute to

4   Miscalculated Wages Subclass members prior to the settlement's effective date.  *Id.* ¶¶1(o), (p),

5   30.[6]  Separate and apart from these amounts, Smith will also pay the claims administrator for all

6   costs of class notice and settlement administration.  *Id.* ¶39.

7         The settlement funds will be distributed in a maximum of three installments.  The first

8   installment will include all Court-approved service fees and plaintiffs' litigation expenses (in an

9   amount not to exceed $35,000 – which is far less than actual expenses to date, *see* Dkt. 306 at 10-

10   11), with the remainder distributed to the class members.  Dkt. 304-1 ¶33.  The second installment

11   will include plaintiffs' court-approved statutory attorneys' fees (in an amount not to exceed

12   $150,000 – which likewise is far below counsel's lodestar, *see* Dkt. 306 at 5-10), with the

13   remainder distributed to class members.  Dkt. 304-1 ¶34.  The third installment will complete

14   payments to class members and include the payment to the LWDA.  *Id.*

15         As set forth in the Plan of Allocation, payments to class members will be calculated based

16   principally upon the number of weeks each class member worked during the class period (March

17   12, 2010 to the date of preliminary approval, March 11, 2016), with former employees each

18   receiving a separate, additional amount to compensate them on a per capita basis for their waiting

19   time penalties claims.  *Id.* ¶40.  The employee portion of the PAGA penalty payment of $8,000 will

20   be distributed on a pro rata basis for each week worked after March 12, 2013 (the start of the

21   PAGA limitations period).  *Id.*  All other distributions will be made on a proportional pro rata basis

22   for each week worked.  *Id.*  In addition to the monetary payments, the settlement further provides

23   for the following injunctive relief, which took effect on March 21, 2016, 10 days after preliminary

24   settlement approval:

25

26           a.  Smith shall pay overtime premiums to any Plaintiff, Class Member, or future
                hourly employee who works more than eight hours in any designated workday

27

28   [6] Smith's counsel has informed plaintiffs' counsel that Smith intends to provide an updated
declaration before the final approval hearing documenting Smith's distribution of payments to the
Miscalculated Wages Subclass members.  Murray Decl. ¶10.

(such designation to be made in advance in writing to the affected employee(s)) or, if no workday is so designated, in any 24-hour period.

b.  Smith shall review all time and payroll records at least once at the end of each pay period, either manually or through re-programming of its timekeeping and payroll software, and shall pay an additional one hour's wages to each Plaintiff, Class Member, or future hourly employee for each day during that pay period on which the time records (as may be adjusted in accordance with existing policy, upon approval of the affected employee and a representative of Smith) reflect that such Plaintiff, Class Member, or future hourly employee was not provided all full and timely 30-minute meal periods as required by California law, and for each day during that pay period on which the time records reflect that such Plaintiff, Class Member, or future hourly employee was not provided all full and timely 10-minute paid rest breaks as required by California law.  For purposes of this paragraph, rest breaks are not timely if they begin or end within 15 or fewer minutes of the beginning or end of a shift, work period, meal period, or another rest break.

c.  Smith shall provide wage statements to Plaintiffs, Class Members, and future employees that separately record regular hours and overtime hours each pay period, the rate of pay, premium wages for missed, untimely, or short meal periods and rest breaks, and any deductions taken from that pay.

d.  Smith shall provide a clean apron to each Plaintiff, Class Member, and future employee at the start of such employee's shift if that employee is assigned to work in the kitchen or other position where the employee's uniform would be exposed to grease or smoke.

Dkt. 304-1 ¶26; Dkt 305 at 3.

Pursuant to the terms of the settlement agreement, Plaintiffs' counsel filed a motion for $150,000 in attorneys' fees and $35,000 in expenses on May 3, 2016 (Dkt. 306; Dkt. 304-1 ¶37), providing more than adequate opportunity for class members to object.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2010); Dkt. 305 at 9.[7]  No such objection has been filed.  Also pursuant to the settlement agreement, plaintiffs are in this motion applying to the Court for an award of $2,000 to each of the four named plaintiffs for the considerable services they rendered to the class.  Dkt. 304-1 ¶38.  Such "awards are fairly typical in class action cases."  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs … are eligible for reasonable incentive payments.").  Even if the Court requires a showing of special circumstances to justify such service awards, those circumstances are present here.  *See infra* at 16-25.

---

[7] Plaintiffs Motion for Attorneys' Fees and Costs (Dkt. 306) is set to be heard concurrently with this motion.

As discussed above, and pursuant to the settlement agreement's terms, the claims administrator mailed the Court-approved class notice and claim forms, in English and Spanish, to the 851 individuals on the putative class list provide by Smith.  Murray Decl. Ex. A; Dkt. 304-1 ¶¶1(c), (g), 16.  Each personalized class settlement notice stated the recipient's estimated settlement amount (assuming full participation), the deadline for submitting a claim form if a form is necessary, and the deadlines and procedures for opting out of or objecting to the Settlement.  Dkt 304-1 ¶16(e) & Ex. 1.  Class members have 60 days from the postmarked date of notice to opt out or object.  *Id.* ¶¶18-19.

The only class members actually required by the settlement agreement to file claim forms were those who did not receive class notices at their home address (i.e., when a class notices is returned as undeliverable and no updated address can be located).  For all class members with deliverable home addresses, settlement checks will be mailed to those addresses.  Dkt. 304-1 ¶16(e).  According to the settlement agreement, class members needing to submit claim forms have 75 calendar days from the date the class notice was mailed to them to do so.  Dkt. 304-1 ¶16(e).

Upon the settlement's effective date, only class members who have actually received or reviewed the class notice, and who have not opted out, will be deemed to have released Smith and Smith-related entities (defined as *not* including the remaining McDonald's defendants or any of their related entities) from all claims that were or could have been asserted in the First Amended Complaint based upon the facts alleged.  Dkt. 304-1 ¶¶1(z), 45.  If no objections are filed (and none have been filed so far), the effective date will be the date of final approval.  *Id.* ¶1(*l*).  If objections are filed and overruled, the effective date will be the expiration of the time permitted for any appeal, collateral attack, or other challenge or the resolution of such challenges.  *Id.*

Within 30 days of the effective date, the claims administrator will make an initial payment to class members, and second and third payments within one and two years respectively of the initial payment date (unless Smith chooses to accelerate the payments).  *Id.* ¶¶33-34.  Any amounts uncashed by 120 days after the respective date of distribution will be redistributed among all other class members in proportion to their initial settlement shares.  *Id.* ¶44(a).  If the total amount of remaining funds after redistribution does not exceed $10,000, these funds will be donated as *cy*

*pres*, split between the National Employment Law Project and Bay Area Legal Aid.  *Id.* ¶44(b).

The settlement also provides that, if there are other settlements against other defendants in this

case, or other class notices, the parties will work together in good faith to minimize the costs of

notice and administration and to promote efficiency.  *Id.* ¶9.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The Ninth Circuit recognizes a strong policy favoring voluntary settlement of complex class

actions.  "[V]oluntary conciliation and settlement are the preferred means of dispute resolution."

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  This is "especially

true in complex class action" cases, which lend themselves to compromise because of the

difficulties of proof, uncertainty of outcome, and length and complexity of litigation.  *Id.*; *see also*

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy …

favors settlements, particularly where complex class action litigation is concerned.").

Federal Rule of Civil Procedure 23(e) requires that a class action settlement be "fair,

reasonable, and adequate" to merit approval.  The Ninth Circuit has identified a non-exhaustive list

of factors to guide the final approval inquiry, including (1) the amount offered in settlement, (2) the

strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration

of further litigation" and the "risk of maintaining class action status throughout the trial," (3) the

"extent of discovery completed" and the "stage of the proceedings," (4) the reaction of the class to

the proposed settlement, and (5) the informed views of experienced counsel.  *Hanlon*, 150 F.3d at

1026; *see also Staton*, 327 F.3d at 959; *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488

(E.D. Cal. 2010) ("[T]his list of factors is not exclusive and the court may balance and weight

different factors.").  With respect to the last factor, the "recommendations of plaintiffs' counsel

should be given a presumption of reasonableness," particularly when counsel has significant

experience litigating similar cases.  *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979);

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced

counsel involved in the case approved the settlement after hard-fought negotiations is entitled to

considerable weight.").  The relative importance of any particular factor will depend upon the

nature of the claims, the types of relief sought, and the facts and circumstances presented by the individual case. *Class Plaintiffs*, 955 F.2d at 1291.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). This Court has already concluded that the settlement "falls within the range of possible approval as fair, adequate, and reasonable," Dkt. 305 at 3, and there is no reason to change that conclusion.

## A.    The Significant Relief Offered in the Settlement Supports Approval

After vigorous litigation for over two years, plaintiffs secured a settlement with Smith that consists of $700,000, plus the $65,267.68 Smith agreed to pay to the Miscalculated Wages Subclass (and to the class, if payments to the subclass are unclaimed or undeliverable), plus the costs of notice and claims administration, as well as substantial injunctive relief. The proposed settlement satisfies the final approval standard in that it is fair, adequate, and reasonable. Payments to participating class members are likely to exceed $600 on average, with many individual payments exceeding $1,500. Murray Decl. ¶9.[8] Moreover, and of critical importance, plaintiffs' counsel's and their expert forensic accountants' review of Smith's confidential financial documents reflects that Smith is unlikely to be able to pay materially more than the total settlement. *See* Dkt. 304-1 ¶¶5-6 (Smith's financial condition was a "material factor giving rise to Plaintiffs' agreement" to settlement amount); *Class Plaintiffs*, 955 F.2d at 1295 ("[A] settling defendant's

---

[8] If the Court grants the requests for attorneys' fees and costs and plaintiff service awards, a total of at least $483,000 will be available from the $700,000 settlement fund (after payments to the LWDA). Dividing $483,000 by the 795 individuals currently identified by the claims administrator as participating class members results in an expected minimum average of $607.55 per participating class member. Murray Decl. ¶9. The actual average relief is likely to be higher, however, because some of the $65,267.68 allocated to the Miscalculated Wages Subclass may remain unclaimed and be redistributed among participating class members, Dkt. 304-1 ¶¶1(p), 30-31, and some small number of the 795 participating class members may not cash their checks, in which case their portions would be redistributed to other class members, *id.* ¶¶35, 44(a).

1  ability to pay may be a proper factor to be considered in evaluating a proposed class action

2  settlement."); *Lane*, 696 F.3d at 823-24.  Given the significant amounts to be paid to participating

3  class members, Smith's limited finances, and the fact that plaintiffs continue to litigate this case

4  against the McDonald's defendants seeking full relief on all their claims, there can be no question

5  that the proposed settlement is fair, adequate, and reasonable, warranting final approval.

6      Moreover, in the absence of a settlement and even if fully successful, plaintiffs would have

7  recovered damages many years from now, after a lengthy trial and possible appeal.  The certainty

8  of at least a partial monetary recovery *now*, before additional fees and costs are incurred, and

9  before it becomes even more difficult to locate class members, is extremely beneficial to the class.

10  *See In re Visa Check/ Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003)

11  ("The potential for this complex litigation to result in enormous expense, and to continue for a long

12  time, was great."); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174

13  (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs,

14  delays and multitude of other problems associated with them.").

15      The Settlement is also reasonable because it provides substantial non-monetary benefits to

16  the plaintiff class through injunctive relief that has been in place since March 21, 2016, requiring

17  Smith to: (1) comply with California law regarding payment of overtime for time worked in excess

18  of eight hours per day; (2) review payroll and time information once per pay period to assure that

19  workers were provided all legally required timely meal periods and rest breaks or were

20  compensated with an additional hour of wages for any violations; (3) provide wage statements to

21  plaintiffs, class members, and future employees that separately record regular hours and overtime

22  hours each pay period, the rate of pay, premium wages for missed, untimely, or short meal periods

23  and rest breaks, and any deductions taken from that pay; and (4) provide clean aprons to each

24  plaintiff, class member, and future employee at the start of such employee's shift if that employee

25  is assigned to work in the kitchen or other position where the employee's uniform would be

26  exposed to grease or smoke.  Dkt. 305 at 3; *see Hanlon*, 150 F.3d at 1027, 1029 (approving

27  settlement requiring defendant to take steps to make minivans safe, where no class member was

28  entitled to any cash recovery).

For these reasons, both the settlement amount and the non-monetary benefits provided by the settlement agreement support a finding that the settlement is fair, adequate, and reasonable.

**B.      The Risks and Delay of Further Litigation Support Approval**

Although plaintiffs believe they have a strong case and will ultimately prevail as they continue this litigation against the McDonald's defendants, defendants have disputed the facts, the applicable law, and the appropriateness of maintaining this case as a class action lawsuit.  These are fact-intensive issues.  Given the sheer number of issues involved and the many potential stumbling blocks, the settlement achieved with Smith is fair, adequate, and reasonable.  *See Nat'l Rural Telecomm. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (citation and internal quotation marks omitted).

The timing of the settlement is also beneficial to class members.  Plaintiffs continue to pursue the class claims against the McDonald's defendants, but even if plaintiffs are ultimately successful, the costs of continued litigation and uncertain results make settling with Smith now preferable.  Plaintiffs settled with Smith prior to obtaining a ruling on their motion for class certification and before defendants' liability was conclusively determined.  If litigation against Smith continued alongside the ongoing litigation against McDonald's, plaintiffs would have to incur further expert fees and face a trial and any appeals, all of which would delay recovery and incur expenses potentially cutting into class members' recovery.  Moreover, even an ultimately successful judgment against Smith years in the future might be uncollectable, given Smith's financial circumstances.  The McDonald's defendants, in contrast, face no similar financial limitations.  Settling with Smith now is plainly in plaintiffs' best interest.  *See Nat'l Rural Telecomm.*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions* §11:50 at 155 (4th ed. 2002)).

Given the risks presented by the litigation, the inevitable delay of further litigation, and the risk that even successful litigation against Smith might lead to a judgment that was uncollectable, the settlement is fundamentally fair and in the best interests of the class.

## C.   The Substantial Discovery Completed and the Stage of the Proceedings Support Approval

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Vasquez*, 266 F.R.D. at 489.  In this case, the parties have conducted extensive discovery into the merits of plaintiffs' claims, class certification, and defendants' liability under various legal theories.  The parties have taken more than a dozen depositions, including depositions of several managers for both Smith and McDonald's and all of the named plaintiffs. Dkt. 307 ¶13. The parties also exchanged significant written discovery.  Defendants produced more than 100,000 pages of documents, including payroll and time records for the class (which were then analyzed by plaintiffs' expert). *Id.*  Plaintiffs have carefully reviewed and analyzed the discovery produced, and on the basis of that information and plaintiffs' own investigation, were able to defeat a motion for summary judgment by McDonald's and to prepare strong motions for class certification and for partial summary judgment against Smith.  The discovery conducted during this litigation is more than sufficient to provide class counsel a thorough understanding of the strength of plaintiffs' claims.

## D.   The Lack of Opposition by the Class Supports Approval

As detailed above, and pursuant to the Court's preliminary approval order, the claims administrator mailed notice of the settlement to class members. *See supra* at 5-6.  As of June 17, 2016, no class member had objected to or opted out of the settlement.  Murray Decl. Ex. A.  "The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (internal quotation marks omitted).  The fairness, reasonableness, and adequacy of the settlement are thus further supported by the absence of any objections or requests to opt out.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     **E.**       **The Experience and Views of Class Counsel Support Approval**

     "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (internal quotation marks omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, class counsel have extensive experience litigating employment class actions and are well-positioned to assess the risks of continued litigation and the benefits obtained by the settlement. *See* Dkt. 297-1 ¶12; Dkt. 307 ¶¶4-11; Dkt. 308 ¶¶3-11. The parties negotiated the settlement in good faith and at arm's length. Dkt. 297-1 ¶7; Dkt. 307 ¶¶15-17; Dkt. 304 ¶6. As described above, substantial discovery, investigation, and research over the course of more than two years have enabled plaintiffs' experienced class action counsel to assess the strengths of plaintiffs' claims and the benefits of the settlement. Plaintiffs' counsel believe the settlement with Smith is fair, reasonable, adequate, and in the best interests of the class in light of all known facts and circumstances, including in particular Smith's documented financial condition. Dkt. 297-1 ¶7; Dkt. 304 ¶6.

     **F.**       **The *Bluetooth* Factors Support Approval**

     This settlement also fully satisfies the factors addressed by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011). In *Bluetooth*, the Ninth Circuit held that, where a classwide settlement is reached before the district court grants class certification, the Court's consideration of whether to approve a class-wide settlement should involve a heightened level of scrutiny for evidence of collusion between plaintiffs' counsel and defendants and for any other kind of conflict of interest. *Id.* In this case, the parties fully briefed and argued plaintiffs' Motion for Class Certification before plaintiffs and Smith reached this settlement, but the Court has not ruled on that pending motion. Dkts. 70, 138, 290, 292-294. The settlement here clears all the *Bluetooth* hurdles.

     There is no question, for example, that the attorneys' fees sought in this case are not disproportionately high in relation to the funds available for awards to plaintiffs and members of the class. *See Bluetooth*, 654 F.3d at 947. As discussed in plaintiffs' Motion for Attorneys' Fees

and Costs, class counsel have requested an award of fees representing 21.4% percent of the $700,000 gross settlement funds, which is within the range of fees commonly awarded in common fund cases of this type and significantly below class counsel's lodestar to date. Dkt. 306.[9] Moreover, as discussed above, the class members will receive significant injunctive relief from the settlement. *See supra* at 7-8. Further, unlike in some cases deemed suspicious by the Ninth Circuit, any fees that are not approved by the Court in response to plaintiffs' motion for attorneys' fees will be applied to the net settlement fund available for the class, rather than simply reverting to the settling defendant. *See Bluetooth*, 654 F.3d at 947. Finally, the settlement is not contingent on the Court's award of fees and costs to Class Counsel. Dkt. 304-1 ¶37. In short, there are no indicia of collusion or conflict of interest that should give the Court any pause in approving the proposed settlement.

## V.     THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED

In addition to granting final settlement approval, the Court should grant plaintiffs' request for modest service awards to compensate plaintiffs and class representatives Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth for their role in obtaining a significant class-wide recovery. The requested $2,000 payments to each class representative are less than half of the $5,000 awards that are "presumptively reasonable" in the Ninth Circuit, *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *10 (N.D. Cal. May 19, 2016); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015), and are far less than service awards that many other courts in this Circuit have approved in similar wage-and-hour cases. *See infra* at 18, 21-23. They are fair and reasonable in light of the time and effort the named plaintiffs expended assisting with this litigation and class-wide settlement and the risks they took in order to vindicate the rights of hundreds of other workers. For their work as "private attorney[s] general," *Rodriguez,* 563 F.3d at 959, each named plaintiff earned the service award she seeks here.

_____

[9] Class counsel's requested fees are an even smaller percentage of the full amount Smith will pay, which includes not only the $700,000 gross settlement fund, but also the more than $65,000 in payments to the Miscalculated Wages Subclass and all costs of notice and claims administration.

Class representatives play a crucial role in bringing justice to those who would otherwise be unable to vindicate their rights.  *See Rodriguez*, 563 F.3d at 958–59 (incentive awards may recognize a plaintiff's "willingness to act as a private attorney general").  In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases."  *Id*. at 958 (emphasis omitted). "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where … the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mut. Auto Ins*., No. 08-CV-1365 CW, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases).

In examining this commitment to the class and the reasonableness of a requested service payment, courts must consider all "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … the amount of time and effort the plaintiff expended in pursuing the litigation … and reasonabl[e] fear[s of] workplace retaliation."  *Staton*, 327 F.3d at 977 (citation omitted).  Here, each of these factors weighs in favor of granting this motion.  The modest $2,000 plaintiffs seek is a reasonable amount to compensate plaintiffs for the time they spent pursuing this case, the risks involved in bringing this case as named plaintiffs and class representatives, the delay resulting from bringing this case on a class rather than an individual basis, the information and insight they provided to class counsel to prosecute the case efficiently, their role in the mediation process, and the service rendered to the unnamed class members resulting from the settlement achieved.

### A.   Plaintiffs Took Significant Actions That Benefited the Class as a Whole, and They Expended Substantial Time in Assisting with the Successful Prosecution of the Lawsuit and the Settlement with Smith

Service awards are payments to class representatives for their service to the class in bringing the lawsuit.  *See Rodriguez*, 563 F.3d at 958-59.  Class representatives bring critical factual knowledge to employment class actions, including information about employer policies and practices that affect wages.  *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32-37 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (recognizing plaintiffs' efforts in time spent meeting with class counsel and

informing them of employers' practices and procedures, as well as reviewing pleadings and motions, searching for and producing documents, and responding to interrogatories).

Here, each of the four plaintiffs took actions that protected the interests of the class and from which the class benefitted as a whole. Each plaintiff spent up to between approximately 37.5 and 61.5 hours assisting in the prosecution of this case and the settlement with Smith. *See* Decl. of Plaintiff Stephanie Ochoa in Support of Plaintiffs' Motion for Final Settlement Approval and Plaintiff Service Awards ("Ochoa Decl.") ¶¶2-3; Decl. of Plaintiff Ernestina Sandoval in Support of Plaintiffs' Motion for Final Settlement Approval and Plaintiff Service Awards ("Sandoval Decl.") ¶¶2-3; Decl. of Plaintiff Yadira Rodriguez in Support of Plaintiffs' Motion for Final Settlement Approval and Plaintiff Service Awards ("Rodriguez Decl.") ¶¶2-3; Decl. of Plaintiff Jasmine Hedgepeth in Support of Plaintiffs' Motion for Final Settlement Approval and Plaintiff Service Awards ("Hedgepeth Decl.") ¶¶2-3.

Courts regularly grant larger service awards to named plaintiffs who have expended the same or far less time contributing to litigation. *See, e.g.*, *Smith*, 2016 WL 2909429, at *10 (approving $5,000 incentive awards for plaintiffs that spent 20 to 25 hours on the case); *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 9258144, at *9 (N.D. Cal. Dec. 18, 2015) (awarding $5,000 to plaintiff who spent 40 hours and $2,500 to plaintiff who spent 15 hours on the case); *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 WL 3863625, at *8-9 (N.D. Cal. June 20, 2015) (awarding $7,500 to class representative who contributed 54 hours to the litigation); *Garner*, 2010 WL 1687832, at *17 (awarding $20,000 where plaintiff "made herself available for deposition on two separate occasions …; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff who participated in "49 telephone conferences and five meetings with Class Counsel, attended three pre-trial hearings, had his deposition taken twice, and testified at trial"); *Vasquez*, 266 F.R.D. at 491 (class representatives awarded $5,000 for having spent "dozens" of hours on the case, where total settlement amount was $300,000).

The plaintiffs each met and/or spoke with class counsel before the lawsuit was filed and subsequently amended to inform counsel of the facts underlying their claims. Ochoa Decl. ¶¶ 2-3; Sandoval Decl. ¶¶ 2-3; Rodriguez Decl. ¶¶ 2-3; Hedgepeth Decl. ¶¶ 2-3. Plaintiffs then continued to communicate regularly with their counsel throughout the litigation. *Id.* All four plaintiffs spent significant time searching for and providing documents responsive to discovery requests and in support of the claims and working with class counsel to prepare, review, and approve responses to interrogatories. Ochoa Decl. ¶3; Sandoval Decl. ¶3; Rodriguez Decl. ¶3; Hedgepeth Decl. ¶3. Each plaintiff spent significant time preparing for and being deposed in furtherance of the lawsuit – including one plaintiff who sat for a day-long deposition only hours after coming off an overnight shift at work. Ochoa Decl. ¶3; Sandoval Decl. ¶3; Rodriguez Decl. ¶3; Hedgepeth Decl. ¶3. Each plaintiff also participated in the settlement negotiation process culminating in the settlement with Smith by speaking with class counsel in preparation for mediation, conferring with counsel after mediation to review, discuss, and execute the written agreement and the revised agreement, and for two plaintiffs attending two all-day mediation sessions with class counsel in San Francisco – including for one plaintiff spending all day in the mediation only hours after finishing an overnight shift at work. Ochoa Decl. ¶3; Sandoval Decl. ¶3; Rodriguez Decl. ¶3; Hedgepeth Decl. ¶3.

Moreover, the number of hours that plaintiffs expended fails to capture the value added to this case by their efforts. Plaintiffs provided class counsel with information about and documents confirming their working conditions and compensation received that were essential to framing the claims in the complaint and amended complaint and prosecuting the case. And by actively participating in settlement strategy and negotiations, plaintiffs contributed significantly to the successful outcome of their claims against Smith. Ochoa Decl. ¶3; Sandoval Decl. ¶3; Rodriguez Decl. ¶3; Hedgepeth Decl. ¶3. For these efforts in furtherance of the class, this Court should grant the requested service payments.

### B. The Risks Plaintiffs Took Support Their Request for Service Awards

Service awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their current or former employers. *Rodriguez*, 563 F.3d at 958-59; *see Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2012

WL 1144303, at *2-3 (N.D. Cal. Apr. 4, 2012).  In the workplace context, where workers are often

blacklisted if they are considered "troublemakers," employees who sue their employers are

particularly vulnerable to retaliation and termination – a paralyzing fear for workers in this harsh

economic climate.  *See In re High-Tech Emp. Litig.*, 11-CV-02509 LHK, 2015 WL 5158730, at

*17 (N.D. Cal. Sept. 2, 2015) (granting service awards based in part on the named plaintiffs' risk of

future workplace retaliation and diminished future employment prospects for being labeled

"troublemakers" in their industry); *Connolly v. Weight Watchers N. Am. Inc.*, No. 14-CV-01983

TEH, 2014 WL 3611143, at *4 (N.D. Cal. July 21, 2014) (named plaintiffs assume "the risk of

being stigmatized or disfavored by their current or potential future employers by suing their

employer"); *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at

*23 (D.N.J. Apr. 8, 2011) (awarding enhancements to named plaintiffs in recognition that "they

risk their good will and job security in the industry for the benefit of the class as a whole"); *Ross v.

U.S. Bank Nat'l Ass'n*, No. C07-02951SI, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010)

(enhancements based on "willingness to serve as representatives despite the potential stigma that

might attach to them in the banking industry from taking on those roles").

      Here, plaintiffs undertook significant risk and burden in coming forward and filing suit

against their employers as named plaintiffs.  Plaintiffs had to overcome their fear of retaliation and

industry ostracism to serve as named plaintiffs in this lawsuit.  Plaintiffs Sandoval and Rodriguez

assumed substantial risks by serving as named plaintiffs in this action against McDonald's and

Smith while employed by them at the same time – thus facing the real possibility of retaliation as a

result of their participation in the lawsuit.  Sandoval Decl. ¶5; Rodriguez Decl. ¶5.  The remaining

two plaintiffs, who are former employees of McDonald's and Smith, faced the risk that their

current or future employers might discriminate or retaliate against them for being involved in this

case.  Ochoa Decl. ¶5; Hedgepeth Decl. ¶5; *see Connolly*, 2014 WL 3611143, at *4 (recognizing

named plaintiffs assume "the risk of being stigmatized or disfavored by their current or potential

future employers by suing their employer").

      Plaintiffs also document the fear that they continue to have regarding future negative

impacts on their employment if a potential future employer discovers (from a simple internet

search) that they initiated a class action lawsuit against their employers.  Ochoa Decl. ¶5; Sandoval

Decl. ¶5; Rodriguez Decl. ¶5; Hedgepeth Decl. ¶5; *see Guippone v. BH S&B Holdings, LLC.*, No.

09-CV-01029 CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a

plaintiff has filed a federal lawsuit is searchable on the internet and may become known to

prospective employers when evaluating that person.").  All four plaintiffs merit recognition for

assuming these potential risks by connecting their names to the lawsuit.

Although plaintiffs could likely have confidentially resolved their individual claims, they

were willing to risk exposure and act as named plaintiffs to secure a remedy not only for

themselves, but for their fellow workers who might be unwilling, afraid, or unable to bring their

own case.  Ochoa Decl. ¶7; Sandoval Decl. ¶7; Rodriguez Decl. ¶7; Hedgepeth Decl. ¶7; *see*

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named*

*Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 101, 114-16

(2006) (discussing the realistic fear of reprisal facing employees who bring workplace law class

actions, in contrast to plaintiffs who bring consumer and securities class actions).  The risk of

retaliation and deterred future employment weighs in favor of the requested service awards,

especially for these low-income workers who are particularly vulnerable to the adverse

consequences that come with loss of current or future employment.

### C.   The Reasonableness of Plaintiffs' Request Favors Granting Service Awards

The amount being requested, $2,000 per named plaintiff, is an eminently reasonable sum in

light of the factors courts balance to ascertain the reasonableness of service payments.  To ensure

that a service payment is reasonable in the amount requested, courts balance "the number of named

plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement

amount, and the size of each payment."  *Staton*, 327 F.3d at 977; *see also In re Online DVD-*

*Rental*, 779 F.3d at 947-48 (applying these factors and affirming incentive awards of $5,000 each

for nine named plaintiffs where class members each received $12).

The proportion of the payments relative to the settlement amount is modest compared to the

total value of the settlement and the amounts class members will be receiving under the settlement.

*See, e.g.*, *In re Online DVD-Rental*, 779 F.3d at 947-48; *In re High-Tech Emp. Litig.*, 2015 WL

5158730, at *17-18 (approving service awards of $80,000 to $120,000 per named plaintiff where the average class member received $5,770).  The aggregate amount of service awards ($8,000) is only 1.14% (approximately one-percent) of the total settlement value of $700,000 (and an even smaller portion of the total Smith will pay, factoring in the Miscalculated Wages Subclass payments and costs of notice and claims administration), and each individual service award is only 1/4 of that 1.14% (i.e., 0.29%) of the settlement amount.  This is not a case where representative plaintiffs receive multiple thousands of dollars while the class members get a coupon or nominal damages.[10]  Here, the average settlement for each of the approximately 795 participating class members is likely to exceed $600, with many individual payments exceeding $1,500.  *See supra* at 11 & n.8.  Courts have approved service awards that were far more than the roughly two to three times the average settlement payment that is at issue here.  *See, e.g.*, *In re Online DVD-Rental*, 779 F.3d at 947-48 (affirming incentive awards of $5,000 each for nine named plaintiffs where class members each received $12); *Chavez*, 2015 WL 9258144, at *9 (awarding named plaintiffs $5,000 and $2,500, about 19 to 38 times more than the approximately $130 each class member received); *Willner*, 2015 WL 3863625, at *9 (awarding named plaintiff $7,500, more than 12 times the average expected class member payment of $605.02); *Garner*, 2010 WL 1687832, at *17 n.8 (awarding named plaintiffs $20,000, which was 20 to 200 times the typical award of $100 to $1,000); *Brazil,* 2012 WL 1144303, at *1 (awarding named plaintiffs $5,000 each, one hundred times the $50 payments to class members).

        In addition, plaintiffs agreed to execute much broader releases than the releases that apply to other class members.  Dkt. 304-1 ¶¶45-46.  This warrants additional compensation.  *See Dent v. ITC Serv. Grp., Inc.*, No. 12-CV-0009 JCM, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding enhancement in part because wage plaintiff signed a general release); *Wade v. Kroger Co.*, No. 3:01-CV-699-R, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) (awarding

---

[10] Nor is this a case like *Staton*, where the Ninth Circuit reversed a district court's settlement approval in part because the settlement involved enhanced payments to a group of *non-named plaintiff* class members selected by class counsel, including at least one individual who was a not a class member at all.  *See* 327 F.3d at 975-78 & n.27.

plaintiffs additional compensation because they agreed to a "release of all claims … that is broader than the release given by other members of this class").

Finally, the service payments that plaintiffs seek are significantly lower than most awards approved by other federal judges in class actions in this Circuit.  *See, e.g.*, *In re High-Tech Emp. Litig.*, 2015 WL 5158730 at *16-18 (granting service awards of $120,000 for one named plaintiff and $80,000 for four other named plaintiffs in antitrust action based on their "hundreds" of hours worked in furtherance of the litigation and reasonable fear of future workplace retaliation, where class members were expected to receive roughly $5,770 each); *Garner*, 2010 WL 1687832, at *17 n.8 ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more") (collecting cases); *Graham v. Overland Solutions, Inc.*, No. 10-CV-0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (preliminarily approving $25,000 to each named plaintiff for their time, effort, risks undertaken for the payment of costs in the event the action had been unsuccessful, stigma upon future employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving payments of $25,000 to each named plaintiff); *Van Vranken*, 901 F. Supp. at 299-300 (awarding $50,000 to a lead plaintiff).

In fact, service awards of $5,000 – two-and-half times the amount requested here – are "presumptively reasonable" in the Ninth Circuit.  *Smith*, 2016 WL 2909429, at *10 (approving $5,000 incentive awards for plaintiffs that spent 20 to 25 hours on the case); *see Chavez*, 2015 WL 9258144, at *9 ("The Ninth Circuit has established $5,000 as a reasonable benchmark award for representative plaintiffs."); *Lopez v. Bank of Am.*, N.A., No. 10-CV-01207-JST, 2015 WL 5064085, at *8 (N.D. Cal. Aug. 27, 2015); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, No. C-10-02124 SI, 2014 WL 186375, at *3 (N.D. Cal. Jan. 16, 2014) ("In general, courts have found incentive payments of $5,000 presumptively reasonable") (citations omitted); *see also Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (recognizing that "$5,000 is a reasonable amount") (citations omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving $5,000 incentive

awards); *Wren,* 2011 WL 1230826, at *37 (same); *Hopson v. Hanesbrands, Inc.,* No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (same).  Plaintiffs' request for service payments is thoroughly reasonable, given that they request significantly less than half the payment that is presumptively reasonable in this Circuit.

> **D.     Plaintiffs Should Be Awarded Service Payments to Encourage Private Attorneys General to Enforce Important Remedial Statutes**

Courts in this Circuit routinely grant service payments as sound policy that encourages "private attorney[s] general" to bring important civil rights and wage rights cases that would not otherwise be heard.  *Rodriguez,* 563 F.3d at 959.  Many courts justify service payments based on the need to encourage litigants to bring class actions, furthering the public policy underlying the statutory scheme.  *See Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who protect and help to bring rights to a group of employees who have been the victims of [employer wrongdoing]."); *see also In re Smithkline Beckman Corp. Sec. Litig*., 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award because named plaintiffs "rendered a public service" and "conferred a monetary benefit" on the shareholder class).  As one court has explained:

> The purpose of incentive awards for class representatives is to encourage people with significant claims to pursue actions on behalf of others similarly situated. Numerous courts have recognized that incentive awards are an efficient and productive way of encouraging members of a class to become class representatives, and in rewarding individual efforts taken on behalf of the class.

*Tennille v. Western Union Co*., No. 09-CV-00938 MSK, 2013 WL 6920449, at *14 (D. Col. Dec. 31, 2013) (internal quotations and citations omitted).

Without individuals who are willing to step forward and represent a class, the public policy goals of class actions would be undermined.  Yet being a class representative involves the investment of personal time and resources and exposure to potential risks and harms for asserting the interests of the class.  In recognition of this, "[r]ecent case law seems to reflect a judicial attitude that encouraging participation in class actions suits is a societal good, and if a fee is needed in order to ensure that more people are willing to 'take the plunge' by serving as the named plaintiff in a class action lawsuit, then incentive awards can be justified."  Elisabeth M. Sperle,

*Here Today, Possibly Gone Tomorrow: An Examination of Incentive Awards and Conflicts of Interest in Class Action Litigation*, 23 Geo. J. Legal Ethics 873, 877 (2010).

Moreover, as a matter of public policy, class representatives should be rewarded for the personal sacrifices they made to vindicate the rights of others.  Courts have recognized that serving as a named class representative requires personal sacrifice.  *See, e.g.*, *Sauby v. City of Fargo*, No. 3:07-CV-10 RRE, 2009 WL 2168942, at *2 (D. N. Dakota, Jul. 16, 2009); *see also* Sperle, 23 Geo. J. Legal Ethics at 880-81 (identifying personal sacrifice, opportunity costs, personal burdens, risk of retaliation, and publicity risks for named class representatives).  Such sacrifices are particularly acute for low-income workers who live paycheck to paycheck.  *See, e.g.*, Sandoval Decl. ¶¶3(d), (f) (plaintiff was deposed hours after working overnight shift, and attended a mediation session after working another overnight shift without opportunity to sleep); *id.* ¶6 (plaintiff who still works at the McDonald's restaurant relies on her wages to support her daughter); Ochoa Decl. ¶6; Rodriguez Decl. ¶6; Hedgepeth Decl. ¶6.

This Court should thus grant the service payments to plaintiffs in recognition of their sacrifices and service to the common good.

## VI.      CONCLUSION

For the foregoing reasons, class counsel respectfully request that the Court grant final approval of the class settlement agreement between plaintiffs and Smith and award $2,000 in service awards to each of the four named plaintiffs.

Dated:  June 22, 2016                          Respectfully submitted,

/s/ Matthew J. Murray

MICHAEL RUBIN
BARBARA J. CHISHOLM
P. CASEY PITTS
MATTHEW J. MURRAY
Altshuler Berzon LLP

JOSEPH M. SELLERS (*pro hac vice*)
Cohen Milstein Sellers & Toll, PLLC

*Attorneys for Named Plaintiffs and Class*