UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE OCHOA, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>MCDONALD'S CORP., et al.,<br><br>          Defendants. | Case No.  3:14-cv-02098-JD<br><br>**ORDER RE MOTION FOR CLASS CERTIFICATION** |

In this action alleging violations of California state employment laws, named plaintiffs Stephanie Ochoa, Ernestina Sandoval, Yadira Rodriguez, and Jasmine Hedgepeth move for class certification. Dkt. Nos. 70, 157.  The motion is granted in part and denied in part.

## BACKGROUND

The Court's summary judgment order provides the background on the case.  Dkt. No. 289. In a nutshell, plaintiffs allege a variety of labor violations by defendant the Edward J. Smith and Valerie S. Smith Family Limited Partnership ("the Smiths"), which owns and operates five restaurants in California under a franchise agreement with McDonald's.  Dkt. No. 40 ¶ 17. Plaintiffs also sued McDonald's USA, LLC and McDonald's Corporation (collectively, "McDonald's") on direct and vicarious liability grounds.  Dkt. No. 40 ¶¶ 1, 154-243.[1] McDonald's moved for summary judgment and the Court granted it on plaintiffs' direct liability theories but denied it on the issue of whether McDonald's may be liable on an ostensible agency basis.  Dkt. No. 289.  Plaintiffs have settled with the Smiths, and the McDonald's entities are the last standing defendants.  Dkt. No. 305.

---

[1] Plaintiffs named McDonald's Restaurants of California, Inc. in their complaint but have subsequently stated that it should not be in the case. Dkt. No. 289 at 1.

Plaintiffs seek to certify a class of all current and former employees at the Smiths' restaurants who worked as crew, crew trainers, or maintenance workers (collectively, "crew members") and were paid on an hourly basis from four years before the complaint to final judgment or settlement ("Class"). Dkt. No. 157 at i. Plaintiffs move for certification of that single Class to pursue claims for: (1) miscalculated wages; (2) overtime; (3) meals and rest breaks; (4) maintenance of uniforms; (5) wage statements; and (6) related derivative claims. *Id.* at 13-22.

The certification motion preceded entry of the summary judgment order. Because that order left open the possibility that McDonald's could be held liable through ostensible agency, the Court took supplemental briefing from the parties on how ostensible agency might affect the certification question. Dkt. Nos. 290, 294. The certification filings also preceded the settlement with the Smiths. McDonald's joined in all the arguments the Smiths made against class certification. Dkt. No. 170 at 1. Consequently, the Court has considered the arguments in both briefs as part of McDonald's opposition to certification and also each side's arguments in the supplemental briefs.

**DISCUSSION**

**I.    Legal Standards**

Federal Rule of Civil Procedure 23 governs plaintiffs' motion for class certification. Under that rule, a party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) -- "sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" -- and at least one of the provisions of Rule 23(b) are met. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Plaintiffs focus on a (b)(3) class, which is appropriate when "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

2

350-51 (2011)).  This principle applies to the Rule 23(a) and 23(b) requirements.  *Wal-Mart*, 564 U.S. at 350-51 (Rule 23(a)); *Comcast*, 133 S.Ct. at 1432 (Rule 23(b)).  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen*, 133 S.Ct. at 1194-95.  The class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits.  *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal citation omitted).

The issue to be decided in a certification motion is whether the case should be "conducted by and on behalf of the individual named parties only" or as a class.  *Wal-Mart*, 564 U.S. at 348.  The purpose is "'to select the metho[d] best suited to adjudication of the controversy fairly and efficiently.'"  *Alcantar*, 800 F.3d at 1053 (quoting *Amgen*, 133 S.Ct. at 1191, alteration in original).  Under Rule 23(a)(2), what matters "is not the raising of common 'questions' but rather 'the capacity of a classwide proceeding to generate common *answers*.'"  *Wal-Mart*, 564 U.S. at 350 (emphasis in original).  And in the Rule 23(b)(3) context, which the parties focus on here, plaintiffs must also show that the proposed class is "'sufficiently cohesive to warrant adjudication by representation'" because common issues predominate over questions affecting only individual class members.  *Amgen*, 133 S.Ct. at 1196-97 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  Each element of a claim need not be susceptible to classwide proof; what Rule 23(b)(3) requires is that common issues "'*predominate* over any questions affecting only individual [class] members.'"  *Id*. at 1196 (emphasis in original).  Class treatment is appropriate when the proposed class "will prevail or fail in unison."  *Id*. at 1191.

## II.  Class Certification and Ostensible Agency

In the summary judgment order, the Court found that McDonald's is not directly liable as a joint employer with the Smiths but that fact disputes precluded summary judgment on the issue of whether McDonald's might be liable because the Smiths were its ostensible agents.  Dkt. No. 289 at 14-15.  Ostensible agency exists where (1) the person dealing with the agent does so with reasonable belief in the agent's authority; (2) that belief is "generated by some act or neglect of the

3

principal sought to be charged," and (3) the relying party is not negligent. *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 747 (1997).

In response to the Court's call for supplemental briefing, McDonald's made the categorical objection that "allegations of ostensible agency are incapable of being resolved on a classwide basis." Dkt. No. 290-1 at 1. The essence of the objection is that, separate and apart from the Rule 23 analysis of the substantive claims, ostensible agency necessarily forestalls class adjudication because it involves individualized questions of personal belief and reasonable reliance on an agency relationship. *Id*. at 2. In effect, it echoes *Amgen*, without actually citing it, to argue that "the asserted problem" of ostensible agency inherently "exhibits some fatal dissimilarity among class members that would make use of the class-action device inefficient or unfair." *Amgen*, 133 S.Ct. at 1197 (internal citation omitted).

McDonald's effort to stake out a general bar on certification in cases involving ostensible agency is not well taken. Nothing in ostensible agency marks it as forbidden territory under Rule 23. To the contrary, courts have permitted classes in a variety of cases involving ostensible agency issues. *See*, *e.g.*, *The Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, No. 1:11CV1062, 2014 WL 1577465 (N.D. Ohio Apr. 17, 2014) (class action with ostensible agency issue under the Telephone Consumer Protection Act); *Guardian Angel Credit Union v. MetaBank*, No. 08-cv-261-PB, 2010 WL 1794713, at *10 (D.N.H. May 5, 2010) (certifying class with ostensible agency issues in state law fraud and contract case). The class certification analysis for a case involving ostensible agency is not innately different from that for every other proposed class. In each case, the Court looks to the facts in the record and weighs "the balance between individual and common issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545-46 (9th Cir. 2013). Ostensible agency does not demand unique or alternative treatment, and certainly does not stand entirely outside Rule 23 as impossible to adjudicate on a classwide basis.

McDonald's case citations do not point to a different conclusion. It relies on *Guardian Angel Credit Union v. MetaBank*, No. 08-cv-261-PB, 2009 WL 2489325 (D.N.H. Aug. 12, 2009), but appears to have overlooked the fact that the court granted certification in a subsequent order on

4

plaintiffs' renewed motion after they showed that the principal likely acted in substantially similar ways with respect to the class. *See Guardian Angel*, 2010 WL 1794713, at *10 (granting class certification where defendant "has offered nothing beyond conclusory assertions to suggest that the evidence that bears on Guardian Angel's apparent authority claim will differ substantially from plaintiff to plaintiff"). In the other cases McDonald's cites, courts denied certification in the ostensible agency context not because class adjudication was inherently impractical or unfair but because the record did not support it. *See*, *e.g.*, *Cannon v. GunnAllen Fin., Inc.*, No. 3:06-0804, 2008 WL 4279858, at *10 (M.D. Tenn. Sept. 15, 2008) (the "set of facts" did not warrant class certification); *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2011 WL 67255, at *5 (E.D. Wis. Jan. 10, 2011) (certification denied because record showed varied facts not susceptible to common proof).

Since there is no *a priori* bar to class certification in cases involving ostensible agency, the question is whether the particular facts in this case allow for classwide adjudication against McDonald's. They do. Plaintiffs have tendered substantial and largely undisputed evidence that the putative class was exposed to conduct in common that would make proof of ostensible agency practical and fair on a class basis. For example, plaintiffs have submitted declarations showing that they were required to wear McDonald's uniforms, packaged food in McDonald's boxes, received paystubs, orientation materials, shift schedules and time punch reports all marked with McDonald's name and logo, and in most cases applied for a job through a McDonald's website. *See* Dkt. No. 289 at 15; *see also* Dkt. No. 294 at 4-5; Dkt. No. 184 (Sandoval Decl.) ¶ 2, Dkt. No. 185 (Hedgepeth Decl.) ¶ 2. The fact that each employee spent every work day in a restaurant heavily branded with McDonald's trademarks and name is also informative. These facts are shared in common across the proposed class and make classwide adjudication of ostensible agency against McDonald's a suitable and appropriate procedure.

That the ostensible agency inquiry will implicate issues of "reasonable belief" or reliance does not bar certification. In *Kaplan*, the California court of appeals held that whether or not ostensible agency exists "may be implied from circumstances." 59 Cal. App. 4th at 748. As shown here, plaintiffs have already identified a common course of conduct on the part of

5

1   McDonald's which makes possible the implication that class members reasonably believed that
2   the Smiths were McDonald's ostensible agents. On top of that, as the Court found in the summary
3   judgment order, the named plaintiffs have submitted declarations stating that they in fact held the
4   personal belief that McDonald's was their employer. *See* Dkt. No. 289 at 15. Significantly, on the
5   other side of the ledger, McDonald's has submitted no evidence at all indicating that any named
6   plaintiff or putative class member did not believe that McDonald's was their employer or that they
7   were unjustified or unreasonable in relying on that belief.

8   On this record, the Court finds that plaintiffs have done enough to show that the ostensible
9   agency issue can be litigated on a classwide basis. Whether plaintiffs will ultimately prevail or
10  fail in their proof of agency is for the trier of fact to decide and not for the Court to resolve in
11  determining certification. It may well be that the proposed class has the "fatal similarity" of a
12  failure of proof on ostensible agency. What is important for present purposes is that the mere fact
13  that the ostensible agency inquiry will need to be made and resolved to determine McDonald's
14  liability in this case does not by itself stand as a bar to class certification.

**III.   Rule 23(a) and (b)(3)**

With McDonald's categorical objection to certification overruled, the traditional Rule 23 analysis is next in order. The analysis here begins with the Rule 23(a) factors that are largely undisputed and have been established for the proposed class.

**A.   Numerosity**

The first of these uncontested factors is numerosity. Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs state that there are at least 400 members in the proposed class, Dkt. No. 157 at 10, which amply establishes numerosity. *See, e.g.*, *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (numerosity factor satisfied if class comprises 40 or more members).

**B.   Typicality and Adequacy**

Typicality and adequacy are also established. Rule 23(a) requires that the named plaintiffs assert claims typical of the putative class and that the named plaintiffs are capable of

6

fairly and adequately protecting the interests of the entire class. Fed. R. Civ. P. 23(a)(3)-(4). The named plaintiffs contend that their claims are typical of those of the class because the claims arose out of the Smiths' uniform conduct towards its employees. Dkt. No. 157 at 11-12. On adequacy, plaintiffs assert that they have no conflicts with the proposed class and have retained qualified counsel. *Id.* at 12. McDonald's raises only one limited challenge to typicality and adequacy by arguing that there is a class conflict within the overtime claim. Dkt. No. 170 at 10-11. The Court overrules that objection in Subsection C.2 below, and finds that typicality and adequacy are satisfied.

### C. Commonality and Predominance

As is often the case in class certification motions, the parties diverge in their views on commonality and predominance. Plaintiffs seek to certify the Class under Rule 23(b)(3) for the miscalculated wages, overtime, meal period and rest break, maintenance-of-uniforms, wage statement and related derivative claims. Dkt. No. 157 at 12-23. McDonald's opposes this on the grounds that the Class is far from uniform for these claims. Commonality and predominance are analyzed separately for each of the substantive claims plaintiffs allege.

#### 1. Miscalculated Wages Claims

The factual predicate of the miscalculated wages claims is that the Smiths mishandled payroll time data so that crew members were paid under an "hour.hundredths of an hour" format rather than the correct "hour:minute" format. Dkt. No. 157 at 4-5. Plaintiffs say this error caused "systemic classwide underpayment that affected each crew member's rights to accurate pay for all hours worked, including overtime and minimum wages." *Id*. at 13.

The data processing practices and related evidence for these claims are exactly the same across the class. For that reason, the Smiths forthrightly stated while they were still in the case that these claims were "properly certifiable." Dkt. No. 168 at 1. McDonald's, which joined in all of the Smiths' class certification opposition arguments, does not disagree. Dkt. No. 170. The commonality and predominance requirements are met for these claims and the Court certifies the Class for the miscalculated wages claims.

### 2. Overtime Claims

Plaintiffs contend that many of the crew members worked over eight hours per day and forty hours per week without being paid the overtime wages due under California Labor Code § 510(a) and IWC Wage Order 5-2001§ 3(A)(1). The Smiths used McDonald's standardized "ISP" software to keep track of work hours. The ISP system was pre-programmed to assign all hours worked on a shift to the day on which that shift started, rather than assigning the hours to the days on which those hours were actually worked. Dkt. No. 157 at 5. This meant, for example, that all hours worked on an overnight shift would be recorded as though they had all been worked on the day the overnight shift began (Day 1). A crew member could then miss out on overtime pay for Day 2, even if she had a subsequent shift and in fact worked more than eight hours on that second day.

McDonald's does not challenge commonality or predominance for these claims but raises a purported intra-class conflict. McDonald's says that there were winners and losers from the way the ISP system tracked hours. While some crew workers missed out on overtime pay because of it, others were paid overtime they had not earned. That means, in McDonald's view, that the class will not be of one mind in wanting to prevail on this claim and so typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) are in doubt.

This argument borders on the specious. As plaintiffs rightly point out, a conflict would exist only if McDonald's were able to recoup the "overpayment" of overtime wages from those crew members who actually benefited from the challenged ISP system. But Labor Code § 221 prohibits employers from recouping "any part of wages" that were "theretofore paid by said employer to said employee." And under the Labor Code, "wages" include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or *other method of calculation*." Cal. Lab. Code § 200(a) (emphasis added). Here, the amounts that the Smiths have already paid to the putative class members in exchange for their labor are clearly "wages" within the meaning of the Labor Code, and cannot be recouped. Without a right of recoupment, no one loses if plaintiffs' overtime claims are successful. This fact, combined with no opposition by McDonald's to commonality or

8

1 predominance for these claims, is enough to support certification of the Class for the overtime
2 claims.

### 3. Meal Period and Rest Break Claims

Plaintiffs allege that crew members missed meal and rest break periods without compensation as required by law. It is here that the parties' disagreement over commonality and predominance is strongest.

As an initial matter, the approach to commonality, and by implication predominance, has changed considerably since the Supreme Court's decision in *Wal-Mart*. Prior to *Wal-Mart*, the determination of whether a proposed class was cohesive enough -- that is, bound together by common questions of fact and law -- was typically made in the Rule 23(b)(3) context. But the Supreme Court in *Wal-Mart* put a much heavier emphasis on this analysis under the commonality requirement of Rule 23(a)(2), which it interpreted to mean that plaintiffs must show that their claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution . . . in one stroke." *Wal-Mart*, 564 U.S. at 350. As Justice Ginsburg noted in a dissent in *Wal-Mart*, this formulation of the Rule 23(a)(2) commonality requirement may not have been faithful to the academic antecedents on which it is based. *Id*. at 375-76 (Ginsburg, J, dissenting). In addition, and more pertinently for district courts deciding a Rule 23 motion, Justice Ginsberg noted that this formulation arguably has left "no mission" for the predominance test under Rule 23(b)(3). *Id*. While the Court finds this observation to be well-taken, it was made in a dissent and the Ninth Circuit has since treated *Wal-Mart* as imposing a "'rigorous' commonality standard" under Rule 23(a)(2). *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Consequently, this Court is bound to follow that approach and conduct a rigorous analysis of commonality under Rule 23(a)(2).

The Rule 23(a)(2) analysis leads to the finding that there is insufficient commonality for the meals and breaks claim to support a class. The starting point is the governing law that plaintiffs acknowledge in their certification motion. Under California law, "an employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work

is done." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1017 (2012). *See also* Dkt. No. 157 at 18-19 (quoting *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1151 (2012), for the proposition that "an employer is obligated to *provide* the rest and meal breaks") (emphasis in original). And under California law, an employer's liability "arises by adopting a uniform policy that violates the wage and hour laws." Dkt. No. 157 at 18 (quoting *Abdullah*, 731 F.3d at 961-62).

Consequently, for a class to be certified for claims under these laws, the evidence would typically need to show that crew members were denied meals and rest breaks by the application of a uniform policy, or by a consistent and widespread practice in the workplace, even if not memorialized in any formal fashion. *See Abdullah*, 731 F.3d at 955 (standardized on-duty meal break agreement for all employees that was implemented in practice); *Pina v. Con-Way Freight, Inc.*, Case No. C 10-00100 JW, 2012 WL 1278301, at *7 (N.D. Cal. Apr. 12, 2012) (evidence demonstrating informal policies of discouraging the taking of breaks); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638-39 (S.D. Cal. 2010) (whether meal and rest breaks were made available to class members turned on "same set of central policies"); *see also Brinker*, 53 Cal. 4th at 1033 (common, uniform rest break policy established at corporate headquarters and applied equally to all employees).

These facts are missing here. Plaintiffs do not tender any evidence of a standard policy or practice, formal or informal, of denying crew members their meal and rest breaks. Instead, plaintiffs say only that crew members were subject to a "*manager-directed* break policy, under which no break may be taken unless and until a manager sends the crew member on break." Dkt. No. 157 at 15 (emphasis added). How this amounts to evidence of systematic violations of the meal and break laws, let alone a basis for classwide adjudication, is far from clear. As an initial matter, nothing in that formulation indicates what the managers actually did to "direct" breaks and meals or whether it caused denial of them. *See Wal-Mart*, 564 U.S. at 355-56 ("The only corporate policy that the plaintiffs' evidence convincingly establishe[d was] Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters"; and even then, the plaintiffs could not identify "a common mode of exercising discretion that pervade[d] the entire

1   company."). It is certainly possible to imagine how this handling of meals and breaks could be
2   susceptible to class treatment. Certification might have been warranted if plaintiffs had shown
3   that the managers, even in the absence of a formal policy, pressured or coerced crew members to
4   forego breaks or meals, or simply failed to provide them as a routine practice. Or that crew
5   members gave up on their rights because they felt deterred or intimated by the managers'
6   involvement. Or even that one manager in particular consistently denied crew members their
7   breaks. *Cf. Wal-Mart*, 564 U.S. at 350 ("the assertion of discriminatory bias on the part of the
8   same supervisor" potentially enough for class treatment). But no evidence of this sort is in the
9   record.

10   To the contrary, plaintiffs' formulation invites a "fatal dissimilarity" of proof that bars a
11   finding of commonality by highlighting the role of each manager's discretion about an employee's
12   breaks. In that context, determining whether a crew member was denied her rights as an employee
13   would necessarily turn on individualized inquiries into the managers' actions and decisions. As
14   the Supreme Court has made clear, individualized inquiries like those are not reasonably
15   susceptible to class adjudication. *Wal-Mart*, 564 U.S. at 355 ("The only corporate policy that the
16   plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of *allowing discretion* by local
17   supervisors over employment matters. On its face, of course, that is just the opposite of a uniform
18   employment practice that would provide the commonality needed for a class action; it is a policy
19   *against having* uniform employment practices.") (emphases in original).

20   Plaintiffs' main response to these hurdles is to rely on statistics derived from crew member
21   time records. *See* Dkt. No. 157 at 15-16. That is not enough to warrant certification. Among
22   other flaws, neither the time records nor the statistics show whether the crew members always
23   recorded the breaks they took or whether breaks that were not recorded were nevertheless offered
24   (if they were offered but refused, the employer has done all it is required to do). And they
25   certainly do not show that the answer to whether crew members were denied meals or breaks
26   would come from common proof.

27   Tellingly, the testimony of two of the four named plaintiffs actually rebuts the inference
28   that plaintiffs seek to draw from the time records. Ochoa and Hedgeworth testified that they in

11

fact always received their meal periods during their shifts. Dkt. No. 82-10 (Ochoa Dep.) at 174:11-14; Dkt. No. 82-9 (Hedgepeth Dep.) at 208:25-209:2.[2] Three of the named plaintiffs also testified that meal and rest break practices varied depending on the manager and time of the shift. Dkt. No. 82-9 (Hedgepeth Dep.) at 209:3-17; Dkt. No. 82-7 (Sandoval Dep.) at 178:10-18; Dkt. No. 82-10 (Ochoa Dep.) at 174:15-18. These facts are akin to those in other cases that denied certification. *See*, *e.g.*, *Hadjavi v. CVS Pharmacy, Inc.*, No. CV 10-04886 SJO (RCx), 2011 WL 3240763, at *3-4 (C.D. Cal. 2011); *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 462 (S.D. Cal. 2012).

Consequently, the commonality requirement under Rule 23(a)(2) has not been met for these claims. Since the requirement of Rule 23(a)(2) has not been met, the predominance question under Rule 23(b)(3) is no longer relevant. A failure to satisfy Rule 23(a)(2) necessarily results in a failure of predominance under Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)"). Certification of the Class for the meal period and rest break claims is denied.

### 4. Maintenance-of-Uniform Claims

Plaintiffs allege that crew members were required to "'wash and iron' their McDonald's uniforms regularly" but were not reimbursed for their time and expense in complying with this requirement in violation of the California Labor Code and IWC Wage Order 5-2001. Dkt. No. 157 at 19. McDonald's acknowledges that there was a common policy related to the maintenance of crew members' McDonald's uniforms requiring that "they be 'clean and neat.'" Dkt. No. 168 at 19.

Commonality and predominate exist for these claims. While McDonald's says that an employer need only maintain uniforms for their employees "if the uniforms require special laundering or care," Dkt. No. 168 at 18, that is a legal issue common to the entire class. McDonald's reliance on *Madrigal v. Tommy Bahama Group, Inc.*, No. CV 09-08924, 2011 WL

---

[2] Defendants say plaintiff Rodriguez gave similar testimony, Dkt. No. 168 at 14 (citing Rodriguez Dep. at 182:22-183:13), but the transcript was not provided to the Court.

10511339 (C.D. Cal. June 27, 2011), is misplaced. In *Madrigal*, the court found that common issues did not predominate because the evidence showed that the class members received different instructions about the company's requirements for maintaining uniforms. *Id.* at *7 (some class members testified that "management never talked to them or reprimanded them because of their wrinkled clothing," but others asserted that "management told them to take their uniforms to the dry cleaner.").

By contrast, the record in this case shows that the putative class members and their employers had a shared understanding about how the uniforms were to be maintained. For example, the supervisors of all five restaurants both confirmed that all crew members were required to wash and iron their uniforms. *See* Dkt. No. 82-3 (Ortega Dep.) at 79:16-24, 80:3-15; Dkt. No. 82-1 (Smith Dep.) at 64:20-65:10. This satisfies commonality under Rule 23(a)(2).

Any variations among the class members about how frequently they washed their uniforms and whether they washed them with or without their non-work clothes are of no moment. *See* Dkt. No. 168 at 19-20. These variations go to the question of damages -- because they speak to the extent, rather than type, of expenses incurred -- and do not overwhelm the central issue of whether there was a failure to reimburse in violation of California Labor Code Sections 2802(a) and (b). Because "[d]amages calculations alone . . . cannot defeat certification," *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015), the Court finds that Rule 23(b)(3) predominance has also been met, and certifies the Class for the maintenance-of-uniform claims.

### 5. Wage Statement Claims

Plaintiffs also seek certification of the Class for their "wage statement claims." Dkt. No. 157 at 21. The main factual predicate appears to be that "defendants' wage statements never listed McDonald's as an employer and never listed McDonald's address." *Id*.

As plaintiffs acknowledge, whether this failure constitutes a violation of Labor Code § 226 turns on the question of whether McDonald's is the crew members' joint employer. The Court has already answered this question in the negative in the summary judgment order. Certification of the Class on this theory for plaintiffs' wage statement claims is consequently denied as moot.

### 6. Derivative Claims

Plaintiffs also seek class certification for other "derivative claims," which include claims for failure to provide itemized wage statements accurately showing all wages earned; failure to pay all wages due; unfair business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; failure to pay all wages due upon discharge or resignation; and failure to maintain required records. Dkt. No. 157 at 21-22.

For these claims, both sides agree that certification should be granted or denied for the same reasons as the underlying claims from which these claims are derived. Consequently, any additional claims of plaintiffs' that are derivative of their miscalculated wages claims, overtime claims and maintenance-of-uniform claims will be decided on a classwide basis.

## D. Superiority of Class Adjudication

As a final consideration, any question about the procedural superiority of classwide adjudication here is easily put to rest. Rule 23(b)(3) requires a finding that proceeding as a class is superior to other ways of adjudicating the controversy, which in this case would mean not proceeding as a class but in individual actions by each putative class member. The superiority of a class action over that alternative is not subject to serious debate. The proposed class members are all current or former crew members of McDonald's who assert the same claims about their working conditions. Resolving these disputes in a single class action is a far more efficient approach than requiring 400+ individual and largely duplicative lawsuits. The likelihood that class members will not recover large amounts individually if they prevail is another point in favor of class adjudication. The individual damages may not be high enough to make sense to pursue outside a class. *See Leyva*, 716 F.3d at 515 (class action is the only feasible means for class members to adjudicate California labor law claims "[i]n light of the small size of the putative class members' potential individual monetary recovery"). There is no other ongoing litigation that is related to this case, and it makes sense to centralize the litigation here where the Smith's restaurants are located. Class adjudication is clearly the best way to resolve the claims that the Court has authorized the Class to pursue.

### IV. Rule 23(b)(2) and Subclasses

While plaintiffs focused on certification under Rule 23(b)(3), they ask in passing for certification of a (b)(2) class for injunctive relief for current crew members. Dkt. No. 157 at 23-24. This is a questionable approach because the thrust of plaintiffs' claims is for individualized awards of monetary relief, which vitiates a (b)(2) class. *See Ellis v. Costco Wholesale Corp*, 657 F.3d 970, 987 (9th Cir. 2011) (quoting *Wal-Mart*, 564 U.S. at 363, that "claims for individualized relief (like the backpay at issue here) do not satisfy" Rule 23(b)(2)). In addition, the Court does not have before it a clear record of the current employment practices at the restaurants and how the settlement with the Smiths might have changed them. Consequently, the Court declines to certify a (b)(2) class at this time for any claim, but it may revisit the issue in light of the facts adduced at trial. The Court might also consider after trial whether injunctive relief should be entered on behalf of any of the named plaintiffs who are current employees and who show that the requirements for an injunction are met.

Plaintiffs' certification motion also mentions, for the first time, seven putative subclasses, but only "[t]o the extent that Defendants' records establish that certain classwide violations by Defendants did not cause compensable harm to all Class Members." Dkt. No. 157 at i. Because the Court has not parsed any of the claims in that manner, there is no occasion to consider subclasses.

### CONCLUSION

Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court certifies the proposed Class for plaintiffs' miscalculated wages claims, overtime claims and maintenance-of-uniform claims, and any claims that are derivative of those claims.

**IT IS SO ORDERED.**

Dated: July 7, 2016

JAMES DONATO
United States District Judge